IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and<br>BOSTON SCIENTIFIC SCIMED, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 07-333-SLR |
| ) | |
| JOHNSON & JOHNSON, INC. and<br>CORDIS CORPORATION, ) | |
| ) | |
| Defendants. ) | |

_____

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and<br>BOSTON SCIENTIFIC SCIMED, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 07-348-SLR |
| ) | |
| JOHNSON & JOHNSON, INC. and<br>CORDIS CORPORATION, ) | |
| ) | |
| Defendants. ) | |

_____

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and<br>BOSTON SCIENTIFIC SCIMED, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 07-409-SLR |
| ) | |
| JOHNSON & JOHNSON, INC. and<br>CORDIS CORPORATION, ) | |
| ) | |
| Defendants. ) | |

_____

|  |  |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) |
| JOHNSON & JOHNSON, INC. and CORDIS CORPORATION, | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 07-765-SLR

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO TRANSFER CAPTIONED CASES PURSUANT TO 28 U.S.C. § 1404(a)**

YOUNG CONAWAY STARGATT & TAYLOR LLP
Josy W. Ingersoll (#1088) [jingersoll@ycst.com]
Karen L. Pascale (#2903) [kpascale@ycst.com]
Karen E. Keller (#4489) [kkeller@ycst.com]
Andrew A. Lundgren (#4429) [alundgren@ycst.com]
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE  19801
(302) 571-6600

*Attorneys for Plaintiffs*
*Boston Scientific Corporation and*
*Boston Scientific Scimed, Inc.*

*Of Counsel:*

Richard L. DeLucia
Paul M. Richter
Michael K. Levy
Jerry Canada
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200

Dated: January 14, 2008

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ................................................. 3

STATEMENT OF FACTS ............................................................................... 4

ARGUMENT ............................................................................................... 6

I.      LEGAL STANDARDS ........................................................................ 6

II.     CORDIS CANNOT SATISFY THE LEGAL STANDARD NECESSARY TO JUSTIFY TRANSFERRING BSC'S FOUR CASES TO NEW JERSEY ....................... 6

     A.     Deference Is Due To Plaintiff BSC's Choice Of Forum, Particularly Since Cordis Has Frequently Litigated In This Same Forum In The Recent Past .......... 6

     B.     The Private Interest Will Not Be Served By A Transfer To New Jersey.............. 8

     C.     The Public Interest Will Not Be Served By A Transfer To New Jersey............. 10

CONCLUSION ............................................................................................... 14

DB01:2504146.1

054604.1003

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADE Corp. v. KLA-Tencor Corp.*,
    138 F. Supp. 2d 565 (D. Del. 2001)................................................................................. 7

*Alloc, Inc. v. UnilinDécor N.V.*,
    C.A. Nos. 03-253-GMS, 05-587-GMS, 2006 WL 2050815
    (D. Del. Oct. 26, 2006)........................................................................................... 11, 12

*Amgen, Inc. v. Ariad Pharms., Inc.*,
    513 F. Supp. 2d 34 (D. Del. 2007)........................................................................... 7, 9

*Arrow Communication Labs., Inc. v. John Mezzalingua Assocs., Inc.*,
    C.A. No. 05-357-SLR, 2005 WL 2786691 (D. Del. Oct. 26, 2005)................................ 11

*Automotive Techs. Int'l, Inc. v. American Honda Motor Co., Inc.*,
    C.A. No. 06-187-GMS, 2006 U.S. Dist. LEXIS 92249 (D. Del. Dec. 21, 2006) ........ 9, 10

*Brunswick Corp. v. Precor Inc.*,
    C.A. No. 00-691-GMS, 2000 WL 1876477 (D. Del. Dec. 12, 2000)...................... 11, 12

*CashEdge, Inc. v. Yodlee, Inc.*,
    C.A. No. 06-170-JJF, 2006 WL 2038504 (D. Del. July 19, 2006)........................... 11, 12

*Datex-Ohmeda, Inc. v. Hill-Rom Servs., Inc.*,
    185 F. Supp. 2d 407 (D. Del. 2002)....................................................................... 6, 11

*Initrogen Corp. v. Incyte Genomics, Inc.*,
    C.A. No. 01-692-SLR, 2002 U.S. Dist. LEXIS 8118 (D. Del. May 1, 2002)................. 12

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995) .................................................................................... 6, 10

*In re M.L.-Lee Acquisition Fund II, L.P.*,
    816 F. Supp. 973 (D. Del. 1993)............................................................................. 2, 7

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
    C.A. No. 06-505-SLR, 2006 U.S. Dist. LEXIS 91969 (D. Del. Dec. 19, 2006)............... 9

*Schering Corp. v. Amgen, Inc.*,
    969 F. Supp. 258 (D. Del. 1997).................................................................................. 8

*Tsoukanelis v. Country Pure Foods, Inc.*,
    337 F. Supp. 2d 600 (D. Del. 2004)............................................................................ 10

*Tuff Torq Corp. v. Hydro-Gear Ltd. P'ship*,
    882 F. Supp. 359 (D. Del. 1994)..................................................................................... 2, 6

**Statute**

28 U.S.C. § 1404(a).............................................................................................................. 2, 6, 7

Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively "BSC") respectfully submit this answering brief in opposition to Defendants Johnson & Johnson, Inc. and Cordis Corp.'s (collectively "Cordis") motion to transfer to the District of New Jersey all four of BSC's pending declaratory judgment actions against Cordis. BSC's four complaints seek declarations that each of the four Cordis patents at issue is invalid or not infringed by BSC's PROMUS everolimus-eluting stent. (C.A. No. 07-333-SLR, D.I. 1; C.A. No. 07-348-SLR, D.I. 1; C.A. No. 07-409-SLR, D.I. 1; C.A. No. 07-765-SLR, D.I. 1 ("Complaints")). The PROMUS stent is an intravascular stent used to treat coronary artery disease. It advantageously releases a drug designed to diminish reblocking (restenosis) of the patient's blood vessel into which the stent has been inserted.

<u>**INTRODUCTION AND SUMMARY OF THE ARGUMENT**</u>

It is the height of irony for Cordis to argue now that the District of Delaware is somehow an inconvenient forum for it to litigate patent cases involving stent technology, and that New Jersey is more convenient. Indeed, Cordis's name and the District of Delaware are virtually synonymous when it comes to patent infringement litigation and stents, including various recent cases in this district involving both Cordis *and* BSC. Cordis's strategic effort to transfer these four cases brought by BSC as plaintiff must be viewed through that prism of Cordis's past, frequent resort to this very same forum when it believed it served its purposes. It cannot be that the District of Delaware is only convenient for Cordis when it chooses to be here, as opposed to BSC making that choice first.

BSC diligently monitors its competitor's activities, statements, and patent filings in the stent field, and the PROMUS stent is a very important part of BSC's stent business. BSC promptly brought its four lawsuits against Cordis in May, June, and November of 2007, with each case being filed the same day or a few days after the United States Patent and Trademark

1

Office's issuance of the Cordis patent named in the complaint. In stark contrast, after creating the controversy that led to these four cases, Cordis did nothing substantive. It neither counterclaimed in response to BSC's complaints in Delaware nor sued BSC in New Jersey. Cordis instead concentrated its activities solely on suing Abbott Laboratories ("Abbott") in New Jersey on the same four patents at issue here. Now, over six months after BSC first filed suit, and having finally acknowledged the real and immediate controversy presented here, Cordis belatedly seeks to transfer BSC's cases to its latest forum of choice, New Jersey, to join them with its Abbott actions. Such strategic attempts at forum maneuvering should not be rewarded. Cordis's motion to transfer should be denied.

Cordis completely fails to carry its burden of showing that "'the balance of convenience and the interests of justice weigh strongly in favor of transfer,'" as it must to prevail on its motion to transfer under 28 U.S.C. § 1404(a). *See Tuff Torq Corp. v. Hydro-Gear Ltd. P'ship*, 882 F. Supp. 359, 362 (D. Del. 1994) (quoting *In re M.L.-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993)). It is hard to legitimately argue, yet Cordis gamely tries, that it is more convenient for the parties and witnesses in these cases to move the forum about sixty miles north to Trenton, New Jersey from their present situs of Wilmington, Delaware. In truth, maintaining these cases in plaintiff BSC's Delaware forum of choice, to which deference must be paid under the law, will have absolutely no adverse effect on the parties or witnesses that could be cured *or even lessened* by transfer to New Jersey. Any witnesses in New Jersey will have to travel only sixty more miles to reach trial in Wilmington as compared to Trenton (and many of the New Jersey witnesses are within the *subpoena* power of the Delaware Court in any event); the depositions will take place at the same location irrespective of the forum; and document production and review will not be affected in any way by moving the case to New

Jersey.  Cordis's arguments to the contrary simply ring hollow; there is *no interest* to be served by transferring these cases, much less one "of justice" as required to meet the legal standard.

<u>**NATURE AND STAGE OF THE PROCEEDINGS**</u>

BSC has filed four, related declaratory judgment complaints in this Court against Cordis that involve both the BSC PROMUS stent and one of Cordis's U.S. Patent Nos. 7,217,286 (the " Falotico '286 patent"), 7,223,286 (the "Wright '286 patent"), 7,229,473 (the "Wright '473 patent"), and 7,300,662 (the "Falotico ''662 patent") (collectively the "Cordis patents"), respectively bearing Civil Action Numbers 07-333-SLR (filed May 25, 2007) , 07-348-SLR (filed June 1, 2007) , 07-409-SLR (filed June 22, 2007), and 07-765-SLR (filed November 27, 2007).  Each of those actions seeks a declaration that the respective Cordis patent at issue is invalid or not infringed by the PROMUS stent.

Last July, Cordis filed motions to dismiss BSC's Civil Action Numbers 07-333-SLR, 07-348-SLR, and 07-409-SLR for supposed lack of subject matter jurisdiction, with a single memorandum in support of its request to dismiss those three actions.  (*See* C.A. No. 07-333-SLR, D.I. 10, 11; C.A. No. 07-348-SLR, D.I. 8, 9; C.A. No. 07-409-SLR, D.I. 7).   On December 17, 2007, Cordis filed another motion to dismiss the 07-765-SLR case and incorporated by reference its prior memorandum of July 18, 2007.  (*See* 07-765-SLR, D.I. 8).

BSC filed a single memorandum in opposition to Cordis's motions to dismiss its first three declaratory judgment actions against Cordis on the PROMUS stent, on August 13, 2007. (*See* C.A. No. 07-333-SLR, D.I. 14; C.A. No. 07-348-SLR, D.I. 12; C.A. No. 07-409-SLR, D.I. 11).  On January 7, 2008, BSC filed a memorandum in opposition to Cordis's motion to dismiss the fourth of these related cases (*See* 07-765-SLR, D.I. 10).  The Court has not yet ruled on Cordis's motions to dismiss.

3

Finally, on December 20, 2007, Cordis filed a motion to transfer all four of the above declaratory judgment actions to the District of New Jersey, where Cordis presently has pending patent infringement actions against Abbott on the same four Cordis patents and the same stent product, Abbott's XIENCE V stent, as is involved in BSC's four pending declaratory judgment actions against Cordis in this Court.  (C.A. No. 07-333-SLR, D.I. 21; C.A. No. 07-348-SLR, D.I. 19; C.A. No. 07-409-SLR, D.I. 22; C.A. No. 07-765-SLR, D.I. 9 ("Opening Brief")).

Cordis neither filed suit against BSC on the Cordis patents in the District of New Jersey at the time that it sued Abbott on those same patents nor sought to add BSC as a party to those New Jersey cases.  Likewise, Cordis did not answer any of the four Delaware complaints brought by BSC with a counterclaim asserting infringement of the Cordis patents in favor of transfer to the District of New Jersey.

## STATEMENT OF FACTS

BSC is a world renowned leader in the development of intravascular stents used in the treatment of coronary artery disease.  (*See, e.g.*, 07-333-SLR, D.I. 1 at ¶ 14).  In April 2006, BSC acquired the cardiac rhythm management business of Guidant Corp. ("Guidant") for $27.2 billion.  Prior to that acquisition, Abbott purchased Guidant's vascular business, including its coronary stent business, for $4.1 billion in cash and other considerations.  (*See, e.g.*, 07-333-SLR, D.I. 1 at ¶ 19).  Abbott's XIENCE V stent, which Cordis has accused of infringing the Cordis patents, was originally developed by Guidant.  (*See* 07-333-SLR, D.I. 15 at ¶ 5 ("Messal Declaration")).  As part of the foregoing two deals with Guidant, BSC and Abbott entered into a separate agreement that requires Abbott to manufacture for BSC a private-label version of the XIENCE V stent.  BSC sells this private-label stent under the designation "PROMUS," and BSC has made a substantial investment in the PROMUS stent.  (*See, e.g.*, 07-333-SLR, D.I. 1 at ¶¶ 18–20; Messal Declaration at ¶¶ 6–8).

4

The PROMUS stent is made for BSC in the United States, and BSC has been selling the PROMUS stent in Europe since January 2007. (*See, e.g.*, 07-333-SLR, D.I. 1 at ¶ 18; Messal Declaration at ¶ 8). Furthermore, an advisory committee to the FDA recently recommended approval of the XIENCE V stent, further confirming BSC's expectation that it will begin selling the PROMUS stent in the United States in early 2008. (*See, e.g.*, 07-333, D.I. 1 at ¶ 18; Messal Declaration at ¶ 11; Abbott Press Release, Exh. A).

On May 15, 2007, Abbott filed a declaratory judgment action against Cordis in this Court (C.A. No. 07-259-SLR) alleging the invalidity and non-infringement of the Falotico '286 patent by the XIENCE V stent. Abbott later filed motions for leave to add the subsequently issued Wright '286, Wright '473 and Falotico '662 patents to the May 15, 2007 action.

Separately, on May 15, 2007, May 29, 2007, June 12, 2007, and November 27, 2007, Cordis filed infringement actions against Abbott in the District of New Jersey (C.A. Nos. 07-2265-JAP-TJB, 07-2477-JAP-TJB, 07-2728-JAP-TJB, 07-5636-JAP-JJH) alleging the infringement of the Falotico '286 patent, the Wright '286 patent, the Wright '473 patent, and the Falotico '662 patent, respectively. On November 28, 2007, this Court granted Cordis's motion to dismiss Civil Action Number 07-259-SLR because the Court found that Civil Action Number 07-2265-JAP-TJB was first-filed in the District of New Jersey. Thus, all litigation between Cordis and Abbott relating to the Cordis patents and the XIENCE V stent is now being tried in the District of New Jersey. However, Cordis never made any effort to add BSC as a party to any of the District of New Jersey actions against Abbott and never sought to separately sue BSC on any of the Cordis patents in New Jersey.

## <u>ARGUMENT</u>

## I.     LEGAL STANDARDS

A district court under 28 U.S.C. § 1404(a) may transfer a civil action to any other district where it may have been brought.  In expounding upon this statute, the Third Circuit has provided a series of public and private interests to be evaluated in deciding whether a case should be transferred to a different forum.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995).  The private interests include: (1) the plaintiff's forum preference, (2) the defendant's forum choice, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the convenience of the witnesses, but only to the point that witnesses may be unavailable in one of the fora, and (6) the location of books and records, but only to the point that they cannot be produced in one of the fora.  *Id.* at 879.  The public interests include: (1) the enforceability of the judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpensive, (3) the relative administrative difficulties in the two fora based on court congestion, (4) the local interest in deciding local interests at home, (5) the public policies of the fora, and (6) the familiarity of the judge with applicable state law in diversity cases.  *Id.* at 879–80.

## II.    CORDIS CANNOT SATISFY THE LEGAL STANDARD NECESSARY TO JUSTIFY TRANSFERRING BSC'S FOUR CASES TO NEW JERSEY

### A.    Deference Is Due To Plaintiff BSC's Choice Of Forum, Particularly Since Cordis Has Frequently Litigated In This Same Forum In The Recent Past

As the moving party, Cordis alone has the burden of showing that the above factors warrant a transfer.  "The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer . . . ."  *Datex-Ohmeda, Inc. v. Hill-Rom Servs., Inc.*, 185 F. Supp. 2d 407, 412 (D. Del. 2002); *see also Tuff Torq*, 882 F. Supp. at 362 (stating that the plaintiff's choice of forum is of paramount consideration and noting "'the burden remains at all

6

times on the defendant to show the balance of convenience and the interests of justice weigh strongly in favor of transfer'" (quoting *In re M.L.-Lee Acquisition Fund II*, 816 F. Supp. at 976)). That is a burden Cordis plainly has not met, and "[u]nless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 567–68 (D. Del. 2001); *see also Amgen, Inc. v. Ariad Pharms., Inc.*, 513 F. Supp. 2d 34, 45 (D. Del. 2007) (noting that the defendant "must prove that litigating in Delaware would pose a 'unique or unusual burden' on [its] operations" in order for the court to grant a motion to transfer). Plaintiff BSC should be permitted to pursue its relief in this Court, the forum of its choice.

Moreover, given its own, frequent history of litigation in this Court as both a plaintiff and defendant, including several recent stent litigations, it is difficult to see how Cordis legitimately can contend that it would be in any way inconvenienced by having this Court hear BSC's four pending litigations on the PROMUS stent. *See, e.g.*, *Cordis Corp. v. Medtronic AVE, Inc.*, C.A. No. 00-886-SLR; *Cordis Corp. v. Medtronic Vascular, Inc. et al.*, C.A. No. 97-550-SLR. Cordis, in fact, on two prior occasions chose to file patent infringement suits *against BSC* in the district of Delaware rather than the District of New Jersey. *See Cordis Corp. v. Boston Scientific Corp. et al.*, C.A. No. 03-027-SLR; *Cordis Corp. v. Boston Scientific Corp. et al.*, C.A. No. 98-197-SLR. Cordis also has been a defendant in numerous other stent cases in the District of Delaware in which it did not file motions to transfer under 28 U.S.C. § 1404(a) based on the supposed inconvenience of litigating in Delaware. *See, e.g.*, *Boston Scientific Scimed, Inc. et al. v. Cordis Corp. et al.*, C.A. No. 03-1138-SLR; *Boston Scientific Scimed, Inc. et al. v. Cordis Corp. et al.*, C.A. No. 03-283-SLR. In sum, Cordis's present arguments about the supposed inconvenience of this Court collapse under the weight of its past, repeated resort to this

same forum for patent infringement cases, including such cases involving stents and BSC as the other party.

### B.    The Private Interest Will Not Be Served By A Transfer To New Jersey

Rather than discuss each of the private interest factors in detail, Cordis simply concludes that the private interests weigh in favor of transfer because:  Delaware supposedly is not BSC's "home turf," no act of alleged infringement has occurred in Delaware, Johnson & Johnson is incorporated and headquartered in New Jersey, much of the research and development relating to the patents occurred in New Jersey, the inventors reside in New Jersey, and a large number of documents are located in New Jersey.  (Opening Brief at 6).  Even setting aside the conflict between those new arguments and Cordis's past, frequent resort to this Court for patent infringement litigation (*see above*), an evaluation of each of the private interest factors shows that BSC's choice of forum should not be disturbed.

First, while BSC indeed is a large company and has a place of business in New Jersey, BSC is incorporated in Delaware and, just like Cordis, has litigated in this Court numerous times in the past concerning patent matters and stents.  Cordis's latest preference for New Jersey as a forum should be given little weight.  Cordis had ample opportunity to sue BSC in the District of New Jersey when it filed suit against Abbott last May 15 (and at any time since then), but instead Cordis chose to do nothing for the past six months.  Cordis willingly chose that path and should not be heard to complain now against BSC's choice of forum as plaintiff in theses four cases.

Second, the location of the claim does not favor transfer to the District of New Jersey because this is a patent case and the PROMUS stent, which is now made in the United States and sold in Europe, soon also will be sold in every judicial district of the United States, including this one.  *See Schering Corp. v. Amgen, Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997)

(noting that a patent dispute regarding a product that is sold worldwide cannot be described as a local controversy).

Third, the convenience of the parties does not warrant transfer to the District of New Jersey because both BSC and Cordis are large corporations that are regularly involved in lawsuits throughout the country, especially in this district (*see above*).  Furthermore, the parties' respective primary trial counsel are located in New York (BSC) and Chicago (Cordis), which does not make the District of New Jersey more convenient than the District of Delaware.  *See Amgen*, 513 F. Supp. 2d at 46 (noting that patent litigation is costly regardless of the forum and that when the parties' counsel are not located in either forum, neither forum can be more or less convenient).

Fourth, the convenience of the witnesses does not warrant transfer because the witnesses from both sides likely reside in many different states and travel to Delaware will be no more burdensome than travel to New Jersey.  *See, e.g.*, *Automotive Techs. Int'l, Inc. v. American Honda Motor Co., Inc.*, C.A. No. 06-187-GMS, 2006 U.S. Dist. LEXIS 92249, at *6–7 (D. Del. Dec. 21, 2006) (holding that requiring witnesses to travel to the forum is not a burdensome task warranting transfer); *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, C.A. No. 06-505-SLR, 2006 U.S. Dist. LEXIS 91969, at *9–10 (D. Del. Dec. 19, 2006) (noting that discovery can be conducted anywhere and that testimony at trial can be presented by recorded video).  Indeed, the distance between Wilmington, Delaware and Trenton, New Jersey (which would be the site of a trial if these cases were transferred) is only 62 miles by car, with a good 50 miles of that trip taking place quickly on Interstate 95.  (*See* Mapquest.com directions with mileage, Exh. B).  Travel by air to either Wilmington or Trenton likely will be through the same city, namely Philadelphia.

9

Moreover, the above factor is only relevant if a witness may actually be unavailable for trial in the challenged forum—a claim which Cordis did not make.  *See Jumara*, 55 F.3d at 879; *see also Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600, 604 (D. Del. 2004) (denying motion to transfer when movant did not indicate specific witnesses who were unable to appear in Delaware).  Nor could Cordis make such an argument.  For example, many of the key witnesses, such as the primary inventors named on the patents-in-suit, are reported (at least on the face of those patents) to live in southern New Jersey and, as such, would be within the subpoena power of this Court for trial.  (*See* Mapquest.com directions to inventors' reported towns in New Jersey, with mileage, Exh. C).

Finally, as the District of Delaware has noted in other cases, the location of books and records is of little importance in the modern age because document production can be done electronically.  *See, e.g.*, *Automotive Tech.*, 2006 U.S. Dist. LEXIS 92249, at *6.  Furthermore, this factor is only examined in any event when the files cannot be produced in the challenged forum—a claim which Cordis also has not made, again because it cannot.  *See Jumara*, 55 F.3d at 879; *see also Tsoukanelis*, 337 F. Supp. 2d at 604 (denying motion to transfer when movant did not indicate any documents that were too burdensome to ship to Delaware).

**C.    The Public Interest Will Not Be Served By A Transfer To New Jersey**

Likewise, the public interest factors do not weigh in favor of transferring these four cases to the District of New Jersey.  Cordis has not shown that the enforceability of any judgment would be better in New Jersey, that the relative administrative difficulty in New Jersey

resulting from court congestion would be any less, or that New Jersey has an interest in deciding a local controversy at home.[1]

Recognizing that it cannot meet the above standards, Cordis instead bases much of its motion on the argument that practical considerations (i.e., concerning its pending New Jersey litigation against Abbott on the same patents) could make a trial in this matter easy, expeditious, or inexpensive if these cases were transferred. Specifically, Cordis argues that "'[w]here related lawsuits exist, it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court.'" (Opening Brief at 4 (quoting *CashEdge, Inc. v. Yodlee, Inc.*, C.A. No. 06-170-JJF, 2006 WL 2038504, at *2 (D. Del. July 19, 2006))). *See also Alloc, Inc. v. UnilinDécor N.V.*, C.A. Nos. 03-253-GMS, 05-587-GMS, 2006 WL 2050815, at *3 (D. Del. Oct. 26, 2006); *Arrow Communication Labs., Inc. v. John Mezzalingua Assocs., Inc.*, C.A. No. 05-357-SLR, 2005 WL 2786691, at *2 (D. Del. Oct. 26, 2005); *Brunswick Corp. v. Precor Inc.*, C.A. No. 00-691-GMS, 2000 WL 1876477, at *3 (D. Del. Dec. 12, 2000).

Left unsaid, however, is that in the four cases Cordis cited, *CashEdge*, *Alloc*, *Arrow*, and *Brunswick*, the same parties were involved in both the transferred case and the related case in the other district. Here, while it is true that there are pending cases in the District of New Jersey involving the same product (Abbott's XIENCE V stent) and the same Cordis patents, the parties to those cases are Cordis and Abbott only—*BSC is not a party to those cases*. Cordis's argument that these four BSC cases should be transferred to New Jersey since Cordis

---

[1]    Cordis incorrectly argues that because the public interest factors other than the practical considerations that could make the trial easy, expeditious, or inexpensive supposedly do not favor one forum over the other the case should be transferred to New Jersey. (*See* Opening Brief at 5–6). This is an incorrect application of the law because Cordis has the burden to show that the factors strongly weigh in favor of New Jersey. If the other factors do not weigh one way or the other they should not be ignored. Instead, the motion to transfer should be denied. *See Datex-Ohmeda*, 185 F. Supp. at 412.

11

filed first in that district fails for the same reason—BSC is not a party to the supposed "first filed" case of Cordis. That case was brought against Abbott only. Over six months have passed since that time and Cordis has done nothing. Having not sued BSC in New Jersey or here for that extreme length of time for its own strategic purposes, Cordis certainly should not be permitted now to argue that it "filed first" in New Jersey and, therefore, a transfer to that district is warranted. Even ignoring that fatal flaw in Cordis's argument, the District of Delaware has previously denied a motion to transfer when there was an actual "related case" pending in another district. *See Initrogen Corp. v. Incyte Genomics, Inc.*, C.A. No. 01-692-SLR, 2002 U.S. Dist. LEXIS 8118, at *9–10 (D. Del. May 1, 2002).

It is also worth noting that in the cases cited by Cordis, namely *CashEdge*, *Alloc*, and *Brunswick*, the ordered transfer for convenience was from Delaware to district courts far away in California, Wisconsin, and Washington, such that it was no doubt warranted for the reasons ordered by the Court. *See CashEdge*, 2006 WL 2038504, at *3; *Alloc*, 2006 WL 2050815, at *4; *Brunswick*, 2000 WL 1876477, at *3. That is far different from the transfer of a mere sixty miles sought by Cordis here.

Finally, and notwithstanding that it is a situation solely of its own making, Cordis argues that BSC's four pending cases in Delaware should be transferred to New Jersey to avoid duplicative litigation for Cordis and the possibility of potentially conflicting rulings, such as on claims construction or patent invalidity. Had Cordis truthfully been interested in litigating the issues at hand in New Jersey from the beginning, it should have (and could have) sued BSC along with Abbott last May. Cordis deliberately chose not to do so and is now vainly complaining about what it perceives as the potential consequences. Cordis's "concerns" in this

regard are completely self-serving and certainly do not outweigh BSC's choice of Delaware as its forum.

Indeed, left unsaid is that these four cases have progressed far more than Cordis's New Jersey actions against Abbott. BSC and Cordis have a complete discovery schedule in these cases and a trial date in August 2009. There is no guarantee that the New Jersey litigation will proceed as rapidly. If the case is transferred, BSC may have to wait to clear the cloud hanging over its PROMUS sales due to Cordis's activities. That would be unfair, particularly given Cordis's deliberate choice not to join BSC in the New Jersey actions against Abbott long ago, as it could have.

Cordis's arguments in favor of transfer to New Jersey based on the possibility of potentially conflicting claims construction and patent invalidity rulings if the Delaware and New Jersey cases proceed in parallel is a straw person that is easily blown away under even limited scrutiny of the realities in this case. The Delaware and New Jersey Courts are quite sophisticated in handling patent matters and the possibility of any such conflict is remote, at best, particularly since both Courts will be aware of the progress, rulings and status of all of these cases. That possibility is reduced even further since it is quite likely that these four cases will proceed to trial first in Delaware, because a trial date already is set, and any rulings by this Court likely will have at least some effect in New Jersey on the same patents and product. Indeed, given the already entered scheduling order and trial date in these four cases, Delaware is the lead forum here and should not lightly be overridden in favor of transfer to New Jersey.

Finally, and perhaps most importantly, Cordis chose this strategy and should have to live with any adverse consequences that result (although none should, other than in the

musings of Cordis's Opening Brief). It simply would be grossly unfair to plaintiff BSC to transfer these cases to New Jersey just because Cordis would prefer it that way.

**CONCLUSION**

For all of the foregoing reasons, the Court should deny Cordis's motion to transfer the above captioned cases to the District of New Jersey.

YOUNG CONAWAY STARGATT & TAYLOR LLP

/s/ Karen L. Pascale
_____

Josy W. Ingersoll (#1088) [jingersoll@ycst.com]
Karen L. Pascale (#2903) [kpascale@ycst.com]
Karen E. Keller (#4489) [kkeller@ycst.com]
Andrew A. Lundgren (#4429) [alundgren@ycst.com]
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE  19801
(302) 571-6600

*Attorneys for Plaintiffs*
*Boston Scientific Corporation and*
*Boston Scientific Scimed, Inc.*

*Of Counsel:*

Richard L. DeLucia
Paul M. Richter
Michael K. Levy
Jerry Canada
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200

Dated: January 14, 2008

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on January 14, 2008, I caused to be

electronically filed a true and correct copy of the foregoing document with the Clerk of the Court

using CM/ECF, which will send notification that such filing is available for viewing and

downloading to the following counsel of record:

> Steven J. Balick, Esquire [sbalick@ashby-geddes.com]
> John G. Day, Esquire [jday@ashby-geddes.com]
> Lauren E. Maguire, Esquire [lmaguire@ashby-geddes.com]
> ASHBY & GEDDES
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19801

I further certify that on January 14, 2008, I caused a copy of the foregoing document to

be served by e-mail on the above-listed counsel and on the following non-registered participants

in the manner indicated:

> ### *By E-Mail*
>
> David T. Pritikin, Esquire [dpritikin@sidley.com]
> William H. Baumgartner, Esquire [wbaumgartner@sidley.com]
> Paul E. Veith, Esquire [pveith@sidley.com]
> Russell E. Cass, Esquire [rcass@sidley.com]
> SIDLEY AUSTIN LLP
> One  South Dearborn
> Chicago, IL 60603

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> /s/ Karen L. Pascale
> _____
> Josy W. Ingersoll (#1088) [jingersoll@ycst.com]
> Karen L. Pascale (#2903) [kpascale@ycst.com]
> Karen E. Keller (#4489) [kkeller@ycst.com]
> Andrew A. Lundgren (#4429) [alundgren@ycst.com]
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware  19801
> (302) 571-6600
> *Attorneys for Plaintiffs, Boston Scientific Corporation*
> *and Boston Scientific Scimed, Inc.*

Exhibit A



Print This Page | Back to Web Page

## Press Release

### FDA Advisory Committee Recommends Approval of Abbott's XIENCE™ V Drug Eluting Stent System

Abott Park, Illinois, November 29, 2007 — Abbott announced today that the Circulatory System Devices Advisory Panel to the U.S. Food and Drug Administration (FDA) recommended approval for the XIENCE™ V Everolimus Eluting Coronary Stent System. XIENCE V is a next-generation drug eluting stent intended for use in the treatment of coronary artery disease.

The FDA advisory committee voted to recommend the XIENCE V stent system for approval with conditions related to post-marketing study requirements and language related to dual antiplatelet therapy. The FDA is not required to, but usually follows the recommendations of its advisory committees.

"The clinical and angiographic benefits of the XIENCE V stent compared to the most widely used drug eluting stent available in the U.S. have been consistent and significant across the SPIRIT trials," said Gregg W. Stone, M.D., of Columbia University Medical Center and the Cardiovascular Research Foundation, New York and principal investigator of the SPIRIT III clinical trial. "The robust body of safety and efficacy data support approval of XIENCE V as an important new technology that will enhance the lives of millions of patients with heart disease."

Abbott filed its Premarket Approval (PMA) submission for XIENCE V with the FDA on June 1, 2007. The PMA for XIENCE V is the first to include data demonstrating superiority of one drug eluting stent over another in the primary endpoint of in-segment late loss in a randomized controlled head-to-head trial with a market leading product.

"The outcome of today's advisory committee meeting is very encouraging," said John M. Capek, Ph.D., executive vice president, Medical Products, Abbott. "We look forward to bringing this important new treatment for coronary artery disease to physicians and patients in the U.S."

XIENCE V was launched in Europe and other international markets in 2006. XIENCE V is currently an investigational device in the United States and Japan.

#### About Abbott
Abbott is a global, broad-based health care company devoted to the discovery, development, manufacture and marketing of pharmaceuticals and medical products, including nutritionals, devices and diagnostics. The company employs 65,000 people and markets its products in more than 130 countries.

---

**Media:**

Kelly Morrison (847) 772-1074

Melissa Brotz  (847) 935-3456

**Financial:**

John Thomas  (847) 938-2655

⊞ top of page

Copyright © 2006, 2007 Abbott Laboratories. Abbott Park, Illinois, U.S.A.

Unless otherwise specified, all product names appearing in this Internet site are trademarks owned by or licensed to Abbott Laboratories, its subsidiaries or affiliates. No use of any Abbott trademark, trade name, or trade dress in this site may be made without the prior written authorization of Abbott Laboratories, except to identify the product or services of the company.

Exhibit B



**Start:** **Wilmington, DE US**

**End:** **Trenton, NJ US**

**Notes:**

Only text visible within note field will print.



| **Directions** | **Distance** |
|---|---|

**Total Est. Time:** 1 hour, 15 minutes          **Total Est. Distance:** 62.10 miles

| | **1:** Start out going SOUTHWEST on N KING ST / US-13 BR S toward E 10TH ST. | <0.1 miles |
|---|---|---|
| | **2:** Turn RIGHT onto E 10TH ST. | 0.1 miles |
| | **3:** Turn RIGHT onto N ORANGE ST. | 0.1 miles |
| | **4:** Turn LEFT onto W 12TH ST / DE-52 N. Continue to follow DE-52 N. | 0.4 miles |
| | **5:** Turn SLIGHT RIGHT onto N ADAMS ST. | <0.1 miles |
| | **6:** Merge onto I-95 N via the ramp on the LEFT toward CHESTER / PHILADELPHIA (Crossing into PENNSYLVANIA). | 53.1 miles |
| | **7:** Merge onto US-1 N via EXIT 46A toward MORRISVILLE (Portions toll) (Crossing into NEW JERSEY). | 7.0 miles |
| | **8:** Take the MARKET ST / RT-33 E exit toward S CLINTON AVE / TRAIN STATION. | 0.2 miles |
| | **9:** Turn RIGHT onto MARKET ST / NJ-33. Continue to follow NJ-33. | 0.4 miles |
| | **10:** Turn RIGHT onto CHESTNUT AVE. | 0.1 miles |
| | **11:** Turn LEFT onto HAMILTON AVE / CR-606. | 0.2 miles |
| | **12:** End at **Trenton, NJ US** | |

**Total Est. Time:** 1 hour, 15 minutes          **Total Est. Distance:** 62.10 miles



**Start:**
**Wilmington, DE US**

**End:**
**Trenton, NJ US**





All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.

Exhibit C



**Start:** **Wilmington, DE US**

**End:** **Belle Mead, NJ US**

**Notes:**
Robert Falotico



| Directions | Distance |
|---|---|

**Total Est. Time:** 1 hour, 46 minutes     **Total Est. Distance:** 82.82 miles

| | | |
|---|---|---|
| START | **1:** Start out going SOUTHWEST on N KING ST / US-13 BR S toward E 10TH ST. | <0.1 miles |
| → | **2:** Turn RIGHT onto E 10TH ST. | 0.1 miles |
| → | **3:** Turn RIGHT onto N ORANGE ST. | 0.1 miles |
| NORTH 52 | **4:** Turn LEFT onto W 12TH ST / DE-52 N. Continue to follow DE-52 N. | 0.4 miles |
| ↱ | **5:** Turn SLIGHT RIGHT onto N ADAMS ST. | <0.1 miles |
| NORTH 95 | **6:** Merge onto I-95 N via the ramp on the LEFT toward CHESTER / PHILADELPHIA (Passing through PENNSYLVANIA- then crossing into NEW JERSEY). | 66.2 miles |
| NORTH 206 | **7:** Merge onto US-206 N via EXIT 7B toward LAWRENCEVILLE / PRINCETON. | 14.8 miles |
| → | **8:** Turn RIGHT onto PIKE RUN RD. | 0.1 miles |
| ← | **9:** Turn LEFT onto SYMES DR. | 0.1 miles |
| → | **10:** Turn RIGHT to stay on SYMES DR. | 0.1 miles |
| → | **11:** Turn RIGHT to stay on SYMES DR. | <0.1 miles |
| ← | **12:** Turn LEFT onto TOWNSHIP LINE RD. | 0.4 miles |
| END | **13:** End at **Belle Mead, NJ US** | |

**Total Est. Time:** 1 hour, 46 minutes     **Total Est. Distance:** 82.82 miles



**Start:**
**Wilmington, DE US**

**End:**
**Belle Mead, NJ US**





All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.





**Start:** **Wilmington, DE US**

**End:** **Stewartsville, NJ US**

**Notes:**
Gerard H. Llanos

| Directions | Distance |
|---|---|

**Total Est. Time:** 1 hour, 49 minutes      **Total Est. Distance:** 96.10 miles

| | | |
|---|---|---|
| START | **1:** Start out going SOUTHWEST on N KING ST / US-13 BR S toward E 10TH ST. | <0.1 miles |
| → | **2:** Turn RIGHT onto E 10TH ST. | 0.1 miles |
| → | **3:** Turn RIGHT onto N ORANGE ST. | 0.1 miles |
| NORTH 52 | **4:** Turn LEFT onto W 12TH ST / DE-52 N. Continue to follow DE-52 N. | 0.4 miles |
| ↱ | **5:** Turn SLIGHT RIGHT onto N ADAMS ST. | <0.1 miles |
| NORTH 95 | **6:** Merge onto I-95 N via the ramp on the LEFT toward CHESTER / PHILADELPHIA (Crossing into PENNSYLVANIA). | 14.1 miles |
| NORTH 476 | **7:** Merge onto I-476 N via EXIT 7 toward PLYMOUTH MEETING (Portions toll). | 44.7 miles |
| 44 EXIT | **8:** Take the PA-663 N exit- EXIT 44- toward PA-309 / QUAKERTOWN. | 0.4 miles |
| ← | **9:** Turn LEFT onto JOHN FRIES HWY / PA-663. | 3.3 miles |
| NORTH 309 | **10:** Turn LEFT onto N WEST END BLVD / PA-309. Continue to follow PA-309 N. | 8.7 miles |
| EAST 78 | **11:** Merge onto I-78 E toward BETHLEHEM (Crossing into NEW JERSEY). | 20.6 miles |
| 3 EXIT | **12:** Take the US-22 / RT-173 exit- EXIT 3- toward RT-122 / PHILLIPSBURG / BLOOMSBURY. | 0.3 miles |
| WEST 22 | **13:** Turn LEFT onto US-22 / NJ-173. Continue to follow US-22 W. | 0.7 miles |
| → | **14:** Turn RIGHT onto GREENWICH ST / STRAW CHURCH RD / CR-638. | 1.9 miles |

 **15:** End at **Stewartsville, NJ US**

**Total Est. Time:** 1 hour, 49 minutes      **Total Est. Distance:** 96.10 miles



**Start:**
**Wilmington, DE US**

**End:**
**Stewartsville, NJ US**





All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.





**Start:** **Wilmington, DE US**

**End:** **Somerset, NJ US**

**Notes:**
Carol Wright

| Directions | Distance |
|---|---|

**Total Est. Time:** 1 hour, 48 minutes     **Total Est. Distance:** 97.13 miles

| | | |
|---|---|---|
| START | **1:** Start out going SOUTH on N KING ST / US-13 BR S toward E 10TH ST. Continue to follow US-13 BR S. | 0.6 miles |
| SOUTH 13 BR | **2:** Turn LEFT onto N MARKET ST / US-13 BR S. | 1.2 miles |
| | **3:** Turn SLIGHT LEFT onto ROGERS RD. | 0.6 miles |
| SOUTH 9 | **4:** Turn SLIGHT RIGHT onto NEW CASTLE AVE / DE-9 S. | 1.2 miles |
| RAMP | **5:** Take the I-295 N ramp toward NEW JERSEY TURNPIKE / NEW JERSEY. | 0.3 miles |
| EAST 40 | **6:** Merge onto US-40 E (Portions toll) (Crossing into NEW JERSEY). | 3.9 miles |
| | **7:** US-40 E becomes NEW JERSEY TURNPIKE N (Portions toll). | 72.1 miles |
| NORTH 95 | **8:** Keep RIGHT to take I-95 N / NEW JERSEY TURNPIKE N toward CARS / TRUCKS-BUSES (Portions toll). | 10.3 miles |
| NORTH 18 | **9:** Merge onto NJ-18 N via EXIT 9 toward US-1 / NEW BRUNSWICK / PRINCETON / TRENTON / TOWER CENTER BLVD.. | 3.9 miles |
| RAMP | **10:** Take the ramp toward CR-527 / EASTON AVE / SO BOUND BK. | 0.5 miles |
| | **11:** Turn SLIGHT RIGHT onto GEORGE ST / CR-672. | 0.1 miles |
| | **12:** Turn LEFT onto LANDING LN / CR-609. Continue to follow LANDING LN. | 0.2 miles |
| | **13:** Turn RIGHT onto EASTON AVE / CR-527. | 0.4 miles |
| | **14:** Turn LEFT onto BLOOMFIELD AVE. | 0.3 miles |
| | **15:** Turn LEFT onto APPLEMAN RD. | 0.3 miles |



**16:** Turn LEFT onto ABBOTT RD.                    0.3 miles

**17:** Turn LEFT onto FREEMAN RD.                   <0.1 miles

**18:** End at **Somerset, NJ US**

**Total Est. Time:** 1 hour, 48 minutes     **Total Est. Distance:** 97.13 miles



**Start:**
**Wilmington, DE US**

**End:**
**Somerset, NJ US**





All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.



**Start:** **Wilmington, DE US**

**End:** **Neshanic Station, NJ US**

**Notes:**
Ronald Rakos



**What is Your Credit Score?**

TransUnion    Experian    Equifax

You are here (640)    You are here (635)    You are here (618)

**Click Here to Find Out!**

Based on your credit report data, this is a numerical depiction of your creditworthiness. High scores are better.

privacymatters.com

| Directions | Distance |
|---|---|
| **Total Est. Time:** 1 hour, 49 minutes    **Total Est. Distance:** 86.82 miles | |
| **1:** Start out going SOUTHWEST on N KING ST / US-13 BR S toward E 10TH ST. | <0.1 miles |
| **2:** Turn RIGHT onto E 10TH ST. | 0.1 miles |
| **3:** Turn RIGHT onto N ORANGE ST. | 0.1 miles |
| **4:** Turn LEFT onto W 12TH ST / DE-52 N. Continue to follow DE-52 N. | 0.4 miles |
| **5:** Turn SLIGHT RIGHT onto N ADAMS ST. | <0.1 miles |
| **6:** Merge onto I-95 N via the ramp on the LEFT toward CHESTER / PHILADELPHIA (Crossing into PENNSYLVANIA). | 14.1 miles |
| **7:** Merge onto I-476 N via EXIT 7 toward PLYMOUTH MEETING (Portions toll). | 20.6 miles |
| **8:** Merge onto I-276 E / PENNSYLVANIA TURNPIKE via EXIT 20 toward NEW JERSEY (Portions toll). | 9.1 miles |
| **9:** Take the PA-611 exit- EXIT 343- toward DOYLESTOWN / JENKINTOWN. | 0.6 miles |
| **10:** Take the US-611 N ramp toward DOYLESTOWN / WILLOW GROVE NAVAL AIR STATION. | 0.1 miles |
| **11:** Merge onto PA-611 N. | 9.0 miles |
| **12:** Merge onto US-202 N toward NEW HOPE (Portions toll) (Crossing into NEW JERSEY). Pass through 1 roundabout. | 29.2 miles |
| **13:** Turn SLIGHT RIGHT onto PLEASANT RUN RD / CR-629. | 2.2 miles |
| **14:** Turn RIGHT onto PLEASANT RUN RD / CR-667. | 0.5 miles |

 **15:** Turn LEFT onto MAPLE AVE.                                        0.2 miles

**END** **16:** End at **Neshanic Station, NJ US**

**Total Est. Time:** 1 hour, 49 minutes     **Total Est. Distance:** 86.82 miles



**Start:**
**Wilmington, DE US**

**End:**
**Neshanic Station, NJ US**





All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.



**Start:** **Wilmington, DE US**

**End:** **Mahwah, NJ US**

**Notes:**
Kristin King

| Directions | Distance |
|---|---|

**Total Est. Time:** 2 hours, 37 minutes    **Total Est. Distance:** 144.99 miles

| | | |
|---|---|---|
| START | **1:** Start out going SOUTH on N KING ST / US-13 BR S toward E 10TH ST. Continue to follow US-13 BR S. | 0.6 miles |
| SOUTH 13 BR | **2:** Turn LEFT onto N MARKET ST / US-13 BR S. | 1.2 miles |
| | **3:** Turn SLIGHT LEFT onto ROGERS RD. | 0.6 miles |
| SOUTH 9 | **4:** Turn SLIGHT RIGHT onto NEW CASTLE AVE / DE-9 S. | 1.2 miles |
| RAMP | **5:** Take the I-295 N ramp toward NEW JERSEY TURNPIKE / NEW JERSEY. | 0.3 miles |
| EAST 40 | **6:** Merge onto US-40 E (Portions toll) (Crossing into NEW JERSEY). | 3.9 miles |
| | **7:** US-40 E becomes NEW JERSEY TURNPIKE N (Portions toll). | 72.1 miles |
| NORTH 95 | **8:** Keep RIGHT to take I-95 N / NEW JERSEY TURNPIKE N toward CARS / TRUCKS-BUSES (Portions toll). | 32.9 miles |
| NORTH 95 | **9:** Keep LEFT to take I-95 N / NEW JERSEY TURNPIKE N toward EXITS 15W - 18W / I-280 / GEO WASHINGTON BR / RT-3 / MEADOWLANDS SPORTS COMPLEX (Portions toll). | 10.8 miles |
| NORTH 95 | **10:** Keep LEFT to take I-95 N / NEW JERSEY TURNPIKE N toward I-80 W / HACKENSACK / PATERSON (Portions toll). | 1.9 miles |
| WEST 80 | **11:** Merge onto I-80 W toward RT-17 / HACKENSACK / LOCAL. | 2.9 miles |
| NORTH 17 | **12:** Merge onto NJ-17 N via EXIT 64A toward RT-4 / ROCHELLE PK / PARAMUS. | 3.0 miles |
| NORTH 17 | **13:** Keep LEFT at the fork to continue on NJ-17 N. | 11.2 miles |
| RAMP | **14:** Take the FRANKLIN TPK ramp toward SUFFERN. | 0.1 miles |
| | **15:** Stay STRAIGHT to go onto N FRANKLIN TURNPIKE / CR-507. | 0.1 miles |



**16:** Turn SLIGHT RIGHT to stay on N FRANKLIN TURNPIKE / CR-507.     1.3 miles

**17:** Turn LEFT onto W AIRMOUNT RD.     <0.1 miles

**18:** End at **Mahwah, NJ US**

**Total Est. Time:** 2 hours, 37 minutes     **Total Est. Distance:** 144.99 miles



**Start:**
**Wilmington, DE US**

**End:**
**Mahwah, NJ US**





All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.





**Start:** **Wilmington, DE US**

**End:** **Hillsborough, NJ US**

**Notes:**
Gregory A. Kopia

| Directions | Distance |
|---|---|

**Total Est. Time:** 1 hour, 46 minutes    **Total Est. Distance:** 84.76 miles

| | | |
|---|---|---|
| START | **1:** Start out going SOUTHWEST on N KING ST / US-13 BR S toward E 10TH ST. | <0.1 miles |
| → | **2:** Turn RIGHT onto E 10TH ST. | 0.1 miles |
| → | **3:** Turn RIGHT onto N ORANGE ST. | 0.1 miles |
| NORTH 52 | **4:** Turn LEFT onto W 12TH ST / DE-52 N. Continue to follow DE-52 N. | 0.4 miles |
| ↱ | **5:** Turn SLIGHT RIGHT onto N ADAMS ST. | <0.1 miles |
| NORTH 95 | **6:** Merge onto I-95 N via the ramp on the LEFT toward CHESTER / PHILADELPHIA (Passing through PENNSYLVANIA- then crossing into NEW JERSEY). | 66.2 miles |
| NORTH 206 | **7:** Merge onto US-206 N via EXIT 7B toward LAWRENCEVILLE / PRINCETON. | 16.2 miles |
| → | **8:** Turn RIGHT onto HILLSBOROUGH RD. | 1.4 miles |
| → | **9:** Turn RIGHT onto WILLOW RD. | <0.1 miles |
| END | **10:** End at **Hillsborough, NJ US** | |

**Total Est. Time:** 1 hour, 46 minutes    **Total Est. Distance:** 84.76 miles



**Start:**
**Wilmington, DE US**

**End:**
**Hillsborough, NJ US**





All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.