# EXHIBIT 17

DOCKET NO.: CRDS-0062 (CRD0931CIP)
Application No.: 10/829,074
Office Action Dated: February 22, 2007

PATENT
REPLY FILED UNDER EXPEDITED
PROCEDURE PURSUANT TO
37 CFR § 1.116

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
**Robert Falotico, et al.**

Confirmation No.: **5950**

Application No.: **10/829,074**

Group Art Unit:  **1615**

Filing Date: **April 21, 2004**

Examiner:  **Sharon E. Kennedy**

For:  **Drug/Drug Delivery Systems for the Prevention and Treatment of Vascular Disease**

ELECTRONICALLY FILED
DATE OF DEPOSIT:  May 22, 2007

MAIL STOP AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## REMARKS TO SUPPORT PRE-APPEAL BRIEF REQUEST FOR REVIEW

Applicants respectfully request review of the above-captioned application prior to filing of an appeal brief.  Claims 15 to 36 are pending, and stand rejected under 35 U.S.C. §§ 112, second paragraph, and 103(a).  A Notice of Appeal is filed herewith.

### *The Subject Invention*

The pending claims are directed to drug delivery devices and methods of using same to inhibit neointimal proliferation in a human coronary artery resulting from percutaneous transluminal coronary angioplasty.

As recited in independent claim 15, the device comprises: an intraluminal stent; a biocompatible, nonerodible polymeric coating affixed to the stent; and rapamycin or a macrocyclic triene analog thereof that is incorporated into the polymeric coating.  The claim further recites that the device provides an in-stent late loss in diameter at 12 months following implantation in a human of less than about 0.5 mm, as measured by quantitative coronary angiography.

**A224**

**DOCKET NO.:** CRDS-0062 (CRD0931CIP)
**Application No.:** 10/829,074
**Office Action Dated:** February 22, 2007

**PATENT**
**REPLY FILED UNDER EXPEDITED**
**PROCEDURE PURSUANT TO**
**37 CFR § 1.116**

Independent claim 19 recites that device provides a *mean* in-stent late loss in diameter in a *human population* at 12 months following implantation of less than about 0.5 mm, as measured by quantitative coronary angiography.

The various dependent claims further specify additional characteristics of the device, such as that the device provides an in-stent diameter stenosis at 12 months following implantation in a human of less than about 22%, as measured by quantitative coronary angiography (claims 17 and 21), the amount of drug incorporated into the coating (claims 31, 32, 34 and 35), or that the device release a portion of the dose of rapamycin or a macrocyclic triene analog thereof at about six weeks following intraluminal implantation (claims 33 and 36).

### The Claims Comply with 35 U.S.C. § 112, Second Paragraph

The Examiner relies on text posted on the Boston Scientific website that is said to teach that "[i]n-stent late loss . . . does not provide any useful information as to the efficiency of a stent delivery device" (Office Action dated November 6, 2006, at 5, last paragraph; Office Action dated February 22, 2006, at 6, third paragraph).

It is clear that the Office Action misinterprets and overstates the relevance of this web posting. The cited text does not state that in-stent late loss "holds no real value," as asserted by the Examiner (Office Action dated November 6, 2006 at 6, first paragraph), but that "late loss is an interesting measure" (cited document, at page 3). Although Boston Scientific posits that analysis of in-segment late loss provides more complete information than analysis of in-stent late loss, it does not assert that the latter measure is meaningless.[1]

In fact, the cited text merely presents a hypothetical (and since refuted) argument as to why in-segment late loss (as measured in terms of risk of either target lesion revascularization (TLR) or angiographic binary restenosis (BAR)) might be a better predictor of efficacy than in-stent late loss. Applicants have previously submitted three peer-reviewed articles, published in a widely respected scientific journal, that clearly refute the Examiner's assertion that in-stent late loss is meaningless. As these articles make clear, the ability of a given stent to provide an in-stent late loss of less than 0.5 mm, and more preferably less than 0.3 mm (as

---

[1]     The cited text is not a peer-reviewed scientific article, but appears to be appears to be be a mere advertisement whose purpose is to show alleged superiority for Boston Scientific's TAXUS® stent over another brand of stent.

DOCKET NO.: CRDS-0062 (CRD0931CIP)
Application No.: 10/829,074
Office Action Dated: February 22, 2007

PATENT
REPLY FILED UNDER EXPEDITED
PROCEDURE PURSUANT TO
37 CFR § 1.116

recited in several of the dependent claims) is a strong indicator of that stent's ability to inhibit neointimal proliferation.

In any event, the extent to which late loss serves as a predictor of efficacy is of no moment in assessing whether the instant claims are definite. The test for compliance with the Section 112, second paragraph, is whether one skilled in the art would understand the metes and bounds of the claim when read in light of the specification. *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001) (*citing Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed. Cir. 1986)). As the Court of Appeals for the Federal Circuit has stated, a claim is indefinite "if its legal scope is not clear enough that a person of ordinary skill in the art could determine whether a particular [product or method] infringes or not." *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F. 3d 1373, 1384 (Fed. Cir. 2003).

The instant claims clearly satisfy this standard. They recite, *inter alia*, that the device provide an in-stent late loss in diameter at 12 months following implantation in a human of less than about 0.5 mm, as measured by quantitative coronary angiography. It is unrefuted that methods for performing quantitative coronary angiography are well established and readily practiced by those in the art. The point in time at which in-stent late loss is to be determined is also specified in the claim, leaving no ambiguity as to how and when one would determine whether or not a particular stent meets the limitations of the claims.

Moreover, it is clear that those of skilled in the art routinely measure properties such as late loss, and utilize this property to characterize the efficacy of their stent products. For example, an article published in EuroIntervention in 2005 (already of record in this case as Exhibit 8 of the Declaration by Attorney to Support Petition to Make Special) reports on the one-year results of the Spirit First trial of durable polymer everolimus-eluting stents, and cites to both the in-stent late loss and diameter stenosis at 12 months post implantation as evidence of the stents' safety and efficacy. Thus, the Examiner's assertion that the inclusion of this limitation "places a potential infringer in an untenable position since the data holds no real value" (Office Action dated February 22, 2007, at 6, third paragraph) is simply wrong.

Applicants respectfully submit that the scope of the claims is clearly defined, and that those skilled in the art could readily determine whether a particular device or method

DOCKET NO.: CRDS-0062 (CRD0931CIP)
Application No.: 10/829,074
Office Action Dated: February 22, 2007

PATENT
REPLY FILED UNDER EXPEDITED
PROCEDURE PURSUANT TO
37 CFR § 1.116

infringes the claims.  Accordingly, Applicants respectfully request that the Examiner's rejection of pending claims 15 to 36 under 35 U.S.C. 112, second paragraph, be withdrawn.

### Prima Facie Obviousness Has Not Been Established

The pending claims also stand rejected under 35 U.S.C. § 103(a) over Mitchell, et al., U.S. Patent No. 5,288,711 ("the Mitchell Patent") in view of Kamath et al., U.S. Patent No. 6,335,029 ("the Kamath Patent").  This rejection is improper because the Examiner's proposed combination of the patent's respective teachings would not produce the claimed invention.

The Examiner relies upon the Mitchell Patent "to exemplify that the use of rapamycin in stents to prevent smooth muscle cell hyperplasia after balloon angioplasty has been well known for some time" (Office Action dated February 22, 2007, at 9, paragraph 2).  The Examiner recognizes, however, that the Mitchell patent does not disclose the use of polymeric coatings, but rather "merely stat[es] . . . that a 'vascular stent can be impregnated with . . . rapamycin'" (*Id.*).  The Examiner relies upon the Kamath Patent to make up for this deficiency, based on the patent's teaching that antiproliferative drugs (other than rapamycin or its analogs) can be incorporated in polymeric coatings on stents (*Id.*).

As even the Examiner recognizes, however, neither the Mitchell Patent nor the Kamath Patent contains any teaching or suggestion that any device disclosed therein provides an in-stent late loss in diameter at 12 months following implantation in a human of less than about 0.5 mm, as measured by quantitative coronary angiography.  Thus, as a matter of law, the patents fail to establish that the claimed inventions would have been obvious *In re Royka*, 490 F. 2d 981, 985 (CCPA 1974)); *see also*, MPEP § 2143.03 (to establish obviousness of a claimed invention, all of the limitations set forth in the claims must be taught or suggested by the prior art).[2]

### Obviousness-type Double Patenting Rejections

The Office Actions of record also contain several rejections for nonstatutory, obviousness-type double patenting over several co-owned patents and pending applications.

---

[2]      The Examiner improperly attempts to ignore the claim element relating to in-stent late loss by relying on the previously stated arguments regarding alleged indefiniteness of this claim element (Office Action dated February 22, 2007, p. 9, paragraph 3).  Not only is this not permitted under current PTO procedures (*see* MPEP § 2143.03), but (as noted above) in-stent late loss is not indefinite and thus must be given due consideration as an element of the claims

**DOCKET NO.:** CRDS-0062 (CRD0931CIP)
**Application No.:** 10/829,074
**Office Action Dated:** February 22, 2007

**PATENT**
**REPLY FILED UNDER EXPEDITED**
**PROCEDURE PURSUANT TO**
**37 CFR § 1.116**

Each of these rejections rely, at least in part, on the Examiner's assertions regarding alleged indefiniteness of the present claims, and the Examiner's refusal to grant the claim recitation of specific in-stent late loss parameters any patentable weight. Applicants have requested that these rejections be held in abeyance until this issue is resolved. However, Applicants note that none of the claims in the patents and applications cited by the Examiner contain this claim limitation. Applicants respectfully submit that when this claim element is properly recognized as a definite element of the device recited in the claims, it is evident that the double patenting rejections of record are improper.

In the interest of full disclosure, Applicants note that this claim element is being introduced into the claims of another copending application (U.S. Application Serial No. 10/852,517) that has not been cited by the Examiner. Applicants plan to file a terminal disclaimer over that application upon a determination that the instant claims are allowable.

## CONCLUSION

In view of the foregoing, Applicants respectfully request withdrawal of the rejections under 35 U.S.C. §§ 112, second paragraph and 103(a).

Date:   May 22, 2007

/S. Maurice Valla/
S. Maurice Valla
Registration No. 43,966

Woodcock Washburn LLP
Cira Centre
2929 Arch Street, 12th Floor
Philadelphia, PA 19104-2891
Telephone: (215) 568-3100
Facsimile:  (215) 568-3439

A228

# EXHIBIT 18

DOCKET NO.: CRDS-0005(JJI-51-CON2)                           **PATENT**
Application No.: 10/951,385



## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                          Confirmation No.: **7537**
**Carol Wright, et al.**

Application No.: **10/951,385**               Group Art Unit: **3731**

Filing Date: **September 28, 2004**           Examiner:

For:    **Local Delivery of Rapamycin for Treatment of Proliferative Sequelae**
        **Associated with PTCA Procedures, Including Delivery Using a Modified Stent**

08/09/2006 HDESTA1  00000002 10951385
01 FC:1464                    130.00 OP

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

## PETITION TO MAKE SPECIAL BECAUSE OF ACTUAL INFRINGEMENT
### (37 CFR § 1.102 and MPEP § 708.02)

Applicant hereby petitions to make this application special because of actual
infringement.

1.    Accompanying material

      Accompanying this petition is:

            a.    A Declaration by Attorney in Support of Petition to Make Special Because
                  of Actual Infringement; and

            b.    Supplemental Information Disclosure Statement.

2.    Fee (37 CFR § 1.17(i))

      The fee required is to be paid by:

      ☒    A check in the amount of **$130.00** is attached.

**A229**

**DOCKET NO.:** CRDS-0005(JJI-51-CON2)                                    **PATENT**
**Application No.:** 10/951,385

☐        Please charge Deposit Account No. 23-3050 in the amount of **$130.00**.  This
         sheet is attached in duplicate.

☒        The Commissioner is hereby authorized to charge any deficiency or credit any
         overpayment of the fees associated with this communication to Deposit
         Account No. 23-3050.

Date:  August 7, 2006

S. Maurice Valla
Registration No. 43,966

Woodcock Washburn LLP
One Liberty Place - 46th Floor
Philadelphia PA  19103
Telephone: (215) 568-3100
Facsimile:  (215) 568-3439

© 2005 WW

**A230**

**DOCKET NO.:** CRDS-0005(JJI-51-CON2)                    **PATENT**
**Application No.:** 10/951,385



## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                    Confirmation No.: **7537**
**Carol Wright, et al.**

Application No.: **10/951,385**          Group Art Unit: **3731**

Filing Date: **September 28, 2004**      Examiner: **Not yet assigned**

For:    **Local Delivery of Rapamycin for Treatment of Proliferative Sequelae**
        **Associated with PTCA Procedures, Including Delivery Using a Modified Stent**

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

### DECLARATION BY ATTORNEY IN SUPPORT OF PETITION TO MAKE
### SPECIAL BECAUSE OF ACTUAL INFRINGEMENT (MPEP § 708.02)

I, S. Maurice Valla, Woodcock Washburn LLP, One Liberty Place, 46th Floor, Philadelphia PA, 19103, Registration No. 43,966, Telephone No. 215-564-3100, am the attorney of record for Applicants and make the following declarations.

1.      The instant application is directed to drug-eluting stents.  Claims 64 to 140 are presently pending.  Claims 64 and 103 are the only independent claims.  Claim 103 is directed to a device comprising a metallic stent, a biocompatible polymeric carrier and a drug.  The drug is rapamycin or a macrocyclic lactone analog thereof and is present in an amount effective to inhibit neointimal proliferation.  Claim 130, which depends from claim 103, specifies that the drug is a macrocyclic lactone analog of rapamycin.

**A231**

**DOCKET NO.:** CRDS-0005(JJI-51-CON2)                                    **PATENT**
**Application No.:** 10/951,385

2.      Attached as exhibits hereto are press releases issued by Guidant Corporation ("Guidant") describing its activities relating to drug eluting stents.  In a release dated January 30, 2006 (Exhibit 1), Guidant announced that it has received Conformité Européene (CE) Mark Approval for its XIENCE™ V Everolimus Eluting Coronary Stent System.  In the same press release, Guidant states that it "is ramping up manufacturing and building inventory to supply ongoing clinical trials and to support the European launch of XIENCE™ V beginning in the second quarter of 2006."


3.      In a release dated October 19, 2005 (Exhibit 2), Guidant announced that inspection of its manufacturing facilities in Temecula, California had been successfully concluded as part of its submission for CE Mark approval to market the XIENCE™ V Everolimus Eluting Coronary Stent System in Europe.  Guidant reported that its European Notified Body found no nonconformities and would recommend certification for Guidant's manufacturing facility for XIENCE™ V.


4.      Since Guidant's approved manufacturing facility for XIENCE™ V  is in Temecula, California, I conclude that the "ramping up manufacturing and building inventory to . . . support the European launch of XIENCE™ V" to which Guidant's January 30, 2006, release refers is being performed in the United States.  Thus, on the basis of these public statements by Guidant, I conclude that Guidant is "making" XIENCE™ V and building inventory in the United States to support launch of the product in Europe.


5.      Guidant's vascular business has recently been acquired by Abbott Laboratories (Exhibit 3).  Abbott has announced that it intends to launch XIENCE™ V in Europe in the third quarter of 2006 (Exhibit 4).


6.      I have made a rigid comparison of the XIENCE™ V product, as described in Guidant press releases, with the claims of the instant application.  In my opinion, the XIENCE™ V

**DOCKET NO.:** CRDS-0005(JJI-51-CON2)
**Application No.:** 10/951,385                                                    **PATENT**

product is unquestionably within the scope of at least claims 103 and 130 on file in this application.

7.      In a release dated September 21, 2005 (Exhibit 5), Guidant states that XIENCE™ V is being utilized in SPIRIT II and SPIRIT III clinical trials to evaluate the safety and efficacy of the product for the treatment of coronary artery disease.   XIENCE™ V is described as "an everolimus eluting coronary stent system utilizing Guidant's cobalt chromium MULTI-LINK VISION® Coronary Stent System platform."   In an earlier release, dated April 5, 2004 (Exhibit 6), Guidant stated that it "holds a worldwide exclusive license . . . to use everolimus, a novel proliferation-signal inhibitor with potent anti-proliferative and immunosuppressant properties, in drug eluting stents."   The April 5, 2004, release also states that "Guidant has both durable and bioabsorbable polymer drug  carriers in development" and  that  "[t]he company's clinical trials utilizing durable polymer technology are identified by the SPIRIT designation in the study name."   In the same press release, the MULTI-LINK VISION® Coronary Stent System is referred to as a "market-leading metallic stent."   On the basis of these statements made by Guidant, I conclude that the XIENCE™ V product comprises a metallic stent coated with everolimus and a durable polymer carrier.

8.      Everolimus is a macrocyclic lactone analog of rapamycin, bearing a stable 2-hydroxyethyl chain substitution at position 40 on the rapamycin structure (Exhibits 7, 8).   In a press release dated March 15, 2006 (Exhibit 9), Guidant stated "everolimus has been shown to reduce tissue proliferation in the coronary vessels following stent implantation."   Similarly, in a release dated November 15, 2005 (Exhibit 10), Guidant stated that "[t]he one year data from SPIRIT FIRST continued to demonstrate a preservation of the treatment effect of the XIENCE V Everolimus Eluting Coronary Stent System, with a highly statistically significant reduction of cell proliferation compared to the uncoated control."   On the basis of the known structure of everolimus and Guidant's statements, I conclude that the XIENCE™ V product contains a macrocyclic lactone analog of rapamycin in an amount effective to inhibit neointimal proliferation.

**DOCKET NO.:** CRDS-0005(JJI-51-CON2)                              **PATENT**
**Application No.:** 10/951,385

9.     It is therefore my opinion that Guidant is making a product in the United States to support the European launch that is unquestionably within the scope of at least claims 103 and 130 of the instant application, and that a patent containing these claims could immediately be asserted upon issue.

10.     I have a knowledge of the pertinent prior art by virtue of the prosecution histories of the parents of the instant application and other patents owned by the assignee of the instant application.  All such material art is provided to the Examiner as

☒     having been filed
☒     being filed

in a respective Information Disclosure Statement.

10.     I declare further that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

Date:  August 7, 2006

S. Maurice Valla
Registration No. 43,966

Woodcock Washburn LLP
One Liberty Place - 46th Floor
Philadelphia PA  19103
Telephone: (215) 568-3100
Facsimile:  (215) 568-3439

© 2005 WW

**A234**

Guidant News Release —January 30, 2006          **EXHIBIT 1**                    Page 1 of 2




**ABOUT US**

Corporate Overview
Locations
Global Compliance
Guidant Foundation

Careers
Newsroom
Historical Investor
Resources

# Guidant Receives European Approval for Drug Eluting Coronary Stent

Company Achieves CE Mark Approval Ahead of Schedule; XIENCE
V Launch Slated for Second Quarter

Indianapolis, Ind. and Brussels — January 30, 2006 — Guidant Corporation (NYSE:
GDT) today announced that the company has received Conformité Européene (CE) Mark
approval for the XIENCE™ V Everolimus Eluting Coronary Stent System. This regulatory
certification allows Guidant to begin marketing the drug eluting stent in the 25 countries of
the European Union. In addition, the CE Mark Approval is used to support market
registrations in other regulated countries including those within Asia, Latin America and
Eastern Europe.

"This early approval represents a significant milestone in Guidant's drug eluting stent
program and demonstrates our ongoing commitment to advancing the field of
cardiovascular therapy through innovative solutions," said John M. Capek, Ph.D.,
president, Vascular Intervention, Guidant. "The development of XIENCE V represents
years of hard work and dedication by our employees and by trial investigators. We look
forward to bringing this next-generation therapy to physicians and patients."

The XIENCE V Everolimus Eluting Coronary Stent System utilizes Guidant's most
advanced coronary stent system, the highly deliverable cobalt chromium MULTI-LINK
VISION®, which is available on the preferred rapid-exchange platform. Everolimus has
been shown to reduce tissue proliferation in the coronary vessels following stent
implantation.

"Completion of the CE Mark approval process for XIENCE V follows on the heels of
impressive clinical results from the SPIRIT FIRST trial, which demonstrated the benefits of
an everolimus drug eluting stent," said Prof. Patrick W. Serruys, M.D., of the Thoraxcenter,
Erasmus University Hospital, Rotterdam, who served as the study's principal investigator.
"With this approval, physicians in Europe will have an excellent treatment option for
patients requiring a drug eluting stent."

Guidant is ramping up manufacturing and building inventory to supply ongoing clinical
trials and to support the  European launch of XIENCE V beginning in the second quarter of
2006.

In November, Guidant announced completion of enrollment in only four months of SPIRIT
II, a 300-patient, randomized clinical trial evaluating XIENCE V. The single-blind,
prospective, randomized, non-inferiority study further evaluates the XIENCE V compared
to the TAXUS® Express 2™ Paclitaxel-eluting coronary stent system for the treatment of
coronary artery disease.

Guidant's 1,380-patient SPIRIT III global clinical trial is evaluating the XIENCE V Stent
System in the United States and Japan.  The randomized U.S. cohort, which will support
U.S. Premarket Approval submission, has enrolled more than 70 percent of the required
patients and is expected to complete enrollment later this quarter.

Guidant Corporation pioneers lifesaving technology, giving an opportunity for better life

today to millions of cardiac and vascular patients worldwide. The company develops, manufactures and markets a broad array of products and services that enable less invasive care for some of life's most threatening medical conditions. For more information visit www.guidant.com.

This release includes forward-looking statements concerning XIENCE V. The statements are based on assumptions about many important factors, including satisfactory enrollment and completion of the clinical trial, associated regulatory processes and timelines, and other factors identified on Exhibit 99 to the company's most recent filing on Form 10-Q. Actual results may differ materially. The company does not undertake to update its forward-looking statements.

| << Back |

© 2006, Guidant Corporation. All rights reserved.  |  Terms and Conditions  |  Website Privacy Policy

This website contains content relating to Vascular and Endovascular therapies that is now owned and managed by Abbott Laboratories, and content relating to Cardiac Rhythm Management and Cardiac Surgery that is now owned and managed by Boston Scientific. Neither party is responsible for the content that is owned and managed by the other.

## EXHIBIT 2



Print this page

# Guidant Provides Update

**Indianapolis, Ind. — October 19, 2005 —** Guidant Corporation (NYSE: GDT), a world leader in the treatment of cardiac and vascular disease, today responded to statements by Johnson & Johnson on its pending acquisition of the Company and provided an update on its two major businesses.

## Transaction Update

In response to Johnson & Johnson's comments yesterday, Ronald W. Dollens, president and CEO of Guidant Corporation, stated, "While neither company depends on this transaction for its continued future success, Guidant believes that the strategic rationale for combining the two companies is as strong today as when we entered into the Merger Agreement." Guidant anticipates that the pending transaction will receive FTC clearance in October. The Company does not expect to make any specific comments on the pending transaction until after FTC approval.

## Business Performance

"Guidant's third quarter results will reflect the temporary unavailability of the CONTAK RENEWAL 3 and 4 family of heart failure devices during the full month of July and part of August, partially offset by sequential growth of U.S. coronary stent revenue, and continuing sales growth of our emerging businesses," Dollens reported. "At the end of the quarter, data suggest our implantable defibrillator implant rate exceeded 80 percent of the pre-product notification level and is over 100 percent of the rate one year ago."

Dollens continued, "As previously announced, Guidant is launching several recently approved cardiac rhythm management systems during the fourth quarter, including the revolutionary Latitude Patient Management system. Physicians are expressing enthusiasm for the new wireless capability to monitor patients, improve their compliance, and monitor device status independent of patient effort." Dollens further observed, "Our drug eluting stent development program continues to make important progress toward European launch during the first half of next year. We are expanding manufacturing capacity, increasing productivity, and recently received FDA approval to expand clinical trial enrollment."

"While recent events and the publicity surrounding them will impact our short-term results, we believe that the fundamentals of our business and the markets that we serve remain strong and our outlook is positive," Dollens noted. "Our track record of success over the years has been driven in large part by the dedication of our people to the needs of patients and physicians who use our products. We continue to be committed to providing the highest quality products for patients who critically need them and we are confident that the value of the Company remains strong."

## Cardiac Rhythm Management Products Update

Consistent with an anticipated new product cycle, several significant new products were approved (cleared) by FDA during the third quarter. They include:

- VITALITY HE implantable defibrillator; Guidant's first high-energy product to offer the advanced functionality of the VITALITY family.

- CONTAK RENEWAL 3 RF cardiac resynchronization-defibrillator; this is Guidant's first wireless and wandless CRT-D and is designed to enhance the speed and convenience of patient care.

- ZOOM LATITUDE programmer; this next generation programmer is designed to interface with devices that include remote monitoring capability.

- LATITUDE Communicator and secure data storage system; these elements represent the final components of the Latitude Patient Management system.

Actions taken by the Company during the quarter reflect Guidant's commitment to provide more timely information to physicians and patients about our devices. Our products continue to demonstrate high performance and reliability, and tens of thousands of people are alive today and hundreds of thousands feel better as a result of Guidant's technologies. Guidant will continue to focus on meeting and exceeding the expectations of physicians, patients and the FDA.

## Drug Eluting Stent Progress

Guidant announced today that its drug eluting stent development program continues to demonstrate progress and the Company has enrolled more than 500 patients in the SPIRIT II and III clinical trials since June.  SPIRIT III is a large-scale pivotal clinical trial evaluating XIENCE™ V, an everolimus eluting coronary stent system utilizing Guidant's cobalt chromium rapid-exchange MULTI-LINK VISION® RX Coronary Stent System platform. Guidant plans to use the results of the SPIRIT III trial to obtain FDA approval for XIENCE V for the treatment of coronary artery disease. Results of the SPIRIT II study will provide additional clinical data to support the launch of XIENCE V in Europe and several countries outside the United States.

Earlier in the quarter, Guidant announced attainment of an enrollment milestone in the Company's exclusive license agreement with Novartis Pharma AG.  Novartis supplies everolimus to Guidant for use in drug eluting stents and provides access to data supporting Guidant filings with regulatory agencies.

In addition, the Company plans to present one-year follow up data from SPIRIT I at the American Heart Association meeting in November 2005.  SPIRIT I is a prospective, randomized, single-blind pilot study evaluating XIENCE V versus an uncoated MULTI-LINK VISION Coronary Stent System control in de novo (previously untreated) lesions.

During the quarter, the Company also announced that it successfully concluded an inspection of its drug eluting stent manufacturing and quality systems at its Temecula site.  This inspection was conducted by Guidant's European Notified Body, which is also reviewing the Company's submission for CE Mark approval to market the XIENCE™ V Everolimus Eluting Coronary Stent System in Europe.  The Notified Body found no nonconformities and will recommend certification for Guidant's manufacturing facility.

## Guidant Corporation

Guidant Corporation pioneers lifesaving technology, giving an opportunity for a better life today to millions of cardiac and vascular patients worldwide. The Company, driven by a strong entrepreneurial culture of more than 12,000 employees, develops, manufactures and markets a broad array of products and services that enable less invasive care for some of life's most threatening medical conditions. For more information, visit www.guidant.com.

This release includes forward-looking statements that are based on assumptions about many important factors, including market trends and competition, particularly in connection with expanded indications and reimbursement for cardiac rhythm management products; satisfactory clinical and regulatory progress; progress with respect to the merger, including satisfaction of conditions to closing, including antitrust approvals; economic conditions, including exchange rates; litigation developments; and the factors listed on exhibit 99 to Guidant's most recent 10-Q. As such, they involve risks that could cause actual results to differ materially. The company does not undertake to update its forward-looking statements.

[ << Back ]

## EXHIBIT 3



Print This Page | Back to Web Page

## Press Release

### Abbott Completes Acquisition of Guidant Vascular Business

**Combination of Abbott's and Guidant's Vascular Organizations Creates Leading Vascular Devices Business**
Abbott Park, Illinois, April 21, 2006 — Abbott today announced it has completed the acquisition of Guidant's vascular business, which, combined with Abbott's current vascular business, creates one of the leading global vascular devices companies. This acquisition was made in connection with Boston Scientific's acquisition of Guidant Corporation.

"The acquisition of Guidant's vascular business builds on our broad-based business strategy to develop leading positions in attractive health care markets – shaping Abbott for greater balance and strengthening our business mix and breadth of pipeline opportunities," said Miles D. White, chairman and chief executive officer, Abbott.

"The combined Abbott and Guidant business offers a broad line of leading coronary and endovascular products, a pre-eminent sales force, and global manufacturing operations, as well as a state-of-the-art R&D organization, which is developing innovative technologies and devices such as the XIENCE™ V and ZoMaxx™ drug-eluting stents," White said. "Our newly expanded vascular organization has the tools and the talent to transform the way physicians treat vascular disease, impacting the lives of millions of patients around the world."

**Broad Vascular Devices Product Portfolio**
For the past several years, Abbott has built a competitive vascular business through acquisitions, licensing agreements, and internal scientific and commercial development. With the addition of Guidant's vascular business, Abbott offers physicians, catheterization labs and clinics a complete line of products and technologies for interventional procedures including: a comprehensive line of coronary and endovascular stents; a full offering of guide wires, catheters and balloons; and innovative vessel closure devices. In addition, the combined business has a broad portfolio of intellectual property, including rapid exchange technology and stent designs, enabling the company to operate effectively in the competitive vascular devices market.

**Innovative Research and Development Programs**
In addition to its broad product portfolio, Abbott is conducting advanced research and development programs that are focused on finding innovative solutions for treating vascular disease. With Guidant, Abbott now has two drug-eluting stents in development: ZoMaxx, a state-of-the-art stent coated with a proprietary immunosuppressant drug, zotarolimus, designed specifically to combat vessel re-narrowing; and XIENCE V, an everolimus-eluting stent on the MULTI-LINK VISION® cobalt chromium stent platform, which recently received approval in Europe. The combined organization also is leading the industry with a number of next-generation research programs including a stent that elutes two drugs targeted at difficult-to-treat patients such as diabetics, and a bioabsorbable drug-eluting coronary stent designed to be fully absorbed by the vascular tissue following the restoration of blood flow.

**Guidant Vascular Sales and Employees**
The transaction provides Abbott with Guidant's vascular intervention and endovascular solutions business units, which had combined sales of more than $1 billion in 2005. These business units add nearly 6,000 employees worldwide to Abbott in three primary locations: Santa Clara, California; Temecula, California; and Clonmel, Ireland. The addition of Guidant's California-based employees boosts Abbott's presence in the state – currently the headquarters of Abbott's diabetes care and vascular businesses – from more than 3,000 to more than 7,000 employees.

**Financial Details**
Abbott paid $4.1 billion in cash for Guidant's vascular business. In addition, Abbott will pay Boston Scientific milestone payments of $250 million at U.S. Food and Drug Administration approval of Guidant's drug-eluting stent, and an additional payment of $250 million upon a similar approval in Japan. Abbott also provided Boston Scientific with a five-year, $900 million interest-bearing loan. In addition, Abbott has purchased approximately 64 million shares of Boston Scientific stock for $1.4 billion, which represents less than 5 percent of the company.

Abbott expects that the Guidant transaction will be accretive to earnings per share in 2007 and beyond. Further information, including financial details, will be provided on the conference call scheduled for 8 a.m. Central time today (9 a.m. Eastern), as previously announced. A live webcast of the conference call will be accessible through Abbott's Investor Relations Web site at www.abbottinvestor.com. An archived edition of the call will be available after 11 a.m. Central time. Abbott also furnished an 8-K today regarding the Guidant transaction.

**About Abbott**
Abbott is a global, broad-based health care company devoted to the discovery, development, manufacture and marketing of pharmaceuticals and medical products, including nutritionals, devices and diagnostics. The company now employs 65,000

people and markets its products in more than 130 countries.

---

**Private Securities Litigation Reform Act of 1995 —**
**A Caution Concerning Forward-Looking Statements**
Some statements in this news release may be forward-looking statements for the purposes of the Private Securities Litigation Reform Act of 1995. We caution that these forward-looking statements are subject to risks and uncertainties that may cause actual results to differ materially from those indicated. Economic, competitive, governmental, technological and other factors that may affect Abbott's operations are discussed in the "Risk Factors" section and Exhibit 99.1 of our Securities and Exchange Commission Form 10-K for the period ended December 31, 2005, and are incorporated by reference. We undertake no obligation to release publicly any revisions to forward-looking statements as the result of subsequent events or developments.

---

Contact:

Media:
Melissa Brotz          (847) 935-3456
Jonathon Hamilton      (847) 935-8646

Financial Community:
John Thomas            (847) 938-2655
Tina Ventura           (847) 935-9390

⊞ top of page

Home | Select a Country | Site Map | Contact Us | Privacy Policy | Terms of Use

Copyright © 2006 Abbott Laboratories. Abbott Park, Illinois, U.S.A.

Unless otherwise specified, all product names appearing in this Internet site are trademarks owned by or licensed to Abbott Laboratories, its subsidiaries or affiliates. No use of any Abbott trademark, trade name, or trade dress in this site may be made without the prior written authorization of Abbott Laboratories, except to identify the product or services of the company.

Abbott

# EXHIBIT 4



Print This Page | Back to Web Page

## Abbott Vascular Business Fact Sheet

The combined Abbott and Guidant vascular business offers physicians, catheterization labs and clinics a complete line of products to treat patients with cardiac, vascular and biliary disease. Products and technologies for interventional procedures include: a comprehensive line of coronary and endovascular stents; a full offering of guide wires, catheters and balloons; and innovative vessel closure devices. Bolstered by the acquisition of Guidant's vascular business in April 2006, Abbott began building its vascular presence with the 1999 acquisition of Perclose, a pioneer in vessel closure technologies. Over the next few years, Abbott strategically assembled a comprehensive vascular devices business through a series of acquisitions, licensing agreements and internal development.

### Abbott's Vascular Business – At a Glance

Worldwide headquarters: San Francisco Bay Area

Web address: www.abbottvascular.com

Primary businesses: Coronary, Endovascular and Vessel Closure Devices

Employees: 8,000 (including nearly 6,000 from Guidant)

Facilities: More than 10 commercial, R&D and manufacturing facilities worldwide

### Product Portfolio

Abbott offers comprehensive product lines throughout the world in three key areas of focus: coronary, endovascular and vessel closure devices. Key product lines and products include:

#### Coronary Products:

With Abbott's long history in health care and the advanced medical devices developed by Abbott Vascular and Guidant, the company is uniquely positioned to bring physicians and their patients innovative products for the treatment of coronary artery disease.

**Drug-eluting Coronary Stents:** The Xience V stent, approved for sale in Europe, is an everolimus-eluting stent utilizing the *Multi-Link Vision* cobalt chromium stent platform and Novartis' everolimus.

**Bare Metal Coronary Stents:** Comprehensive line of bare metal stents designed for a variety of vessel sizes and clinical situations ( *Multi-Link Vision* family). The *TriMaxx* bare metal stent is available outside the United States.

**Guide Wires:** Full lines of coronary guide wires to assist the interventional cardiologist in accessing treatment area (*Hi-Torque* and *Asahi PTCA*).

**Catheters:** A variety of balloon dilatation catheters and specialty catheters designed to restore blood flow to stenosed arteries (*Tornus* specialty catheter; *Mercury* balloons and *Jography* catheters; *Voyager, CrossSail, PowerSail* and *HighSail*).

#### Endovascular Products:

Abbott delivers an advanced portfolio of endovascular and biliary products to assist clinicians in a broad range of diagnostic and interventional procedures outside the coronary area (including carotid arteries, renal arteries and bile ducts).

**Carotid Stents and Embolic Protection Devices:** For the treatment of carotid artery disease. *RX Acculink* is an open-cell, self-expanding nitinol stent available on a rapid exchange delivery system. It is used in conjunction with *RX Accunet* embolic protection device, a polyurethane filter with a nitinol basket. *Xact* is a closed-cell, self-expanding stent used in conjunction with *Emboshield Embolic Protection System*, which features *Barewire*, a proprietary technology allowing for excellent stent placement.

**Biliary stent systems:** Broad lines of self-expanding and balloon expanding stents for a variety of applications ( *RX Herculink, Omnilink* and *Jostent* balloon-expandable stent systems; and the *Absolute, Dynalink, Xceed* and *Xpert* self-expanding stent systems).

**Peripheral Catheters and Guide wires:** Full product lines of catheters and guide wires for various vessels and obstructions (*Agiltrac, Viatrac, Fox PTA,* and *Jocath* catheters; *Hi-Torque* guide wires).

**Vessel Closure Products:**

A pioneer in vessel closure technologies, Abbott offers products designed to facilitate faster, safer and more secure closure of the vascular access site following catheterizations.

**Clip-based closure:** The *StarClose Vascular Closure System* delivers a tiny circumferential flexible clip onto the surface of the femoral artery, mechanically closing the access site in the femoral artery securely in a matter of seconds following diagnostic catheterization procedures.

**Suture-mediated closure:** Minimally invasive vessel closure devices that utilize sutures and automate the surgical closure of femoral artery puncture sites following diagnostic or interventional procedures (*Perclose ProGlide, Perclose AT* and *Closer S*).

**Leading Vascular R&D Program**

In addition to its broad product portfolio, Abbott is conducting advanced research and development programs that are focused on finding innovative solutions for vascular disease.

**Drug-eluting stents**

Abbott has two drug-eluting stents in development: *Xience V* and *ZoMaxx*.

- ▸ The *Xience V* stent is an everolimus-eluting stent utilizing the *Multi-Link Vision* cobalt chromium stent platform and Novartis' everolimus. *Xience V* recently received regulatory approval in Europe and is expected to be launched in the third quarter of 2006. The product is also currently an investigational device in the United States and Japan.
- ▸ The *ZoMaxx* stent elutes zotarolimus, a proprietary immunosuppressant drug, and utilizes the *TriMaxx* stent platform, formed from a unique tri-layer composite that allows for thin struts while maintaining optimal visibility via X-ray. *ZoMaxx* is currently in clinical trials in both the United States and internationally, with an expected European launch in 2006.

The company also has a number of next-generation drug-eluting stent programs in development, including:

- ▸ A second-generation stent that elutes two drugs (zotarolimus and dexamethasone) intended for difficult-to-treat patients, such as diabetics, where restenosis rates are high.
- ▸ A bioabsorbable drug-eluting coronary stent designed to be fully absorbed by the vascular tissue following the restoration of blood flow.

**Carotid stent clinical trials:**

Abbott is a leader in studying carotid stenting as a minimally invasive alternative to surgery for patients with carotid artery disease, a leading cause of stroke. The company is sponsoring/ participating in three clinical trials designed to investigate the benefits of carotid stenting in patients who are at risk of stroke from carotid artery disease.

Home | Select a Country | Site Map | Contact Us | Privacy Policy | Terms of Use

- ACT I is the first company-sponsored clinical trial to compare carotid artery stenting to carotid artery surgery in asymptomatic patients who normally would be referred for surgery. ACT I utilizes Abbott's *Xact* stent and *Emboshield* embolic protection device.

- CAPTURE 2 is a 10,000-patient post-approval study of high-risk patients using the *RX Acculink* stent and *RX Accunet* embolic protection device.

- Abbott is also participating in the CREST study comparing carotid artery stenting to carotid surgery in normal-risk, symptomatic and asymptomatic patients who normally would be referred for surgery. CREST is sponsored by the National Institute of Neurological Disorders and Stroke (NINDS), and the National Institutes of Health (NIH). CREST utilizes the *RX Acculink* stent and *RX Accunet* embolic protection device.

---

* Trademarks are shown in italics in the text of this fact sheet.

**EXHIBIT 5**



Print this page

# Guidant Enrolls 300 Patients in Drug Eluting Stent Pivotal Trials and Completes Manufacturing Audit

## Successful Inspection Brings Company One Step Closer to European Approval; Drug Eluting Stent Milestone Results in Payment to Novartis in Third Quarter

**Indianapolis, Ind. — September 21, 2005 —** Guidant Corporation (NYSE: GDT) today announced that the company has enrolled more than 300 patients in its SPIRIT II and SPIRIT III clinical trials, meeting a milestone in the company's exclusive license agreement with Novartis Pharma AG.

The company also announced that it has successfully concluded an inspection of its drug eluting stent manufacturing and quality systems at its Temecula site. This inspection was conducted by Guidant's European Notified Body, which is also reviewing the company's submission for approval to market the XIENCE™ V Everolimus Eluting Coronary Stent System in Europe. The Notified Body found no nonconformities and will recommend certification for Guidant.

"We are pleased with our recent progress with the XIENCE V Everolimus Eluting Coronary Stent System," said John M. Capek, Ph.D., president, Vascular Intervention, Guidant Corporation. "Enrollment in SPIRIT II and SPIRIT III is progressing well, and successful completion of the audit brings us one step closer to approval to market the XIENCE V Coronary Stent System in Europe."

SPIRIT II and SPIRIT III are large-scale pivotal clinical trials evaluating the safety and efficacy of Guidant's drug eluting stent system for the treatment of coronary artery disease. These prospective, randomized, single-blind trials compare XIENCE V, an everolimus eluting coronary stent system utilizing Guidant's cobalt chromium MULTI-LINK VISION® Coronary Stent System platform, versus the TAXUS® Express 2™ Paclitaxel Eluting Coronary Stent System.

Novartis supplies everolimus to Guidant for use in drug eluting stents and provides access to data supporting Guidant filings with regulatory agencies. Under the terms of the agreement with Novartis, the milestone achievement will trigger a $60 million IPR&D charge in the third quarter of 2005, of which $40 million will be paid to Novartis in the third quarter. An additional $20 million will be paid by December 31, 2006.

Guidant Corporation pioneers lifesaving technology, giving an opportunity for better life today to millions of cardiac and vascular patients worldwide. The company, driven by a strong entrepreneurial culture of 12,000 employees, develops, manufactures and markets a broad array of products and services that enable less invasive care for some of life's most threatening medical conditions. For more information visit www.guidant.com.

<< Back

**EXHIBIT 6**



Print this page

# Guidant Announces Enrollment of First Patient in FUTURE III Clinical Trial in Europe

## Everolimus Eluting Stent Trial Will Provide Additional Safety and Performance Data

**Indianapolis, Ind. and Santa Clara, Calif. — April 5, 2004 —** Guidant Corporation (NYSE: GDT) today announced that the first patient has been enrolled in FUTURE III, an 800-patient clinical trial that will provide additional safety and performance data to support market launch of Guidant's investigational CHAMPION™ Everolimus Eluting Coronary Stent System outside the United States.

"The initiation of FUTURE III is a significant milestone for Guidant's drug eluting stent program and will provide a deeper understanding of the benefits of everolimus eluting stents for the treatment of coronary artery disease," said Dana G. Mead, Jr., president, Guidant Vascular Intervention. "The start of this new trial demonstrates our confidence in the clinical performance of the CHAMPION Stent System and in our drug eluting stent operational capabilities. We expect that the data from FUTURE III will build upon the excellent results from the FUTURE I and FUTURE II clinical trials, which we anticipate will serve as the clinical basis for regulatory approval in Europe."

FUTURE III is a randomized clinical trial comparing the CHAMPION Everolimus Eluting Coronary Stent System to Guidant's MULTI-LINK ZETA® Coronary Stent System at approximately 90 sites in Europe, the Middle East, Asia, Australia, Canada and New Zealand. The primary endpoint of the trial is in-segment late loss (a measurement of the re-narrowing of the vessel caused by tissue re-growth in the area of the artery in which the stent was placed) at four, six and 12 months following stent implantation.

The trial is designed to show superiority of the CHAMPION Everolimus Eluting Coronary Stent System, which approximately 600 patients will receive, over the MULTI-LINK ZETA Coronary Stent System, which approximately 200 patients will receive. The company expects to present 30-day MACE (major adverse cardiac event) data from the first 120 patients enrolled in FUTURE III before the end of 2004.

Dr. Ulrich Gerckens performed the first implant at the Herzzentrum Siegburg in Germany. Prof. Eberhard Grube, also of the Herzzentrum Siegburg, is the principal investigator of FUTURE III. "The CHAMPION Stent System is a very competitive drug eluting stent system. I look forward to presenting the results from FUTURE III. The study will provide significant data on the use of the bioabsorbable polymer," said Prof. Grube.

Guidant plans to file the third and final module of its submission for Conformité Européenne (CE) Mark approval during the second quarter. The company expects to launch the CHAMPION Everolimus Eluting Coronary Stent System in Europe in the first quarter of 2005, pending regulatory approvals.

## Guidant's Drug Eluting Stent Program

Guidant has been a global innovator in stent technology since 1995, when its first coronary stent for the treatment of heart disease was launched internationally. Since then, the company has consistently been the market leader in metallic stent sales worldwide. Guidant's drug eluting stent program leverages this market-leading position as well as the company's excellent customer relationships built through its world-class sales force. The company's vascular intervention business is focused on developing broad capabilities in drug eluting stents, including product design, clinical science, polymer science and product commercialization. Guidant holds a worldwide exclusive license from Novartis Pharma AG to use everolimus, a novel proliferation-signal inhibitor with potent anti-proliferative and immunosuppressant properties, in drug eluting stents. Guidant has both durable and bioabsorbable polymer drug carriers in development, providing product design flexibility and potentially offering unique clinical benefits.

Guidant gained immediate entry into the U.S. drug eluting stent market in February through an agreement with Cordis

Corporation, a Johnson & Johnson company. Under the terms of the agreement, Guidant co-promotes Cordis' CYPHER™ Sirolimus-eluting Coronary Stent in the United States. Like everolimus, sirolimus has been shown to prevent cellular proliferation and reduce restenosis.

Guidant's first everolimus eluting stent, the CHAMPION Everolimus Eluting Coronary Stent System, utilizes a bioabsorbable polymer on a stainless steel stent platform with Guidant's MULTI-LINK VISION® Delivery System. Guidant's second everolimus eluting stent, the cobalt chromium MULTI-LINK VISION-based stent system currently being evaluated in the SPIRIT FIRST trial, utilizes a durable polymer.

Guidant's clinical trials employing bioabsorbable polymer technology utilize the FUTURE designation in the study name. The company's clinical trials utilizing durable polymer technology are identified by the SPIRIT designation in the study name.

## The FUTURE Clinical Trials

FUTURE I and FUTURE II evaluated safety and performance of an everolimus eluting stent with a bioabsorbable polymer drug carrier and stainless steel stent platform. Results from the FUTURE I and II clinical trials demonstrated safety and efficacy. There was a profound effect in preventing in-stent restenosis (binary angiographic restenosis), with no restenosis at six-month follow-up among patients receiving an everolimus eluting stent (0/46) and an 87 percent reduction of in-stent late loss compared to a metallic stent control.

FUTURE III is an 800-patient clinical trial currently enrolling patients that will provide additional safety and performance data to support market launch of the CHAMPION Everolimus Eluting Stent System outside the United States. Another planned trial, FUTURE IV, is a 975-patient U.S. pivotal trial for the CHAMPION Everolimus Eluting Stent System.

## The SPIRIT Clinical Trials

The initial trial in the SPIRIT series, SPIRIT FIRST, enrolled a total of 60 patients at multiple sites in The Netherlands, Denmark and Germany. The primary endpoint of the study is in-stent late loss at six months. Data from the trial will support filings for both a pivotal trial to obtain approval to market the product in the United States and a larger European study to support market launch outside the United States.

Guidant Corporation is a world leader in the treatment of cardiac and vascular disease. The company pioneers lifesaving technology, giving an opportunity for better life today to millions of cardiac and vascular patients worldwide. Driven by a strong entrepreneurial culture of 12,000 employees, Guidant develops, manufactures and markets a broad array of products and services that enable less invasive care for some of life's most threatening medical conditions. For more information visit www.guidant.com.

[ << Back ]

1: Clin Pharmacokinet. 2004;43(2):83-95.

**EXHIBIT 7**

Clinical pharmacokinetics of everolimus.

Kirchner GI, Meier-Wiedenbach I, Manns MP.

Department of Gastroenterology, Hepatology and Endocrinology, Zentrum Innere Medizin, Medizinische Hochschule Hannover, Hannover, Germany. Kirchner.Gabriele@MH-Hannover.de

Everolimus is an immunosuppressive macrolide bearing a stable 2-hydroxyethyl chain substitution at position 40 on the sirolimus (rapamycin) structure. Everolimus, which has greater polarity than sirolimus, was developed in an attempt to improve the pharmacokinetic characteristics of sirolimus, particularly to increase its oral bioavailability. Everolimus has a mechanism of action similar to that of sirolimus. It blocks growth-driven transduction signals in the T-cell response to alloantigen and thus acts at a later stage than the calcineurin inhibitors ciclosporin and tacrolimus. Everolimus and ciclosporin show synergism in immunosuppression both in vitro and in vivo and therefore the drugs are intended to be given in combination after solid organ transplantation. The synergistic effect allows a dosage reduction that decreases adverse effects. For the quantification of the pharmacokinetics of everolimus, nine different assays using high performance liquid chromatography coupled to an electrospray mass spectrometer, and one enzyme-linked immunosorbent assay, have been developed. Oral everolimus is absorbed rapidly, and reaches peak concentration after 1.3-1.8 hours. Steady state is reached within 7 days, and steady-state peak and trough concentrations, and area under the concentration-time curve (AUC), are proportional to dosage. In adults, everolimus pharmacokinetic characteristics do not differ according to age, weight or sex, but bodyweight-adjusted dosages are necessary in children. The interindividual pharmacokinetic variability of everolimus can be explained by different activities of the drug efflux pump P-glycoprotein and of metabolism by cytochrome P450 (CYP) 3A4, 3A5 and 2C8. The critical role of the CYP3A4 system for everolimus biotransformation leads to drug-drug interactions with other drugs metabolised by this cytochrome system. In patients with hepatic impairment, the apparent clearance of everolimus is significantly lower than in healthy volunteers, and therefore the dosage of everolimus should be reduced by half in these patients. The advantage of everolimus seems to be its lower nephrotoxicity in comparison with the standard immunosuppressants ciclosporin and tacrolimus. Observed adverse effects with everolimus include hypertriglyceridaemia, hypercholesterolaemia, opportunistic infections, thrombocytopenia and leucocytopenia. Because of the variable oral bioavailability and narrow therapeutic index of everolimus, blood concentration monitoring seems to be important. The excellent correlation between steady-state trough concentration and AUC makes the former a simple and reliable index for monitoring everolimus exposure. The target trough concentration of everolimus should range between 3 and 15 microg/L in combination therapy with ciclosporin (trough concentration 100-300 microg/L) and prednisone.

Publication Types:
    Review

PMID: 14748618 [PubMed - indexed for MEDLINE]

**EXHIBIT 9**





## Guidant Completes Enrollment in Randomized U.S. Portion of Drug Eluting Stent Pivotal Trial

Large-Scale Trial Evaluating Safety and Efficacy of Next-Generation XIENCE™ V Coronary Stent System

**Indianapolis, Ind. and Santa Clara, Calif. — March 15, 2006 —** Guidant Corporation (NYSE: GDT) today announced that the company has completed enrollment of 1,002 patients in the randomized U.S. portion of its SPIRIT III drug eluting stent pivotal clinical trial. The randomized U.S. cohort will support Guidant's Premarket Approval submission to the U.S. Food and Drug Administration (FDA) for the company's XIENCE™ V Everolimus Eluting Coronary Stent System for the treatment of coronary artery disease.

SPIRIT III is an international clinical trial consisting of a 1,002-patient prospective, randomized, single-blind U.S. cohort evaluating the safety and efficacy of the XIENCE V Everolimus Eluting Coronary Stent System compared to the TAXUS® Express 2™ Paclitaxel-Eluting Coronary Stent System for the treatment of coronary artery disease, and four non-randomized trial arms. The trial is being conducted in the U.S. and Japan. XIENCE V, which utilizes Guidant's proven MULTI-LINK VISION® cobalt chromium stent platform, received CE Mark approval in January and will be launched in Europe in the second quarter of 2006.

"The completion of enrollment in the randomized U.S. portion of the SPIRIT III trial is a significant milestone for Guidant and demonstrates the commitment of our employees and trial investigators to advancing the science of drug eluting stents," said John M. Capek, Ph.D., president, Vascular Intervention, Guidant. "We are very pleased with the progress this represents for this next-generation drug eluting stent in the U.S."

Gregg Stone, M.D., Professor of Medicine and Director of Cardiovascular Research & Education of Columbia University Medical Center in New York, and Campbell Rogers, M.D., Director of Cardiac Catheterization at Brigham and Women's Hospital, are co-principal investigators of the study. Dr. Shigeru Saito, Director of Cardiology and Catheterization Laboratories, Shonan Kamakura Hospital, is the principal investigator for the Japan arm of the trial.

"Based on the positive results of SPIRIT FIRST, Guidant's -olimus based XIENCE V Everolimus Eluting Coronary Stent System appears to hold great promise as a next-generation therapy for treating coronary artery disease," said Dr. Rogers. "We look forward to analyzing these data and sharing results of the trial early next year. We also look forward to continuing to examine how the XIENCE stent performs in diverse patient and lesion subsets in upcoming clinical studies."

"We are excited that the SPIRIT III clinical trial has completed enrollment so smoothly and rapidly," said Dr. Stone. "The potential of this highly deliverable XIENCE V Stent System represents a welcome option for physicians caring for patients with coronary artery disease."

In November, Guidant announced that SPIRIT II, a 300-patient, randomized clinical trial evaluating XIENCE V outside the U.S., had completed enrollment in only four months. The single-blind, prospective, randomized, non-inferiority study further evaluates the XIENCE V compared to the TAXUS® Express 2™ Paclitaxel-Eluting Coronary Stent System for the treatment of coronary artery disease.

### About XIENCE V

The XIENCE V Everolimus Eluting Coronary Stent System utilizes Guidant's most advanced coronary stent system, the highly deliverable cobalt chromium MULTI-LINK VISION®, which is available on the preferred rapid-exchange platform. Everolimus has been shown to reduce tissue proliferation in the coronary vessels following stent implantation. Guidant is ramping up manufacturing and building inventory to supply ongoing clinical trials and to support the

European launch of XIENCE V beginning in the second quarter of 2006.

Guidant Corporation pioneers lifesaving technology, giving an opportunity for better life today to millions of cardiac and vascular patients worldwide.  The company develops, manufactures and markets a broad array of products and services that enable less invasive care for some of life's most threatening medical conditions.  For more information visit www.guidant.com.

This release includes forward-looking statements concerning XIENCE™ V. The statements are based on assumptions about many important factors, including completion of the clinical trial, associated regulatory processes and timelines, and other factors identified on Exhibit 99 to the company's most recent filing on Form 10-Q. Actual results may differ materially. The company does not undertake to update its forward-looking statements.

[ <<Back ]

**EXHIBIT 10**



Print this page

## Guidant Reports Excellent 12-Month Results from SPIRIT FIRST Everolimus Eluting Coronary Stent Clinical Trial

Results Demonstrate Sustained Benefit of the XIENCE V Everolimus Eluting Coronary Stent System

**Indianapolis, Ind., and Dallas, Texas — November 15, 2005 —** Guidant Corporation (NYSE: GDT) today announced 12-month adjudicated results from the company's SPIRIT FIRST clinical trial. SPIRIT FIRST is a prospective, randomized, single-blind trial evaluating Guidant's rapid-exchange XIENCE™ V Everolimus Eluting Coronary Stent System versus an uncoated MULTI-LINK VISION® Coronary Stent System control in de novo (previously untreated) lesions.

"The trial's impressive results demonstrate the sustained efficacy of the XIENCE V Everolimus Eluting Coronary Stent System," said Prof. Patrick W. Serruys, M.D., of the Thoraxcenter, Erasmus University Hospital, Rotterdam, who serves as the study's principal investigator. "The benefit of an everolimus drug eluting stent, with only one device-related MACE event and no thrombotic events, combined with the highly deliverable rapid-exchange VISION stent and stent delivery system, holds great promise for the treatment of patients with cardiovascular disease."

The one-year data from SPIRIT FIRST continued to demonstrate a preservation of the treatment effect of the XIENCE V Everolimus Eluting Coronary Stent System, with a highly statistically significant reduction of cell proliferation compared to the uncoated control. At one year, the XIENCE V arm demonstrated an angiographic in-stent late loss of 0.23 mm and an in-segment late loss of 0.13 mm, which were 72 percent and 78 percent less, respectively, than the values of the uncoated control (0.81 mm and 0.59 mm). The percent volume obstruction as determined by intravascular ultrasound at one year was 10.7 percent, which was 60 percent less than the control value (26.9 percent).

There were no acute or late stent thromboses reported through the one-year follow-up period. The rate of major adverse cardiac events (MACE) was 15.4 percent (4/26) at one year, compared with 21.4 percent (6/28) for the control. Three of the four MACE events in the treatment arm were not directly related to the XIENCE V Stent, resulting in a device-related MACE rate of 3.8 percent, compared with 21.4 percent for the control. Results were presented today at the American Heart Association Scientific Sessions in Dallas by Prof. Jan J. Piek, M.D. of the Academic Medical Center, Department of Cardiology, University of Amsterdam.

"Everolimus has clearly proven its effectiveness in reducing tissue proliferation in the coronary vessels following stent implantation. We are excited about combining this unique drug with the proven MULTI-LINK VISION, our most advanced coronary stent system, which is available on the rapid-exchange platform physicians prefer," said John M. Capek, Ph.D., president, Vascular Intervention, Guidant. "We look forward to additional data on this exciting product coming from both SPIRIT II and SPIRIT III. SPIRIT II completed enrollment of 300 patients ahead of schedule last week, and enrollment is proceeding nicely in SPIRIT III as well, with more than 400 patients enrolled to date."

SPIRIT II and SPIRIT III are large-scale pivotal clinical trials evaluating the safety and efficacy of Guidant's drug eluting stent system for the treatment of coronary artery disease. These prospective, randomized, single-blind trials compare XIENCE V, an everolimus eluting coronary stent system utilizing Guidant's cobalt chromium MULTI-LINK VISION Coronary Stent System platform, versus the TAXUS® Express 2™ Paclitaxel Eluting Coronary Stent System.

Guidant Corporation pioneers lifesaving technology, giving an opportunity for better life today to millions of cardiac and vascular patients worldwide. The company develops, manufactures and markets a broad array of products and services that enable less invasive care for some of life's most threatening medical conditions. For more information visit www.guidant.com.

<<-Back

# EXHIBIT 19

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

WOODCOCK WASHBURN LLP
ONE LIBERTY PLACE
46TH FLOOR
PHILADELPHIA, PA 19103

COPY MAILED

OCT 2 5 2006

OFFICE OF PETITIONS

In re Application of

Carol Wright et al
Application No. 10/951,385
Filed: September 28, 2004
Attorney Docket No. JJI-51-CON2

:
:
:
:
:
:
:

DECISION ON PETITION
TO MAKE SPECIAL UNDER
37 CFR 1.102(d)

This is a decision on the renewed petition under 37 CFR §1.102(d), filed October 9, 2006, to make the above-identified application special based on actual infringement as set forth in M.P.E.P. § 708.02, Section II.

The petition is **GRANTED.**

A grantable petition to make an application special under 37 CFR §1.102(d) and MPEP §708.02, Section II: Infringement, must be accompanied by the required fee pursuant to 37 CFR 1.17(h) and a statement by the applicant, assignee, or attorney/agent registered to practice before the office alleging:

(A) That there is an infringing device or product actually on the market or method in use;

(B) That a rigid comparison of the alleged infringing device, product, or method with the claims of the application has been made, and that, in his or her opinion, some of the claims are unquestionably infringed; and

(C) That he or she has made or caused to be made a careful and thorough search of the prior art or has a good knowledge of the pertinent prior art.

Applicant must provide one copy of each of the references deemed most closely related to the subject matter encompassed by the claims if said references are not already of record.

**A252**

The petition complies with all the above stated requirements.   Accordingly, the above-identified application has been accorded "special" status.

Telephone inquiries concerning this decision should be directed to Irvin Dingle at 571-272-3210.

All other inquiries concerning either the examination or status of the application should be directed to the Technology Center.

The application is being forwarded to the Technology Center Art Unit 3738 for action on the merits commensurate with this decision.


David Bucci
Petitions Examiner
Office of Petitions

**A253**