IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| JOHNSON & JOHNSON, INC. and CORDIS CORPORATION, | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 07-333-SLR
Civil Action No. 07-348-SLR
Civil Action No. 07-409-SLR

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| JOHNSON & JOHNSON, INC., CORDIS CORPORATION, and WYETH, | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 07-765-SLR

REDACTED

**BSC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO STRIKE THE
SUPPLEMENTAL EXPERT REPORT OF ANTONIOS G. MIKOS, Ph.D.**

*Of Counsel:*

Richard L. DeLucia
Paul M. Richter, Jr.
Michael K. Levy
**KENYON & KENYON LLP**
One Broadway
New York, NY 10004
(212) 425-7200

Dated: September 16, 2009

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Josy W. Ingersoll (#1088) [jingersoll@ycst.com]
Karen L. Pascale (#2903) [kpascale@ycst.com]
Karen E. Keller (#4489) [kkeller@ycst.com]
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600

*Attorneys for Plaintiffs
Boston Scientific Corporation and
Boston Scientific Scimed, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

NATURE AND STAGE OF THE PROCEEDINGS .................................................................. 3

SUMMARY OF THE ARGUMENT ........................................................................................ 4

STATEMENT OF FACTS ...................................................................................................... 5

ARGUMENT .......................................................................................................................... 6

I.     The Supplemental Mikos Report Is One Month Late, And Should Be Stricken On That
       Basis Alone ................................................................................................................ 6

II.    Cordis Could Have, And Should Have, Provided Its New Infringement Arguments In
       Any Of Dr. Mikos's *Three*, Earlier, Timely Reports Or By Updating Its July 24, 2008
       Interrogatory Response .............................................................................................. 7

III.   BSC Will Be Unfairly Prejudiced If The September 2, 2009 Supplemental Mikos Report
       Is Not Stricken ........................................................................................................... 8

CONCLUSION ...................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*First Years, Inc. v. Munchkin, Inc.*,
   575 F. Supp. 2d 1002 (W.D. Wis. 2008) ……………………………......……….... 6

*Keener v. United States*,
   181 F.R.D. 639 (D. Mont. 1998) …………………………………………...……...6, 7

*Praxair, Inc. v. ATMI, Inc.*,
   445 F. Supp. 2d 460 (D. Del. 2006) …………………………………..……………..6

*Reid v. Lockheed Martin Aeronautics Co.*,
   205 F.R.D. 655 (N.D. Ga. 2001) …………………………………….............……..6

**Rules**

Fed. R. Civ. P. 26(a)(2)(C) ……………………………………………………..….. 6

Fed. R. Civ. P. 26(e) ……………………………………………….......…………... 6

Fed. R. Civ. P. 30(b)(6) ……………………………………………...……………..7

DB01:2738078.1                                                          054604.1003

**INTRODUCTION**

Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively, "BSC") hereby move to strike the untimely September 2, 2009 Supplemental Expert Report of Antonios G. Mikos, Ph.D. (the "Supplemental Mikos Report," Exh. A hereto), which contains entirely new infringement arguments and was submitted by Defendants Johnson & Johnson, Inc., Cordis Corporation, and Wyeth (collectively, "Cordis") in the above-captioned cases, *over a month after final expert reports were due under the Court's scheduling order.*

These litigations were filed in 2007 and have been ongoing and active for about two years. During that time, Cordis responded to interrogatories seeking its infringement contentions, produced numerous documents and deposition witnesses, and provided three, separate expert reports from Dr. Mikos on infringement issues (from June 12 to August 7, 2009). Notwithstanding all of that discovery activity, Cordis never disclosed its new infringement arguments and supposed evidence until the untimely, September 2 Supplemental Mikos Report. On that basis alone, the Supplemental Mikos Report should be stricken. Moreover, it would be unfair and prejudicial to BSC to allow the Supplemental Mikos Report into evidence, since responding to it now would require BSC to revisit its own expert reports and work with its experts to rebut Cordis's new arguments, all at a time when summary judgment and claim construction briefing is ongoing (opening briefs are due September 16, 2009, with all briefing done by October 16, 2009).



In the July 14, 2009 Responsive Expert Report of Harold B. Hopfenberg, Ph.D. (Exh. B hereto), Dr. Hopfenberg, a BSC expert,

1

explained his claim constructions and why PROMUS does not infringe the asserted claims under

that construction, ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████ For example, Cordis could have addressed Dr.

Hopfenberg's evidence and opinions in the third round of expert reports exchanged on August 7,

2009 (or well before that time, such as after the parties exchanged claim construction positions in

May 2009 and BSC fully laid out its views on the meaning of the claims at issue), but Cordis

failed to do so in the August 7 Rebuttal Expert Report of Antonios G. Mikos, Ph.D. (the

"Rebuttal Mikos Report," Exh. C hereto) or elsewhere.  Instead, Cordis inexplicably waited to

address those points until the September 2 Supplemental Mikos Report, ██████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████

      Thus, during this critical juncture of the case, Cordis suddenly has changed a big

part of its infringement position, now arguing that PROMUS meets certain claim limitations

even under BSC's claim constructions.  It could have, and should have, made those arguments

long ago, when BSC would have had a full chance to address them.  Cordis's untimely,

wholesale change in theory should not be allowed to stand, and given the breadth of that change,

it's not a sufficient cure (as Cordis will no doubt argue) that Dr. Mikos has not yet been deposed

on any of his reports.  Cordis has essentially redone a big part of its infringement theory at the

very end of the case, and asked BSC to now rework its theories and evidence without benefit of

the back-and-forth of the expert report period (when Cordis presented different theories). The only fair thing to do is to strike the Supplemental Mikos Report.

## NATURE AND STAGE OF THE PROCEEDINGS

The present cases are four declaratory judgment actions through which BSC seeks a declaration that PROMUS does not infringe any valid claim of U.S. Patent No. 7,217,286 (the "'7286 patent"), U.S Patent No. 7,223,286 (the "'3286 patent"), U.S. Patent No. 7,229,473 (the "'473 patent"), and U.S Patent No. 7,300,662 (the "'662 patent") (collectively, the "patents-in-suit"). PROMUS is an intravascular stent used to treat coronary artery disease. It advantageously releases a drug designed to diminish reblocking (restenosis) of the patient's blood vessel.

Defendant Cordis is the owner of the '7286, '3286 and '473 patents. Cordis and defendant Wyeth co-own the '662 patent. Defendants have asserted counterclaims alleging that BSC is infringing each of the four patents-in-suit.

While fact and expert discovery were respectively scheduled to close on May 22, 2009 and August 21, 2009, respectively (D.I. 197, 192, 198, 199, in Civ. A. Nos. 07-333-SLR, 07-348-SLR, 07-409-SLR, 07-765-SLR, respectively), depositions are still ongoing and the parties have yet to schedule dates for the deposition of several fact and expert witnesses.

Summary judgment and claim construction briefing is presently ongoing, with the parties' opening briefs due on September 16, 2009. This briefing will be completed by October 16, 2009. (August 14, 2009 Docket Entry).

Trial in these cases is set to begin on February 4, 2010, with a hearing on claim construction and summary judgment motions set for October 30, 2009. (D.I. 163, 158, 164, 165, in Civ. A. Nos. 07-333-SLR, 07-348-SLR, 07-409-SLR, 07-765-SLR, respectively).

DB01:2738078.1

054604.1003

## SUMMARY OF THE ARGUMENT

1.        Under the Court's scheduling orders in this case, there were three rounds

of expert reports, due on June 12, July 14, and July 31, 2009, respectively, with the last round

moved by agreement of the parties (and at Cordis's request) to August 7, 2009. In addition, on

July 24, 2008, Cordis responded to BSC's Interrogatory No. 7 seeking Cordis's infringement

contentions regarding the patents-in-suit. Cordis's new infringement arguments were not

presented in a timely fashion, in accordance with the Court's scheduling orders, either through

the three rounds of expert reports or in its interrogatory answers (which were never updated after

July 24, 2008). Instead, Cordis submitted the Supplemental Mikos Report with entirely new

infringement arguments, over a month after the July 31 deadline for expert reports. None of

these new arguments were presented in the first three, timely expert reports of Dr. Mikos or

through interrogatory responses (or otherwise in discovery).

2.        The September 2 Supplemental Mikos Report should be stricken in its

entirety since it is so late. Many other courts have done likewise in similar situations.

3.        The September 2 Supplemental Mikos Report should be stricken in its

entirety since it would be unfair and prejudicial to BSC to do otherwise. Opening briefs in

support of claim construction and summary judgment are due on September 16, 2009, with all

briefing on those issues to be completed by October 16, 2009 (in advance of the October 30,

2009 Markman and summary judgment hearing before the Court). If this Supplemental Mikos

Report is not stricken, BSC would be prejudiced by having to consult with its experts anew, at

this critical juncture in the case, to address and rebut these entirely new theories and arguments

of infringement proffered late, suddenly, and unexpectedly by Cordis.

## STATEMENT OF FACTS

A.      Under the Court's scheduling orders in these cases, Opening Expert Reports were due on June 12, 2009, Responsive Expert Reports were due on July 14, 2009, and Optional Rebuttal Expert Reports were due on July 31, 2009.  (D.I. 197, 192, 198, 199, in Civ. A. Nos. 07-333-SLR, 07-348-SLR, 07-409-SLR, 07-765-SLR, respectively; D.I. 237, 232, 238, 239, in Civ. A. Nos. 07-333-SLR, 07-348-SLR, 07-409-SLR, 07-765-SLR, respectively).  At the request of Cordis, on July 28, 2009, due to a death in the family of one of Cordis's experts, BSC agreed to exchange the rebuttal expert reports on August 7, 2009.

B.      In accordance with the above due dates, Cordis submitted the Expert Report of Antonios G. Mikos, Ph.D. on June 12 (the "Opening Mikos Report," Exh. D hereto), the Second Expert Report of Antonios G. Mikos, Ph.D. on July 14 (Exh. E hereto), and the Rebuttal Mikos Report on August 7.  In the Opening Mikos Expert Report, Dr. Mikos set forth his opinions regarding the alleged infringement of the patents-in-suit by PROMUS.  (*See* Opening Mikos Expert Report, ¶¶ 16–188, 161–162).

C.      On September 2, 2009, more than one month after the final due date for serving expert reports in this case, Cordis served the Supplemental Mikos Report, which contains entirely new infringement arguments that were not presented in any of the prior three reports of Dr. Mikos referenced above. █████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

D.      On July 24, 2008, Cordis responded to BSC's Interrogatory No. 7 (Exh. F hereto), which seeks Cordis's infringement contentions for the four patents-in-suit.  Cordis's response does not disclose or mention any of the new infringement arguments presented in the

5

Supplemental Mikos Report. Cordis never updated its response to Interrogatory No. 7, even

after the parties exchanged their claim construction positions in May 2009 (Exh. G hereto) (at

which point Cordis had to have understood exactly how BSC viewed the claims). Nor did

Cordis disclose these new, but late infringement arguments to BSC through any other discovery

vehicle prior to the Supplemental Mikos Report.

## ARGUMENT

I.     **The Supplemental Mikos Report Is One Month Late, And Should Be Stricken On That Basis Alone**

    Fed. R. Civ. P. 26(a)(2)(C) provides that "[a] party must make [expert witness]

disclosures at the times and in the sequence that the court orders." Here, the Court's orders

indicated that expert reports were to be completed by July 31, 2009 (and notably do not provide

for supplemental expert reports). Cordis flouted those orders by submitting the Supplemental

Mikos Report on September 2, 2009, to the prejudice of BSC. However, many courts have

excluded such supplemental expert reports submitted after the expiration of the dates set forth for

the exchange of expert reports. *See, e.g., First Years, Inc. v. Munchkin, Inc.*, 575 F. Supp. 2d

1002, 1007–09 (W.D. Wis. 2008) (striking portions of a supplemental expert report that

contained new matter which could have been raised in earlier expert reports); *Praxair, Inc. v.

ATMI, Inc.*, 445 F. Supp. 2d 460, 470–71 (D. Del. 2006) (noting that the court granted a motion

to strike a supplemental expert report filed a month after expert discovery closed and ten days

before summary judgment motions were due); *Reid v. Lockheed Martin Aeronautics Co.*, 205

F.R.D. 655, 661–62 (N.D. Ga. 2001) (disregarding a supplemental expert report produced after

the court ordered deadlines, even in light of Fed. R. Civ. P. 26(e), because Rule 26(e) "imposes a

*duty* on [parties]; it grants them no *right* to produce information in a belated fashion" (emphasis

in original)); *Keener v. United States*, 181 F.R.D. 639, 640–42 (D. Mont. 1998) (holding that an

expert may not testify regarding opinions set forth in an untimely supplement expert report and

that "[s]upplementation under the Rules means correcting inaccuracies, or filing the interstices of

an incomplete report based on information that was not available at the time of the initial

disclosure").  This Court should do the same and strike the Supplemental Mikos Report in its

entirety.

**II.     Cordis Could Have, And Should Have, Provided Its New Infringement Arguments In Any Of Dr. Mikos's *Three*, Earlier, Timely Reports Or By Updating Its July 24, 2008 Interrogatory Response**

████████████████████████████████████████████████████████

████████████████████████████████████ Likewise, in the untimely

Supplemental Mikos Report, Dr. Mikos also sets forth *entirely new infringement opinions.* ██

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████

       Cordis's response, on July 24, 2008, to BSC's Interrogatory No. 7 seeking its

infringement contentions on the patents-in-suit also contains no inkling of these new arguments

and "evidence" disclosed so late in the game by Cordis in the Supplemental Mikos Report.  As

such, BSC had no way to anticipate these new arguments, and Cordis has no excuse for not

bringing them forward earlier.  Indeed, in May 2009, the parties exchanged their preliminary

claim constructions, so Cordis had to have understood at least as of that date exactly how BSC

viewed the proper scope of the claims.  ████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████ That theory

could have been presented in any of Dr. Mikos's first three reports, instead of waiting until

September 2 as Cordis ultimately did.

## III.    BSC Will Be Unfairly Prejudiced If The September 2, 2009 Supplemental Mikos Report Is Not Stricken

       Opening briefs in support of claim construction and summary judgment are due

on September 16, 2009, with all briefing on those issues to be completed by October 16, 2009 (in

advance of the October 30, 2009 claim construction and summary judgment hearing before the

                                             

Court).  This is an extremely busy an important time in these cases.  BSC is focusing its briefing

arguments on the positions taken by Cordis during the course of two years of discovery,

particularly Cordis's positions taken through its experts such as Dr. Mikos in his three expert

reports actually submitted within the Court's scheduling order.  It would be unfair and

prejudicial to BSC if the Supplemental Mikos Report is allowed, since Cordis used that report to

change a big part of its infringement theory, as explained in detail above.  BSC should not be

forced to rework its positions at the last-minute and potentially require additional, new reports of

its own to rebut Dr. Mikos's new theory, ███████████████████████ That

███████████████████████████████████████

theory should have been brought forward long ago, when it could have been addressed in a fair

and measured way by BSC.

DB01:2738078.1                                                                 054604.1003

## CONCLUSION

For the foregoing reasons BSC respectfully requests that the September 2, 2009

Supplemental Mikos Report be stricken in its entirety.


YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Karen L Keller*

Josy W. Ingersoll (#1088) [jingersoll@ycst.com]
Karen L. Pascale (#2903) [kpascale@ycst.com]
Karen E. Keller (#4489) [kkeller@ycst.com]
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE  19801
(302) 571-6600

*Attorneys for Plaintiffs*
*Boston Scientific Corporation and*
*Boston Scientific Scimed, Inc.*

*Of Counsel:*

Richard L. DeLucia
Paul M. Richter, Jr.
Michael K. Levy
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200

Dated: September 16, 2009

DB01:2738078.1                                                                054604.1003

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on September 16, 2009, I caused copies of

the foregoing document to be served upon the following counsel of record in the manner

indicated:

### *BY EMAIL*

Steven J. Balick, Esquire [sbalick@ashby-geddes.com]
John G. Day, Esquire [jday@ashby-geddes.com]
Lauren E. Maguire [lmaguire@ashby-geddes.com]
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

David T. Pritikin, Esquire [dpritikin@sidley.com]
William H. Baumgartner, Esquire [wbaumgartner@sidley.com]
Russell E. Cass, Esquire [rcass@sidley.com]
Jon M. Spanbauer, Esquire [jspanbauer@sidley.com]
SIDLEY AUSTIN LLP
One  South Dearborn
Chicago, IL 60603

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Karen E. Keller*

Karen L. Pascale (No. 2903)
Karen E. Keller (No. 4489)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
alundgren@ycst.com

*Attorneys for Plaintiffs,*
*Boston Scientific Corporation and*
*Boston Scientific Scimed, Inc.*

# EXHIBITS
# A-F
# REDACTED

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and<br>BOSTON SCIENTIFIC SCIMED, INC.,<br><br>*Plaintiffs,*<br><br>v.<br><br>JOHNSON & JOHNSON, INC. and<br>CORDIS CORPORATION,<br><br>*Defendants.* | Civil Action No. 07-333-SLR<br>Civil Action No. 07-348-SLR<br>Civil Action No. 07-409-SLR |
| BOSTON SCIENTIFIC CORPORATION and<br>BOSTON SCIENTIFIC SCIMED, INC.,<br><br>*Plaintiffs,*<br><br>v.<br><br>JOHNSON & JOHNSON, INC.,<br>CORDIS CORPORATION, and WYETH<br><br>*Defendants.* | Civil Action No. 07-765-SLR |

**BOSTON SCIENTIFIC CORPORATION AND BOSTON SCIENTIFIC SCIMED, INC.'S
SUPPLEMENTAL CLAIM CONSTRUCTION ISSUE IDENTIFICATION**

Pursuant to the Protective Order in the above-captioned cases, BSC herewith submits its

Supplemental Claim Construction Issue Identification.  See Schedule A.  This is a supplemental

preliminary identification of claim construction issues, as discovery is ongoing.  BSC reserves the

right to amend this listing at a future time.

BOSTON SCIENTIFIC CORPORATION AND
BOSTON SCIENTIFIC SCIMED, INC.

By their attorneys,

Dated: May *20*, 2009

_____
Richard L. DeLucia
Paul M. Richter
John R. Hutchins
Michael K. Levy
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200

*Attorneys for Plaintiffs*
*Boston Scientific Corporation and*
*Boston Scientific Scimed, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the date shown below, I caused a copy of **BOSTON SCIENTIFIC CORPORATION AND BOSTON SCIENTIFIC SCIMED, INC.'S SUPPLEMENTAL CLAIM CONSTRUCTION ISSUE IDENTIFICATION** to be served on counsel as follows:

### VIA OVERNIGHT COURIER:

David T. Pritikin, Esq.
William H. Baumgartner, Jr., Esq.
Russell E. Cass, Esq.
**SIDLEY AUSTIN LLP**
1 South Dearborn Street
Chicago, IL 60603


Edward A. Mas II, Esq.
James M. Hafertepe, Esq.
Leland G. Hansen, Esq.
Sandra A. Frantzen, Esq.
**McANDREWS, HELD & MALLOY, LTD.**
500 West Madison Street
Chicago, IL 60661


Dated: May 20, 2009                    By: _____

## Schedule A

## U.S. Patent No. 7,217,286

| '7286 Claim Term | Exemplary Claim* | Proposed Construction |
|---|---|---|
| "stent" | 1 | A device for providing support for a lumen in the body. |
| "biocompatible" | 1 | Does not elicit any negative tissue reaction or promote mural thrombosis formation. |
| "carrier" | 1 | A therapeutic agent-containing material co-formulated with the therapeutic agent. |
| "therapeutic agent" | 1 | A substance administered to treat or prevent a disease or condition. |
| "polymeric" | 1 | Relating to a material comprising a polymer or copolymer. |
| "polymer" | 1 | A molecule composed of many repeating units of a single monomer. |
| "copolymer" | 1 | A molecule composed of many repeating units of at least two different monomers. |
| "acrylate-based polymer or copolymer" | 1 | A molecule comprising many repeating units of a single acrylate monomer, or a molecule comprising many repeating units of at least two different monomers where at least one of the monomers is an acrylate. |
| "fluorinated polymer" | 1 | A molecule comprising many repeating units of a single monomer wherein the monomer contains one or more fluorine atoms. |
| "mixture thereof" | 1 | To the extent not indefinite: A composition in which substances are combined and intermingled. |

---

*     Claim terms are deemed to have the same proposed meaning in all other claims of the same patent in which the respective term appears.

| '7286 Claim Term | Exemplary Claim* | Proposed Construction |
|---|---|---|
| "rapamycin" | 1 | The chemical compound with the following structure:  |
| "analog thereof" | 1 | To the extent not indefinite: A chemical compound with a structure similar to rapamycin (as defined). |
| "macrocyclic lactone analog" | 1 | To the extent not indefinite: A macrocyclic lactone molecule with a structure similar to rapamycin (as defined). |
| "an amount effective to inhibit neointimal proliferation" | 1 | To the extent not indefinite: An amount sufficient to stop neointimal proliferation. |
| "provides a controlled release of said therapeutic agent over a period of several weeks" | 3 | To the extent not indefinite: Therapeutic agent is discharged in a controlled manner over a period of more than one week and up to six weeks. |

2

## U.S. Patent No. 7,223,286

| '3286 Claim Term | Exemplary Claim* | Proposed Construction |
|---|---|---|
| "stent" | 1 | A device for providing support for a lumen in the body. |
| "coating" | 1 | To the extent not indefinite: A distinct covering layer of a particular composition. |
| "applied thereto" ("is applied", "are applied") | 1, 2, 44 | To the extent not indefinite: Brought into direct contact with the stent surface. |
| "biocompatible" | 1 | Does not elicit any negative tissue reaction or promote mural thrombosis formation. |
| "mixture" | 1 | To the extent not indefinite: A combination of intermingled substances. |
| "rapamycin" | 1 | The chemical compound with the following structure:  |
| "analog thereof" "analog of rapamycin" | 1, 31 | To the extent not indefinite: A chemical compound with a structure similar to rapamycin (as defined). |
| "macrocyclic lactone analog" | 1 | To the extent not indefinite: A macrocyclic lactone molecule with a structure similar to rapamycin (as defined). |
| "onto the stent" | 5, 6, 47, 48 | To the extent not indefinite: Brought into direct contact with the stent surface. |
| "polymeric" | 1 | Relating to a material comprising a polymer or copolymer. |

---

\*       Claim terms are deemed to have the same proposed meaning in all other claims of the same patent in which the respective term appears.

| '3286 Claim Term | Exemplary Claim* | Proposed Construction |
|---|---|---|
| "copolymer" | 10 | A molecule composed of many repeating units of at least two different monomers. |
| "acrylate-based polymer" | 10, 52 | A molecule composed of many repeating units of a single acrylate monomer. |
| "acrylate-based copolymer" | 10, 52 | A molecule composed of many repeating units of at least two different monomers where at least one of the monomers is an acrylate. |
| "fluorinated polymer" | 10, 52 | A molecule composed of many repeating units of a single monomer wherein the monomer contains one or more fluorine atoms. |
| "poly(ether-ester) copolymer" | 10 | A molecule composed of many repeating units of at least two different monomers, where one monomer is an ether and another monomer is an ester. |
| "blend thereof" | 10 | To the extent not indefinite: A composition of combined and intermingled substances. |
| "provides a controlled release of [X] over a period of several weeks" | 28. 70 | To the extent not indefinite: [X] is discharged in a controlled manner over a period of more than one week and up to six weeks. |
| "releases [X] over a period of at least 14 days" | 30, 34, 74 | To the extent not indefinite: Discharges [X] over a period of 14 days or longer. |
| "present in a therapeutically beneficial amount to inhibit neointimal proliferation"<br><br>("present in an amount effective to inhibit neointimal proliferation") | 32<br><br><br><br>(40) | To the extent not indefinite: An amount sufficient to stop neointimal proliferation. |
| "carrier" | 40 | A drug-containing material co-formulated with the drug. |
| "drug" | 40 | A substance administered to treat or prevent a disease or condition. |
| "mixed together" | 41 | To the extent not indefinite: Combined and intermingled. |

4

## U.S. Patent No. 7,229,473

| '473 Claim Term | Exemplary Claim* | Proposed Construction |
|---|---|---|
| "stent" | 1 | A device for providing support for a lumen in the body. |
| "coating" | 1 | To the extent not indefinite: A distinct covering layer of a particular composition. |
| "applied thereto" | 1 | To the extent not indefinite: Brought into direct contact with the stent surface. |
| "mixture" | 1 | To the extent not indefinite: A composition in which substances are combined and intermingled. |
| "biocompatible" | 1 | Does not elicit any negative tissue reaction or promote mural thrombosis formation. |
| "carrier" | 1 | A therapeutic agent-containing material co-formulated with the therapeutic agent. |
| ""therapeutic agent" | 1 | A substance administered to treat or prevent a disease or condition. |
| "rapamycin" | 1 | The chemical compound with the following structure:<br> |
| "analog thereof" | 1 | To the extent not indefinite: A chemical compound with a structure similar to rapamycin (as defined). |
| "macrocyclic lactone analog" | 1 | To the extent not indefinite: A macrocyclic lactone molecule with a structure similar to rapamycin (as defined). |

---

* Claim terms are deemed to have the same proposed meaning in all other claims of the same patent in which the respective term appears.

| '473 Claim Term | Exemplary Claim* | Proposed Construction |
|---|---|---|
| "present in an amount effective to inhibit neointimal proliferation" | 1 | To the extent not indefinite: An amount sufficient to stop neointimal proliferation. |
| "provides a controlled release of [X] over a period of several weeks" | 1 | To the extent not indefinite: [X] is discharged in a controlled manner over a period of more than one week and up to six weeks. |
| "polymer" | 1, 3, 4 | A molecule composed of many repeating units of a single monomer. |
| "copolymer" | 4 | A molecule composed of many repeating units of a single monomer. |
| "polymeric" | 1 | Relating to a material comprising a polymer or copolymer. |
| "fluorinated polymer" | 3 | A molecule composed of many repeating units of a single monomer wherein the monomer contains one or more fluorine atoms. |
| "acrylate-based polymer or copolymer" | 4 | A molecule composed of many repeating units of a single acrylate monomer, or a molecule comprising at least two different monomers where at least one of the monomers is an acrylate. |

6

## U.S. Patent No. 7,300,662

| '662 Claim Term | Exemplary Claim* | Proposed Construction |
| --- | --- | --- |
| "stent" | 1 | A device for providing support for a lumen in the body. |
| "biocompatible" | 1 | Does not elicit any negative tissue reaction or promote mural thrombosis formation. |
| "polymeric" | 1 | Relating to a material comprising a polymer or copolymer. |
| "coating" | 1 | To the extent not indefinite: A distinct covering layer of a particular composition. |
| "affixed to the intraluminal stent"" | 1 | To the extent not indefinite: Attached to the stent surface. |
| "rapamycin" | 1 | The chemical compound with the following structure: <br><br> [chemical structure of rapamycin with labeled positions: 42 OH, 39, 41 OMe, 37, 25, 27, 31 OH, MeO, 33, 15, 13, 14, OMe, HO, 12, 11, 10, 6, 7, 1, 36] <br><br> and analogs, derivatives and congeners that bind FKBP12 and possess the same pharmacologic properties as the above chemical compound. |
| "analog thereof" | 1 | To the extent not indefinite: A chemical compound with a structure similar to rapamycin (as defined). |
| "macrocyclic triene analog" | 1 | To the extent not indefinite: A macrocyclic triene molecule with a structure similar to rapamycin (as defined). |

*        Claim terms are deemed to have the same proposed meaning in all other claims of the same patent in which the respective term appears.

| '662 Claim Term | Exemplary Claim* | Proposed Construction |
|---|---|---|
| "incorporated into" | 1 | To the extent not indefinite: Combined with. |
| "in-stent late loss" | 1 | To the extent not indefinite: <br><br>The minimal luminal diameter (determined by a specific protocol) within the stent immediately following implantation minus minimal luminal diameter (determined by a specific protocol) within the stent at a specified time following implantation. |
| "in stent diameter stenosis" | 3 | To the extent not indefinite: <br><br>100 X [1 – (minimal lumen diameter determined by a specific protocol / reference vessel diameter determined by a specific protocol)]. |
| "quantitative coronary angiography" | 1 | To the extent not indefinite: An analytical technique employing particular specified hardware and software, and technician assumptions. |
| "mean in-stent late loss" | 5 | To the extent not indefinite: The average of in-stent late loss values. |
| "human population" | 5 | To the extent not indefinite: A class of people distinguished by particular traits or characteristics. |
| "mean in-stent diameter stenosis" | 7 | To the extent not indefinite: The average of in-stent diameter stenosis values. |
| "releases a portion". | 18 | To the extent not indefinite: Discharges less than all of X. |
| "about [X] ug" | 1 | Very close to X ug. |
| "about [X] mm" | 1 | Very close to X mm. |
| "about [X] %" | 3 | Very close to X %. |
| "about six weeks" | 18 | Very close to six weeks. |

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on September 25, 2009, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esquire [sbalick@ashby-geddes.com]
> John G. Day, Esquire [jday@ashby-geddes.com]
> Lauren E. Maguire, Esquire [lmaguire@ashby-geddes.com]
> ASHBY & GEDDES
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19801

I further certify that on September 25, 2009, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel and on the following non-registered participants in the manner indicated:

> ### *By E-Mail*
>
> David T. Pritikin, Esquire [dpritikin@sidley.com]
> William H. Baumgartner, Esquire [wbaumgartner@sidley.com]
> Russell E. Cass, Esquire [rcass@sidley.com]
> Jon M. Spanbauer, Esquire [jspanbauer@sidley.com]
> SIDLEY AUSTIN LLP
> One  South Dearborn
> Chicago, IL 60603

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> */s/ Andrew A. Lundgren*
> _____
> Josy W. Ingersoll (No. 1088) [jingersoll@ycst.com]
> Karen L. Pascale (No. 2903) [kpascale@ycst.com]
> Karen E. Keller (No. 4489) [kkeller@ycst.com]
> Andrew A. Lundgren (No. 4429) [alundgren@ycst.com]
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware  19801
> (302) 571-6600
> *Attorneys for Plaintiffs Boston Scientific Corporation*
> *and Boston Scientific Scimed, Inc.*