# EXHIBIT 6

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,097 | 10/24/2008 | 7223286 | CRDS-0108 | 8894 |

| | | | EXAMINER | |
|---|---|---|---|---|
| 45511          7590          01/30/2009 | | | O'CONNOR, CARY E | |
| WOODCOCK WASHBURN LLP | | | | |
| CIRA CENTRE, 12TH FLOOR | | ART UNIT | PAPER NUMBER | |
| 2929 ARCH STREET | | 3993 | | |
| PHILADELPHIA, PA 19104-2891 | | | | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 01/30/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

BSC-SJA-0155

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patents and Trademark Office
P.O.Box 1450
Alexandria, VA 22313-····
www.uspto

**DO NOT USE IN PALM PRINTER**

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS
SUGHRUE MION PLLC
2100 PENNSYVANIA AVENUE NW
SUITE 800
WASHINGTON, DC 20037

Date:

*MAILED*

*JAN 3 0 2009*

*CENTRAL REEXAMINATION UNIT*

**Transmittal of Communication to Third Party Requester**
**Inter Partes Reexamination**

REEXAMINATION CONTROL NO. : 95001097
PATENT NO. : 7223286
TECHNOLOGY CENTER : 3999
ART UNIT : 3993

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified Reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the inter partes reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it cannot be extended. See also 37 CFR 1.947.

If an ex parte reexamination has been merged with the inter partes reexamination, no responsive submission by any ex parte third party requester is permitted.

All correspondence relating to this inter partes reexamination proceeding should be directed to the Central Reexamination Unit at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

PTOL-2070(Rev.07-04)

BSC-SJA-0156

| **OFFICE ACTION IN INTER PARTES REEXAMINATION** | Control No. 95/001,097 | Patent Under Reexamination 7223286 |
|---|---|---|
| | Examiner Cary E. O'Connor | Art Unit 3993 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Responsive to the communication(s) filed by:
Patent Owner on _____
Third Party(ies) on <u>24 October 2008</u>

## RESPONSE TIMES ARE SET TO EXPIRE AS FOLLOWS:

*For Patent Owner's Response:*
    <u>2</u> MONTH(S) from the mailing date of this action. 37 CFR 1.945. EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.956.
*For Third Party Requester's Comments on the Patent Owner Response:*
    30 DAYS from the date of service of any patent owner's response. 37 CFR 1.947. NO EXTENSIONS OF TIME ARE PERMITTED. 35 U.S.C. 314(b)(2).

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

This action is not an Action Closing Prosecution under 37 CFR 1.949, nor is it a Right of Appeal Notice under 37 CFR 1.953.

## PART I. THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892
2. ☐ Information Disclosure Citation, PTO/SB/08
3. ☐ _____

## PART II. SUMMARY OF ACTION:

1a. ☒ Claims <u>1-77</u> are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2. ☐ Claims _____ have been canceled.
3. ☐ Claims _____ are confirmed. [Unamended patent claims]
4. ☐ Claims _____ are patentable. [Amended or new claims]
5. ☒ Claims <u>1-77</u> are rejected.
6. ☐ Claims _____ are objected to.
7. ☐ The drawings filed on _____        ☐ are acceptable        ☐ are not acceptable.
8. ☐ The drawing correction request filed on _____ is:   ☐ approved.  ☐ disapproved.
9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d). The certified copy has:
        ☐ been received.      ☐ not been received.      ☐ been filed in Application/Control No <u>95001097</u>.
10. ☐ Other _____

BSC-SJA-0157

Application/Control Number: 95/001,097                                    Page 2
Art Unit: 3993

## INTER PARTES REEXAMINATION

### DETAILED ACTION

This first Office action on the merits is being mailed together with the order granting reexamination. 37 CFR 1.935.

### Submissions

In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, after final rejection and 37 CFR 41.33 after appeal, which will be strictly enforced.

### Notification of Concurrent Proceedings

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 7,223,286 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Application/Control Number: 95/001,097                                                    Page 3
Art Unit: 3993

## Extensions of Time

Extensions of time under 37 CFR 1.136(a) will **not** be permitted in these
proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and
not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 314(c) requires
that *inter partes* reexamination proceedings "will be conducted with special dispatch"
(37 CFR 1.937). Patent owner extensions of time in *inter partes* reexamination
proceedings are provided for in 37 CFR 1.956. Extensions of time are not available for
third party requester comments, because a comment period of 30 days from service of
patent owner's response is set by statute. 35 USC 314(b)(3).

## Amendments in Reexamination Procedures

Patent owner is notified that any proposed amendment to the specification and/or
claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be
formally presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees
required by 37 CFR 1.20(c). Amendments in an inter partes reexamination proceeding
are made in the same manner that amendments in an ex parte reexamination are
made. MPEP 2666.01. See MPEP 2250 for guidance as to the manner of making
amendments in a reexamination proceeding.

BSC-SJA-0159

Application/Control Number: 95/001,097                                    Page 4
Art Unit: 3993

## Service of Papers

Any paper filed by either the patent owner or the third party requester *must be served* on the other party in the reexamination proceeding in the manner provided by 37 CFR 1.248. See 37 CFR 1.903 and MPEP 2666.06.

## Prior art considered

The prior art documents listed below are relied upon by requester in support of the request for inter partes in support of the request for inter partes reexamination.

1) U.S. Patent No. 5,464,650 to Berg et al. (Berg 650),

2) U.S. Patent No. 5,837,313 to Ding et al. (Ding 313),

3) WO 91/17724 to Helmus et al. (Helmus 724),

4) U.S. Patent No. 5,591,227 to Dinh et al. (Dinh 227),

5) U.S. Patent No. 5,578,075 to Dayton (Dayton 075),

6) U.S. Patent No. 5,624,411 to Tuch (Tuch 411),

7) U.S. Patent No. 5,342,348 to Kaplan (Kaplan 348 ),

8) WO 91/12779 to Wolff et al. (Wolff 776),

9) U.S. Patent No. 5,516,781 to Morris et al. (Morris 781),

10) U.S. Patent No. 5,288,711 to Mitchell et al. (Mitchell 711),

11) U.S. Patent No. 5,252,579 to Skotnicki et al. (Skotnicki 579),

12) U.S. Patent No. 5,441,977 to Russo et al. (Russo 977),

13) U.S. Patent No. 5,563,145 to Failli et al. (Failli 145),

14) U.S. Patent No. 5,362,718 to Skotnicki et al. (Skotnicki 718),

Application/Control Number: 95/001,097                          Page 5
Art Unit: 3993

15) U.S. Patent No. 5,391,730 to Skotnicki et al. (Skotnicki 730),

16) U.S. Patent No. 5,256,790 to Nelson (Nelson 790),

17) U.S. Patent No. 6,096,070 to Ragheb et al. (Ragheb 070),

18) U.S. Patent No. 6,120,536 to Ding (Ding 536),

19) U.S. Patent No. 5,304,121 to Sahatjian (Sahatjian 121), and

20) Cordis Admissions.

**Grounds of Rejections proposed by the third party requester**

**Berg 650 Patent obviousness combinations**

**Ground #1.** Claims 1-2, 5-17, 19, 21-22, 24-25, 28, 30, 32, 40-41, 44, 47-59, 61, 63-64, 66-67, 70, and 74 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Berg 650 in view of Morris 781 or Mitchell 711.

**Ground #2.** Claims 3, 4, 43, 45, and 46 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Berg 650 in view of Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in view of Ragheb 070.

**Ground #3.** Claim 42 is are unpatentable under 35 U.S.C. § 103(a) as being obvious over Berg 650 and Morris 781 or Mitchell 711 as applied to claim 40 above, and further in view of Sahatjian 121.

**Ground # 4.** Claims 18 and 60 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Berg and Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in view of Ding 313.

**Ground #5.** Claims 23, 26, 65, and 68 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Berg 650 and Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in view of Helmus 724.

**Ground # 6.** Claims 26 and 68 are unpatentable under 35 U.S.C. § 103(a) as being obvious over obvious Berg 650 and Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in view of Dayton 075.

**Ground # 7.** Claims 20 and 62 are **unpatentable under 35 U.S.C. § 103(a) as being obvious over Berg 650 and Morris 781 or Mitchell 711** as applied to claims 1 and 40 above, and further in view of Kaplan 348.

**Ground # 8.** **Claims 1-2, 5-17, 19, 21-22, 24-25, 27-41, 44, 47-59, 61, 63-64, 66-67, and 69-77 are obvious in view of Berg 650 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790.**

**Ground # 9.** Claims 3, 4, 43, 45, and 46 are obvious in view of Berg 650 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Ragheb 070.

**Ground # 10.** Claim 42 is obvious in view of Berg 650 in combination with Skotnicki 579, **Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790**, and Sahatjian 121.

**Ground # 11.** Claims 18 and 60 are obvious in view of Berg 650 in combination with Skotnicki 579, **Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790**, and Ding 313.

**Ground # 12.** Claims 23, 26, 65, and 68 are obvious in view of Berg 650 in combination with Skotnicki 579, **Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790**, and Helmus 724.

**Ground # 13.** Claims 26 and 68 are obvious in view of Berg 650 in combination with Skotnicki 579, **Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790**, and Dayton 075.

**Ground # 14.** Claims 20 and 62 are obvious in view of Berg 650 in combination with Skotnicki 579, **Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790**, and Kaplan 348.

**Ding 313 Patent obviousness combinations**

**Ground # 15.** Claims 1-2, 5-10, 18-19, 25, 28, 30, 32, 40-41, 44, 47-52, 60-61, 67, 70, and 74 are obvious in view of Ding 313 in combination with Morris 781 or Mitchell 711.

**Ground # 16.** Claims 3, 4, 43, 45, and 46 are obvious in view of Ding 313 in combination with Morris 781 or Mitchell 711 and Ragheb 070.

**Ground # 17.** Claim 42 is obvious in view of Ding 313 in combination with Morris 781 or Mitchell 711 and Sahatjian 121.

**Ground # 18.** Claims 11-17, 21-22, 24, 53-59, 63-64, and 66 are obvious in view of Ding 313 or Mitchell 711 in combination with Morris 781 and Berg 650.

**Ground # 19.** Claims 11-15, 23, 26, 53-57, 65, and 68 are obvious in view of Ding 313 or Mitchell 711 in combination with Morris 781 and Helmus 724.

**Ground # 20.** Claims 15, 26, 57, and 68 are obvious in view of Ding 313 in combination with Morris 781 or Mitchell 711 and Dayton 075.

**Ground # 21.** Claims 11-13, 20, 53-55, and 62 are obvious in view of Ding 313 in combination with Morris 781 or Mitchell 711 and Kaplan 348.

**Ground # 22.** Claims 11-12, 14-15, 53-54, and 56-57 are obvious in view of Ding 313 in combination with Morris 781 or Mitchell 711 and Dinh 227.

**Ground #23.** Claims 13 and 55 are obvious in view of Ding 313 in combination with Morris 781 or Mitchell 711 and Wolff 779.

**Ground # 24.** Claims 1-2, 5-10, 18-19, 25, 27-35, 37-38, 40-41, 44, 47-52, 60-61, 67, 69-72, and 74-76 are obvious in view of Ding 313 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790.

**Ground # 25.** Claims 3, 4, 43, 45, and 46 are obvious in view of Ding 313 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Ragheb 070.

**Ground # 26.** Claim 42 is obvious in view of Ding 313 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Sahatjian 121.

**Ground # 27.** Claims 11-17, 21-22, 24, 36, 39, 53-59, 63-64, 66, 73, and 77 are

BSC-SJA-0163

Application/Control Number: 95/001,097                                    Page 8
Art Unit: 3993

obvious in view of Ding 313 in combination with Skotnicki 579, **Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790,** and Berg 650.

**Ground # 28.** Claims 11-15, 23, 26, 53-57, 65, and 68 are obvious in view of Ding 313 in combination with Skotnicki 579, **Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790** and Helmus 724.

**Ground # 29.** Claims 15, 26, 57, and 68 are obvious in view of Ding 313 in combination with Skotnicki 579, **Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790,** and Dayton 075.

**Ground # 30.** Claims 11-13, 20, 53-55, and 62 are obvious in view of Ding 313 in combination with Skotnicki 579, **Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790,** and Kaplan 348.

**Ground # 31.** Claims 11-12, 14-15, 53-54, and 56-57 are obvious in view of Ding 313 in combination with Skotnicki 579, **Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790,** and Dinh 227.

**Ground # 32.** Claims 13 and 55 are obvious in view of Ding 313 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Wolff 779.

**Helmus 724 Application obviousness combinations**

**Ground # 33.** Claims 1, 2, 5, 7-15, 18-26, 28, 30, 32, 40, 41, 44, 47, 49- 57, 60-68, 70, and 74 are obvious in view of Helmus 724 in combination with Morris 781 or Mitchell 711.

**Ground # 34.** Claims 3, 4, 43, 45, and 46 are obvious in view of Helmus 724 in combination with Morris 781 **or Mitchell 711** and Ragheb 070.

**Ground # 35.** Claim 42 is obvious in view of Helmus 724 in combination with Morris 781 or Mitchell 711 and Sahatjian 121.

**Ground # 36.** Claims 6, 16-17, 22, 48, 58-59, and 64 are obvious in view of Helmus 724 in combination with Morris 781 or Mitchell 711 and Berg 650.

**Ground # 37.** Claims 20 and 62 are obvious in view of Helmus 724 in combination with

BSC-SJA-0164

Application/Control Number: 95/001,097                                    Page 9
Art Unit: 3993

Morris 781 or Mitchell 711 and Kaplan 348.

**Ground # 38.** Claims 18 and 60 are obvious in view of Helmus 724 in combination with Morris 781 or Mitchell 711 and Ding 313.

**Ground # 39.** Claims 1, 2, 5, 7-15, 18-41, 44, 47, 49-57, and 60-77 are obvious in view of Helmus 724 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790.

**Ground # 40.** Claims 3, 4, 43, 45, and 46 are obvious in view of Helmus 724 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Ragheb 070.

**Ground # 41.** Claim 42 is obvious in view of Helmus 724 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Sahatjian 121.

**Ground # 42.** Claims 6, 16-17, 22, 48, 58-59, and 64 are obvious in view of Helmus 724 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Berg 650.

**Ground # 43.** Claims 20 and 62 are obvious in view of Helmus 724 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Kaplan 348.

**Ground # 44.** Claims 18 and 60 are obvious in view of Helmus 724 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Ding 313.

**Dinh 227 Patent obviousness combinations**

**Ground # 45.** Claims 1-2, 5-12, 14-15, 21-22, 28, 30, 32, 40-41, 44, 47- 54, 56-57, 63-64, 70, and 74 are obvious in view of Dinh 227 in combination with Morris 781 or Mitchell 711.

**Ground # 46.** Claims 3, 4, 43, 45, and 46 are obvious in view of Dinh 227 in combination with Morris 781 or Mitchell 711 and Ragheb 070.

**Ground # 47.** Claim 42 is obvious in view of Dinh 227 in combination with Morris 781 or Mitchell 711 and Sahatjian 121.

**Ground # 48.** Claims 13, 15-17, 19, 24-25, 55, 57-59, 61-62, and 66-67 are obvious in view of Dinh 227 in combination with Morris 781 or Mitchell 711 and Berg 650.

**Ground # 49.** Claims 19, 23, 26, 61, 65, and 68 are obvious in view of Dinh 227 in combination with Morris 781 or Mitchell 711 and Helmus 724.

**Ground # 50.** Claims 19, 20, 61, and 62 are obvious in view of Dinh 227 in combination with Morris 781 or Mitchell 711 and Kaplan 348.

**Ground # 51.** Claims 18, 19, 60, and 61 are obvious in view of Dinh 227 in combination with Morris 781 or Mitchell 711 and Ding 313.

**Ground # 52.** Claims 1-2, 5-12, 14-15, 21-22, 27-34, 37, 40-41, 44, 47-54, 56-57, 63-64, 69-71, and 74-75 are obvious in view of Dinh 227 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skolnicki 730 or Nelson 790.

**Ground # 53.** Claims 3, 4, 43, 45, and 46 are obvious in view of Dinh 227 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Ragheb 070.

**Ground # 54.** Claim 42 is obvious in view of Dinh 227 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Sahatjian 121.

**Ground # 55.** Claims 13, 15-17, 19, 24-25, 35, 38, 55, 57-59, 61-62, 66-67, 72, and 76 are obvious in view of Dinh 227 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Berg 650.

**Ground # 56.** Claims 19, 23, 26, 61, 65, and 68 are obvious in view of Dinh 227 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Helmus 724.

**Ground # 57.** Claims 19, 20, 61, and 62 are obvious in view of Dinh 227 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Kaplan 348.

**Ground # 58.** Claims 18, 19, 60, and 61 are obvious in view of Dinh 227 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Ding 313.

Application/Control Number: 95/001,097                                    Page 11
Art Unit: 3993

## Dayton 075 Patent obviousness combinations

**Ground # 59.** Claims 1, 2, 5-6, 8-10, 15, 21, 25-26, 28, 30, 32, 40, 41, 44,47-48, 50-52, 57, 63, 67-68, 70, and 74 are obvious in view of Dayton 075 in combination with Morris 781 or Mitchell 711.

**Ground # 60.** Claims 3, 4, 43, 45, and 46 are obvious in view of Dayton 075 in combination with Morris 781 or Mitchell 711 and Ragheb 070.

**Ground # 61.** Claim 42 is obvious in view of Dayton 075 in combination with Morris 781 or Mitchell 711 and Sahatjian 121.

**Ground # 62.** Claims 7, 11-14, 16-17, 19, 21-22, 24, 49, 53-56, 58-59, 61-64, and 66 are obvious in view of Dayton 075 in combination with Morris 781 or Mitchell 711 and Berg 650.

**Ground # 63.** Claims 11-14, 19, 23, 53-56, 61, and 65 are obvious in view of Dayton 075 in combination with Morris 781 or Mitchell 711 and Helmus 724.



**Ground # 64.** Claims 11-13, 19-20, 53-55, and 62 are obvious in view of Dayton 075 in combination with Morris 781 or Mitchell 711 and Kaplan 348.

**Ground # 65.** Claims 11-12, 14, 53-54, and 56 are obvious in view of Dayton 075 in combination with Morris 781 or Mitchell 711 and Dinh 227.

**Ground # 66.** Claims 18, 19, 60, and 61 are obvious in view of Dayton 075 in combination with Morris 781 or Mitchell 711 and Ding 313.

**Ground # 67.** Claims 1-2, 5-6, 8-10, 15, 21, 25-41, 44, 47-48, 50-52, 57, 63, and 67-77 are obvious in view of Dayton 075 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790.

**Ground # 68.** Claims 3, 4, 43, 45, and 46 are obvious in view of Dayton 075 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Ragheb 070.

**Ground # 69.** Claim 42 is obvious in view of Dayton 075 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Sahatjian 121.

**Ground # 70.** Claims 7, 11-14, 16-17, 19, 21-22, 24, 49, 53-56, 58-59, 61-64, and 66 are obvious in view of Dayton 075 in combination with Skotnicki 579, Russo 977, Failli



145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Berg 650.

**Ground # 71.** Claims 11-14, 19, 23, 53-56, 61 and 65 are obvious in view of Dayton 075 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Helmus 724.

**Ground # 72.** Claims 11-13, 19-20, 53-55, and 62 are obvious in view of Dayton 075 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Kaplan 348.

**Ground # 73.** Claims 11-12, 14, 53-54, and 56 are obvious in view of Dayton 075 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Dinh 227.

**Ground # 74.** Claims 18, 19, 60, and 61 are obvious in view of Dayton 075 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Ding 313.

**Tuch 411 Patent obviousness combinations**

**Ground # 75.** Claims 1-2, 5-17, 19-22, 24-25, 28, 30, 32, 40-41, 44, 47-59, 61-64, 66-67, 70 and 74 are obvious in view of Tuch 411 in combination with Morris 781 or Mitchell 711.

**Ground # 76.** Claims 3, 4, 43, 45 and 46 are obvious in view of Tuch 411 in combination with Morris 781 or Mitchell 711 and Ragheb 070.

**Ground # 77.** [Claim 42][1] is obvious in view of Tuch 411 in combination with Morris 781 or Mitchell 711 and Sahatjian 121

**Ground # 78.** Claims 18 and 60 are obvious in view of Tuch 411 in combination with Morris 781 or Mitchell 711 and Ding 313.

**Ground # 79.** Claims 23, 26, 65, and 68 are obvious in view of Tuch 411 in combination with Morris 781 or Mitchell 711 and Helmus 724.

**Ground # 80.** Claims 26 and 68 are obvious in view of Tuch411 in combination with Morris 781 or Mitchell 711 and Dayton 075.

---

[1] The request omits the claim number so the examiner assumes that the Requestor meant that claim 42 was to be considered obvious in view of Tuch, Morris and Ding, as has set forth above with other primary reference combinations.

**Ground # 81.**  Claims 20 and 62 are obvious in view of Tuch 411 in combination with Morris 781 or Mitchell 711 and Kaplan 348.

**Ground # 82.**  Claims 1-2, 5-17, 19-22, 24-25, 27-41, 44, 47-59, 61-64, 66-67, and 69-77 are obvious in view of Tuch 411 in combination with view of Skotnicki 579.

**Ground # 83.**  Claims 3, 4, 43, 45, and 46 are obvious in view of Tuch 411 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Ragheb 070.

**Ground # 84.**  Claim 42 is obvious in view of Tuch 411 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Sahatjian 121.

**Ground # 85.**  Claims 18 and 60 are obvious in view of Tuch 411 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Ding 313.

**Ground # 86.**  Claims 23, 26, 65, and 68 are obvious in view of Tuch 411 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Helmus 724.

**Ground # 87.**  Claims 26 and 68 are obvious in view of Tuch 411 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Dayton 075.

**Ground # 88.**  Claims 20 and 62 are obvious in view of Tuch 411 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Kaplan 348.

**Kaplan 348 Patent obviousness combinations**

**Ground # 89.**  Claims 1-2, 5, 8-13, 19, 22, 25, 26, 28, 30, 32, 40, 41, 44, 47, 50-55, 61-64, 67-68, 70, and 74 are obvious in view of Kaplan 348 in combination with Morris 781 or Mitchell 711.

**Ground # 90.**  Claims 3, 4, 43, 45, and 46 are obvious in view of Kaplan 348 in

Application/Control Number: 95/001,097                                    Page 14
Art Unit: 3993

combination Morris 781 or Mitchell 711 and Ragheb 070.

**Ground # 91.** Claim 42 is obvious in view of Kaplan 348 in combination with Morris 781 or Mitchell 711 and Sahatjian 121.

**Ground # 92.** Claims 6-7, 14-17, 24, 48-49, 56-59, and 66 are obvious in view of Kaplan 348 in combination with Morris 781 or Mitchell 711 and Berg 650.

**Ground # 93.** Claims 14-15, 23, 56-57, and 65 are obvious in view of Kaplan 348 in combination with Morris 781 or Mitchell 711 and Helmus 724.

**Ground # 94.** Claims 6, 15, 48, and 57 are obvious in view of Kaplan 348 in combination with Morris 781 or Mitchell 711 and Dayton 075.

**Ground # 95.** Claims 6-7, 18, 48-49, and 60 are obvious in view of Kaplan 348 in combination with Morris 781 or Mitchell 711 and Ding 313.

**Ground # 96.** Claims 6-7, 14-15, 48-49, and 56-57 are obvious in view of Kaplan 348 in combination with Morris 781 or Mitchell 711 and Dinh 227.

**Ground # 97.** Claims 1-2, 5, 8-13, 19-22, 25-41, 44, 47, 50-55, 61-64 and 67-77 are obvious in view of Kaplan 348 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790.

**Ground # 98.** Claims 3, 4, 43, 45, and 46 are obvious in view of Kaplan 348 in combination Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Ragheb 070.

**Ground # 99.** Claim 42 is obvious in view of Kaplan 348 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Sahatjian 121.

**Ground # 100.** Claims 6-7, 14-17, 24, 48-49, 56-59, and 66 are obvious in view of Kaplan 348 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Berg 650.

**Ground # 101.** Claims 14-15, 23, 56-57 and 65 are obvious in view of Kaplan 348 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790,  and Helmus 72

**Ground # 102.** Claims 6, 15, 48 and 57 are obvious in view of Kaplan 348 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Dayton 075.

Application/Control Number: 95/001,097                                    Page 15
Art Unit: 3993

**Ground # 103.** Claims 6-7, 18, 48-49 and 60 are obvious in view of Kaplan 348 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Ding 313.

**Ground # 104.** Claims 6-7, 14-15, 48-49 and 56-57 are obvious in view of Kaplan 348 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790,  and Dinh 227.

**Wolff 779 Application obviousness combinations**

**Ground # 105.** Claims 1-2, 8-10, 13, 28, 30, 32, 40-41, 44, 50-52, 55, 70, and 74 are obvious in view of Wolff 779 in combination with Morris 781 or Mitchell 711.

**Ground # 106.** Claims 3, 4, 43, 45 and 46 are obvious in view of Wolff 779 in combination Morris 781 or Mitchell 711 and Ragheb 070.

**Ground # 107.** Claim 42 is obvious in view of Wolff 779 in combination with Morris 781 or Mitchell 711 and Sahatjian 121.

**Ground # 108.** Claims 5-7, 11-12, 14-17, 19, 21-22, 24-25, 47-49, 53-54, 56-59, 61-64 and 66-67 are obvious in view of Wolff 779 in combination with Morris 781 or Mitchell 711 and Berg 650.

**Ground # 109.** Claims 23, 25, 65, and 68 are obvious in view of Wolff 779 in combination with Morris 781 or Mitchell 711 and Helmus 724.

**Ground # 110.** Claims 11-13, 20, 53-55 and 62 are obvious in view of Wolff 779 in combination with Morris 781 or Mitchell 711 and Kaplan 348.

**Ground # 111.** Claims 18 and 60 are obvious in view of Wolff 779 in combination with Morris 781 or Mitchell 711 and Ding 313.

**Ground # 112.** Claims 1-2, 8-10, 13, 27-34, 37, 40-41, 44, 50-52, 55, 69- 71 and 74-75 are obvious in view of Wolff 779 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790.

**Ground # 113.** Claims 3, 4, 43, 45 and 46 are obvious in view of Wolff 779 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Ragheb 070.

**Ground # 114.** Claim 42 is obvious in view of Wolff 779 in combination with Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Sahatjian 121.

**Ground # 115.** Claims 5-7, 11-12, 14-17, 19, 21-22, 24-25, 35-36, 38-39, 47-49, 53-54, 56-59, 61-64, 66-67, 72-73 and 76-77 are obvious in view of Wolff 779 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Berg 650.

**Ground # 116.** Claims 23, 25, 65, and 68 are obvious in view of Wolff 779 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Helmus 724.

**Ground # 117.** Claims 11-13, 20, 53-55, and 62 are obvious in view of Wolff 779 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Kaplan 348.

**Ground # 118.** Claims 18 and 60 are obvious in view of Wolff 779 in combination with Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Ding 313.

**Morris 781 Patent Anticipation and obviousness combinations**

**Ground # 119. Claims 1, 8, 10, 14, 15, 28, 30 and 32 are anticipated by Morris 781.**

**Ground # 120.** Claims 3 and 4 are obvious in view Morris 781 and Ragheb 070.

**Ground # 121.** Claims 2, 5-7, 11-12, 13, 16, 17, 19, 20, 21, 22, 24, 25, 40, 41, 44, 47 - 59, 61-67, 70 and 74 are obvious in view of Morris 781 in combination with Berg 650.

**Ground # 122.** Claims 43, 45 and 46 are obvious in view of Morris 781 in combination with Berg 650 and Ragheb.

**Ground # 123.** Claims 2, 5, 6, 7, 18, 19, 25, 35, 38, 40, 41, 44, 47-52, 56, 57, 60, 61, 67, 70 and 74 are obvious in view of Morris 781 in combination with Ding 313.

**Ground # 124.** Claims 43, 45 and 46 are obvious in view of Morris 781 in combination with Ding 313 and Ragheb 070.

**Ground # 125.** Claims 5, 11-13, 19, 21-26, 35, 36, 38-41, 47, 50-57, 61-68, 70 and 74

Application/Control Number: 95/001,097                                   Page 17
Art Unit: 3993

are obvious in view of Morris 781 in combination with Helmus 724.

**Ground # 126.** Claims 43, 45 and 46 are obvious in view of Morris 781 in combination with Helmus 724 and Ragheb 070.

**Ground # 127.** Claims 2, 5, 6, 7, 11, 12, 19-22, 24, 40, 41, 44, 47-54, 56, 57, 61-64, 66, 70 and 74 are obvious in view of Morris 781 in combination with Dinh 227.

**Ground # 128.** Claims 43, 45 and 46 are obvious in view of Morris 781 in combination with Dinh 227 and Ragheb 070.

**Ground # 129.** Claims 2, 5, 6, 11, 12, 21, 22, 25, 40, 41, 44, 47, 50-54, 56, 57, 64, 67, 70 and 74 are obvious in view of Morris 781 in combination with Dayton 075.

**Ground # 130.** Claims 43, 45 and 46 are obvious in view of Morris 781 in combination with Dayton 075 and Ragheb.

**Ground # 131.** Claims 2, 5-7, 11-13, 16, 17, 19-22, 24, 25, 40, 41, 44, 47-59, 61-67, 70 and 74 are obvious in view of Morris 781 in combination with Tuch 411.

**Ground # 132.** Claims 43, 45 and 46 are obvious in view of Morris 781 in combination with Tuch 411 and Ragheb.

**Ground # 133.** Claims 11-13, 19-22, 25, 26, 40, 41, 44, 50-57, 61-64, 67, 68, 70 and 74 are obvious in view of Morris 781 in combination with Kaplan 348.

**Ground # 134.** Claims 43, 45 and 46 are obvious in view of Morris 781 in combination with Kaplan 348 and Ragheb.

**Claim Rejections Utilizing the Cordis Admissions**

**Ground # 135.** Claims 1-2, 5-17, 19, 21-22, 24-25, 28, 30, 32, 40-41, 44, 47-59, 61, 63-64, 66-67, 70 and 74 are obvious in view of Berg 650 in combination with Morris 781, and in further view of Cordis' admissions.

**Ground # 136.** Claims 1-2, 5-17, 19, 21-22, 24-25, 27-41, 43-44, 47-59, 61, 63-64, 66-67 and 69-77 are obvious in view of Berg 650 in combination with Skotnicki 579, and in further view of Cordis' admissions.

### *Statutory Basis for Claim Rejections*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a
foreign country or in public use or on sale in this country, more than one year
prior to the date of application for patent in the United States.

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed
or described as set forth in section 102 of this title, if the differences between the
subject matter sought to be patented and the prior art are such that the subject
matter as a whole would have been obvious at the time the invention was made
to a person having ordinary skill in the art to which the subject matter pertains.
Patentability shall not be negatived by the manner in which the invention was
made.

(e) the invention was described in (1) an application for patent, published under
section 122(b), by another filed in the United States before the invention by the
applicant for patent or (2) a patent granted on an application for patent by
another filed in the United States before the invention by the applicant for patent,
except that an international application filed under the treaty defined in section
351(a) shall have the effects for purposes of this subsection of an application
filed in the United States only if the international application designated the
United States and was published under Article 21(2) of such treaty in the English
language.

BSC-SJA-0174

## Proposed Claim Rejections

## Berg Patent Proposed Obviousness Combinations.

### Ground #1.

The request submits that claims 1-2, 5-17, 19, 21-22, 24-25, 28, 30, 32, 40-41,
44, 47-59, 61, 63-64, 66-67, 70 and 74 are unpatentable under 35 U.S.C. § 103(a) as
being obvious over Berg 650 in view of Morris 781 or Mitchell 711.

Claims 1-2, 5-17, 19, 21-22, 24-25, 28/1, 28/2, 28/5-17, 28/19, 28/21, 28/22,

28/24, 28/25, 30/1, 30/2, 30/5-17, 30/19, 30/ 21, 30/22, 30/24, 30/25, 32/1, 32/2, 32/5-

17, 32/19, 32/21, 32/22, 32/24, 32/25, 40-41, 44, 47-59, 61, 63-64, 66-67, 70/40, 70/41,

70/44, 70/47-59, 70/61, 70/63, 70/64, 70/66, 70/67, 74/40, 74/41, 74/44, 74/47-59,

74/61, 74/63, 74/64, 74/66 and 74/67 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Berg 650 in view of Morris 781 or Mitchell 711.

*Regarding claims 1 and 40*, Berg teaches an intravascular stent having a coating

thereon (column 3, line 52).   The coating may comprise a polymer and a therapeutic

substance (column 3, line 56) to prevent restenosis (column 1, lines 10-11 and column

7, lines 1-15). Berg does not disclose that the therapeutic substance is rapamycin or a

macrocyclic lactone analog thereof but states, at column 5, lines 19, "[t]he therapeutic

substance used in the present invention could be virtually any therapeutic substance

which possesses desirable therapeutic characteristics for application to a blood vessel."

Morris teaches that it is known to use an antiproliferative effective amount

rapamycin, delivered via a stent, to prevent restenosis or cell proliferation (column 3,

lines 51-64).  Morris further discloses that rapamycin may be encapsulated in a polymer
matrix for delivery (column 3, lines 51-64).

Mitchell  teaches that it is known to use rapamycin, delivered via a stent, to
prevent restenosis or cell proliferation (column 3, lines 24-31).  A solid carrier can be
used to administer rapamycin including polyvinylpyrrolidine (column 6, lines 24-28 and
column 7, lines 10-15).

It would have been obvious to one of ordinary skill in the art at the time the
invention was made to modify the stent of Berg to include rapamycin, in view of the
teaching of Morris or Mitchell.  All three references teach treating the vessel with
therapeutic agents in order to inhibit or lessen restenosis.  Both Morris and Mitchell
disclose that rapamycin is a known and effective inhibitor of cell proliferation and is used
to treat restenosis via a vascular stent.  Furthermore, the combination would have
yielded nothing more than predictable results to one of ordinary skill in the art at the
time of the invention, i.e., one skilled in the art would have recognized that rapamycin
would allow the stent of Berg to be used as Berg intended, e.g. to prevent restenosis in
the vascular system.

*Regarding claims 2 and 44*, Berg discloses that the stent disclosed by Palmaz in
U.S. Patent No. 4,733,665 may be used.  The Palmaz stent comprises a thinned walled
cylinder 71 containing a plurality of struts.

*Regarding claims 5, 6, 47 and 48*, Berg discloses that the coating may be applied
to the stent by dipping (column 5, Example 2) or by spraying (column 5, Example 1).

Application/Control Number: 95/001,097                                        Page 21
Art Unit: 3993

*Regarding claims 7 and 49*, Berg discloses: "The ratio of therapeutic substance
to polymer in the solution will depend on the efficacy of the polymer in securing the
therapeutic substance onto the stent and the rate at which the coating is to release the
therapeutic substance . . . A wide ratio of therapeutic substance to polymer could
therefore be appropriate and could range from about 10:1 to about 1:100 (column 5,
lines 5-18). It would have been obvious to one having ordinary skill in the art at the time
the invention was made to provide the rapamycin in the coating at a weight percentage
of about 30% or a weight ratio of drug to polymer of about 3:7, since it has been held
that discovering an optimum value of a result effective variable involves only routine skill
in the art. *In re Boesch*, 617 F.2d 272, 205 USPQ 215 (CCPA 1980).

*Regarding claims 8, 9, 50 and 51*, Berg discloses "[t]he polymer may either be a
biostable or bioabsorbable polymer" (column 4, lines 37-38).

*As to claims 10-17, 19, 21, 22, 24, 25, 52-59, 61, 63-64, 66 and 67*, Berg
discloses that the polymer may comprise polycaprolactone, poly(lactide-co-glycolide)
(column 4, line 44), polyanhydride (column 4, line 46), poly(amino acids) (column 4, line
49), polysaccharide, e.g. cellulose, starch (column 4, line 54), polyphosphazenes
(column 4, line 52), copoly(ether-esters) (column 4, line 51), vinyl homopolymers and
copolymers (claim 6), polyvinyl acetate, copolymers of vinyl monomers (column 4, line
65), an acrylate based polymer, e.g. cyanoacrylates (column 4, line 49), ethylene-
methyl methacrylate copolymers (column 4, lines 66-67), cellulose acetate, cellulose
butyrate, cellulose acetate butyrate etc (column 5, lines 4-7), and polyvinylidene fluoride
(column 4, line 62).

BSC-SJA-0177

Application/Control Number: 95/001,097                                    Page 22
Art Unit: 3993

*Regarding claims 28/1, 28/2, 28/5-17, 28/19, 28/21, 28/22, 28/24, 28/25, 30/1, 30/2,*

*30/5-17, 30/19, 30/21, 30/22, 30/24, 30/25, 70/40, 70/41, 70/44, 70/47-59, 70/61,*

*70/61, 70/63, 70/64, 70/66, 70/67, 74/40, 74/41, 74/44, 74/47-59, 74/61, 74/61, 74/63,*

*74/64, 74/66, 74/67,* Berg discloses that the drug may be released at a controlled rate

for a period of days. "[T]he rate at which the drug is delivered can be controlled by the

selection of an appropriate bioabsorbable or biostable polymer and by the ratio of drug

to polymer in the solution" and "[t]he release rate can be further controlled by varying

the ratio of drug to polymer in the multiple layers. For example, a higher drug-to-

polymer ratio in the outer layers than in the inner layers would result in a higher early

dose which would decrease over time". (see column 2, lines 52-67 and Figure 1). It

would have been obvious to one having ordinary skill in the art at the time the invention

was made to formulate the coating of Berg as modified by Morris or Mitchell to release

the rapamycin for a period of 14 days or several weeks as it is known that cell

proliferation occurs in the first two weeks after injury to the arterial smooth muscle cells,

and since it has been held that discovering an optimum value of a result effective

variable involves only routine skill in the art. In re Boesch, 617 F.2d 272, 205 USPQ

215 (CCPA 1980).

*As to claims 32/1, 32/2, 32/5-17, 32/19, 32/21, 32/22, 32/24, 32/25, and 40,* Berg

discloses "to provide a stent having a therapeutically significant amount of a drug", i.e.

present a therapeutically beneficial amount to inhibit neointimal proliferation (see Berg,

column 2, lines 13-15).

Application/Control Number: 95/001,097                      Page 23
Art Unit: 3993

*Regarding claim 41,* Berg discloses that the polymeric carrier and drug are mixed
together (abstract).

Accordingly, this rejection of claims 1-2, 5-17, 19, 21-22, 24-25, 28/1, 28/2, 28/5-
17, 28/19, 28/21, 28/22, 28/24, 28/25, 30/1, 30/2, 30/5-17, 30/19, 30/ 21, 30/22, 30/24,
30/25, 32/1, 32/2, 32/5-17, 32/19, 30/21, 30/22, 30/24, 30/25, 32/1, 32/2, 32/5-17,
32/19, 32/21, 32/22, 32/24, 32/25, 40-41, 44, 47-59, 61, 63-64, 66-67, 70/40, 70/41,
70/44, 70/47-59, 70/61, 70/61, 70/63, 70/64, 70/66, 70/67, 74/40, 74/41, 74/44, 74/47-
59, 74/61, 74/61, 74/63, 74/64, 74/66 and 74/67, based on Berg 650 in view of Morris
781 or Mitchell 711 was proposed by the third party requester in the request for
reexamination and is being adopted essentially as proposed in the request.

Furthermore, claims 27/3, 27/4, 27/18, 27/20, 27/23, 28/3, 28/4, 28/18, 28/20,
28/23, 30/3, 30/4, 30/18, 30/20, 30/23, 32/3, 32/4, 32/18, 32/20, 32/23, 70/42, 70/43,
70/45, 70/46, 70/60, 70/62, 70/68, 74/42, 74/43, 74/45, 74/46, 74/60, 74/62 and 74/68
depend upon claims that are not rejected with the combination of Berg and Morris or
Mitchell.   Accordingly, the rejection of these claims based on Berg 650 and Morris 781
or Mitchell 711 is not adopted essentially as proposed in the request.

### Ground #2.

The request submits that claims 3, 4, 43, 45, and 46 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Berg 650 in view of Morris 781 or
Mitchell 711 as applied to claims 1 and 40 above, and further in view of Ragheb
070.

Application/Control Number: 95/001,097                                    Page 24
Art Unit: 3993

Claims 3, 4, 43, 45, and 46 are rejected under 35 U.S.C. 103(a) as being
unpatentable over Berg 650 in view of Morris 781 or Mitchell 711 as applied to claims 2
and 40 above, and further in view of Ragheb 070.

*Regarding claims 3 and 45*, the stent of Berg as modified by Morris or Mitchell
711, set forth above, does not include a channel formed in at least one strut. Ragheb
shows a stent 10 having a coating thereon. The stent is formed of struts 14 having
channels 28' formed therein. Ragheb discloses that "[t]he wells 28' may also be in the
form of slots or grooves in the surface of the base material 14 of the medical device.
This aspect of the invention provides the advantage of better controlling the total
amount of the bioactive material 18 to be released as well as the rate at which it is
released." (column 16, lines 48-51). It would have been obvious to one of ordinary skill
in the art at the time the invention was made to modify the stent of Berg as modified by
Morris with channels located in the struts, as taught by Ragheb, in order to control the
amount and rate of release of rapamycin.

*Regarding claims 4 and 46*, Figure 10B of Ragheb shows a rectangular channel
with a close perimeter and an open top. The channel is smaller in all dimensions than
the strut.

*Regarding claim 43*, Berg and Morris or Mitchell fails to disclose that the drug is
entrapped on the surface of the stent by the polymeric carrier. Ragheb discloses that
the drug 18 is entrapped by a polymeric layer 20 which controls the release of the drug.
Ragheb discloses "any degradation of the bioactive material which might otherwise
occur by other polymer coating techniques is avoided" (column 19, lines 51-53). Thus,

BSC-SJA-0180

the manner of enhancing a particular device (stent with drug delivery capabilities) was

made part of the ordinary capabilities of one skilled in the art based upon the teaching

of such improvement in Ragheb. Accordingly, one of ordinary skill in the art would have

been capable of applying this known "improvement" technique in the same manner to

the stent of Berg and the results would have been predictable to one of ordinary skill in

the art, namely, one skilled in the art would have readily recognized that the entrapment

system of Ragheb would reduce the degradation of the drug as might occur with the

polymer coating technique of Berg.

Accordingly, this rejection of claims 3, 4, 43, 45, and 46 based on Berg 650 in

view of Morris 781 or Mitchell 711 and Ragheb 070 was proposed by the third party

requester in the request for reexamination is and being adopted essentially as proposed

in the request.

## Ground #3.

**The request submits that claim 42 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Berg 650 and Morris 781 or Mitchell 711 as applied to claim 40 above, and further in view of Sahatjian 121.**

Claim 42 is rejected under 35 U.S.C. 103(a) as being unpatentable over Berg

650 and Morris 781 or Mitchell 711 as applied to claim 40 above, and further in view of

Sahatjian 121. The coating of Berg comprises a mixture of polymer and a drug but fails

to disclose a coating wherein the polymer is bound to the drug. Sahatjian discloses a

coating that is delivered to the vascular system to prevent restenosis. The coating

comprises a polymer which is bound to a drug. The substitution of one known element

(coating of Berg) for another (coating of Sahatjian) would have been obvious to one of

BSC-SJA-0181

ordinary skill in the art at the time of the invention since the substitution of the coating

disclosed by Berg with that of Sahatjian would have yielded predictable results, namely,

delivery of a drug to the vascular system and would merely be a substitution of one

known element for another.  *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396

(2007).

Accordingly, this rejection of claim 42 based on Berg 650 and Morris 781 or

Mitchell 711 and Sahatjian 121 was proposed by the third party requester in the request

for reexamination and is being adopted essentially as proposed in the request.

### Ground # 4.

**The request submits that claims 18 and 60 are unpatentable under 35
U.S.C. § 103(a) as being obvious over Berg and Morris 781 or Mitchell 711 as
applied to claims 1 and 40 above, and further in view of Ding 313.**

Claims 18 and 60 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Berg 650 and Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and

further in view of Ding 313.  Berg does not disclose that the polymer may comprise

polydimethylsiloxane.  Ding discloses that it is known to use polydimethylsiloxane as the

coating on a drug delivery stent. See column 4, lines 9-10, "[f]or example, silicone or

polysiloxane materials (such as polydimethylsiloxane) have been used successfully."

The substitution of one known element (any of the polymers of Berg) for another

(polydimethylsiloxane of Ding) would have been obvious to one of ordinary skill in the

art at the time of the invention since the substitution of the polymer disclosed by Berg

with that of Ding would have yielded predictable results, namely, delivery of a drug to

Application/Control Number: 95/001,097                                    Page 27
Art Unit: 3993

the vascular system and would merely be a substitution of one known element for

another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 18 and 60 based on Berg 650 and Morris 781

or Mitchell 711 and Ding 313 was proposed by the third party requester in the request

for reexamination and is being adopted essentially as proposed in the request.

### Ground #5.

**The request submits that claims 23, 26, 65, and 68 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Berg 650 and Morris 781 or Mitchell 711
as applied to claims 1 and 40 above, and further in view of Helmus 724.**

Claims 23, 26, 65, and 68 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Berg 650 and Morris 781 or Mitchell 711 as applied to claims 1 and

40 above, and further in view of Helmus 724. Berg does not disclose that the polymer

may comprise polyvinyl pyrrolidone or polytetrafluoroethylene. Helmus discloses that

polyvinyl pyrrolidone or polytetrafluoroethylene may be used as the coating on a drug

delivery stent. See page 3, lines 7-14 and page 3, line 34 to page 4, line 1. The

substitution of one known element (any of the polymers of Berg) for another (polyvinyl

pyrrolidone or polytetrafluoroethylene of Helmus) would have been obvious to one of

ordinary skill in the art at the time of the invention since the substitution of the polymer

disclosed by Berg with that of Helmus would have yielded predictable results, namely,

delivery of a drug to the vascular system and would merely be a substitution of one

known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396

(2007).

Application/Control Number: 95/001,097                         Page 28
Art Unit: 3993

Accordingly, this rejection of claims 23, 26, 65, and 68 based on Berg 650 and

Morris 781 or Mitchell 711 and Helmus 724 was proposed by the third party requester in

the request for reexamination is being adopted essentially as proposed in the request.

### Ground # 6.

**The request submits that claims 26 and 68 are unpatentable under 35·
U.S.C. § 103(a) as being obvious over obvious Berg 650 and Morris 781·or
Mitchell 711 as applied to claims 1 and 40 above, and further in view of Dayton
075.**

Claims 26 and 68 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Berg 650 and Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and

further in view of Dayton 075. Berg does not disclose that the polymer may comprise

polytetrafluoroethylene. Dayton discloses that polytetrafluoroethylene may be used as

the coating on a drug delivery stent. See column 4, lines 1-7-11. The substitution of one

known element (any of the polymers of Berg) for another (polytetrafluoroethylene of

Dayton) would have been obvious to one of ordinary skill in the art at the time of the

invention since the substitution of the polymer disclosed by Berg with that of Dayton

would have yielded predictable results, namely, delivery of a drug to the vascular

system and would merely be a substitution of one known element for another. *KSR Int'l

Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 26 and 68 based on Berg 650 and Morris 781

or Mitchell 711 and Dayton 075 was proposed by the third party requester in the request

for reexamination and is being adopted essentially as proposed in the request.

Application/Control Number: 95/001,097                     Page 29
Art Unit: 3993

### Ground # 7.

**The request submits that claims 20 and 62 are unpatentable under 35
U.S.C. § 103(a) as being obvious over Berg 650 and Morris 781 or Mitchell 711 as
applied to claims 1 and 40 above, and further in view of Kaplan 348.**

Claims 20 and 62 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Berg 650 and Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and

further in view of Kaplan 348.  Berg does not disclose that the polymer may comprise

poly(hydroxyl)ethylmethylmethacrylate.  Kaplan discloses that poly(hydroxyl)

ethylmethylmethacrylate may be used as the coating on a drug delivery stent. See

column 6, lines 60-61, "[o]ther acceptable polymers may contain monomers of

hydroxyethylmethacrylate . . ." The substitution of one known element (any of the

polymers of Berg) for another (poly(hydroxyl) ethylmethylmethacrylate of Kaplan) would

have been obvious to one of ordinary skill in the art at the time of the invention since the

substitution of the polymer disclosed by Berg with that of Kaplan would have yielded

predictable results, namely, delivery of a drug to the vascular system and would merely

be a substitution of one known element for another.  *KSR Int'l Co. v. Teleflex Inc.*, 82

USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 20 and 62 based on Berg 650 and Morris 781

or Mitchell 711 and Kaplan 348 was proposed by the third party requester in the request

for reexamination and is being adopted essentially as proposed in the request.

### Ground # 8.

The request submits that claims 1-2, 5-17, 19, 21-22, 24-25, 27-41, 44, 47-59,
61, 63-64, 66-67, and 69-77 are unpatentable under 35 U.S.C. § 103(a) as being
obvious over Berg 650 in view of Skotnicki 579, Russo 977, Failli 145, Skotnicki
718, Skotnicki 730 or Nelson 790.

Claims 1-2, 5-17, 19, 21-22, 24-25, 27/1, 27/2, 27/5-17, 27/19, 27/21, 27/22,

27/24, 27/25, 28/1, 28/2, 28/5-17, 28/19, 28/21, 28/22, 28/24, 28/25, 29/28/1, 29/28/2,

29/28/5-17, 29/28/19, 29/28/21, 29/28/22, 29/28/24, 29/28/25, 30/1, 30/2, 30/5-17,

30/19, 30/ 21, 30/22, 30/24, 30/25, 31/30/1, 31/30/2, 31/30/5-17, 31/30/19, 31/30/21,

31/30/22, 31/30/24, 31/30/25, 32/1, 32/2, 32/5-17, 32/19, 32/21, 32/22, 32/24, 32/25,

33/32/1, 33/32/2, 33/32/5-17, 33/32/19, 33/32/21, 33/32/22, 33/32/24, 33/32/25,

34/33/32/1, 34/33/32/2, 34/33/32/5-17, 34/33/32/19, 34/33/32/21, 34/33/32/22,

34/33/32/24, 34/33/32/25, 35/34/33/32/1, 35/34/33/32/2, 35/34/33/32/5-17,

35/34/33/32/19, 35/34/33/32/21, 35/34/33/32/22, 35/34/33/32/24, 35/34/33/32/25,

36/35/34/33/32/1, 36/35/34/33/32/2, 36/35/34/33/32/5-17, 36/35/34/33/32/19,

36/35/34/33/32/21, 36/35/34/33/32/22, 36/35/34/33/32/24, 36/35/34/33/32/25,

37/33/32/1, 37/33/32/2, 37/33/32/5-17, 37/33/32/19, 37/33/32/21, 37/33/32/22,

37/33/32/24, 37/33/32/25, 38/37/33/32/1, 38/37/33/32/2, 38/37/33/32/5-17,

38/37/33/32/19, 38/37/33/32/21, 38/37/33/32/22, 38/37/33/32/24, 38/37/33/32/25,

39/38/37/33/32/1, 39/38/37/33/32/2, 39/38/37/33/32/5-17, 39/38/37/33/32/19,

39/38/37/33/32/21, 39/38/37/33/32/22, 39/38/37/33/32/24, 39/38/37/33/32/25, 40, 41,

44, 47-59, 61, 63-64, 66, 67, 69/40, 69/41, 69/44, 69/47-59, 69/61, 69/63, 69/64, 89/66,

69/67, 70/40, 70/41, 70/44, 70/47-59, 70/61, 70/63, 70/64, 70/66, 70/67, 71/70/40,

71/70/41, 71/70/44, 71/70/47-59, 71/70/61, 71/70/63, 71/70/64, 71/70/66, 71/70/67,

BSC-SJA-0186

72/71/70/40, 72/71/70/41, 72/71/70/44, 72/71/70/47-59, 72/71/70/61, 72/71/70/63,

72/71/70/64, 72/71/70/66, 72/71/70/67, 73/72/71/70/40, 73/72/71/70/41, 73/72/71/70/44,

73/72/71/70/47-59, 73/72/71/70/61, 73/72/71/70/63, 73/72/71/70/64, 73/72/71/70/66,

73/72/71/70/67, 74/40, 74/41, 74/44, 74/47-59, 74/61, 74/63, 74/64, 74/66, 74/67,

75/74/40, 75/74/41, 75/74/44, 75/74/47-59, 75/74/61, 75/74/63, 75/74/64, 75/74/66,

75/74/67, 76/75/74/40, 76/75/74/41, 76/75/74/44, 76/75/74/47-59, 76/75/74/61,

76/75/74/63, 76/75/74/64, 76/75/74/66, 76/75/74/67, 77/76/75/74/40, 77/76/75/74/41,

77/76/75/74/44, 77/76/75/74/47-59, 77/76/75/74/61, 77/76/75/74/63, 77/76/75/74/64,

77/76/75/74/66, and 77/76/75/74/67  are rejected under 35 U.S.C. 103(a) as being

unpatentable over Berg 650 in view of Skotnicki 579 , Russo 977, Failli 145, Skotnicki

718, Skotnicki 730 or Nelson 790.

Regarding claims 1, 27/1, 27/2, 27/5-17, 27/19, 27/21; 27/22, 27/24, 27/25,

29/28/1, 29/28/2, 29/28/5-17, 29/28/19, 29/28/21, 29/28/22, 29/28/24, 29/28/25, 31/30/1,

31/30/2, 31/30/5-17, 31/30/19, 31/30/21, 31/30/22, 31/30/24, 31/30/25, 33/32/1, 33/32/2,

33/32/5-17, 33/32/19, 33/32/21, 33/32/22, 33/32/24, 33/32/25, 40 and 69/40, 69/41,

69/44, 69/47-59, 69/61, 69/63, 69/64, 69/66, 69/67, 71/70/40, 71/70/41, 71/70/44,

71/70/47-59, 71/70/61, 71/70/63, 71/70/64, 71/70/66, 71/70/67, 75/74/40, 75/74/41,

75/74/44, 75/74/47-59, 75/74/61, 75/74/63, 75/74/64, 75/74/66 and 75/74/67, Berg

teaches an intravascular stent having a coating thereon (column 3, line 52).  The

coating may comprise a polymer and a therapeutic substance (column 3, line 56) to

prevent restenosis (column 1, lines 10-11 and column 7, lines 1-15). Berg does not

disclose that the therapeutic substance is rapamycin or a macrocyclic lactone analog

thereof but states, at column 5, lines 19, "[t]he therapeutic substance used in the
present invention could be virtually any therapeutic substance which possesses
desirable therapeutic characteristics for application to a blood vessel."

Skotnicki 579 teaches that it is known to use rapamycin and macrocyclic lactone
derivatives of rapamycin (abstract) to prevent restenosis or cell proliferation (column 9,
lines 1-11). Skotnicki 579 further discloses that the rapamycin derivatives may be
encapsulated in a polymer carrier for delivery (column 9, lines 34-38). The derivative
compounds have similar profile activity to rapamycin, exhibit antiproliferative activities
and are useful in treating restenosis.

Russo teaches that an analog of rapamycin, 21-norrapamycin, to prevent
restenosis or cell proliferation (abstract, column 1, lines 6-12, 39-46 and column 7, lines
10-16). The compound may be administered with a carrier that could include a
reservoir matrix (column 4, line 67 through column 5, line 4). Russo discloses that
polyvinylpyrrolidine may be used as a carrier (column 4, lines 4-20).

Failli teaches rapamycin 42-oximes and hydroxylamines are to prevent
restenosis or cell proliferation (column 1, lines 9-15, 64-66 and column 6, lines 36-48).
Failli discloses that the compounds may be delivered via an encapsulating material or
matrix including polyvinylpyrrolidine (column 7, lines 13-14 and column 8, line 3-7).

Skotnicki 718 teaches rapamycin hydroxyesters useable to prevent restenosis or
cell proliferation (abstract, column 1, lines 6-12, 40-51, 65-68 and column 6, lines 46-
59). The derivatives may be used to treat hyperproliferative disease such as restenosis

following angioplasty procedures. The compounds may be delivered via a carrier or
matrix including polyvinylpyrrolidine (column 7, lines 34-38 and column 8, line 19-24).

Skotnicki 730 teaches phosphorylcarbamates of rapamycin and oxime
derivatives thereof that are useful as anti-inflammatories and antiproliferatives (column
1, lines 65-68). The derivatives may be used to treat hyperproliferative disease such as
restenosis (column 7, lines 10-16). Additionally, the compounds may be delivered via a
carrier or matrix including polyvinylpyrrolidine (column 7, lines 50-54 and column 8, lines
35-40).

Nelson teaches 27-hydroxyrapamycin and derivatives of rapamycin to prevent
restenosis or cell proliferation (abstract, column 1, lines 11-17, lines 44-51 and column
15, lines 41-54). The derivatives are useful as anti-inflammatories and antiproliferatives
(column 2, lines 43-46). Additionally, the derivatives may be delivered via a carrier or
matrix including polyvinylpyrrolidine (column 16, lines 9-12 and lines 24-28 and column
17, lines 11-15).

It would have been obvious to one of ordinary skill in the art at the time the
invention was made to modify the stent of Berg to include rapamycin or macrocyclic
lactone derivatives of rapamycin, in view of the teachings of Skotnicki 579 , Russo 977,
Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, that rapamycin and macrocyclic
lactone derivatives of rapamycin have superior anti-inflammatory and anti-proliferative
properties. All of these references teach treating the vessel with therapeutic agents in
order to inhibit or lessen restenosis. The Skotnicki 579, Russo 977, Failli 145, Skotnicki
718, Skotnicki 730 or Nelson 790 references disclose that rapamycin is a known and

BSC-SJA-0189

Application/Control Number: 95/001,097                                    Page 34
Art Unit: 3993

effective inhibitor of cell proliferation and is used to treat restenosis. Each disclose that
the agent may be contained in a polymer carrier/matrix. Furthermore, the combination
would have yielded nothing more than predictable results to one of ordinary skill in the
art at the time of the invention, i.e., one skilled in the art would have recognized that
rapamycin would allow the stent of Berg to be used as Berg intended, e.g. to prevent
restenosis in the vascular system.

Regarding claims 2 and 44, Berg discloses that the stent disclosed by Palmaz in
U.S. Patent No. 4,733,665 may be used. The Palmaz stent comprises a thinned walled
cylinder 71 containing a plurality of struts.

Regarding claims 5, 6, 47 and 48, Berg discloses that the coating may be applied
to the stent by dipping (column 5, Example 2) or by spraying (column 5, Example 1).

Regarding claims 7 and 49, Berg discloses "The ratio of therapeutic substance to
polymer in the solution will depend on the efficacy of the polymer in securing the
therapeutic substance onto the stent and the rate at which the coating is to release the
therapeutic substance . . . A wide ratio of therapeutic substance to polymer could
therefore be appropriate and could range from about 10:1 to about 1:100 (column 5,
lines 5-18). It would have been obvious to one having ordinary skill in the art at the time
the invention was made to provide the rapamycin in the coating at a weight percentage
of about 30% or a weight ratio of drug to polymeric carrier of about 3:7, since it has
been held that discovering an optimum value of a result effective variable involves only
routine skill in the art. In re Boesch, 617 F.2d 272, 205 USPQ 215 (CCPA 1980).

*Regarding claims 8, 9, 50 and 51*, Berg discloses "[t]he polymer may either be a
biostable or bioabsorbable polymer" (column 4, lines 37-38).

*As to claims 10-17, 19, 21, 22, 24, 25, 35/34/33/32/1, 35/34/33/32/2,
35/34/33/32/5-17, 35/34/33/32/19, 35/34/33/32/21, 35/34/33/32/22, 35/34/33/32/24,
35/34/33/32/25, 36/35/34/33/32/1, 36/35/34/33/32/2, 36/35/34/33/32/5-17,
36/35/34/33/32/19, 36/35/34/33/32/21, 36/35/34/33/32/22, 36/35/34/33/32/24,
36/35/34/33/32/25, 38/37/33/32/1, 38/37/33/32/2, 38/37/33/32/5-17, 38/37/33/32/19,
38/37/33/32/21, 38/37/33/32/22, 38/37/33/32/24, 38/37/33/32/25, 39/38/37/33/32/1,
39/38/37/33/32/2, 39/38/37/33/32/5-17, 39/38/37/33/32/19, 39/38/37/33/32/21,
39/38/37/33/32/22, 39/38/37/33/32/24, 39/38/37/33/32/25, 52, 53-59, 61, 63-64, 66, 67,
72/71/70/40, 72/71/70/41, 72/71/70/44, 72/71/70/47-59, 72/71/70/61, 72/71/70/63,
72/71/70/64, 72/71/70/66, 72/71/70/67, 73/72/71/70/40, 73/72/71/70/41, 73/72/71/70/44,
73/72/71/70/47-59, 73/72/71/70/61, 73/72/71/70/63, 73/72/71/70/64, 73/72/71/70/66,
73/72/71/70/67, 76/75/74/40, 76/75/74/41, 76/75/74/44, 76/75/74/47-59, 76/75/74/61,
76/75/74/63, 76/75/74/64, 76/75/74/66, and 76/75/74/67, 77/76/75/74/40,
77/76/75/74/41, 77/76/75/74/44, 77/76/75/74/47-59, 77/76/75/74/61, 77/76/75/74/63,
77/76/75/74/64, 77/76/75/74/66, and 77/76/75/74/67*, Berg discloses that the polymer
may comprise polycaprolactone, poly(lactide-co-glycolide) (column 4, line 44),
polyanhydride (column 4, line 46), poly(amino acids) (column 4, line 49),
polysaccharide, e.g. cellulose, starch (column 4, line 54), copoly(ether-esters) (column
4, line 51), vinyl homopolymers and copolymers (claim 6), polyvinyl acetate, copolymers
of vinyl monomers (column 4, line 65), an acrylate based polymer, e.g. cyanoacrylates

BSC-SJA-0191

(column 4, line 49), ethylene-methyl methacrylate copolymers (column 4, lines 66-67),

cellulose acetate, cellulose butyrate, cellulose acetate butyrate etc (column 5, lines 4-7),

and polyvinylidene fluoride (column 4, line 62).

Regarding claims 28/1, 28/2, 28/5-17, 28/19, 28/21, 28/22, 28/24, 28/25, 30/1,

30/2, 30/5-17, 30/19, 30/ 21, 30/22, 30/24, 30/25, 34/33/32/1, 34/33/32/2, 34/33/32/5-

17, 34/33/32/19, 34/33/32/21, 34/33/32/22, 34/33/32/24, 34/33/32/25, 37/33/32/1,

37/33/32/2, 37/33/32/5-17, 37/33/32/19, 37/33/32/21, 37/33/32/22, 37/33/32/24,

37/33/32/25, 70/40, 70/41, 70/44, 70/47-59, 70/61, 70/61, 70/63, 70/64, 70/66, 70/67,

74/40, 74/41, 74/44, 74/47-59, 74/61, 74/61, 74/63, 74/64, 74/66 and 74/67, Berg

discloses that the drug may be released at a controlled rate for a period of days. "[T]he

rate at which the drug is delivered can be controlled by the selection of an appropriate

bioabsorbable or biostable polymer and by the ratio of drug to polymer in the solution"

and "[t]he release rate can be further controlled by varying the ratio of drug to polymer in

the multiple layers. For example, a higher drug-to-polymer ratio in the outer layers than

in the inner layers would result in a higher early dose which would decrease over time",

(see Berg, column 2, lines 52-67 and Figure 1). It would have been obvious to one

having ordinary skill in the art at the time the invention was made to formulate the

coating of Berg as modified by Skotnicki 579, Russo 977, Failli 145, Skotnicki 718,

Skotnicki 730 or Nelson 790 to release the rapamycin for a period of 14 days or several

weeks as it is known that cell proliferation occurs in the first two weeks after injury to the

arterial smooth muscle cells, and since it has been held that discovering an optimum

value of a result effective variable involves only routine skill in the art.  In re Boesch, 617

F.2d 272, 205 USPQ 215 (CCPA 1980).

As to claims 32/1, 32/2, 32/5-17, 32/19, 32/21, 32/22, 32/24, 32/25, and 40, Berg

discloses that the drug is present a therapeutically beneficial amount to inhibit

neointimal proliferation (see Berg, column 2, lines 13-15).

Regarding claim 41, Berg discloses that the polymeric carrier and drug are mixed

together (abstract).

Accordingly, this rejection of claims 1-2, 5-17, 19, 21-22, 24-25, 27, 27/1, 27/2,

27/5-17, 27/19, 27/21, 27/22, 27/24, 27/25, 28/1, 28/2, 28/5-17, 28/19, 28/21, 28/22,

28/24, 28/25, 29/28/1, 29/28/2, 29/28/5-17, 29/28/19, 29/28/21, 29/28/22, 29/28/24,

29/28/25, 30/1, 30/2, 30/5-17, 30/19, 30/ 21, 30/22, 30/24, 30/25, 31/30/1, 31/30/2,

31/30/5-17, 31/30/19, 31/30/21, 31/30/22, 31/30/24, 31/30/25, 32/1, 32/2, 32/5-17,

32/19, 32/21, 32/22, 32/24, 32/25, 33/32/1, 33/32/2, 33/32/5-17, 33/32/19, 33/32/21,

33/32/22, 33/32/24, 33/32/25, 34/33/32/1, 34/33/32/2, 34/33/32/5-17, 34/33/32/19,

34/33/32/21, 34/33/32/22, 34/33/32/24, 34/33/32/25, 35/34/33/32/1, 35/34/33/32/2,

35/34/33/32/5-17, 35/34/33/32/19, 35/34/33/32/21, 35/34/33/32/22, 35/34/33/32/24,

35/34/33/32/25, 36/35/34/33/32/1, 36/35/34/33/32/2, 36/35/34/33/32/5-17,

36/35/34/33/32/19, 36/35/34/33/32/21, 36/35/34/33/32/22, 36/35/34/33/32/24,

36/35/34/33/32/25, 37/33/32/1, 37/33/32/2, 37/33/32/5-17, 37/33/32/19, 37/33/32/21,

37/33/32/22, 37/33/32/24, 37/33/32/25, 38/37/33/32/1, 38/37/33/32/2, 38/37/33/32/5-17,

38/37/33/32/19, 38/37/33/32/21, 38/37/33/32/22, 38/37/33/32/24, 38/37/33/32/25,

39/38/37/33/32/1, 39/38/37/33/32/2, 39/38/37/33/32/5-17, 39/38/37/33/32/19,

39/38/37/33/32/21, 39/38/37/33/32/22, 39/38/37/33/32/24, 39/38/37/33/32/25, 40, 41,

44, 47-59, 61, 63-64, 66, 67, 69/40, 69/41, 69/44, 69/47-59, 69/61, 69/63, 69/64, 69/66,

69/67, 70/40, 70/41, 70/44, 70/47-59, 70/61, 70/63, 70/64, 70/66, 70/67, 71/70/40,

71/70/41, 71/70/44, 71/70/47-59, 71/70/61, 71/70/63, 71/70/64, 71/70/66, 71/70/67,

72/71/70/40, 72/71/70/41, 72/71/70/44, 72/71/70/47-59, 72/71/70/61, 72/71/70/63,

72/71/70/64, 72/71/70/66, 72/71/70/67, 73/72/71/70/40, 73/72/71/70/41, 73/72/71/70/44,

73/72/71/70/47-59, 73/72/71/70/61, 73/72/71/70/63, 73/72/71/70/64, 73/72/71/70/66,

73/72/71/70/67, 74/40, 74/41, 74/44, 74/47-59, 74/61, 74/63, 74/64, 74/66, 74/67,

75/74/40, 75/74/41, 75/74/44, 75/74/47-59, 75/74/61, 75/74/63, 75/74/64, 75/74/66,

75/74/67, 76/75/74/40, 76/75/74/41, 76/75/74/44, 76/75/74/47-59, 76/75/74/61,

76/75/74/63, 76/75/74/64, 76/75/74/66, and 76/75/74/67, 77/76/75/74/40,

77/76/75/74/41, 77/76/75/74/44, 77/76/75/74/47-59, 77/76/75/74/61, 77/76/75/74/63,

77/76/75/74/64, 77/76/75/74/66, and 77/76/75/74/67, based on Berg 650 in view of

Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, was

proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.

Furthermore, claims 27/3, 27/4, 27/18, 78/20, 27/23, 27/26, 28/3, 28/4, 28/18,

28/20, 28/23, 28/26, 30/3, 30/4, 30/18, 30/20, 30/23, 30/26, 32/3, 32/4, 32/18, 32/20,

32/23, 32/26, 69/42, 69/43, 69/45, 69/46, 69/60, 69/62, 69/65, 69/68, 70/42, 70/43,

70/45, 70/46, 70/60, 70/62, 70/65, 70/68, 71/70/42, 71/70/43, 71/70/45, 71/70/46,

71/70/60, 71/70/62, 71/70/65, 71/70/68, 72/71/70/42, 72/71/70/43, 72/71/70/45,

72/71/70/46, 72/71/70/60, 72/71/70/62, 72/71/71/65, 72/71/70/68, 73/72/71/70/42,

BSC-SJA-0194

Application/Control Number: 95/001,097                                    Page 39
Art Unit: 3993

73/72/71/70/43, 73/72/71/70/45, 73/72/71/70/46, 73/72/71/70/60, 73/72/71/70/62,

73/72/71/70/65, 73/72/71/70/68, 74/42, 74/43, 74/45, 74/46, 74/60, 74/62, 74/65, 74/68,

75/74/42, 75/74/43, 75/74/45, 75/74/46, 75/74/60, 75/74/62, 75/74/65, 75/74/68,

76/75/74/42, 76/75/74/43, 76/75/74/45, 76/75/74/46, 76/75/74/60, 76/75/74/62,

76/75/74/65, 76/75/74/68, 77/76/75/74/42, 77/76/75/74/43, 77/76/75/74/45,

77/76/75/74/46, 77/76/75/74/60, 77/76/75/74/62, 77/76/75/74/65 and 77/76/75/74/68

depend upon claims that are not rejected with the combination of Berg and Skotnicki

579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790.  Accordingly,

the rejection of these claims based on Berg 650 and Skotnicki 579, Russo 977, Failli

145, Skotnicki 718, Skotnicki 730 or Nelson 790 is not adopted essentially as proposed

in the request.

### Ground # 9.

The request submits that claims 3, 4, 43, 45, and 46 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Berg 650 in view of Skotnicki 579 ,
Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to
claims 1 and 40 above, and further in view of Ragheb 070.

Claims 3, 4, 43, 45, and 46 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Berg 650 in view of Skotnicki 579 , Russo 977, Failli 145, Skotnicki

718, Skotnicki 730 or Nelson 790, as applied to claims 2 and  above, and further in view

of Ragheb 070.

Regarding claims 3 and 45, the stent of Berg as modified by Skotnicki 579,

Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, set forth above, does

not include a channel formed in at least one strut. Ragheb shows a stent 10 having a

coating thereon. The stent is formed of struts 14 having channels 28' formed therein.

Application/Control Number: 95/001,097                                    Page 40
Art Unit: 3993

Ragheb discloses that "[t]he wells 28' may also be in the form of slots or grooves in the

surface of the base material 14 of the medical device. This aspect of the invention

provides the advantage of better controlling the total amount of the bioactive material 18

to be released as well as the rate at which it is released." (column 16, lines 48-51). It

would have been obvious to one of ordinary skill in the art at the time the invention was

made to modify the stent of Berg as modified by Skotnicki 579 , Russo 977, Failli 145,

Skotnicki 718, Skotnicki 730 or Nelson 790, with channels located in the struts, as

taught by Ragheb, in order to control the amount and rate of release of rapamycin.

     Regarding claims 4 and 46, Figure 10B of Ragheb shows a rectangular channel

with a close perimeter and an open top. The channel is smaller in all dimensions than

the strut.

     Regarding claim 43, the stent of Berg and Skotnicki 579 , Russo 977, Failli 145,

Skotnicki 718, Skotnicki 730 or Nelson 790, fails to disclose that the drug is entrapped

on the surface of the stent by the polymeric carrier. Ragheb discloses that the drug 18

is entrapped by a polymeric layer 20 which controls the release of the drug. Ragheb

discloses "any degradation of the bioactive material which might otherwise occur by

other polymer coating techniques is avoided" (column 19, lines 51-53). Thus, the

manner of enhancing a particular device (stent with drug delivery capabilities) was

made part of the ordinary capabilities of one skilled in the art based upon the teaching

of such improvement in Ragheb. Accordingly, one of ordinary skill in the art would have

been capable of applying this known "improvement" technique in the same manner to

the stent of Berg and the results would have been predictable to one of ordinary skill in

the art, namely, one skilled in the art would have readily recognized that the entrapment

system of Ragheb would reduce the degradation of the drug as might occur with the

polymer coating technique of Berg.

Accordingly, this rejection of claims 3, 4, 43, 45 and 46 based on Berg 650 in

view of Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson

790, and Ragheb 070 was proposed by the third party requester in the request for

reexamination is and <u>being adopted</u> essentially as proposed in the request.

### Ground # 10.

**The request submits that claim 42 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Berg 650 in view of Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in view of Sahatjian 121.**

Claim 42 is rejected under 35 U.S.C. 103(a) as being unpatentable over Berg

650 and Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson

790, as applied to claim 40 above, and further in view of Sahatjian 121. The coating of

Berg comprises a mixture of polymer and a drug but fails to disclose a coating wherein

the polymer is bound to the drug. Sahatjian discloses a coating that is delivered to the

vascular system to prevent restenosis. The coating comprises a polymer which is

bound to a drug. The substitution of one known element (coating of Berg) for another

(coating of Sahatjian) would have been obvious to one of ordinary skill in the art at the

time of the invention since the substitution of the coating disclosed by Berg with that of

Sahatjian would have yielded predictable results, namely, delivery of a drug to the

vascular system and would merely be a substitution of one known element for another.

*KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Application/Control Number: 95/001,097                                    Page 42
Art Unit: 3993

   Accordingly, this rejection of claim 42 based on Berg 650 and Skotnicki 579 ,

Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Sahatjian 121

was proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.

## Ground # 11.

**The request submits that claims 18 and 60 are unpatentable under 35
U.S.C. § 103(a) as being obvious over Berg 650 in view of Skotnicki 579, Russo
977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1
and 40 above, and further in view of Ding 313.**

   Claims 18 and 60 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Berg 650 and Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or

Nelson 790, as applied to claims 1 and 40 above, and further in view of Ding 313.  Berg

does not disclose that the polymer may comprise polydimethylsiloxane. Ding discloses

that it is known to use polydimethylsiloxane as the coating on a drug delivery stent. See

column 4, lines 9-10, "[f]or example, silicone or polysiloxane materials (such as

polydimethylsiloxane) have been used successfully."  The substitution of one known

element (any of the polymers of Berg) for another (polydimethylsiloxane of Ding) would

have been obvious to one of ordinary skill in the art at the time of the invention since the

substitution of the polymer disclosed by Berg with that of Ding would have yielded

predictable results, namely, delivery of a drug to the vascular system and would merely

be a substitution of one known element for another.  *KSR Int'l Co. v. Teleflex Inc.*, 82

USPQ2d 1385, 1396 (2007).

BSC-SJA-0198

Accordingly, this rejection of claims 18 and 60 based on Berg 650 and Skotnicki

579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Ding 313

was proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.

### Ground # 12.

**The request submits that claims 23, 26, 65 and 68 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Berg 650 in view of Skotnicki 579, Russo
977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1
and 40 above, and further in view of Helmus 724.**

Claims 23, 26, 65, and 68 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Berg 650 and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718,

Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in view of

Helmus 724. Berg does not disclose that the polymer may comprise polyvinyl

pyrrolidone or polytetrafluoroethylene. Helmus discloses that polyvinyl pyrrolidone or

polytetrafluoroethylene may be used as the coating on a drug delivery stent. See page

3, lines 7-14 and page 3, line 34 to page 4, line 1. The substitution of one known

element (any of the polymers of Berg) for another (polyvinyl pyrrolidone or

polytetrafluoroethylene of Helmus) would have been obvious to one of ordinary skill in

the art at the time of the invention since the substitution of the polymer disclosed by

Berg with that of Helmus would have yielded predictable results, namely, delivery of a

drug to the vascular system and would merely be a substitution of one known element

for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Application/Control Number: 95/001,097                                    Page 44
Art Unit: 3993

Accordingly, this rejection of claims 23, 26, 65, and 68 based on Berg 650 and

Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and

Helmus 724 was proposed by the third party requester in the request for reexamination

is being adopted essentially as proposed in the request.

### Ground # 13.

**The request submits that claims 26 and 68 are unpatentable under 35
U.S.C. § 103(a) as being obvious over Berg 650 in view of Skotnicki 579, Russo
977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1
and 40 above, and further in view of Dayton 075.**

Claims 26 and 68 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Berg 650 and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or

Nelson 790, as applied to claims 1 and 40 above, and further in view of Dayton 075.

Berg does not disclose that the polymer may comprise polytetrafluoroethylene. Dayton

discloses that polytetrafluoroethylene may be used as the coating on a drug delivery

stent. See column 4, lines 1-7-11. The substitution of one known element (any of the

polymers of Berg) for another (polytetrafluoroethylene of Dayton) would have been

obvious to one of ordinary skill in the art at the time of the invention since the

substitution of the polymer disclosed by Berg with that of Dayton would have yielded

predictable results, namely, delivery of a drug to the vascular system and would merely

be a substitution of one known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82

USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 26 and 68 based on Berg 650 and Skotnicki

579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Dayton 075

was proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.

### Ground # 14.

The request submits that claims 20 and 62 are unpatentable under 35
U.S.C. § 103(a) as being obvious over Berg 650 in view of Skotnicki 579, Russo
977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1
and 40 above, and further in view of Kaplan 348.

Claims 20 and 62 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Berg 650 and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or

Nelson 790, as applied to claims 1 and 40 above, and further in view of Kaplan 348.

Berg does not disclose that the polymer may comprise

poly(hydroxyl)ethylmethylmethacrylate. Kaplan discloses that poly(hydroxyl)

ethylmethylmethacrylate may be used as the coating on a drug delivery stent. See

column 6, lines 60-61, "[o]ther acceptable polymers may contain monomers of

hydroxyethylmethacrylate . . ." The substitution of one known element (any of the

polymers of Berg) for another (poly(hydroxyl) ethylmethylmethacrylate of Kaplan) would

have been obvious to one of ordinary skill in the art at the time of the invention since the

substitution of the polymer disclosed by Berg with that of Kaplan would have yielded

predictable results, namely, delivery of a drug to the vascular system and would merely

be a substitution of one known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82

USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 20 and 62 based on Berg 650 and Skotnicki

579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Kaplan 348

Application/Control Number: 95/001,097                              Page 46
Art Unit: 3993

was proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.

## Ding Patent Proposed Obviousness Combinations.

### Ground # 15.

The request submits that claims 1-2, 5-10, 18, 19, 25, 28, 30, 32, 40, 41, 44,
47-52, 60, 61, 67, 70 and 74 are unpatentable under 35 U.S.C. § 103(a) as being
obvious over Ding 313 in view of Morris 781 or Mitchell 711.

Claims 1-2, 5-7, 9, 10, 18, 19, 25, 28/1, 28/2, 28/5-7, 28/9, 28/10, 28/18, 28/19,

28/25, 30/1, 30/2, 30/5-7, 30/9, 30/9, 30/18, 30/19, 30/25, 32/1, 32/2, 32/5-7, 32/9,

32/10, 32/18, 32/19, 32/25, 40, 41, 44, 47-49, 51, 52, 60, 61, 67, 70/40, 70/41, 70/44,

70/47-49, 70/52, 70/60, 70/61, 70/67, 74/40, 74/41, 74/44, 74/47-49, 74/52, 74/60,

74/61, and 74/67, are rejected under 35 U.S.C. 103(a) as being unpatentable over Ding

313 in view of Morris 781 or Mitchell 711.

Regarding claims 1 and 40, Ding teaches an intravascular stent having a coating

thereon (column 1, lines 60-63).  The coating may comprise a polymer and a

therapeutic substance (column 3, lines 28-45) to prevent restenosis (column 1, lines 31-

43).  Ding does not disclose that the therapeutic substance is rapamycin or a

macrocyclic lactone analog.

Morris teaches that it is known to use an antiproliferative effective amount

rapamycin, delivered via a stent, to prevent restenosis or cell proliferation (column 3,

BSC-SJA-0202

lines 51-64). Morris further discloses that rapamycin may be encapsulated in a polymer matrix for delivery (column 3, lines 51-64).

Mitchell teaches that it is known to use rapamycin, delivered via a stent, to prevent restenosis or cell proliferation (column 3, lines 24-31). A solid carrier can be used to administer rapamycin including polyvinylpyrrolidine (column 6, lines 24-28 and column 7, lines 10-15).

It would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the stent of Ding to include rapamycin, in view of the teaching of Morris or Mitchell. All three references teach treating the vessel with therapeutic agents in order to inhibit or lessen restenosis. Both Morris and Mitchell disclose that rapamycin is a known and effective inhibitor of cell proliferation and is used to treat restenosis via a vascular stent. Furthermore, and the combination would have yielded nothing more than predictable results to one of ordinary skill in the art at the time of the invention, i.e., one skilled in the art would have recognized that rapamycin would allow the stent of Ding to be used as Ding intended, e.g. to prevent restenosis in the vascular system.

*Regarding claims 2 and 44,* Ding discloses that the stent is comprised of a tubular body formed of an open braid of fine metal wire which can be considered struts (see column 3, lines 17-21 and Figures 8-11).

*Regarding claims 5, 6, 47 and 48,* Ding discloses that the coating may be applied to the stent by dipping or by spraying (column 3, line 46).

Application/Control Number: 95/001,097                                      Page 48
Art Unit: 3993

*Regarding claims 7 and 49,* Ding discloses "the loading [of the biologically active

material] generally most advantageously used is in the range from about 10% to 45% of

the total weight of the layer" (column 10, lines 25-26 and claim 4). Furthermore, Berg

discloses "The ratio of therapeutic substance to polymer in the solution will depend on

the efficacy of the polymer in securing the therapeutic substance onto the stent and the

rate at which the coating is to release the therapeutic substance . . . A wide ratio of

therapeutic substance to polymer could therefore be appropriate and could range from

about 10:1 to about 1:100 (column 5, lines 5-19). It would have been obvious to one

having ordinary skill in the art at the time the invention was made to provide the

rapamycin in the coating at a weight percentage of about 30% or a weight ratio of drug

to polymeric carrier of about 3:7, since it has been held that discovering an optimum

value of a result effective variable involves only routine skill in the art. *In re Boesch,* 617

F.2d 272, 205 USPQ 215 (CCPA 1980).

*Regarding claims 9 and 51,* Ding discloses the polymer should be biostable

(column 10, lines 30-41).

As to claims 10, 18, 19, 25, 52, 60, 61 and 67, Ding discloses that the polymer

may comprise polydimethylsiloxane (column 4, line 10), ethylene vinyl acetate

copolymers (column 4, lines 57-58) and fluroxilicone (Ding 536, column 5, 43-46

incorporated by reference in Ding 313, column 1, lines 6-20) .

*Regarding claims* 28/1, 28/2, 28/5-7, 28/9, 28/10, 28/18, 28/19, 28/25, 30/1, 30/2,

30/5-7, 30/9, 30/9, 30/18, 30/19, 30/25, 40, 41, 44, 47-49, 51, 52, 60, 61, 67, 70/40,

70/41, 70/44, 70/47-49, 70/52, 70/60, 70/61, 70/67, 74/40, 74/41, 74/44, 74/47-49,

Application/Control Number: 95/001,097
Art Unit: 3993

Page 49

74/52, 74/60, 74/61, and 74/67, Ding discloses that the drug may be released at a
controlled rate for a period of at least two weeks (Figures 2–4 and 6 and column 6, lines
10-26).

*As to claims 32/1, 32/2, 32/5-7, 32/9, 32/10, 32/18, 32/19, 32/25 and 40,* Ding
discloses that the drug is present a therapeutically beneficial amount to inhibit
neointimal proliferation (see column 2, lines 28-33).

*Regarding claim 41,* Ding discloses that the polymeric carrier and drug are mixed
together (claim 16).

Accordingly, this rejection of claims 1-2, 5-7, 9, 10, 18, 19, 25, 28/1, 28/2, 28/5-7,
28/9, 28/10, 28/18, 28/19, 28/25, 30/1, 30/2, 30/5-7, 30/9, 30/9, 30/18, 30/19, 30/25,
32/1, 32/2, 32/5-7, 32/9, 32/10, 32/18, 32/19, 32/25, 40, 41, 44, 47-49, 51, 52, 60, 61,
67, 70/40, 70/41, 70/44, 70/47-49, 70/52, 70/60, 70/61, 70/67, 74/40, 74/41, 74/44,
74/47-49, 74/52, 74/60, 74/61, and 74/67, based on Ding 313 in view of Morris 781 or
Mitchell 711 was proposed by the third party requester in the request for reexamination
and is being adopted essentially as proposed in the request.

Furthermore, claims 28/3, 28/4, 28/11-17, 28/20-24, 28/26, 30/3, 30/4, 30/11-17,
30/20-24, 30/26, 32/3, 32/4, 32/11-17, 32/20-24, 32/26, 69/42, 69/43, 69/45, 69/46,
69/60, 69/62,69/68, 70/42, 70/43, 70/45, 70/46, 70/53-59, 70/62-66, 74/42, 74/43,
74/45, 74/46, 74/53-59 and 74/62-66, depend upon claims that are not rejected with the
combination of Ding and Morris or Mitchell 711.  Accordingly, the rejection of these
claims based on Ding 313 and Morris 781 or Mitchell 711 is not adopted essentially as
proposed in the request.

Additionally, claims 8 and 50 specify that the polymer is a degradable polymer.

However, Ding teaches away from using a degradable polymer. "The need for relatively

thick-walled polymer elution stents or any membrane overlayers associated with many

prior drug elution devices is obviated, as is the need for utilizing biodegradable or

reabsorbable vehicles for carrying the biologically active species. The technique clearly

enables long-term delivery and minimizes interference with the independent mechanical

or therapeutic benefits of the stent itself" (column 10, lines 34-41). Accordingly, the

rejection of these claims based on Ding 313 and Morris 781 or Mitchell 711 is not

adopted essentially as proposed in the request.

### Ground # 16.

The request submits that claims 3, 4, 43, 45, and 46 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Ding 313 in view of Morris 781 or
Mitchell 711 as applied to claims 1 and 40 above, and further in view of Ragheb
070.

Claims 3, 4, 43, 45, and 46 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Ding 313 in view of Morris 781 or Mitchell 711 as applied to claims 2

and 40 above, and further in view of Ragheb 070.

Regarding claims 3 and 45, the stent of Ding as modified by Morris or Mitchell

711, set forth above, does not include a channel formed in at least one strut. Ragheb

shows a stent 10 having a coating thereon. The stent is formed of struts 14 having

channels 28' formed therein. Ragheb discloses that "[t]he wells 28' may also be in the

form of slots or grooves in the surface of the base material 14 of the medical device.

This aspect of the invention provides the advantage of better controlling the total

amount of the bioactive material 18 to be released as well as the rate at which it is

released." (column 16, lines 48-51). It would have been obvious to one of ordinary skill

in the art at the time the invention was made to modify the stent of Ding as modified by

Morris or Mitchell 711 with channels located in the struts, as taught by Ragheb, in order

to control the amount and rate of release of rapamycin.

Regarding claims 4 and 46, Figure 10B of Ragheb shows a rectangular channel

with a close perimeter and an open top. The channel is smaller in all dimensions than

the strut.

Regarding claim 43, Ding and Morris or Mitchell 711 fails to disclose that the

drug is entrapped on the surface of the stent by the polymeric carrier. Ragheb

discloses that the drug 18 is entrapped by a polymeric layer 20 which controls the

release of the drug. Ragheb discloses "any degradation of the bioactive material which

might otherwise occur by other polymer coating techniques is avoided" (column 19,

lines 51-53). Thus, the manner of enhancing a particular device (stent with drug

delivery capabilities) was made part of the ordinary capabilities of one skilled in the art

based upon the teaching of such improvement in Ragheb. Accordingly, one of ordinary

skill in the art would have been capable of applying this known "improvement" technique

in the same manner to the stent of Ding and the results would have been predictable to

one of ordinary skill in the art, namely, one skilled in the art would have readily

recognized that the entrapment system of Ragheb would reduce the degradation of the

drug as might occur with the polymer coating technique of Ding.

Accordingly, this rejection of claims 3, 4, 43, 45, and 46 based on Ding 313 in

view of Morris 781 or Mitchell 711 and Ragheb 070 was proposed by the third party

requester in the request for reexamination is and <u>being adopted</u> essentially as proposed

in the request.

### Ground # 17.

**The request submits that claim 42 is unpatentable under 35 U.S.C. § 103(a)
as being obvious over Ding 313 in view of Morris 781 or Mitchell 711 as applied to
claims 1 and 40 above, and further in view of Sahatjian 121.**

Claim 42 is rejected under 35 U.S.C. 103(a) as being unpatentable over Ding

313 and Morris 781 or Mitchell 711 as applied to claim 40 above, and further in view of

Sahatjian 121. The coating of Ding comprises a mixture of polymer and a drug but fails

to disclose a coating wherein the polymer is bound to the drug. Sahatjian discloses a

coating that is delivered to the vascular system to prevent restenosis. The coating

comprises a polymer which is bound to a drug. The substitution of one known element

(coating of Ding) for another (coating of Sahatjian) would have been obvious to one of

ordinary skill in the art at the time of the invention since the substitution of the coating

disclosed by Ding with that of Sahatjian would have yielded predictable results, namely,

delivery of a drug to the vascular system and would merely be a substitution of one

known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396

(2007).

Accordingly, this rejection of claim 42 based on Ding 313 and Morris 781 or

Mitchell 711 and Sahatjian 121 was proposed by the third party requester in the request

for reexamination and is <u>being adopted</u> essentially as proposed in the request.

## Ground # 18.

The request submits that claims 11-17, 21-22, 24, 53-59, 63, 64 and 66 are
unpatentable under 35 U.S.C. § 103(a) as being obvious over Ding 313 in view of
Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in view
of Berg 650.

Claims 21-22, 24, 63, 64 and 66 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Ding 313 and Morris 781 or Mitchell 711 as applied to claims 1 and

40 above, and further in view of Berg.  Berg discloses that the polymer may comprise

an acrylate based polymer, e.g. cyanoacrylates (column 4, line 49), ethylene-methyl

methacrylate copolymers (column 4, lines 66-67), cellulose acetate, cellulose butyrate,

and cellulose acetate butyrate etc (column 5, lines 4-7).  The substitution of one known

element (any of the polymers of Ding) for another would have been obvious to one of

ordinary skill in the art at the time of the invention since the substitution of the polymer

disclosed by Ding with that of Berg would have yielded predictable results, namely,

delivery of a drug to the vascular system and would merely be a substitution of one

known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396

(2007).

Accordingly, this rejection of claims 21-22, 24, 63, 64 and 66 based on Ding 313

and Morris 781 or Mitchell 711 and Berg 650 was proposed by the third party requester

in the request for reexamination and is being adopted essentially as proposed in the

request.

Additionally, claims 11-17 and 53-59 specify that the polymer is a degradable

polymer.  However, Ding teaches away from using a degradable polymer. "The need for

relatively thick-walled polymer elution stents or any membrane overlayers associated

Application/Control Number: 95/001,097                                          Page 54
Art Unit: 3993

with many prior drug elution devices is obviated, as is the need for utilizing

biodegradable or reabsorbable vehicles for carrying the biologically active species. The

technique clearly enables long-term delivery and minimizes interference with the

independent mechanical or therapeutic benefits of the stent itself" (column 10, lines 34-

41). Accordingly, the rejection of these claims based on Ding 313, Morris 781 or

Mitchell 711 and Berg 650 is not adopted essentially as proposed in the request.

### Ground # 19.

The request submits that claims 11-15, 23, 26, 53-57, 65 and 68 are
unpatentable under 35 U.S.C. § 103(a) as being obvious over Ding 313 in view of
Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in view
of Helmus 724.

Claims 23, 26, 65, and 68 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Ding 313 and Morris 781 or Mitchell 711 as applied to claims 1 and

40 above, and further in view of Helmus 724. Helmus discloses that the polymer used

for the coating may be polyvinyl pyrrolidone or polytetrafluoroethylene may be used as

the coating on a drug delivery stent. See page 3, lines 7-14 and page 3, line 34 to page

4, line 1. The substitution of one known element (any of the polymers of Ding) for

another (polyvinyl pyrrolidone or polytetrafluoroethylene of Helmus) would have been

obvious to one of ordinary skill in the art at the time of the invention since the

substitution of the polymer disclosed by Ding with that of Helmus would have yielded

predictable results, namely, delivery of a drug to the vascular system and would merely

be a substitution of one known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82

USPQ2d 1385, 1396 (2007).

BSC-SJA-0210

Application/Control Number: 95/001,097                          Page 55
Art Unit: 3993

Accordingly, this rejection of claims 23, 26, 65, and 68 based on Ding 313 and

Morris 781 or Mitchell 711 and Helmus 724 was proposed by the third party requester in

the request for reexamination is being adopted essentially as proposed in the request.

Additionally, claims 11-15 and 53-57 specify that the polymer is a degradable

polymer. However, Ding teaches away from using a degradable polymer. "The need for

relatively thick-walled polymer elution stents or any membrane overlayers associated

with many prior drug elution devices is obviated, as is the need for utilizing

biodegradable or reabsorbable vehicles for carrying the biologically active species. The

technique clearly enables long-term delivery and minimizes interference with the

independent mechanical or therapeutic benefits of the stent itself" (column 10, lines 34-

41). Accordingly, the rejection of these claims based on Ding 313, Morris 781 or

Mitchell 711 and Helmus 724 is not adopted essentially as proposed in the request.

## Ground # 20

The request submits that claims 15, 26, 57 and 68 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Ding 313 in view of Morris 781 or
Mitchell 711 as applied to claims 1 and 40 above, and further in view of Dayton
075.

Claims 26 and 68 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Ding 313 and Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and

further in view of Dayton 075. Ding does not disclose that the polymer may comprise

polytetrafluoroethylene. Dayton discloses that polytetrafluoroethylene may be used as

the coating on a drug delivery stent. See column 4, lines 1-7-11. The substitution of one

known element (any of the polymers of Ding) for another (polytetrafluoroethylene of

Dayton) would have been obvious to one of ordinary skill in the art at the time of the

Application/Control Number: 95/001,097                                    Page 56
Art Unit: 3993

invention since the substitution of the polymer disclosed by Ding with that of Dayton

would have yielded predictable results, namely, delivery of a drug to the vascular

system and would merely be a substitution of one known element for another. *KSR Int'l*

*Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 26 and 68 based on Ding 313 and Morris 781

or Mitchell 711 and Dayton 075 was proposed by the third party requester in the request

for reexamination and is being adopted essentially as proposed in the request.

Additionally, claims 15 and 57 specify that the polymer is a degradable polymer.

However, Ding teaches away from using a degradable polymer. "The need for relatively

thick-walled polymer elution stents or any membrane overlayers associated with many

prior drug elution devices is obviated, as is the need for utilizing biodegradable or

reabsorbable vehicles for carrying the biologically active species. The technique clearly

enables long-term delivery and minimizes interference with the independent mechanical

or therapeutic benefits of the stent itself" (column 10, lines 34-41). Accordingly, the

rejection of these claims based on Ding 313, Morris 781 or Mitchell 711 and Dayton is

not adopted essentially as proposed in the request.

### Ground # 21.

The request submits that claims 11-13, 20 53-55 and 62 are unpatentable
under 35 U.S.C. § 103(a) as being obvious over Ding 313 in view of Morris 781 or
Mitchell 711 as applied to claims 1 and 40 above, and further in view of Kaplan
348.

Claims 20 and 62 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Ding 313 in view of Morris 781 or Mitchell 711 as applied to claims 1 and 40 above,

and further in view of Kaplan 348. Ding does not disclose that the polymer may

BSC-SJA-0212

comprise poly(hydroxyl)ethylmethylmethacrylate. Kaplan discloses that poly(hydroxyl) ethylmethylmethacrylate may be used as the coating on a drug delivery stent. See column 6, lines 60-61, "[o]ther acceptable polymers may contain monomers of hydroxyethylmethacrylate . . ." The substitution of one known element (any of the polymers of Berg) for another (poly(hydroxyl) ethylmethylmethacrylate of Kaplan) would have been obvious to one of ordinary skill in the art at the time of the invention since the substitution of the polymer disclosed by Ding with that of Kaplan would have yielded predictable results, namely, delivery of a drug to the vascular system and would merely be a substitution of one known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claim 20 and 63 based on Ding 313 and Morris 781 or Mitchell 711 and Kaplan 348 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Claims 11-13, 53-55 and 57 specify that the polymer is a degradable polymer. However, Ding teaches away from using a degradable polymer. "The need for relatively thick-walled polymer elution stents or any membrane overlayers associated with many prior drug elution devices is obviated, as is the need for utilizing biodegradable or reabsorbable vehicles for carrying the biologically active species. The technique clearly enables long-term delivery and minimizes interference with the independent mechanical or therapeutic benefits of the stent itself" (column 10, lines 34-41). Accordingly, the rejection of these claims based on Ding 313, Morris 781 or Mitchell 711 and Kaplan is not adopted essentially as proposed in the request.

### Ground # 22.

The request submits that claims 11, 12, 14, 15, 53, 54, 56 and 57 are
unpatentable under 35 U.S.C. § 103(a) as being obvious over Ding 313 in view of
Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in view
of Dinh 227.

Claims 11, 12, 14, 15, 53, 54, 56 and 57 specify that the polymer is a degradable

polymer. However, Ding teaches away from using a degradable polymer. "The need for

relatively thick-walled polymer elution stents or any membrane overlayers associated

with many prior drug elution devices is obviated, as is the need for utilizing

biodegradable or reabsorbable vehicles for carrying the biologically active species. The

technique clearly enables long-term delivery and minimizes interference with the

independent mechanical or therapeutic benefits of the stent itself" (column 10, lines 34-

41). Accordingly, the rejection of these claims based on Ding 313, Morris 781 or

Mitchell 711 and Dinh 227 is not adopted essentially as proposed in the request.

### Ground #23.

The request submits that claims 13 and 55 are unpatentable under 35
U.S.C. § 103(a) as being obvious over Ding 313 in view of Morris 781 or Mitchell
711 as applied to claims 1 and 40 above, and further in view of Wolff 779.

Claims 13 and 55 specify that the polymer is a degradable polymer. However,

Ding teaches away from using a degradable polymer. "The need for relatively thick-

walled polymer elution stents or any membrane overlayers associated with many prior

drug elution devices is obviated, as is the need for utilizing biodegradable or

reabsorbable vehicles for carrying the biologically active species. The technique clearly

Application/Control Number: 95/001,097                                    Page 59
Art Unit: 3993

enables long-term delivery and minimizes interference with the independent mechanical

or therapeutic benefits of the stent itself" (column 10, lines 34-41). Accordingly, the

rejection of these claims based on Ding 313, Morris 781 or Mitchell 711 and Wolff 779 is

not adopted essentially as proposed in the request.

### Ground # 24.

The request submits that claims 1-2, 5-10, 18, 19, 25, 27-35, 37, 38, 40, 41,
44, 47-52, 60, 61, 67, 69-72 and 74-76 are unpatentable under 35 U.S.C. § 103(a) as
being obvious over Ding 313 in view of Skotnicki 579 , Russo 977, Failli 145,
Skotnicki 718, Skotnicki 730 or Nelson 790.

Claims 1-2, 5-7, 9, 10, 18, 19, 25, 27/1, 27/2, 27/5-7, 27/9, 27/10, 27/18, 27/19,

28/1, 28/2, 28/5-7, 28/9, 28/10, 28/18, 28/19, 29/28/1, 29/28/2, 29/28/5-7, 29/28/9,

29/28/10, 29/28/18, 29/28/19, 30/1, 30/2, 30/5-7, 30/9, 30/10, 30/18, 30/19, 31/30/1,

31/30/2, 31/30/5-7, 31/30/9, 31/31/10, 31/30/18, 31/30/19, 32/1, 32/2, 32/5-7, 32/9,

32/10, 32/18, 32/19, 33/32/1, 33/32/2, 33/32/5-7, 33/32/9, 33/32,10, 33/32/18, 33/32/19,

34/1, 34/2, 34/5-7, 34/9, 34/10, 34/18, 34/19, 35/34/1, 35/34/2, 35/34/5-7, 35/34/9,

35/34/10, 35/34/18, 35/34/19, 37/33/32/1, 37/33/32/2, 37/33/32/5-7, 37/33/32/9,

37/33/32/10, 37/33/32/18, 37/33/32/19, 38/37/33/32/1, 38/37/33/32/2, 38/37/33/32/5-10,

38/37/33/32/9, 38/37/33/32/10, 38/37/33/32/18, 38/37/33/32/19, 40, 41, 44, 47-49, 51,

52, 60, 61, 67, 69/40, 69/41, 69/44, 69/47-52, 69/60, 69/61, 69/67, 70/40, 70/41, 70/44,

70/47-49, 70/51, 70/52, 70/60, 70/61, 70/67, 71/70/40, 71/70/41, 71/70/44, 71/70/47-49,

71/70/51, 71/70/52, 71/70/60, 71/70/61, 71/70/67, 72/71/70/41, 72/71/70/44,

72/71/70/47-49, 72/71/70/51, 72/71/70/52, 72/71/70/60, 72/71/70/61, 72/71/70/67,

74/40, 74/41, 74/44, 74/47-49, 74/51, 74/52, 74/60, 74/61, 74/67, 75/74/40, 75/74/41,

75/74/44, 75/74/47-49, 75/74/51, 75/74/52, 75/74/60, 75/74/61, 75/74/67, 76/75/74/40,
76/75/74/41, 76/75/74/44, 76/75/74/47-49, 76/75/74/51, 76/75/74/52, 76/75/74/60,
76/75/74/61 and 76/75/74/67 are rejected under 35 U.S.C. 103(a) as being
unpatentable over Ding 313 in view of Skotnicki 579 , Russo 977, Failli 145, Skotnicki
718, Skotnicki 730 or Nelson 790.

Regarding claims 1, 27/1, 27/2, 27/5-7, 27/9, 27/10, 27/18, 27/19, 29/28/1,
29/28/2, 29/28/5-7, 29/28/9, 29/28/10, 29/28/18, 29/28/19, 31/30/1, 31/30/2, 31/30/5-7,
31/30/9, 31/30/10, 31/30/18, 31/30/19, 33/32/1, 33/32/2, 33/32/5-7, 33/32/9, 33/32/10,
33/32/18, 33/32/19, 40, 69/40, 69/41, 69/44, 69/47-49, 69/51, 69/52, 69/60, 69/61,
69/67, 71/70/40, 71/70/41, 71/70/44, 71/70/47-49, 71/70/51, 71/70/52, 71/70/60,
71/70/61, 71/70/67, 75/74/40, 75/74/41, 75/74/44, 75/74/47-49, 75/74/51, 75/74/52,
75/74/60, 75/74/61 and 75/74/67, Ding teaches an intravascular stent having a coating
thereon (column 1, lines 60-63).   The coating may comprise a polymer and a
therapeutic substance (column 3, lines 26-45) to prevent restenosis (column 1, lines 31-
43).  Ding does not disclose that the therapeutic substance is rapamycin or a
macrocyclic lactone analog.

Skotnicki 579 teaches that it is known to use rapamycin and macrocyclic lactone
derivatives of rapamycin (abstract) to prevent restenosis or cell proliferation (column 9,
lines 1-11).  Skotnicki 579 further discloses that the rapamycin derivatives may be
encapsulated in a polymer carrier for delivery (column 9, lines 34-38).  The derivative
compounds have similar profile activity to rapamycin, exhibit antiproliferative activities
and are useful in treating restenosis.

Russo teaches that an analog of rapamycin, 21-norrapamycin, to prevent

restenosis or cell proliferation (abstract, column 1, lines 6-12, 39-46 and column 7, lines

10-16). The compound may be administered with a carrier that could include a

reservoir matrix (column 4, line 67 through column 5, line 4).  Russo discloses that

polyvinylpyrrolidine may be used as a carrier (column 4, lines 4-20).

Failli teaches rapamycin 42-oximes and hydroxylamines are to prevent

restenosis or cell proliferation (column 1, lines 9-15, 64-66 and column 6, lines 36-48).

Failli discloses that the compounds may be delivered via an encapsulating material or

matrix including polyvinylpyrrolidine (column 7, lines 13-14 and column 8, line 3-7).

Skotnicki 718 teaches rapamycin hydroxyesters useable to prevent restenosis or

cell proliferation (abstract, column 1, lines 6-12, 40-51, 65-68 and column 6, lines 46-

59). The derivatives may be used to treat hyperproliferative disease such as restenosis

following angioplasty procedures.  The compounds may be delivered via a carrier or

matrix including polyvinylpyrrolidine (column 7, lines 34-38 and column 8, line 19-24).

Skotnicki 730 teaches phosphorylcarbamates of rapamycin and oxime

derivatives thereof that are useful as anti-inflammatories and antiproliferatives (column

1, lines 65-68). The derivatives may be used to treat hyperproliferative disease such as

restenosis (column 7, lines 10-16). Additionally, the compounds may be delivered via a

carrier or matrix including polyvinylpyrrolidine (column 7, lines 50-54 and column 8, lines

35-40).

Nelson teaches 27-hydroxyrapamycin and derivatives of rapamycin to prevent

restenosis or cell proliferation (abstract, column 1, lines 11-17, lines 44-51 and column

15, lines 41-54). The derivatives are useful as anti-inflammatories and antiproliferatives
(column 2, lines 43-46). Additionally, the derivatives may be delivered via a carrier or
matrix including polyvinylpyrrolidine (column 16, lines 9-12 and lines 24-28 and column
17, lines 11-15).

It would have been obvious to one of ordinary skill in the art at the time the
invention was made to modify the stent of Ding to include rapamycin or macrocyclic
lactone derivatives of rapamycin, in view of the teachings of Skotnicki 579 , Russo 977,
Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790,  that rapamycin and macrocyclic
lactone derivatives of rapamycin have superior anti-inflammatory and anti-proliferative
properties. All of these references teach treating the vessel with therapeutic agents in
order to inhibit or lessen restenosis. These references disclose that rapamycin is a
known and effective inhibitor of cell proliferation and is used to treat restenosis. Each
disclose that the agent may be contained in a polymer carrier/matrix. Furthermore, the
combination would have yielded nothing more than predictable results to one of ordinary
skill in the art at the time of the invention, i.e., one skilled in the art would have
recognized that rapamycin would allow the stent of Ding to be used as Ding intended,
e.g. to prevent restenosis in the vascular system.

*Regarding claims 2 and 44*, Ding discloses that the stent is comprised of a
tubular body formed of an open braid of fine metal wire which can be considered struts
(see column 3, lines 17-21 and Figures 8-11).

*Regarding claims 5, 6, 47 and 48*, Ding discloses that the coating may be applied
to the stent by dipping or by spraying (column 3, line 46).

*Regarding claims 7 and 49*, Ding discloses "the loading [of the biologically active material] generally most advantageously used is in the range from about 10% to 45% of the total weight of the layer" (column 10, lines 25-26 and claim 4). It would have been obvious to one having ordinary skill in the art at the time the invention was made to provide the rapamycin in the coating at a weight percentage of about 30% or a weight ratio of drug to polymeric carrier of about 3:7, since it has been held that discovering an optimum value of a result effective variable involves only routine skill in the art. *In re Boesch*, 617 F.2d 272, 205 USPQ 215 (CCPA 1980).

*Regarding claims 9 and 51*, Ding discloses the polymer should be biostable (column 10, lines 30-41).

*As to claims 10, 18, 19, 25, 52, 60, 61 and 67*, Ding discloses that the polymer may comprise polydimethylsiloxane (column 4, line 10), ethylene vinyl acetate copolymers (column 4, lines 57-58) and fluroxilicone (Ding 536, column 5, 43-46 incorporated by reference in Ding 313, column 1, lines 6-20).

*Regarding claims 28/1, 28/2, 28/5-7, 28/9, 28/10, 28/18, 28/19, 28/25, 30/1, 30/2, 30/5-7, 30/9, 30/10, 30/18, 30/19, 30/25, 34/1,34/2, 34/5-7, 34/9, 34/10, 34/18, 34/19, 34/25, 70/40, 70/41, 70/44, 70/47-49, 70/51, 70/ 52, 70/60, 70/61, 70/67, 74/40, 74/41, 74/44, 74/47-49, 74/51, 74/52, 74/60, 74/61 and 74/67*, Ding discloses that the drug may be released at a controlled rate for a period of at least two weeks (Figures 2-4 and 6 and column 6, lines 10-26).

BSC-SJA-0219

*As to claims 32/1, 32/2, 32/5-7, 32/9, 32/10, 32/18, 32/19, 32/25 and 40,* Ding discloses that the drug is present a therapeutically beneficial amount to inhibit neointimal proliferation (see column 2, lines 28-33).

*Regarding claim 41,* Ding discloses that the polymeric carrier and drug are mixed together (claim 16).

Accordingly, this rejection of claims 1-2, 5-7, 9, 10, 18, 19, 25, 27/1, 27/2, 27/5-7, 27/9, 27/10, 27/18, 27/19, 28/1, 28/2, 28/5-7, 28/9, 28/10, 28/18, 28/19, 29/28/1, 29/28/2, 29/28/5-7, 29/28/9, 29/28/10, 29/28/18, 29/28/19, 30/1, 30/2, 30/5-7, 30/9, 30/10, 30/18, 30/19, 31/30/1, 31/30/2, 31/30/5-7, 31/30/9, 31/31/10, 31/30/18, 31/30/19, 32/1, 32/2, 32/5-7, 32/9, 32/10, 32/18, 32/19, 33/32/1, 33/32/2, 33/32/5-7, 33/32/9, 33/32,10, 33/32/18, 33/32/19, 34/1, 34/2, 34/5-7, 34/9, 34/10, 34/18, 34/19, 35/34/1, 35/34/2, 35/34/5-7, 35/34/9, 35/34/10, 35/34/18, 35/34/19, 37/33/32/1, 37/33/32/2, 37/33/32/5-7, 37/33/32/9, 37/33/32/10, 37/33/32/18, 37/33/32/19, 38/37/33/32/1, 38/37/33/32/2, 38/37/33/32/5-10, 38/37/33/32/9, 38/37/33/32/10, 38/37/33/32/18, 38/37/33/32/19, 40, 41, 44, 47-49, 51, 52, 60, 61, 67, 69/40, 69/41, 69/44, 69/47-52, 69/60, 69/61, 69/67, 70/40, 70/41, 70/44, 70/47-49, 70/51, 70/52, 70/60, 70/61, 70/67, 71/70/40, 71/70/41, 71/70/44, 71/70/47-49, 71/70/51, 71/70/52, 71/70/60, 71/70/61, 71/70/67, 72/71/70/41, 72/71/70/44, 72/71/70/47-49, 72/71/70/51, 72/71/70/52, 72/71/70/60, 72/71/70/61, 72/71/70/67, 74/40, 74/41, 74/44, 74/47-49, 74/51, 74/52, 74/60, 74/61, 74/67, 75/74/40, 75/74/41, 75/74/44, 75/74/47-49, 75/74/51, 75/74/52, 75/74/60, 75/74/61, 75/74/67, 76/75/74/40, 76/75/74/41, 76/75/74/44, 76/75/74/47-49, 76/75/74/51, 76/75/74/52, 76/75/74/60, 76/75/74/61 and 76/75/74/67 based on Ding 313

in view of Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson
790, was proposed by the third party requester in the request for reexamination and is
being adopted essentially as proposed in the request.

Furthermore, claims 27/3, 27/4, 27/11-17, 27/20-24, 27/26, 28/3, 28/4, 28/11-17,
28/20-24, 28/26, 29/28/3, 29/28/4, 29/28/11-17, 29/28/20-24, 29/28/26, 30/3, 30/4,
30/11-17, 30/20-24, 30/26, 31/30/3, 31/30/4, 31/30/11-17, 31/30/20-24, 31/30/26, 32/3,
32/4, 32/11-17, 32/20-24, 32/26, 33/32/3, 33/32/4, 33/32/11-17, 33/32/20-24, 33/32/26,
34/33/32/3, 34/33/32/4, 34/33/32/11-17, 34/33/32/20-24, 34/33/32/26, 35/34/33/32/3,
35/34/33/32/4, /35/34/33/32/11-17, 35/34/33/32/20-24, 35/34/33/32/26, 37/33/32/3,
37/33/32/4, 37/33/32/11-17, 37/33/32/20-24, 37/33/32/26, 38/37/33/32/3, 38/37/33/32/4,
38/37/33/32/11-17, 38/37/33/32/20-24, 38/37/33/32/26, 69/42, 69/43, 69/45, 69/46,
69/53-59, 69/62-66, 69/68, 70/42, 70/43, 70/45, 70/46, 70/53-59, 70/62-66, 70/68,
71/70/42, 71/70/43, 71/70/45, 71/70/46, 71/70/53-59, 71/70/62-66, 71/70/68,
72/71/70/42, 72/71/70/43, 72/71/70/45, 72/71/70/46, 72/71/70/53-59, 72/71/70/62-66,
72/71/70/68, 74/42, 74/43, 74/45, 74/46, 74/53-59, 74/62-66, 74/68, 75/74/42, 75/74/43,
75/74/45, 75/74/46, 75/74/53-59, 75/74/62-66, 75/74/68, 76/75/74/42, 76/75/74/43,
76/75/74/45, 76/75/74/46, 76/75/74/53-59, 76/75/74/62-66 and 76/75/74/68 depend
upon claims that are not rejected with the combination of Ding and Skotnicki.
Accordingly, the rejection of these claims based on Ding 313 and Skotnicki 579 , Russo
977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, is not adopted essentially as
proposed in the request.

Application/Control Number: 95/001,097                                   Page 66
Art Unit: 3993

Additionally, claims 8 and 50 specify that the polymer is a degradable polymer.

However, Ding teaches away from using a degradable polymer. "The need for relatively

thick-walled polymer elution stents or any membrane overlayers associated with many

prior drug elution devices is obviated, as is the need for utilizing biodegradable or

reabsorbable vehicles for carrying the biologically active species. The technique clearly

enables long-term delivery and minimizes interference with the independent mechanical

or therapeutic benefits of the stent itself" (column 10, lines 34-41). Accordingly, the

rejection of these claims based on Ding 313 and Skotnicki 579 , Russo 977, Failli 145,

Skotnicki 718, Skotnicki 730 or Nelson 790, is not adopted essentially as proposed in

the request.

### Ground # 25.

The request submits that claims 3, 4, 43, 45, and 46 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Ding 313 in view of Skotnicki 579 ,
Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to
claims 1 and 40 above, and further in view of Ragheb 070.

Claims 3, 4, 43, 45, and 46 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Ding 313 in view of Skotnicki 579 , Russo 977, Failli 145, Skotnicki

718, Skotnicki 730 or Nelson 790, as applied to claims 2 and 40 above, and further in

view of Ragheb 070.

Regarding claims 3 and 45, the stent of Ding as modified by Skotnicki 579 ,

Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, set forth above, does

not include a channel formed in at least one strut. Ragheb shows a stent 10 having a

coating thereon. The stent is formed of struts 14 having channels 28' formed therein.

Ragheb discloses that "[t]he wells 28' may also be in the form of slots or grooves in the

surface of the base material 14 of the medical device. This aspect of the invention

provides the advantage of better controlling the total amount of the bioactive material 18

to be released as well as the rate at which it is released." (column 16, lines 48-51). It

would have been obvious to one of ordinary skill in the art at the time the invention was

made to modify the stent of Ding as modified by Skotnicki 579 , Russo 977, Failli 145,

Skotnicki 718, Skotnicki 730 or Nelson 790, with channels located in the struts, as

taught by Ragheb, in order to control the amount and rate of release of rapamycin.

Regarding claims 4 and 46, Figure 10B of Ragheb shows a rectangular channel

with a close perimeter and an open top. The channel is smaller in all dimensions than

the strut.

Regarding claim 43, Ding and Skotnicki 579 , Russo 977, Failli 145, Skotnicki

718, Skotnicki 730 or Nelson 790, fail to disclose that the drug is entrapped on the

surface of the stent by the polymeric carrier; Ragheb discloses that the drug 18 is

entrapped by a polymeric layer 20 which controls the release of the drug. Ragheb

discloses "any degradation of the bioactive material which might otherwise occur by

other polymer coating techniques is avoided" (column 19, lines 51-53). Thus, the

manner of enhancing a particular device (stent with drug delivery capabilities) was

made part of the ordinary capabilities of one skilled in the art based upon the teaching

of such improvement in Ragheb. Accordingly, one of ordinary skill in the art would have

been capable of applying this known "improvement" technique in the same manner to

the stent of Ding and the results would have been predictable to one of ordinary skill in

the art, namely, one skilled in the art would have readily recognized that the entrapment

BSC-SJA-0223

system of Ragheb would reduce the degradation of the drug as might occur with the

polymer coating technique of Ding.

Accordingly, this rejection of claims 3, 4, 43, 45, and 46 based on Ding 313 in

view of Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson

790, and Ragheb 070 was proposed by the third party requester in the request for

reexamination is and being adopted essentially as proposed in the request.

## Ground # 26.

The request submits that claim 42 is unpatentable under 35 U.S.C. § 103(a)
as being obvious over Ding 313 in view of Skotnicki 579, Russo 977, Failli 145,
Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above,
and further in view of Sahatjian 121.

Claim 42 is rejected under 35 U.S.C. 103(a) as being unpatentable over Ding

313 and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson

790, as applied to claim 40 above, and further in view of Sahatjian 121. The coating of

Ding comprises a mixture of polymer and a drug but fails to disclose a coating wherein

the polymer is bound to the drug. Sahatjian discloses a coating that is delivered to the

vascular system to prevent restenosis. The coating comprises a polymer which is

bound to a drug. The substitution of one known element (coating of Ding) for another

(coating of Sahatjian) would have been obvious to one of ordinary skill in the art at the

time of the invention since the substitution of the coating disclosed by Ding with that of

Sahatjian would have yielded predictable results, namely, delivery of a drug to the

vascular system and would merely be a substitution of one known element for another.

KSR Int'l Co. v. Teleflex Inc., 82 USPQ2d 1385, 1396 (2007).

BSC-SJA-0224

Accordingly, this rejection of claim 42 based on Ding 313 and Skotnicki 579,

Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Sahatjian 121

was proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.

### Ground # 27.

The request submits that claims 11-17, 21-22, 24, 36, 39, 53-59, 63, 64 and
66, 73 and 77 are unpatentable under 35 U.S.C. § 103(a) as being obvious over
Ding 313 in view of Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki
730 or Nelson 790, as applied to claims 1 and 40 above, and further in view of
Berg 650.

Claims 21-22, 24, 36/35/34/33/32/1, 36/35/34/33/32/2, 36/35/34/33/32/5-7,

36/35/34/33/32/9, 36/35/34/33/32/10, 36/35/34/33/32/18, 36/35/34/33/32/19,

36/35/34/33/32/21-22, 36/35/34/33/32/24, 36/35/34/33/32/25, 39/38/37/33/32/1,

39/38/37/33/32/2, 39/38/37/33/32/5-7, 39/38/37/33/32/9, 39/38/37/33/32/10,

39/38/37/33/32/18, 39/38/37/33/32/19, 39/38/37/33/32/21, 39/38/37/33/32/22,

39/38/37/33/32/24, 39/38/37/33/32/25, 63, 64, 66, 73/72/71/70/40 , 73/72/71/70/41 ,

73/72/71/70/44 , 73/72/71/70/47-49 , 73/72/71/70/51, 73/72/71/70/52, 73/72/71/70/60,

73/72/71/70/61, 73/72/71/70/63, 73/72/71/70/64, 73/72/71/70/66, 73/72/71/70/67,

77/76/75/74/40, 77/76/75/74/41, 77/76/75/74/44, 77/76/75/74/47-49, 77/76/75/74/51,

77/76/75/74/52, 77/76/75/74/60, 77/76/75/74/61, 77/76/75/74/63, 77/76/75/74/64,

77/76/75/74/66 and 77/76/75/74/67 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Ding 313 and Skotnicki 57 , Russo 977, Failli 145, Skotnicki 718,

Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in view of

Berg. Berg discloses that the polymer may comprise an acrylate based polymer, e.g.

cyanoacrylates (column 4, line 49), ethylene-methyl methacrylate copolymers (column

4, lines 66-67), cellulose acetate, cellulose butyrate cellulose acetate butyrate etc

(column 5, lines 4-7). The substitution of one known element (any of the polymers of

Ding) for another would have been obvious to one of ordinary skill in the art at the time

of the invention since the substitution of the polymer disclosed by Ding with that of Berg

would have yielded predictable results, namely, delivery of a drug to the vascular

system and would merely be a substitution of one known element for another. *KSR Int'l*

*Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

    Accordingly, this rejection of claims 21-22, 24, 36/35/34/33/32/1,

36/35/34/33/32/2, 36/35/34/33/32/5-7, 36/35/34/33/32/9, 36/35/34/33/32/10,

36/35/34/33/32/18, 36/35/34/33/32/19, 36/35/34/33/32/21-22, 36/35/34/33/32/24,

36/35/34/33/32/25, 39/38/37/33/32/1, 39/38/37/33/32/2, 39/38/37/33/32/5-7,

39/38/37/33/32/9, 39/38/37/33/32/10, 39/38/37/33/32/18, 39/38/37/33/32/19,

39/38/37/33/32/21, 39/38/37/33/32/22, 39/38/37/33/32/24, 39/38/37/33/32/25, 63, 64,

66, 73/72/71/70/40, 73/72/71/70/41 , 73/72/71/70/44 , 73/72/71/70/47-49 ,

73/72/71/70/51, 73/72/71/70/52, 73/72/71/70/60, 73/72/71/70/61, 73/72/71/70/63,

73/72/71/70/64, 73/72/71/70/66, 73/72/71/70/67, 77/76/75/74/40, 77/76/75/74/41,

77/76/75/74/44, 77/76/75/74/47-49, 77/76/75/74/51, 77/76/75/74/52, 77/76/75/74/60,

77/76/75/74/61, 77/76/75/74/63, 77/76/75/74/64, 77/76/75/74/66 and 77/76/75/74/67

based on Ding 313 and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki

730 or Nelson 790, and Berg 650 was proposed by the third party requester in the

request for reexamination and is being adopted essentially as proposed in the request.

Furthermore, claims 36/35/34/33/32/3, 36/35/34/33/32/4, 36/35/34/33/32/20,
36/35/34/33/32/23, 36/35/34/33/32/26, 39/38/37/33/32/3, 39/38/37/33/32/4,
39/38/37/33/32/20, 39/38/37/33/32/23, 39/38/37/33/32/26, 73/72/71/70/43,
73/72/71/70/45, 73/72/71/70/46, 73/72/71/70/62, 73/72/71/70/65, 73/72/71/70/68,
77/76/75/74/43, 77/76/75/74/45, 77/76/75/74/46, 77/76/75/74/62, 77/76/75/74/65,
77/76/75/74/68 depend upon claims that are not rejected with the combination of Ding
and Skotnicki.  Accordingly, the rejection of these claims based on Ding 313 and
Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, is not
adopted essentially as proposed in the request.

Additionally, claims 11-17 and 53-59 specify that the polymer is a degradable
polymer.  However, Ding teaches away from using a degradable polymer. "The need for
relatively thick-walled polymer elution stents or any membrane overlayers associated
with many prior drug elution devices is obviated, as is the need for utilizing
biodegradable or reabsorbable vehicles for carrying the biologically active species. The
technique clearly enables long-term delivery and minimizes interference with the
independent mechanical or therapeutic benefits of the stent itself" (column 10, lines 34-
41).  Accordingly, the rejection of these claims based on Ding 313, Skotnicki 579, Russo
977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Berg 650 is not adopted
essentially as proposed in the request.

### Ground # 28.

The request submits that claims 11-15, 23, 26, 53-57, 65 and 68 are
unpatentable under 35 U.S.C. § 103(a) as being obvious over Ding 313 in view of

**Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in view of Helmus 724.**

Claims 23, 26, 65, and 68 are rejected under 35 U.S.C. 103(a) as being unpatentable over Ding 313 and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in view of Helmus 724. Helmus discloses that the polymer used for the coating may be polyvinyl pyrrolidone or polytetrafluoroethylene may be used as the coating on a drug delivery stent. See page 3, lines 7-14 and page 3, line 34 to page 4, line 1. The substitution of one known element (any of the polymers of Ding) for another (polyvinyl pyrrolidone or polytetrafluoroethylene of Helmus) would have been obvious to one of ordinary skill in the art at the time of the invention since the substitution of the polymer disclosed by Ding with that of Helmus would have yielded predictable results, namely, delivery of a drug to the vascular system and would merely be a substitution of one known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 23, 26, 65, and 68 based on Ding 313 and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Helmus 724 was proposed by the third party requester in the request for reexamination is being adopted essentially as proposed in the request.

Additionally, claims 11-15 and 53-57 specify that the polymer is a degradable polymer. However, Ding teaches away from using a degradable polymer. "The need for relatively thick-walled polymer elution stents or any membrane overlayers associated with many prior drug elution devices is obviated, as is the need for utilizing biodegradable or reabsorbable vehicles for carrying the biologically active species. The

BSC-SJA-0228

Application/Control Number: 95/001,097                                      Page 73
Art Unit: 3993

technique clearly enables long-term delivery and minimizes interference with the

independent mechanical or therapeutic benefits of the stent itself" (column 10, lines 34-

41). Accordingly, the rejection of these claims based on Ding 313, Skotnicki 579, Russo

977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Berg 650 is not adopted

essentially as proposed in the request.

### Ground # 29.

The request submits that claims 15, 26, 57 and 68 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Ding 313 in view of Skotnicki 579, Russo
977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1
and 40 above, and further in view of Dayton 075.

Claims 26 and 68 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Ding 313 and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or

Nelson 790, as applied to claims 1 and 40 above, and further in view of Dayton 075.

Ding does not disclose that the polymer may comprise polytetrafluoroethylene. Dayton

discloses that polytetrafluoroethylene may be used as the coating on a drug delivery

stent. See column 4, lines 1-7-11. The substitution of one known element (any of the

polymers of Ding) for another (polytetrafluoroethylene of Dayton) would have been

obvious to one of ordinary skill in the art at the time of the invention since the

substitution of the polymer disclosed by Ding with that of Dayton would have yielded

predictable results, namely, delivery of a drug to the vascular system and would merely

be a substitution of one known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82

USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 26 and 68 based on Ding 313 and Skotnicki

579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Dayton 075

Application/Control Number: 95/001,097                                    Page 74
Art Unit: 3993

was proposed by the third party requester in the request for reexamination and is <u>being</u>
<u>adopted</u> essentially as proposed in the request.

     Additionally, claims 15 and 57 specify that the polymer is a degradable polymer.
However, Ding teaches away from using a degradable polymer. "The need for relatively
thick-walled polymer elution stents or any membrane overlayers associated with many
prior drug elution devices is obviated, as is the need for utilizing biodegradable or
reabsorbable vehicles for carrying the biologically active species. The technique clearly
enables long-term delivery and minimizes interference with the independent mechanical
or therapeutic benefits of the stent itself" (column 10, lines 34-41). Accordingly, the
rejection of these claims based on Ding 313, Skotnicki 579, Russo 977, Failli 145,
Skotnicki 718, Skotnicki 730 or Nelson 790, and Dayton is <u>not adopted</u> essentially as
proposed in the request.

## Ground # 30.

    **The request submits that claims 11-13, 20, 53-55 and 62 are unpatentable
under 35 U.S.C. § 103(a) as being obvious over Ding 313 in view of Skotnicki 579,
Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to
claims 1 and 40 above, and further in view of Kaplan 348.**

    Claims 20 and 62 are rejected under 35 U.S.C. 103(a) as being unpatentable
over Ding 313 in view of Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki
730 or Nelson 790, as applied to claims 1 and 40 above, and further in view of Kaplan
348. Ding does not disclose that the polymer may comprise
poly(hydroxyl)ethylmethylmethacrylate. Kaplan discloses that poly(hydroxyl)
ethylmethylmethacrylate may be used as the coating on a drug delivery stent. See

column 6, lines 60-61, "[o]ther acceptable polymers may contain monomers of

hydroxyethylmethacrylate . . ." The substitution of one known element (any of the

polymers of Ding) for another (poly(hydroxyl) ethylmethylmethacrylate of Kaplan) would

have been obvious to one of ordinary skill in the art at the time of the invention since the

substitution of the polymer disclosed by Ding with that of Kaplan would have yielded

predictable results, namely, delivery of a drug to the vascular system and would merely

be a substitution of one known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82

USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 20 and 62 based on Ding 313 and Skotnicki

579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Kaplan 348

was proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.

Claims 11-13, 53-55 specify that the polymer is a degradable polymer. However,

Ding teaches away from using a degradable polymer. "The need for relatively thick-

walled polymer elution stents or any membrane overlayers associated with many prior

drug elution devices is obviated, as is the need for utilizing biodegradable or

reabsorbable vehicles for carrying the biologically active species. The technique clearly

enables long-term delivery and minimizes interference with the independent mechanical

or therapeutic benefits of the stent itself" (column 10, lines 34-41).

Accordingly, the rejection of these claims based on Ding 313, Skotnicki 579,

Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Kaplan is not

adopted essentially as proposed in the request.

BSC-SJA-0231

### Ground # 31.

The request submits that claims 11, 12, 14, 15, 53, 54, 56 and 57 are
unpatentable under 35 U.S.C. § 103(a) as being obvious over Ding 313 in view of
Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790,
as applied to claims 1 and 40 above, and further in view of Dinh 227.

Claims 11, 12, 14, 15, 53, 54, 56 and 57 specify that the polymer is a degradable

polymer. However, Ding teaches away from using a degradable polymer. "The need for

relatively thick-walled polymer elution stents or any membrane overlayers associated

with many prior drug elution devices is obviated, as is the need for utilizing

biodegradable or reabsorbable vehicles for carrying the biologically active species. The

technique clearly enables long-term delivery and minimizes interference with the

independent mechanical or therapeutic benefits of the stent itself" (column 10, lines 34-

41).

Accordingly, the rejection of these claims based on Ding 313, Skotnicki 579,

Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Dinh is not

adopted essentially as proposed in the request.

### Ground #32.

The request submits that claims 13 and 55 are unpatentable under 35
U.S.C. § 103(a) as being obvious over Ding 313 in view of Skotnicki 579, Russo
977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1
and 40 above, and further in view of Wolff 779.

Claims 13 and 55 specify that the polymer is a degradable polymer. However,

Ding teaches away from using a degradable polymer. "The need for relatively thick-

walled polymer elution stents or any membrane overlayers associated with many prior

drug elution devices is obviated, as is the need for utilizing biodegradable or

reabsorbable vehicles for carrying the biologically active species. The technique clearly

enables long-term delivery and minimizes interference with the independent mechanical

or therapeutic benefits of the stent itself" (column 10, lines 34-41).

Accordingly, the rejection of these claims based on Ding 313, Skotnicki 579,

Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Wolff 779 is not

adopted essentially as proposed in the request.

## Helmus Patent Proposed Obviousness Combinations.

### Ground # 33.

The request submits that claims 1, 2, 5, 7-15, 18-26, 28, 30, 32, 40, 41, 47,
49-57, 60-68, 70 and 74 are unpatentable under 35 U.S.C. § 103(a) as being
obvious over Helmus 781 in view of Morris 781 or Mitchell 711.

Claims 1, 5, 7-15, 18-26, 28/1, 28/5, 28/7-15, 28/18-26, 30/1, 30/5, 30/7-15,

30/18-26, 32/1, 32/5, 32/7-15, 32/18-26, 40, 41, 47-49, 51, 52, 60, 61, 67, 70/40, 70/41,

70/47, 70/49-57, 70/60-68, 74/40, 74/41, 74/47, 74/49-57 and 74/60-68, are rejected

under 35 U.S.C. 103(a) as being unpatentable over Helmus 781 in view of Morris 781 or

Mitchell 711.

*Regarding claims 1 and 40,* Helmus teaches an intravascular stent (page 4, line

21 and claim 6) having a coating thereon (20 or 24). The coating may comprise a

polymer (page 3, lines 7-24) and a therapeutic substance (column 3, lines 26-45) to

Application/Control Number: 95/001,097                                    Page 78
Art Unit: 3993

prevent cell proliferation (page 1, lines 21-24). Helmus does not disclose that the

therapeutic substance is rapamycin or a macrocyclic lactone analog.

Morris teaches that it is known to use an antiproliferative effective amount

rapamycin, delivered via a stent, to prevent restenosis or cell proliferation (column 3,

lines 51-64). Morris further discloses that rapamycin may be encapsulated in a polymer

matrix for delivery (column 3, lines 51-64).

Mitchell teaches that it is known to use rapamycin, delivered via a stent, to

prevent restenosis or cell proliferation (column 3, lines 24-31). A solid carrier can be

used to administer rapamycin including polyvinylpyrrolidine (column 6, lines 24-28 and

column 7, lines 10-15).

It would have been obvious to one of ordinary skill in the art at the time the

invention was made to modify the stent of Helmus to include rapamycin, in view of the

teaching of Morris or Mitchell. All three references teach treating the vessel with

therapeutic agents in order to inhibit or lessen restenosis. Both Morris and Mitchell

disclose that rapamycin is a known and effective inhibitor of cell proliferation and is used

to treat restenosis via a vascular stent. Furthermore, and the combination would have

yielded nothing more than predictable results to one of ordinary skill in the art at the

time of the invention, i.e., one skilled in the art would have recognized that rapamycin

would allow the stent of Helmus to be used as Helmus intended, e.g. to prevent

restenosis in the vascular system.

*Regarding claims 5 and 47*, Helmus discloses that the coating may be applied to

the stent by dipping (page 15, line 29-page 17, line 12).

BSC-SJA-0234

*Regarding claims 7 and 49*, Helmus discloses "[t]he reservoir is comprised of more than about 30% by weight of the agent, preferably about 40 to 60% by weight of the agent" (page 2, lines 25-27). It would have been obvious to one having ordinary skill in the art at the time the invention was made to provide the rapamycin in the coating at a weight percentage of about 30% or a weight ratio of drug to polymeric carrier of about 3:7, since it has been held that discovering an optimum value of a result effective variable involves only routine skill in the art. *In re Boesch*, 617 F.2d 272, 205 USPQ 215 (CCPA 1980).

*Regarding claims 8 and 50*, Helmus discloses that the polymer may be absorbable (page 3, line19, "biodegradeable polymers").

*Regarding claims 9 and 51*, Helmus discloses the polymers that are biostable (e.g. polytetrafluoroethylene and polymethymethacrylates (page 3, line 36 to page 4, line 2).

As to claims 10-15, 18-26, 52-57, 60-68, Helmus discloses that the polymer may comprise lactone-based polymers and copolymers (polylactides and their copolymers, (page 3, lines 20-24), polyanhydrides (page 3, line 23), polyamino acids (proteins and peptides, page 3, line18), polysaccharides (page 3, line 14), polydimethylsiloxane (silicone and its copolymers, page 3, line 34), ethylene vinyl acetate (page 3, line 34), polymethylmethacrylate (page 4, line 2), polyvinylpyrrolidone (page 3, line14), cellulosics (page 3, line 36) and polytetrafluroethylenes (page 3, line 36 to page 4, line 1).

Application/Control Number: 95/001,087                              Page 80
Art Unit: 3993

*Regarding claims 28/1, 28/5, 28/7-15, 28/18-26, 30/1, 30/2, 30/5, 30/7-15, 30/18-26, 70/40, 70/41, 70/47, 70/49-57, 70/60-68, 74/40, 74/41, 74/47, 74/49-57 and 74/60-68,* Helmus discloses that the drug may be released at a controlled rate for a period of at least two weeks ("several weeks", page11, lines 1-4).

*As to claims 32/1, 32/5, 32/7-15, 32/18-26 and 40,* Helmus discloses that the drug is present a therapeutically beneficial amount to inhibit neointimal proliferation.

*Regarding claim 41,* Helmus discloses that the polymeric carrier and drug are mixed together (page 6, lines 3-28).

Accordingly, this rejection of claims 1, 5, 7-15, 18-26, 28/1, 28/5, 28/7-15, 28/18-26, 30/1, 30/5, 30/7-15, 30/18-26, 32/1, 32/5, 32/7-15, 32/18-26, 40, 41, 47 49-57, 60-68, 70/40, 70/41, 70/47, 70/49-57, 70/60-68, 74/40, 74/41, 74/47, 74/49-57 and 74/60-68, based on Helmus 781 in view of Morris 781 or Mitchell 711 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

*Regarding claims 2 and 44,* Helmus discloses a vascular stent but provides no detail about the structure of the stent. Accordingly, the rejection of these claims based on Helmus 781 and Morris 781 or Mitchell 711 is not adopted essentially as proposed in the request.

Furthermore, claims 28/2-4, 28/6, 28/16, 28/17, 28/27, 30/2-4, 30/6, 30/16, 30/17, 30/27, 32/2-4, 32/6, 32/16, 32/17, 32/27, 70/42-46, 70/48, 70/58, 70/59, 74/42-46, 74/48, 74/58 and 74/59, depend upon claims that are not rejected with the combination of Helmus and Morris or Mitchell 711. Accordingly, the rejection of these claims based

BSC-SJA-0236

on Helmus 781 and Morris 781 or Mitchell 711 is <u>not adopted</u> essentially as proposed in

the request.

### Ground # 34.

**The request submits that claims 3, 4, 43, 45, and 46 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Helmus 781 in view of Morris 781 or
Mitchell 711 as applied to claims 1 and 40 above, and further in view of Ragheb
070.**

Claims 3, 4, 43, 45, and 46 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Helmus 781 in view of Morris 781 or Mitchell 711 as applied to claims

2 and 40 above, and further in view of Ragheb 070.

*Regarding claims 3 and 45,* the stent of Helmus as modified by Morris or Mitchell

711, set forth above, does not include a channel formed in at least one strut. Ragheb

shows a stent 10 having a coating thereon. The stent is formed of struts 14 having

channels 28' formed therein.  Ragheb discloses that "[t]he wells 28' may also be in the

form of slots or grooves in the surface of the base material 14 of the medical device.

This aspect of the invention provides the advantage of better controlling the total

amount of the bioactive material 18 to be released as well as the rate at which it is

released." (column 16, lines 48-51). It would have been obvious to one of ordinary skill

in the art at the time the invention was made to use the stent of Ragheb in Helmus, in

order to control the amount and rate of release of rapamycin.

*Regarding claims 4 and 46,* Figure 10B of Ragheb shows a rectangular channel

with a close perimeter and an open top. The channel is smaller in all dimensions than

the strut.

BSC-SJA-0237

Application/Control Number: 95/001,097                                   Page 82
Art Unit: 3993

*Regarding claim 43*, Helmus and Morris or Mitchell 711 fails to disclose that the

drug is entrapped on the surface of the stent by the polymeric carrier. Ragheb

discloses that the drug 18 is entrapped by a polymeric layer 20 which controls the

release of the drug. Ragheb discloses "any degradation of the bioactive material which

might otherwise occur by other polymer coating techniques is avoided" (column 19,

lines 51-53). Thus, the manner of enhancing a particular device (stent with drug

delivery capabilities) was made part of the ordinary capabilities of one skilled in the art

based upon the teaching of such improvement in Ragheb. Accordingly, one of ordinary

skill in the art would have been capable of applying this known "improvement" technique

in the same manner to the stent of Helmus and the results would have been predictable

to one of ordinary skill in the art, namely, one skilled in the art would have readily

recognized that the entrapment system of Ragheb would reduce the degradation of the

drug as might occur with the polymer coating technique of Helmus.

Accordingly, this rejection of claims 3, 4, 43, 45, and 46 based on Helmus 781 in

view of Morris 781 or Mitchell 711 and Ragheb 070 was proposed by the third party

requester in the request for reexamination is and being adopted essentially as proposed

in the request.

### Ground # 35.

**The request submits that claim 42 is unpatentable under 35 U.S.C. § 103(a)
as being obvious over Helmus 781 in view of Morris 781 or Mitchell 711 as applied
to claims 1 and 40 above, and further in view of Sahatjian 121.**

Claim 42 is rejected under 35 U.S.C. 103(a) as being unpatentable over Helmus

781 and Morris 781 or Mitchell 711 as applied to claim 40 above, and further in view of

BSC-SJA-0238

Application/Control Number: 95/001,097          Page 83
Art Unit: 3993

Sahatjian 121. The coating of Helmus comprises a mixture of polymer and a drug but

fails to disclose a coating wherein the polymer is bound to the drug. Sahatjian discloses

a coating that is delivered to the vascular system to prevent restenosis. The coating

comprises a polymer which is bound to a drug. The substitution of one known element

(coating of Helmus) for another (coating of Sahatjian) would have been obvious to one

of ordinary skill in the art at the time of the invention since the substitution of the coating

disclosed by Helmus with that of Sahatjian would have yielded predictable results,

namely, delivery of a drug to the vascular system and would merely be a substitution of

one known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396

(2007).

Accordingly, this rejection of claim 42 based on Helmus 781 and Morris 781 or

Mitchell 711 and Sahatjian 121 was proposed by the third party requester in the request

for reexamination and is being adopted essentially as proposed in the request.

### Ground # 36.

The request submits that claims 6, 16, 17, 22, 48, 58, 59 and 64 are
unpatentable under 35 U.S.C. § 103(a) as being obvious over Helmus 781 in view
of Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in
view of Berg 650.

Claims 22, 63, 64 and 66 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Helmus 781 and Morris 781 or Mitchell 711 as applied to claims 1

and 40 above, and further in view of Berg.

Application/Control Number: 95/001,097                                    Page 84
Art Unit: 3993

As to claims 6 and 48, Helmus does not disclose that the coating is sprayed-coated onto the stent. Berg discloses that the coating may be applied to the stent by dipping (column 5, Example 2) or by spraying (column 5, Example 1). It would have been obvious to one of ordinary skill in the art at the time the invention was made to spray the coating on the stent of Helmus rather than dipping the stent into the coating because Berg discloses that the two methods are art recognized equivalents.

Regarding claims 16, 17, 22, 58, 59 and 64, Berg discloses that the polymer may comprise polyphosphazenes (column 4, line 52), a poly(ether-ester) copolymer (column 4, line 51), and an acrylate based polymer, e.g. cyanoacrylates (column 4, line 49). The substitution of one known element (any of the polymers of Helmus) for another would have been obvious to one of ordinary skill in the art at the time of the invention since the substitution of the polymer disclosed by Helmus with that of Berg would have yielded predictable results, namely, delivery of a drug to the vascular system and would merely be a substitution of one known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 6, 16, 17, 22, 48, 58, 59 and 64 based on Helmus 781 and Morris 781 or Mitchell 711 and Berg was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

### Ground # 37.

The request submits that claims 20 and 62 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Helmus 781 in view of Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in view of Kaplan 348.

Claims 20 and 60 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Helmus 781 in view of Morris 781 or Mitchell 711 as applied to claims 1 and 40

above, and further in view of Kaplan 348. Helmus discloses that the polymer may

comprise polymethylmethacrylate (page 4, line 2). Kaplan discloses that poly(hydroxyl)

ethylmethylmethacrylate may be used as the coating on a drug delivery stent. See

column 6, lines 60-61, "[o]ther acceptable polymers may contain monomers of

hydroxyethylmethacrylate . . ." The substitution of one known element (any of the

polymers of Helmus) for another (poly(hydroxyl) ethylmethylmethacrylate of Kaplan)

would have been obvious to one of ordinary skill in the art at the time of the invention

since the substitution of the polymer disclosed by Helmus with that of Kaplan would

have yielded predictable results, namely, delivery of a drug to the vascular system and

would merely be a substitution of one known element for another. *KSR Int'l Co. v.

Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 20 and 62 based on Helmus 781 and Morris

781 or Mitchell 711 and Kaplan 348 was proposed by the third party requester in the

request for reexamination and is being adopted essentially as proposed in the request.

### Ground # 38.

**The request submits that claims 18 and 60 are unpatentable under 35
U.S.C. § 103(a) as being obvious over Helmus 781 in view of Morris 781 or
Mitchell 711 as applied to claims 1 and 40 above, and further in view of Ding 313.**

Claims 18 and 60 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Helmus 781 in view of Morris 781 or Mitchell 711 as applied to claims 1 and 40

above, and further in view of Ding 313. Helmus does not disclose that the polymer may

Application/Control Number: 95/001,097                           Page 86
Art Unit: 3993

comprise polydimethylsiloxane. Ding discloses that it is known to use

polydimethylsiloxane as the coating on a drug delivery stent. See column 4, lines 9-10,

"[f]or example, silicone or polysiloxane materials (such as polydimethylsiloxane) have

been used successfully." The substitution of one known element (any of the polymers

of Helmus) for another (polydimethylsiloxane of Ding) would have been obvious to one

of ordinary skill in the art at the time of the invention since the substitution of the

polymers disclosed by Helmus with that of Ding would have yielded predictable results,

namely, delivery of a drug to the vascular system and would merely be a substitution of

one known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396

(2007).

Accordingly, this rejection of claims 18 and 60 based on Berg 650 and Mitchell

711 and Ding 313 was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.

### Ground # 39.

The request submits that claims 1-2, 5, 7-15, 18-41, 44, 47, 49-57 and 60-77
are unpatentable under 35 U.S.C. § 103(a) as being obvious over Helmus 724 in
view of Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or
Nelson 790.

Claims 1, 5, 7-15, 18-41, 27/1, 27/5, 27/7-15, 27/18-26, 28/1, 28/5, 28/7-15,

28/18-26, 29/28/1, 29/28/5, 29/28/7-15, 29/28/18-26, 30/1, 30/5, 30/7-15, 30/18-26,

31/30/1, 31/30/5, 31/30/7-15, 31/30/18-26, 32/1, 32/5, 32/7-15, 32/18-26, 33/32/1,

33/32/5, 33/32/7-15, 33/32/18-26, 34/33/32/1, 34/33/32/5, 34/33/32/7-15, 34/33/32/18-

26, 35/34/33/32/1, 35/34/33/32/5, 35/34/33/32/7-15, 35/34/33/32/18-26,

Application/Control Number: 95/001,097                               Page 87
Art Unit: 3993

36/35/34/33/32/1, 36/35/34/33/32/5, 36/35/34/33/32/7-15, 36/35/34/33/32/18-26,
37/33/32/1, 37/33/32/5, 37/33/32/7-15, 37/33/32/18-26, 38/37/33/32/1, 38/37/33/32/5,
38/37/33/32/7-15, 38/37/33/32/18-26, 39/38/37/33/32/1, 39/38/37/33/32/5,
39/38/37/33/32/7-15, 39/38/37/33/32/18-26, 40, 41, 49-57, 60-68, 69/40, 69/41, 69/47,
69/49-57, 69/60-68, 70/40, 70/41, 70/47, 70/49-57, 70/60-68, 71/70/40, 71/70/41,
71/70/49, 71/70/49-57, 71/70/60-68, 72/71/70/40, 72/71/70/41, 72/71/70/47,
72/71/70/49-57, 72/71/70/60-68, 73/72/71/70/40, 73/72/71/70/41, 73/72/71/70/47,
73/72/71/70/49-57, 73/72/71/70/60-68, 74/40, 74/41, 74/47, 74/49-57, 74/60-68,
75/74/40, 75/74/41, 75/74/47, 75/74/49-57, 75/74/60-68, 76/75/74/40, 76/75/74/41,
76/75/74/47, 76/75/74/49-57, 76/75/74/60-68, 77/76/75/74/40, 77/76/75/74/41,
77/76/75/74/47, 77/76/75/74/49-57 and 77/76/75/74/60-68  are rejected under 35 U.S.C.
103(a) as being unpatentable over Helmus 724 in view of Skotnicki 579.

Regarding claims 1, 27/1, 27/5, 27/7-15, 27/18-26, 29/28/1, 29/28/5, 29/28/7-15,
29/28/18-26, 31/30/1, 31/30/5, 31/30/7-15, 31/30/18-26, 33/32/1, 33/32/2, 33/32/5-17,
33/32/18-26, 33/32/1, 33/32/5, 33/32/7-15, 33/32/18-26, 40, 69/40, 69/41, 69/49-57,
69/60-68, 71/70/40, 71/70/41, 71/70/49-57, 71/70/60-68, 75/74/40, 75/74/41, 75/74/49-
57, 75/74/60-68, Helmus teaches an intravascular stent (page 4, line 21 and claim 6)
having a coating thereon (20 or 24).   The coating may comprise a polymer (page 3,
lines 7-24) and a therapeutic substance (column 3, lines 26-45) to prevent cell
proliferation (page 1, lines 21-24). Helmus does not disclose that the therapeutic
substance is rapamycin or a macrocyclic lactone analog.

Skotnicki 579 teaches that it is known to use rapamycin and macrocyclic lactone
derivatives of rapamycin (abstract) to prevent restenosis or cell proliferation (column 9,
lines 1-11). Skotnicki 579 further discloses that the rapamycin derivatives may be
encapsulated in a polymer carrier for delivery (column 9, lines 34-38). The derivative
compounds have similar profile activity to rapamycin, exhibit antiproliferative activities
and are useful in treating restenosis.

Russo teaches that an analog of rapamycin, 21-norrapamycin, to prevent
restenosis or cell proliferation (abstract, column 1, lines 6-12, 39-46 and column 7, lines
10-16). The compound may be administered with a carrier that could include a
reservoir matrix (column 4, line 67 through column 5, line 4). Russo discloses that
polyvinylpyrrolidine may be used as a carrier (column 4, lines 4-20).

Failli teaches rapamycin 42-oximes and hydroxylamines are to prevent
restenosis or cell proliferation (column 1, lines 9-15, 64-66 and column 6, lines 36-48).
Failli discloses that the compounds may be delivered via an encapsulating material or
matrix including polyvinylpyrrolidine (column 7, lines 13-14 and column 8, line 3-7).

Skotnicki 718 teaches rapamycin hydroxyesters useable to prevent restenosis or
cell proliferation (abstract, column 1, lines 6-12, 40-51, 65-68 and column 6, lines 46-
59). The derivatives may be used to treat hyperproliferative disease such as restenosis
following angioplasty procedures. The compounds may be delivered via a carrier or
matrix including polyvinylpyrrolidine (column 7, lines 34-38 and column 8, line 19-24).

Skotnicki 730 teaches phosphorylcarbamates of rapamycin and oxime
derivatives thereof that are useful as anti-inflammatories and antiproliferatives (column

1, lines 65-68). The derivatives may be used to treat hyperproliferative disease such as

restenosis (column 7, lines 10-16). Additionally, the compounds may be delivered via a

carrier or matrix including polyvinylpyrrolidine (column 7, lines 50-54 and column 8, lines

35-40).

Nelson teaches 27-hydroxyrapamycin and derivatives of rapamycin to prevent

restenosis or cell proliferation (abstract, column 1, lines 11-17, lines 44-51 and column

15, lines 41-54). The derivatives are useful as anti-inflammatories and antiproliferatives

(column 2, lines 43-46). Additionally, the derivatives may be delivered via a carrier or

matrix including polyvinylpyrrolidine (column 16, lines 9-12 and lines 24-28 and column

17, lines 11-15).

It would have been obvious to one of ordinary skill in the art at the time the

invention was made to modify the stent of Helmus to include rapamycin or macrocyclic

lactone derivatives of rapamycin, in view of the teachings of Skotnicki 579 , Russo 977,

Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, that rapamycin and macrocyclic

lactone derivatives of rapamycin have superior anti-inflammatory and anti-proliferative

properties. All of these references teach treating the vessel with therapeutic agents in

order to inhibit or lessen restenosis. These references disclose that rapamycin is a

known and effective inhibitor of cell proliferation and is used to treat restenosis. Each

disclose that the agent may be contained in a polymer carrier/matrix. Furthermore, the

combination would have yielded nothing more than predictable results to one of ordinary

skill in the art at the time of the invention, i.e., one skilled in the art would have

recognized that rapamycin would allow the stent of Helmus to be used as Helmus intended, e.g. to prevent restenosis in the vascular system.

*Regarding claims 5 and 47*, Helmus discloses that the coating may be applied to the stent by dipping (page 15, line 29-page 17, line 12).

*Regarding claims 7 and 49*, Helmus discloses "[t]he reservoir is comprised of more than about 30% by weight of the agent, preferably about 40 to 60% by weight of the agent" (page 2, lines 25-27). It would have been obvious to one having ordinary skill in the art at the time the invention was made to provide the rapamycin in the coating at a weight percentage of about 30% or a weight ratio of drug to polymeric carrier of about 3:7, since it has been held that discovering an optimum value of a result effective variable involves only routine skill in the art. *In re Boesch*, 617 F.2d 272, 205 USPQ 215 (CCPA 1980).

*Regarding claims 8 and 50*, Helmus discloses that the polymer may be absorbable (page 3, line19, "biodegradeable polymers").

*Regarding claims 9 and 51*, Helmus discloses the polymers that are biostable (e.g. polytetrafluoroethylene and polymethymethacrylates (page 3, line 36 to page 4, line 2).

As to claims 10-15, 18-26, 35/34/33/32/1, 35/34/33/32/5, 35/34/33/32/7-15, 35/34/33/32/18-26, 36/35/34/33/32/1, 36/35/34/33/32/5, 36/35/34/33/32/7-15, 36/35/34/33/32/18-26, 38/33/32/1, 38/33/32/5, 38/33/32/7-15, 38/33/32/18-26, 39/38/33/32/1, 39/38/33/32/5, 39/38/33/32/7-15, 39/38/33/32/18-26, 52-57, 60-68, 72/71/70/40, 72/71/70/41, 72/71/70/47, 72/71/70/49-57, 72/71/70/60-68, 76/75/74/40,

76/75/74/41, 76/75/74/47, 76/75/74/49-57, 76/75/74/60-68, 77/76/75/74/40, 77/76/75/74/41, 77/76/75/74/47, 77/76/75/74/49-57 and 77/76/75/74/60-68, Helmus discloses that the polymer may comprise lactone-based polymers and copolymers (polylactides and their copolymers, page 3, lines 20-24), polyanhydrides (page 3, line 23), polyamino acids (proteins and peptides, page 3, line18), polysaccharides (page 3, line 14), polydimethylsiloxane (silicone and its copolymers, page 3, line 34), ethylene vinyl acetate (page 3, line 34), polymethylmethacrylate (page 4, line 2), polyvinylpyrollidone (page 3, line14), cellulosics (page 3, line 36) and polytetrafluroethylenes (page 3, line 36 to page 4, line 1).

*Regarding claims 28/1, 28/5, 28/7-15, 28/18-26, 30/1, 30/2, 30/5, 30/7-15, 30/18-26, 34/33/32/1, 34/33/32/ 34/33/32/5, 34/33/32/7-15, 34/33/32/18-26, 37/33/32/1, 37/33/32/5, 37/33/32/7-15, 37/33/32/18-26, 70/40, 70/41, 70/47, 70/49-57, 70/60-68, 74/40, 74/41, 74/47, 74/49-57 and 74/60-68*, Helmus discloses that the drug may be released at a controlled rate for a period of at least two weeks ("several weeks", page11, lines 1-4).

*As to claims 32/1, 32/5, 32/7-15, 32/18-26 and 40,* Helmus discloses that the drug is present a therapeutically beneficial amount to inhibit neointimal proliferation.

*Regarding claim 41*, Helmus discloses that the polymeric carrier and drug are mixed together (page 6, lines 3-28).

Accordingly, this rejection of claims 1, 5, 7-15, 18-26, 28/1, 28/5, 28/7-15, 28/18-26, 30/1, 30/5, 30/7-15, 30/18-26, 32/1, 32/5, 32/7-15, 32/18-26, 40, 41, 47 49-57, 60-68, 70/40, 70/41, 70/47, 70/49-57, 70/60-68, 74/40, 74/41, 74/47, 74/49-57 and 74/60-

68, based on Helmus 711 in view of Skotnicki 579, Russo 977, Failli 145, Skotnicki 718,

Skotnicki 730 or Nelson 790 was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.

Regarding claims 2 and 44, Helmus discloses a vascular stent but provides no

detail about the structure of the stent. Accordingly, the rejection of these claims based

on Helmus 711 and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or

Nelson 790 is not adopted essentially as proposed in the request.

Furthermore, claims 28/2-4, 28/6, 28/16, 28/17, 30/2-4, 30/6, 30/16, 30/17,

31/30/3, 31/30/4, 31/30/6, 31/30/16, 31/30/17, 32/2-4, 32/6, 32/16, 32/17, 33/32/2-4,

33/32/6, 33/32/16, 33/32/17, 34/33/32/2-4, 34/33/32/6, 34/33/32/16, 34/33/32/17,

35/34/33/32/2-4, 35/34/33/32/6, 35/34/33/32/16, 35/34/33/32/17, 36/35/34/34/33/32/2-4,

36/35/34/33/32/6, 36/35/34/33/32/16, 36/35/34/33/32/17, 37/33/32/2-4, 37/33/32/6,

37/33/32/16, 37/33/32/17, 38/37/33/32/2-4, 38/37/33/32/6, 38/37/33/32/16,

38/37/33/32/17, 39/38/37/33/32/2-4, 39/38/37/33/32/6, 39/38/37/33/32/16,

39/38/37/33/32/17, 69/42, 69/43, 69/45, 69/46, 69/48, 68/58, 69/59, 70/42, 70/43, 70/45,

70/46, 70/48, 70/58, 70/59, 71/70/42, 71/70/43, 71/70/45, 71/70/46, 71/70/48, 71/70/58,

71/70/59, 72/71/70/42, 72/71/70/43, 72/71/70/45, 72/71/70/46, 72/71/70/48,

72/71/70/58, 72/71/70/59, 73/72/71/70/42, 73/72/71/70/43, 73/72/71/70/45,

73/72/71/70/46, 73/72/71/70/48, 73/72/71/70/58, 73/72/71/70/59, 74/42, 74/43, 74/45,

74/76, 74/48, 74/58, 74/59, 75/74/42, 75/74/43, 75/74/45, 75/74/76, 75/74/48, 75/74/58,

75/74/59, 76/75/74/42, 76/75/74/43, 76/75/74/45, 76/75/74/76, 76/75/74/48,

76/75/74/58, 76/75/74/59, 77/76/75/74/42, 77/76/75/74/43, 77/76/75/74/45,

Application/Control Number: 95/001,097                                          Page 93
Art Unit: 3993

77/76/75/74/76, 77/76/75/74/48, 77/76/75/74/58 and 77/76/75/74/59, depend upon

claims that are not rejected with the combination of Helmus and Skotnicki 579, Russo

977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790.   Accordingly, the rejection

of these claims based on Helmus 711 and Skotnicki 579, Russo 977, Failli 145,

Skotnicki 718, Skotnicki 730 or Nelson 790 is not adopted essentially as proposed in the

request.

### Ground # 40.

The request submits that claims 3, 4, 43, 45, and 46 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Helmus 724 in view of Skotnicki 579,
Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to
claims 1 and 40 above, and further in view of Ragheb 070.

Claims 3, 4, 43, 45, and 46 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Helmus 724 in view of Skotnicki 579, Russo 977, Failli 145,

Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 2 and 40 above, and

further in view of Ragheb 070.

Regarding claims 3 and 45, the stent of Helmus as modified by Skotnicki 579,

Russo 977, Failli 145, Skolnicki 718, Skotnicki 730 or Nelson 790, set forth above, does

not include a channel formed in at least one strut. Ragheb shows a stent 10 having a

coating thereon. The stent is formed of struts 14 having channels 28' formed therein.

Ragheb discloses that "[t]he wells 28' may also be in the form of slots or grooves in the

surface of the base material 14 of the medical device. This aspect of the invention

provides the advantage of better controlling the total amount of the bioactive material 18

to be released as well as the rate at which it is released." (column 16, lines 48-51). It

would have been obvious to one of ordinary skill in the art at the time the invention was

made to use the stent of Ragheb in Helmus, in order to control the amount and rate of
release of rapamycin.

*Regarding claims 4 and 46,* Figure 10B of Ragheb shows a rectangular channel
with a close perimeter and an open top. The channel is smaller in all dimensions than
the strut.

*Regarding claim 43,* Helmus and Skotnicki 579, Russo 977, Failli 145, Skotnicki
718, Skotnicki 730 or Nelson 790, fails to disclose that the drug is entrapped on the
surface of the stent by the polymeric carrier. Ragheb discloses that the drug 18 is
entrapped by a polymeric layer 20 which controls the release of the drug. Ragheb
discloses "any degradation of the bioactive material which might otherwise occur by
other polymer coating techniques is avoided" (column 19, lines 51-53). Thus, the
manner of enhancing a particular device (stent with drug delivery capabilities) was
made part of the ordinary capabilities of one skilled in the art based upon the teaching
of such improvement in Ragheb. Accordingly, one of ordinary skill in the art would have
been capable of applying this known "improvement" technique in the same manner to
the stent of Helmus and the results would have been predictable to one of ordinary skill
in the art, namely, one skilled in the art would have readily recognized that the
entrapment system of Ragheb would reduce the degradation of the drug as might occur
with the polymer coating technique of Helmus.

Accordingly, this rejection of claims 3, 4, 43, 45, and 46 based on Helmus 724 in
view of Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson

790, and Ragheb 070 was proposed by the third party requester in the request for

reexamination is and <u>being adopted</u> essentially as proposed in the request.

### Ground # 41.

**The request submits that claim 42 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Helmus 724 in view of Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in view of Sahatjian 121.**

Claim 42 is rejected under 35 U.S.C. 103(a) as being unpatentable over Helmus

724 and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson

790, as applied to claim 40 above, and further in view of Sahatjian 121. The coating of

Helmus comprises a mixture of polymer and a drug but fails to disclose a coating

wherein the polymer is bound to the drug. Sahatjian discloses a coating that is

delivered to the vascular system to prevent restenosis. The coating comprises a

polymer which is bound to a drug. The substitution of one known element (coating of

Helmus) for another (coating of Sahatjian) would have been obvious to one of ordinary

skill in the art at the time of the invention since the substitution of the coating disclosed

by Helmus with that of Sahatjian would have yielded predictable results, namely,

delivery of a drug to the vascular system and would merely be a substitution of one

known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396

(2007).

Accordingly, this rejection of claim 42 based on Helmus 724 and Skotnicki 579,

Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Sahatjian 121

was proposed by the third party requester in the request for reexamination and is <u>being</u>

<u>adopted</u> essentially as proposed in the request.

Application/Control Number: 95/001,097                                    Page 96
Art Unit: 3993

### Ground # 42.

The request submits that claims 6, 16, 17, 22, 48, 58, 59 and 64 are
unpatentable under 35 U.S.C. § 103(a) as being obvious over Helmus 579 in view
of Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790,
as applied to claims 1 and 40 above, and further in view of Berg 650.

Claims 6, 16, 17, 22, 48, 58, 59 and 64 are rejected under 35 U.S.C. 103(a) as

being unpatentable over Helmus 579 and Skotnicki 579, Russo 977, Failli 145, Skotnicki

718, Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in

view of Berg.

As to claims 6 and 48, Helmus does not disclose that the coating is sprayed-

coated onto the stent. Berg discloses that the coating may be applied to the stent by

dipping (column 5, Example 2) or by spraying (column 5, Example 1). It would have

been obvious to one of ordinary skill in the art at the time the invention was made to

spray the coating on the stent of Helmus rather than dipping the stent into the coating

because Berg discloses that the two methods are art recognized equivalents.

Regarding claims 16, 17, 22, 58, 59 and 64, Berg discloses that the polymer may

comprise polyphosphazenes (column 4, line 52), a poly(ether-ester) copolymer (column

4, line 51), and an acrylate based polymer, e.g. cyanoacrylates (column 4, line 49). The

substitution of one known element (any of the polymers of Helmus) for another would

have been obvious to one of ordinary skill in the art at the time of the invention since the

substitution of the polymer disclosed by Helmus with that of Berg would have yielded

predictable results, namely, delivery of a drug to the vascular system and would merely

BSC-SJA-0252

be a substitution of one known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82

USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 6, *16, 17, 22, 58, 59 and 64* based on

Helmus 724 and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or

Nelson 790, and Berg 650 was proposed by the third party requester in the request for

reexamination and is <u>being adopted</u> essentially as proposed in the request.

### Ground # 43.

**The request submits that claims 20 and 62 are unpatentable under 35
U.S.C. § 103(a) as being obvious over Helmus 724 in view of Skotnicki 579, Russo
977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1
and 40 above, and further in view of Kaplan 348.**

Claims 20 and 60 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Helmus 724 in view of Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718,

Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in view of

Kaplan 348. Helmus discloses that the polymer may comprise polymethylmethacrylate

(page 4, line 2). Kaplan discloses that poly(hydroxyl) ethylmethylmethacrylate may be

used as the coating on a drug delivery stent. See column 6, lines 60-61, "[o]ther

acceptable polymers may contain monomers of hydroxyethylmethacrylate . . ." The

substitution of one known element (any of the polymers of Helmus) for another

(poly(hydroxyl) ethylmethylmethacrylate of Kaplan) would have been obvious to one of

ordinary skill in the art at the time of the invention since the substitution of the polymer

disclosed by Helmus with that of Kaplan would have yielded predictable results, namely,

delivery of a drug to the vascular system and would merely be a substitution of one

BSC-SJA-0253

Application/Control Number: 95/001,097                                    Page 98
Art Unit: 3993

known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396
(2007).

Accordingly, this rejection of claims 20 and 62 based on Helmus 724 and
Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and
Kaplan 348 was proposed by the third party requester in the request for reexamination
and is being adopted essentially as proposed in the request.

### Ground # 44.

**The request submits that claims 18 and 60 are unpatentable under 35
U.S.C. § 103(a) as being obvious over Helmus 579 in view of Skotnicki 579 as
applied to claims 1 and 40 above, and further in view of Ding 313.**

Claims 18 and 60 are rejected under 35 U.S.C. 103(a) as being unpatentable
over Helmus 579 in view of Skotnicki 579 as applied to claims 1 and 40 above, and
further in view of Ding 313.   Helmus does not disclose that the polymer may comprise
polydimethylsiloxane.  Ding discloses that it is known to use polydimethylsiloxane as the
coating on a drug delivery stent. See column 4, lines 9-10, "[f]or example, silicone or
polysiloxane materials (such as polydimethylsiloxane) have been used successfully."
The substitution of one known element (any of the polymers of Helmus) for another
(polydimethylsiloxane of Ding) would have been obvious to one of ordinary skill in the
art at the time of the invention since the substitution of the polymers disclosed by
Helmus with that of Ding would have yielded predictable results, namely, delivery of a
drug to the vascular system and would merely be a substitution of one known element
for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 18 and 60 based on Helmus 724 and

Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and

Ding 313 was proposed by the third party requester in the request for reexamination

and is being adopted essentially as proposed in the request.

## Dinh Patent Proposed Obviousness Combinations.

### Ground # 45.

The request submits that claims 1, 2, 5-12, 14, 15, 21, 22, 28, 30, 32, 40, 41,
44, 47-54, 56, 57, 63, 64, 70 and 74 are unpatentable under 35 U.S.C. § 103(a) as
being obvious over Dinh 227 in view of Morris 781 or Mitchell 711.

Claims 1, 2, 5-12, 14, 15, 21, 22, 28/1, 28/2, 28/5-12, 28/14, 28/15, 28/21, 28/22,

30/1, 30/2, 30/5-12, 30/14, 30/15, 30/21, 30/22, 32/1, 32/2, 32/5-12, 32/14, 32/15,

32/21, 32/22, 40, 41, 47-49, 51, 52, 60, 61, 67, 70/40, 70/41, 70/44, 70/47-54, 70/56,

70/57, 70/63, 70/64, 74/40, 74/41, 74/44, 74/47-54, 74/56, 74/57, 74/63 and 74/64, are

rejected under 35 U.S.C. 103(a) as being unpatentable over Dinh 227 in view of Morris

781 or Mitchell 711.

Regarding claims 1 and 40, Dinh teaches an intravascular stent having a coating

thereon. The coating may comprise a polymer and a therapeutic substance (column 2,

lines 52-54), "a first layer is applied to a stent body, the first layer incorporating a

polymer and the therapeutic substance". to prevent cell proliferation (page 1, lines 21-

24). Dinh does not disclose that the therapeutic substance is rapamycin or a

macrocyclic lactone analog.

BSC-SJA-0255

Morris teaches that it is known to use an antiproliferative effective amount

rapamycin, delivered via a stent, to prevent restenosis or cell proliferation (column 3,

lines 51-64). Morris further discloses that rapamycin may be encapsulated in a polymer

matrix for delivery (column 3, lines 51-64).

Mitchell teaches that it is known to use rapamycin, delivered via a stent, to

prevent restenosis or cell proliferation (column 3, lines 24-31). A solid carrier can be

used to administer rapamycin including polyvinylpyrrolidine (column 6, lines 24-28 and

column 7, lines 10-15).

It would have been obvious to one of ordinary skill in the art at the time the

invention was made to modify the stent of Dinh to include rapamycin, in view of the

teaching of Morris or Mitchell. All three references teach treating the vessel with

therapeutic agents in order to inhibit or lessen restenosis. Both Morris and Mitchell

disclose that rapamycin is a known and effective inhibitor of cell proliferation and is used

to treat restenosis via a vascular stent. Furthermore, and the combination would have

yielded nothing more than predictable results to one of ordinary skill in the art at the

time of the invention, i.e., one skilled in the art would have recognized that rapamycin

would allow the stent of Dinh to be used as Dinh intended, e.g. to prevent restenosis in

the vascular system.

*Regarding claims 2 and 44,* Dinh discloses that the stent is comprised of a

tubular body formed of helically wound filaments 42 which can be considered struts

(Figure 3).

*Regarding claims 5, 6, 47 and 48*, Dinh discloses that the coating may be applied to the stent by dipping or spraying The solution "can be applied by simply immersing the stent into the solution or by spaying the solution onto the stent" (column 3, lines 2-3).

*Regarding claims 7 and 49,* Dinh discloses "[a] ratio of drug to dissolved polymer in the solution can vary widely (e.g. in the range of 10:1 to 1:100" (column 7, lines 51-53). It would have been obvious to one having ordinary skill in the art at the time the invention was made to provide the rapamycin in the coating at a weight percentage of about 30% or a weight ratio of drug to polymeric carrier of about 3:7, since it has been held that discovering an optimum value of a result effective variable involves only routine skill in the art. *In re Boesch*, 617 F.2d 272, 205 USPQ 215 (CCPA 1980).

*Regarding claims 8, 9, 50 and 51,* Dinh discloses "[t]he polymer may be a bioabsorbable or a biostable polymer (column 7, lines 45-46).

*As to claims 10-12, 14, 15, 21, 23, 52-54, 56, 57, 63 and 64,* Dinh discloses that the polymer may comprise lactone-based polymers and copolymers (poly(Lactic acid) and poly(lactide-co-glycolide)) (column 7, lines 46-47), fibrin (claim 6), cellulosis (column 7, line 51), acrylate homopolymers and copolymers (column 7, line 50), polyanhydrides (page 3, line 23), polyamino acids (proteins and peptides, page 3, line18), polysaccharides (page 3, line 14), polydimethylsiloxane (silicone and its copolymers, page 3, line 34), ethylene vinyl acetate (page 3, line 34), polymethylmethacrylate (page 4, line 2), polyvinylpyrollidone (page 3, line14),

Application/Control Number: 95/001,097                                    Page 102
Art Unit: 3993

cellulosics (page 3, line 36) and polytetrafluroethylenes (page 3, line 36 to page 4, line 1).

Regarding claims 28/1, 28/2, 28/5-12, 28/14, 28/15, 28/21, 28/22, 30/1, 30/2, 30/5-12, 30/14, 30/15, 30/21, 30/22, 32/1, 32/2, 32/5-12, 32/14, 32/15, 32/21, 32/22, 70/40, 70/41, 70/44, 70/47-54, 70/56, 70/57, 70/63, 70/64,  74/40, 74/41, 74/44, 74/47-54, 74/56, 74/63 and 74/64, Dinh discloses that the drug may be released at a controlled rate (column 6, lines 36-56).   The period of release may be several weeks as disclosed in column 3, lines 1-2 of U.S. Patent No. 4,897,268 to Tice, incorporated by reference in Dinh at column 6, lines 45-50.

As to claims 32/1, 32/2, 32/5-12, 32/14, 32/15, 32/20, 32/21 and 40,  Dinh discloses that the drug is present a therapeutically beneficial amount to inhibit neointimal proliferation.

Regarding claim 41, Dinh discloses that the polymeric carrier and drug are mixed together (column 2, lines 57-61).

Accordingly, this rejection of claims 1,2, 5-12, 14, 15 21, 22, 20, 32/1, 32/2, 32/5-12, 32/14, 32/15, 32/21, 32/22, 41, 44, 47-54, 56 and 57, based on Dinh 227 in view of Morris 781 or Mitchell 711 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request and the rejection of claims 28/1, 28/2, 28/5-12, 28/14, 28/15, 28/21, 28/22, 30/1, 30/2, 30/5-12, 30/14, 30/15, 30/21, 30/22, 70/40, 70/41, 70/44, 70/47-54, 70/56, 70/57, 70/63, 70/64, 74/40, 74/41, 74/44, 74/47-54, 74/56, 74/63 and 74/64 is adopted with modification.

BSC-SJA-0258

### Ground # 46.

The request submits that claims 3, 4, 43, 45, and 46 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Dinh 227 in view of Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in view of Ragheb 070.

Claims 3, 4, 43, 45, and 46 are rejected under 35 U.S.C. 103(a) as being unpatentable over Dinh 227 in view of Morris 227 or Mitchell 711 as applied to claims 2 and 40 above, and further in view of Ragheb 070. *Regarding claims 3 and 45*, the stent of Dinh as modified by Morris or Mitchell 711, set forth above, does not include a channel formed in at least one strut. Ragheb shows a stent 10 having a coating thereon. The stent is formed of struts 14 having channels 28' formed therein. Ragheb discloses that "[t]he wells 28' may also be in the form of slots or grooves in the surface of the base material 14 of the medical device. This aspect of the invention provides the advantage of better controlling the total amount of the bioactive material 18 to be released as well as the rate at which it is released." (column 16, lines 48-51). It would have been obvious to one of ordinary skill in the art at the time the invention was made to use the stent of Ragheb in Dinh, in order to control the amount and rate of release of rapamycin.

*Regarding claims 4 and 46*, Figure 10B of Ragheb shows a rectangular channel with a close perimeter and an open top. The channel is smaller in all dimensions than the strut.

*Regarding claim 43*, Dinh and Morris or Mitchell 711 fails to disclose that the drug is entrapped on the surface of the stent by the polymeric carrier. Ragheb discloses that the drug 18 is entrapped by a polymeric layer 20 which controls the

release of the drug. Ragheb discloses "any degradation of the bioactive material which might otherwise occur by other polymer coating techniques is avoided" (column 19, lines 51-53). Thus, the manner of enhancing a particular device (stent with drug delivery capabilities) was made part of the ordinary capabilities of one skilled in the art based upon the teaching of such improvement in Ragheb. Accordingly, one of ordinary skill in the art would have been capable of applying this known "improvement" technique in the same manner to the stent of Dinh and the results would have been predictable to one of ordinary skill in the art, namely, one skilled in the art would have readily recognized that the entrapment system of Ragheb would reduce the degradation of the drug as might occur with the polymer coating technique of Dinh.

Accordingly, this rejection of claims 3, 4, 43, 45, and 46 based on Dinh 227 in view of Morris 781 or Mitchell 711 and Ragheb 070 was proposed by the third party requester in the request for reexamination is and being adopted essentially as proposed in the request.

### Ground # 47.

**The request submits that claim 42 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Dinh 227 in view of Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in view of Sahatjian 121.**

Claim 42 is rejected under 35 U.S.C. 103(a) as being unpatentable over Dinh 227 and Morris 227 or Mitchell 711 as applied to claim 40 above, and further in view of Sahatjian 121. The coating of Dinh comprises a mixture of polymer and a drug but fails to disclose a coating wherein the polymer is bound to the drug. Sahatjian discloses a coating that is delivered to the vascular system to prevent restenosis. The coating

comprises a polymer which is bound to a drug.  The substitution of one known element

(coating of Dinh) for another (coating of Sahatjian) would have been obvious to one of

ordinary skill in the art at the time of the invention since the substitution of the coating

disclosed by Dinh with that of Sahatjian would have yielded predictable results, namely,

delivery of a drug to the vascular system and would merely be a substitution of one

known element for another.  *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396

(2007).

Accordingly, this rejection of claim 42 based on Dinh 227 and Morris 781 or

Mitchell 711 and Sahatjian 121 was proposed by the third party requester in the request

for reexamination and is <u>being adopted</u> essentially as proposed in the request.

### Ground # 48.

**The request submits that claims 13, 15-17, 19, 24, 25, 55, 57-59, 61, 62, 66
and 67 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Dinh 227
in view of Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and
further in view of Berg 650.**

Claims 13, 15-17, 19, 24, 25, 55, 57-59, 61, 62, 66 and 67 are rejected under 35

U.S.C. 103(a) as being unpatentable over Dinh 227 and Morris 227 or Mitchell 711 as

applied to claims 1 and 40 above, and further in view of Berg.

Berg discloses that the polymer may comprise polyanhydride (column 4, line 46),

polysaccharide, e.g. cellulose, starch (column 4, line 54), polyphosphazenes (column 4,

line 52), poly(ether-ester) copolymer (column 4, line 51), copoly(ether-esters) (column 4,

line 51), vinyl homopolymers and copolymers (claim 6), polyvinyl acetate, copolymers of

vinyl monomers (column 4, line 65), an acrylate based polymer, e.g. cyanoacrylates

BSC-SJA-0261

(column 4, line 49), ethylene-methyl methacrylate copolymers (column 4, lines 66-67),

cellulose acetate, cellulose butyrate, cellulose acetate butyrate etc (column 5, lines 4-7),

and polyvinylidene fluoride (column 4, line 62). The substitution of one known element

(any of the polymers of Dinh) for another would have been obvious to one of ordinary

skill in the art at the time of the invention since the substitution of the polymer disclosed

by Dinh with that of Berg would have yielded predictable results, namely, delivery of a

drug to the vascular system and would merely be a substitution of one known element

for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 13, 15-17, 19, 24, 25, 55, 57-59, 61, 62, 66

and 67 based on Dinh 227 and Morris 781 or Mitchell 711 and Berg 650 was proposed

by the third party requester in the request for reexamination and is <u>being adopted</u>

essentially as proposed in the request.



### Ground # 49.

The request submits that claims 19, 23, 26, 61, 65 and 68 are unpatentable
under 35 U.S.C. § 103(a) as being obvious over Dinh 227 in view of Morris 781 or
Mitchell 711 as applied to claims 1 and 40 above, and further in view of Helmus
724.

Claims 19, 23, 26, 61, 65, and 68 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Dinh 227 and Morris 781 or Mitchell 711 as applied to claims 1 and

40 above, and further in view of Helmus 724. Dinh does not disclose that the polymer

may comprise poly(ethylene)vinylacetate, polyvinyl pyrrolidone or

polytetrafluoroethylene. Helmus discloses that ethylene vinylacetate, polyvinyl

pyrrolidone or polytetrafluoroethylene may be used as the coating on a drug delivery

stent (See page 3, lines 7-14 and page 3, line 34 to page 4, line 1). The substitution of

one known element (any of the polymers of Dinh) for another

(poly(ethylene)vinylacetate, polyvinyl pyrrolidone or polytetrafluoroethylene of Helmus)

would have been obvious to one of ordinary skill in the art at the time of the invention

since the substitution of the polymer disclosed by Dinh with that of Helmus would have

yielded predictable results, namely, delivery of a drug to the vascular system and would

merely be a substitution of one known element for another. *KSR Int'l Co. v. Teleflex

Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 19, 23, 26, 61, 65, and 68 based on Dinh 227

and Morris 781 or Mitchell 711 and Helmus 724 was proposed by the third party

requester in the request for reexamination is being adopted essentially as proposed in

the request.

### Ground # 50.

The request submits that claims 19, 20, 61 and 62 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Dinh 227 in view of Morris 781 or
Mitchell 711  as applied to claims 1 and 40 above, and further in view of Kaplan
348.

Claims 19, 20, 61 and 60 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Dinh 227 in view of Morris 227 or Mitchell 711 as applied to claims 1

and 40 above, and further in view of Kaplan 348. Dinh does not disclose that the

polymer may comprise poly(ethylene)vinylacetate or poly(hydroxyl)

ethylmethylmethacrylate. Kaplan discloses that ethylene-vinylacetate or poly(hydroxyl)

Application/Control Number: 95/001,097                          Page 108
Art Unit: 3993

ethylmethylmethacrylate may be used as the coating on a drug delivery stent. See

column 6, lines 60-62, "[o]ther acceptable polymers may contain monomers of

hydroxyethylmethacrylate, vinylalcohol, ethylene-vinylacetate . . ." The substitution of

one known element (any of the polymers of Dinh) for another (ethylene-vinylacetate or

poly(hydroxyl) ethylmethylmethacrylate of Kaplan) would have been obvious to one of

ordinary skill in the art at the time of the invention since the substitution of the polymer

disclosed by Dinh with that of Kaplan would have yielded predictable results, namely,

delivery of a drug to the vascular system and would merely be a substitution of one

known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396

(2007).

Accordingly, this rejection of claims 18, 19, 61 and 62 based on Dinh 722 and

Morris 781 or Mitchell 711 and Kaplan 348 was proposed by the third party requester in

the request for reexamination and is <u>being adopted</u> essentially as proposed in the

request.

**Ground # 51.**

The request submits that claims 18, 19, 61 and 62 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Dinh 227 in view of Morris 781 or
Mitchell 711 as applied to claims 1 and 40 above, and further in view of Ding 313.

Claims 18, 19, 61 and 62 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Dinh 227 in view of Morris 227 or Mitchell 711 as applied to claims 1

and 40 above, and further in view of Ding 313.   Dinh does not disclose that the polymer

may comprise polydimethylsiloxane or poly(ethylene)vinylacetate. Ding discloses that it

is known to use polydimethylsiloxane or poly(ethylene)vinylacetate as the coating on a

drug delivery stent. See column 4, lines 9-10, "[f]or example, silicone or polysiloxane

materials (such as polydimethylsiloxane) have been used successfully" and lines 57-58

"ethylene vinyl acetate copolymers". The substitution of one known element (any of the

polymers of Dinh) for another (polydimethylsiloxane or poly(ethylene)vinylacetate of

Ding) would have been obvious to one of ordinary skill in the art at the time of the

invention since the substitution of the polymers disclosed by Dinh with that of Ding

would have yielded predictable results, namely, delivery of a drug to the vascular

system and would merely be a substitution of one known element for another. *KSR Int'l*

*Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 18, 19, 61 and 62 based on Dinh 722 and

Morris 781 or Mitchell 711 and Ding 313 was proposed by the third party requester in

the request for reexamination and is being adopted essentially as proposed in the

request.

### Ground # 52.

The request submits that claims 1, 2, 5-12, 14, 15, 21, 22, 27-34, 37, 40, 41,
44, 47-54, 56, 57, 63-64, 69-71, 74 and 75 are unpatentable under 35 U.S.C. § 103(a)
as being obvious over Dinh 227 in view of Skotnicki 579, Russo 977, Failli 145,
Skotnicki 718, Skotnicki 730 or Nelson 790.

Claims 1, 2, 5-12, 14, 15, 21, 22, 27/1, 27/2, 27/5-12, 27/14, 27/15, 27/21, 27/22,

28/1, 28/2, 28/5-12, 28/14, 28/15, 28/21, 28/22, 29/28/1, 29/28/2, 29/28/5-12, 29/28/14,

29/28/15, 29/28/21, 29/28/22, 30/1, 30/2, 30/5-12, 30/14, 30/15, 30/21, 30/22, 31/30/1,

31/30/2, 31/30/5-12, 31/30/14, 31/30/15, 31/30/21, 31/30/22, 32/1, 32/2, 32/5-12, 32/14,

32/15, 32/21, 32/22, 33/32/1, 33/32/2, 33/32/5-12, 33/32/14, 33/32/15, 33/32/21,

33/32/22, 34/33/32/1, 34/33/32/2, 34/33/32/5-12, 34/33/32/14, 34/33/32/15, 34/33/32/21,

34/33/32/22, 37/33/32/1, 37/33/32/2, 37/33/32/5-12, 37/33/32/14, 37/33/32/15,

37/33/32/21, 37/33/32/22, 40, 41, 44, 47-54, 56, 57, 63, 64, 69/40, 69/41, 69/44, 69/47-

54, 69/56, 69/57, 69/63, 69/64, 70/40, 70/41, 70/44, 70/47-54, 70/56, 70/57, 70/63,

70/64, 71/70/40, 71/70/41, 71/70/44, 71/70/47-54, 71/70/56, 71/70/57, 71/70/63,

71/70/64, 74/40, 74/41, 74/44, 74/47-54, 74/56, 74/57, 70/63, 74/64, 75/74/40, 75/74/41,

75/74/44, 75/74/47-54, 75/74/56, 75/74/57, 75/70/63 and 75/74/64 are rejected under

35 U.S.C. 103(a) as being unpatentable over Dinh 227 in view of Skotnicki 579, Russo

977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790:

Regarding claims 1, 27/1, 27/2, 27/5-12, 27/14, 27/15, 27/21, 27/22, 29/28/1,

29/28/2, 29/28/5-12, 29/28/14, 29/28/15, 29/28/21, 29/28/22, 31/30/1, 31/30/2, 31/30/5-

12, 31/30/14, 31/30/15, 31/30/21, 31/30/22, 33/32/1, 33/32/2, 33/32/5-12, 33/32/14,

33/32/15, 33/32/21, 33/32/22, 40, 69/40, 69/41, 69/44, 69/47-54, 69/56, 69/57, 69/63,

69/64, 71/70/40, 71/70/41, 71/70/44, 71/70/47-54, 71/70/56, 71/70/57, 71/70/63,

71/70/64, 75/74/40, 75/74/41, 75/74/44, 75/74/47-54, 75/74/56, 75/74/57, 75/70/63 and

75/74/64, Dinh teaches an intravascular stent having a coating thereon. The coating

may comprise a polymer and a therapeutic substance (column 2, lines 52-54), "a first

layer is applied to a stent body, the first layer incorporating a polymer and the

therapeutic substance". to prevent cell proliferation (page 1, lines 21-24). Dinh does

not disclose that the therapeutic substance is rapamycin or a macrocyclic lactone

analog.

BSC-SJA-0266

Case 1:07-cv-00333-SLR Document 298-1 Filed 09/30/09 Page 114 of 153

1, lines 65-68). The derivatives may be used to treat hyperproliferative disease such as

restenosis (column 7, lines 10-16). Additionally, the compounds may be delivered via a

carrier or matrix including polyvinylpyrrolidine (column 7, lines 50-54 and column 8, lines

35-40).

Nelson teaches 27-hydroxyrapamycin and derivatives of rapamycin to prevent

restenosis or cell proliferation (abstract, column 1, lines 11-17, lines 44-51 and column

15, lines 41-54). The derivatives are useful as anti-inflammatories and antiproliferatives

(column 2, lines 43-46). Additionally, the derivatives may be delivered via a carrier or

matrix including polyvinylpyrrolidine (column 16, lines 9-12 and lines 24-28 and column

17, lines 11-15).

It would have been obvious to one of ordinary skill in the art at the time the

invention was made to modify the stent of Dinh to include rapamycin or macrocyclic

lactone derivatives of rapamycin, in view of the teachings of Skotnicki 579 , Russo 977,

Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790,  that rapamycin and macrocyclic

lactone derivatives of rapamycin have superior anti-inflammatory and anti-proliferative

properties. All of these references teach treating the vessel with therapeutic agents in

order to inhibit or lessen restenosis. These references disclose that rapamycin is a

known and effective inhibitor of cell proliferation and is used to treat restenosis. Each

disclose that the agent may be contained in a polymer carrier/matrix. Furthermore, the

combination would have yielded nothing more than predictable results to one of ordinary

skill in the art at the time of the invention, i.e., one skilled in the art would have

BSC-SJA-0268

recognized that rapamycin would allow the stent of Dinh to be used as Dinh intended, e.g. to prevent restenosis in the vascular system.

*Regarding claims 2 and 44*, Dinh discloses that the stent is comprised of a tubular body formed of helically wound filaments 42 which can be considered struts (Figure 3).

*Regarding claims 5, 6, 47 and 48*, Dinh discloses that the coating may be applied to the stent by dipping or spraying "[the solution] can be applied by simply immersing the stent into the solution or by spaying the solution onto the stent" (column 3, lines 2-3).

*Regarding claims 7 and 49*, Dinh discloses "[a] ratio of drug to dissolved polymer in the solution can vary widely (e.g. in the range of 10:1 to 1:100" (column 7, lines 51-53). It would have been obvious to one having ordinary skill in the art at the time the invention was made to provide the rapamycin in the coating at a weight percentage of about 30% or a weight ratio of drug to polymeric carrier of about 3:7, since it has been held that discovering an optimum value of a result effective variable involves only routine skill in the art. *In re Boesch*, 617 F.2d 272, 205 USPQ 215 (CCPA 1980).

*Regarding claims 8, 9, 50 and 51*, Dinh discloses "[t]he polymer may be a bioabsorbable or a biostable polymer (column 7, lines 45-46).

As to claims 10-12, 14, 15, 21, 22, 52-54, 56, 57, 63 and 64, Dinh discloses that the polymer may comprise lactone-based polymers and copolymers (poly(Lactic acid) and poly(lactide-co-glycolide)) (column 7, lines 46-47), fibrin (claim 8), cellulosis (column 7, line 51), acrylate homopolymers and copolymers (column 7, line 50),

polyanhydrides (page 3, line 23), polyamino acids (proteins and peptides, page 3,

line18), polysaccharides (page 3, line 14), polydimethylsiloxane (silicone and its

copolymers, page 3, line 34),  ethylene vinyl acetate (page 3, line 34),

polymethylmethacrylate (page 4, line 2), polyvinylpyrollidone (page 3, line14),

cellulosics (page 3, line 36) and polytetrafluroethylenes (page 3, line 36 to page 4, line

1).

Regarding claims 28/1, 28/2, 28/5-12, 28/14, 28/15, 28/21, 28/22, 30/1, 30/2,

30/5-12, 30/14, 30/15, 30/21, 30/22, 34/33/32/1, 34/33/32/2, 34/33/32/5-12,

34/33/32/14, 34/33/32/15, 34/33/32/21, 34/33/32/22, 37/33/32/1, 37/33/32/2, 37/33/32/5-

12, 37/33/32/14, 37/33/32/15, 37/33/32/21, 37/33/32/22, 70/40, 70/41, 70/44, 70/47-54,

70/56, 70/57, 70/63, 70/64, 74/40, 74/41, 74/44, 74/47-54, 74/56, 74/63 and 74/64,

Dinh discloses that the drug may be released at a controlled rate (column 6, lines 36-

56).   The period of release may be several weeks as disclosed in column 3, lines 1-2 of

U.S. Patent No. 4,897,268 to Tice, incorporated by reference in Dinh at column 6, lines

45-50).

As to claims 32/1, 32/2, 32/5-12, 32/14, 32 15, 32/20, 32/21 and 40,  Dinh

discloses that the drug is present a therapeutically beneficial amount to inhibit

neointimal proliferation.

Regarding claim 41, Dinh discloses that the polymeric carrier and drug are mixed

together (column 2, lines 57-61).

Accordingly, this rejection of claims 1, 2, 5-12, 14, 15, 21, 22, 20, 27/1, 27/2,

27/5-12, 27/14, 27/15, 27/21, 27/22, 29/28/1, 29/28/2, 29/28/5-12, 29/28/14, 29/28/15,

29/28/21, 29/28/22, 32/1, 32/2, 32/5-12, 32/14, 32/15, 32/21, 32/22, 33/32/1, 33/32/2,

33/32/5-12, 33/32/14, 33/32/15, 33/32/21, 33/32/22, 40, 41, 44, 47-54, 56 57, 69/40,

69/41, 69/44, 69/47-54, 69/56, 69/57, 69/63, 69/64, 71/70/40, 71/70/41, 71/70/44,

71/70/47-54, 71/70/56, 71/70/57, 71/70/63, 71/70/64, 75/74/40, 75/74/41, 75/74/44,

75/74/47-54, 75/74/56, 75/74/57, 75/74/63 and 75/74/64 based on Dinh 227 in view of

Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, was

proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request and the rejection of claims 28/1, 28/2,

28/5-12, 28/14, 28/15, 28/21, 28/22, 30/1, 30/2, 30/5-12, 30/14, 30/15, 30/21, 30/22,

34/33/32/1, 34/33/32/2, 34/33/32/5-12, 34/33/32/14, 34/33/32/15, 34/33/32/21,

34/33/32/22, 37/33/32/1, 37/33/32/2, 37/33/32/5-12, 37/33/32/14, 37/33/32/15,

37/33/32/21, 37/33/32/22, 70/40, 70/41, 70/44, 70/47-54, 70/56, 70/57, 70/63, 70/64,

74/40, 74/41, 74/44, 74/47-54, 74/56, 74/63 and 74/64 is adopted with modification. ·

Furthermore, claims 28/3, 28/4, 28/13, 28/16-20, 28/23-26, 29/28/3, 29/28/4,

29/28/13, 29/28/16-20, 29/28/23-26, 30/3, 30/4, 30/13, 30/16-20, 30/23-26, 31/30/3,

31/30/4, 31/30/13, 31/30/16-20, 31/30/23-26, 32/3, 32/4, 32/13, 32/16-20, 32/23-26,

33/32/3, 33/32/4, 33/32/13, 33/32/16-20, 33/32/23-26, 34/33/32/3, 34/33/32/4,

34/33/32/13, 34/33/32/16-20, 34/33/32/23-26, 37/33/32/3, 37/33/32/4, 37/33/32/13,

37/33/32/16-20, 37/33/32/23-26, 69/42, 69/43, 69/45, 69/46, 69/55, 68/58-62, 69/65-68,

70/42, 70/43, 70/45, 70/46, 70/55, 70/58-62, 70/65-68, 71/70/42, 71/70/43, 71/70/45,

71/70/46, 71/70/55, 71/70/58-62, 71/70/65-68, 74/42, 74/43, 74/45, 74/46, 74/55, and

74/58-62 depend upon claims that are not rejected with the combination of Dinh and

Application/Control Number: 95/001,097                    Page 116
Art Unit: 3993

Skotnicki , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790.

Accordingly, the rejection of these claims based on Dinh 227 and Skotnicki 579, Russo

977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, is not adopted essentially as

proposed in the request.

### Ground # 53.

The request submits that claims 3, 4, 43, 45, and 46 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Dinh 227 in view of Skotnicki 579, Russo
977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1
and 40 above, and further in view of Ragheb 070.

Claims 3, 4, 43, 45, and 46 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Dinh 227 in view of Skotnicki 579, Russo 977, Failli 145, Skotnicki

718, Skotnicki 730 or Nelson 790, as applied to claims 2 and  40 above, and further in

view of Ragheb 070.

*Regarding claims 3 and 45,* the stent of Dinh as modified by Skotnicki, Russo

977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, set forth above, does not

include a channel formed in at least one strut. Ragheb shows a stent 10 having a

coating thereon. The stent is formed of struts 14 having channels 28' formed therein.

Ragheb discloses that "[t]he wells 28' may also be in the form of slots or grooves in the

surface of the base material 14 of the medical device. This aspect of the invention

provides the advantage of better controlling the total amount of the bioactive material 18

to be released as well as the rate at which it is released." (column 16, lines 48-51).  It

would have been obvious to one of ordinary skill in the art at the time the invention was

BSC-SJA-0272

made to use the stent of Ragheb in Dinh, in order to control the amount and rate of
release of rapamycin.

Regarding claims 4 and 46, Figure 10B of Ragheb shows a rectangular channel
with a close perimeter and an open top. The channel is smaller in all dimensions than
the strut.

Regarding claim 43, Dinh and Skotnicki, Russo 977, Failli 145, Skotnicki 718,
Skotnicki 730 or Nelson 790, fails to disclose that the drug is entrapped on the surface
of the stent by the polymeric carrier. Ragheb discloses that the drug 18 is entrapped by
a polymeric layer 20 which controls the release of the drug. Ragheb discloses "any
degradation of the bioactive material which might otherwise occur by other polymer
coating techniques is avoided" (column 19, lines 51-53). Thus, the manner of
enhancing a particular device (stent with drug delivery capabilities) was made part of
the ordinary capabilities of one skilled in the art based upon the teaching of such
improvement in Ragheb. Accordingly, one of ordinary skill in the art would have been
capable of applying this known "improvement" technique in the same manner to the
stent of Dinh and the results would have been predictable to one of ordinary skill in the
art, namely, one skilled in the art would have readily recognized that the entrapment
system of Ragheb would reduce the degradation of the drug as might occur with the
polymer coating technique of Dinh.

Accordingly, this rejection of claims 3, 4, 43, 45, and 46 based on Dinh 227 in
view of Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson

BSC-SJA-0273

Application/Control Number: 95/001,097                                      Page 118
Art Unit: 3993

790, and Ragheb 070 was proposed by the third party requester in the request for

reexamination is and <u>being adopted</u> essentially as proposed in the request.

### Ground # 54.

**The request submits that claim 42 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Dinh 227 in view of Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in view of Sahatjian 121.**

Claim 42 is rejected under 35 U.S.C. 103(a) as being unpatentable over Dinh

227 and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson

790, as applied to claim 40 above, and further in view of Sahatjian 121. The coating of

Dinh comprises a mixture of polymer and a drug but fails to disclose a coating wherein

the polymer is bound to the drug. Sahatjian discloses a coating that is delivered to the

vascular system to prevent restenosis. The coating comprises a polymer which is

bound to a drug. The substitution of one known element (coating of Dinh) for another

(coating of Sahatjian) would have been obvious to one of ordinary skill in the art at the

time of the invention since the substitution of the coating disclosed by Dinh with that of

Sahatjian would have yielded predictable results, namely, delivery of a drug to the

vascular system and would merely be a substitution of one known element for another.

*KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claim 42 based on Dinh 227 and Skotnicki 579,

Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Sahatjian 121

was proposed by the third party requester in the request for reexamination and is <u>being</u>

<u>adopted</u> essentially as proposed in the request.



Application/Control Number: 95/001,097                                        Page 119
Art Unit: 3993

### Ground # 55.

The request submits that claims 13, 15-17, 19, 24, 25, 35, 38, 55, 57-59, 61, 62, 66, 67, 72 and 76 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Dinh 227 in view of Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in view of Berg 650.

Claims 13, 15-17, 19, 24, 25, 35/34/33/32/1, 35/34/33/32/2, 35/34/33/32/5-17,

35/34/33/32/19, 35/34/33/32/21, 35/34/33/32/22, 35/34/33/32/24, 35/34/33/32/25,

38/37/33/32/1, 38/37/33/32/2, 38/37/33/32/5-17, 38/37/33/32/19, 38/37/33/32/21,

38/37/33/32/22, 38/37/33/32/24, 38/37/33/32/25, 55, 57-59, 61, 62, 66, 67, 72/71/70/40,

72/71/70/41, 72/71/70/44, 72/71/70/47-59, 72/71/70/61-64, 72/71/70/66, 72/71/70/67,

76/75/74/40, 76/75/74/41, 76/75/74/44, 76/75/74/47-59, 76/75/74/61-64, 76/75/74/66,

and 76/75/74/67 are rejected under 35 U.S.C. 103(a) as being unpatentable over Dinh

227 and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson

790, as applied to claims 1 and 40 above, and further in view of Berg.

Berg discloses that the polymer may comprise polyanhydride (column 4, line 48),

polysaccharide, e.g. cellulose, starch (column 4, line 54), polyphosphazenes (column 4,

line 52), poly(ether-ester) copolymer (column 4, line 51), copoly(ether-esters) (column 4,

line 51), vinyl homopolymers and copolymers (claim 6), polyvinyl acetate, copolymers of

vinyl monomers (column 4, line 65), an acrylate based polymer, e.g. cyanoacrylates

(column 4, line 49), ethylene-methyl methacrylate copolymers (column 4, lines 66-67),

cellulose acetate, cellulose butyrate, cellulose acetate butyrate etc (column 5, lines 4-7),

and polyvinylidene fluoride (column 4, line 62). The substitution of one known element

(any of the polymers of Dinh) for another would have been obvious to one of ordinary

skill in the art at the time of the invention since the substitution of the polymer disclosed

Application/Control Number: 95/001,097                                    Page 120
Art Unit: 3993

by Dinh with that of Berg would have yielded predictable results, namely, delivery of a

drug to the vascular system and would merely be a substitution of one known element

for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 13, 15-17, 19, 24, 25, 35/34/33/32/1,

35/34/33/32/2, 35/34/33/32/5-17, 35/34/33/32/19, 35/34/33/32/21, 35/34/33/32/22,

35/34/33/32/24, 35/34/33/32/25, 38/37/33/32/1, 38/37/33/32/2, 38/37/33/32/5-17,

38/37/33/32/19, 38/37/33/32/21, 38/37/33/32/22, 38/37/33/32/24, 38/37/33/32/25, 55,

57-59, 61, 62, 66, 67, 72/71/70/40, 72/71/70/41, 72/71/70/44, 72/71/70/47-59,

72/71/70/61-64, 72/71/70/66, 72/71/70/67, 76/75/74/40, 76/75/74/41, 76/75/74/44,

76/75/74/47-59, 76/75/74/61-64, 76/75/74/66, and 76/75/74/67 based on Dinh 227 and

Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, was

proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.

Furthermore, claims 35/34/33/32/3, 35/34/33/32/4, 35/34/33/32/18,

35/34/33/32/20, 34/34/33/32/23, 35/33/32/26, 38/37/33/32/3, 38/37/33/32/4,

38/37/33/32/18, 38/37/33/32/20, 38/37/33/32/23, 38/37/33/32/26, 72/71/70/43,

72/71/70/45, 72/71/70/46, 72/71/70/60, 72/71/70/65, 72/71/70/68, 76/75/74/43,

76/75/74/45, 76/75/74/46, 76/75/74/60, 76/75/74/65, and 76/75/74/68 depend upon

claims that are not rejected with the combination of Dinh and Skotnicki, Russo 977,

Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790. Accordingly, the rejection of

these claims based on Dinh 227 and Skotnicki 579, Russo 977, Failli 145, Skotnicki

718, Skotnicki 730 or Nelson 790, is not adopted essentially as proposed in the request.

BSC-SJA-0276

### Ground # 56.

The request submits that claims 19, 23, 26, 61, 65 and 68 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Dinh 227 in view of Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in view of Helmus 724.

Claims 19, 23, 26, 61, 65, and 68 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Dinh 227 and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718,

Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in view of

Helmus 724. Dinh does not disclose that the polymer may comprise

poly(ethylene)vinylacetate, polyvinyl pyrrolidone or polytetrafluoroethylene. Helmus

discloses that ethylene vinylacetate, polyvinyl pyrrolidone or polytetrafluoroethylene

may be used as the coating on a drug delivery stent (See page 3, lines 7-14 and page

3, line 34 to page 4, line 1). The substitution of one known element (any of the

polymers of Dinh) for another (poly(ethylene)vinylacetate, polyvinyl pyrrolidone or

polytetrafluoroethylene of Helmus) would have been obvious to one of ordinary skill in

the art at the time of the invention since the substitution of the polymer disclosed by

Dinh with that of Helmus would have yielded predictable results, namely, delivery of a

drug to the vascular system and would merely be a substitution of one known element

for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 19, 23, 26, 61, 65, and 68 based on Dinh 227

and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790,

and Helmus 724 was proposed by the third party requester in the request for

reexamination is being adopted essentially as proposed in the request.

BSC-SJA-0277

### Ground # 57.

The request submits that claims 19, 20, 61 and 62 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Dinh 227 in view of Skotnicki 579, Russo
977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1
and 40 above, and further in view of Kaplan 348.

Claims 19, 20, 61 and 62 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Dinh 227 in view of Skotnicki 579, Russo 977, Failli 145, Skotnicki

718, Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in

view of Kaplan 348. Dinh does not disclose that the polymer may comprise

poly(ethylene)vinylacetate or poly(hydroxyl) ethylmethylmethacrylate. Kaplan discloses

that ethylene-vinylacetate or poly(hydroxyl) ethylmethylmethacrylate may be used as

the coating on a drug delivery stent. See column 6, lines 60-62, "[o]ther acceptable

polymers may contain monomers of hydroxyethylmethacrylate, vinylalcohol, ethylene-

vinylacetate . . ." The substitution of one known element (any of the polymers of Dinh)

for another (ethylene-vinylacetate or poly(hydroxyl) ethylmethylmethacrylate of Kaplan)

would have been obvious to one of ordinary skill in the art at the time of the invention

since the substitution of the polymer disclosed by Dinh with that of Kaplan would have

yielded predictable results, namely, delivery of a drug to the vascular system and would

merely be a substitution of one known element for another. *KSR Int'l Co. v. Teleflex

Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 19, 20, 61 and 62 based on Dinh 722 and

Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and

BSC-SJA-0278

Kaplan 348 was proposed by the third party requester in the request for reexamination

and is being adopted essentially as proposed in the request.

### Ground # 58.

The request submits that claims 18, 19, 60 and 61 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Dinh 227 in view of Skotnicki 579, Russo
977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1
and 40 above, and further in view of Ding 313.

Claims 18, 19, 60 and 61 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Dinh 227 in view of Skotnicki 579, Russo 977, Failli 145, Skotnicki

718, Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in

view of Ding 313.   Dinh does not disclose that the polymer may comprise

polydimethylsiloxane or poly(ethylene)vinylacetate. Ding discloses that it is known to

use polydimethylsiloxane or poly(ethyle)nevinylacetate as the coating on a drug delivery

stent. See column 4, lines 9-10, "[f]or example, silicone or polysiloxane materials (such

as polydimethylsiloxane) have been used successfully" and lines 57-58 "ethylene vinyl

acetate copolymers". The substitution of one known element (any of the polymers of

Dinh) for another (polymethylsiloxane or poly(ethylene)vinylacetate of Ding) would have

been obvious to one of ordinary skill in the art at the time of the invention since the

substitution of the polymers disclosed by Dinh with that of Ding would have yielded

predictable results, namely, delivery of a drug to the vascular system and would merely

be a substitution of one known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82

USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 18, 19, 60 and 61 based on Dinh 722 and

Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and

Ding 313 was proposed by the third party requester in the request for reexamination

and is being adopted essentially as proposed in the request.

## Dayton Patent Proposed Obviousness Combinations.

### Ground # 59.

The request submits that claims 1, 2, 5, 6, 8-10, 15, 21, 25-26, 28, 30, 32, 40, 41, 44, 47, 48, 50-52, 57, 63, 67, 68, 70 and 74 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Dayton 075 in view of Morris 781 or Mitchell 711.

Claims 1, 2, 5, 6, 8-10, 15, 21, 25, 26, 28/1, 28/2, 28/5, 28/6, 28/8-10, 28/15,

28/21, 28/25, 28/26, 30/1, 30/2, 30/5, 30/6, 30/8-10, 30/15, 30/21, 30/25, 30/26, 32/1,

32/2, 32/5, 32/6, 32/8-10, 32/15, 32/21, 32/25, 32/26, 40, 41, 44, 47, 48, 50-52, 57, 63,

67, 70/40, 70/41, 70/44, 70/47, 70/48, 70/50-52, 70/57, 70/63, 70/67, 74/40, 74/41,

74/44, 74/47, 74/48, 74/50-52, 74/57, 74/63 and 74/67 are rejected under 35 U.S.C.

103(a) as being unpatentable over Dayton 075 in view of Morris 781 or Mitchell 711.

Regarding claims 1 and 40, Dayton teaches an intravascular stent 11 having a

coating thereon. The coating may comprise a polymer and a therapeutic substance. The

"stent is . . . then coated with a polymer which contains a bioactive substance" (column

4, lines 1-2) to prevent restenosis (column 2, lines 27-31). Dayton does not disclose

that the therapeutic substance is rapamycin or a macrocyclic lactone analog. However,

Dayton states "virtually any bioactive substance of need to the patient is a possible

agent for treating the patient, depending upon the needs of the treatment" (column 7,
lines 33).

Morris teaches that it is known to use an antiproliferative effective amount
rapamycin, delivered via a stent, to prevent restenosis or cell proliferation (column 3,
lines 51-64). Morris further discloses that rapamycin may be encapsulated in a polymer
matrix for delivery (column 3, lines 51-64).

Mitchell teaches that it is known to use rapamycin, delivered via a stent, to
prevent restenosis or cell proliferation (column 3, lines 24-31). A solid carrier can be
used to administer rapamycin including polyvinylpyrrolidine (column 6, lines 24-28 and
column 7, lines 10-15).

It would have been obvious to one of ordinary skill in the art at the time the
invention was made to modify the stent of Dayton to include rapamycin, in view of the
teaching of Morris or Mitchell. All three references teach treating the vessel with
therapeutic agents in order to inhibit or lessen restenosis. Both Morris and Mitchell
disclose that rapamycin is a known and effective inhibitor of cell proliferation and is used
to treat restenosis via a vascular stent. Furthermore, and the combination would have
yielded nothing more than predictable results to one of ordinary skill in the art at the
time of the invention, i.e., one skilled in the art would have recognized that rapamycin
would allow the stent of Dayton to be used as Dayton intended, e.g. to prevent
restenosis in the vascular system.

*Regarding claims 2 and 44*, Dayton discloses that the stent is comprised of a
tubular body formed of struts (Figures 2 and 5).

BSC-SJA-0281

Application/Control Number: 95/001,097                                          Page 126
Art Unit: 3993

*Regarding claims 5, 6, 47 and 48,* Dayton discloses that the coating may be
applied to the stent by dipping (column 7, lines 46-47) or by spraying (column 7, lines
51-52).

*Regarding claims 8, 9, 50 and 51,* Dayton discloses "[t]he polymer may be a
bioabsorbable (column 7, lines 4-5) or a biostable polymer (e.g. polytetrafluroethylene,
column 4, line 11).

As to claims 10, 15, 21, 25, 26, 52, 57, 63 and 68, Dayton discloses that the
polymer may comprise polysaccharides (e.g. hyaluronte, column 7, line 29),
polymethylmethacrylate (column 7, line 11), polytetrafluroethylene and fluorosilicone
(column 4, lines 11-12).

*Regarding claims 28/1, 28/2, 28/5, 28/6, 28/8-10, 28/15, 28/21, 28/25, 28/26,
30/1, 30/2, 30/5, 30/6, 30/8-10, 30/15, 30/21, 30/25, 30/26, 70/40, 70/41, 70/44, 70/47,
70/48, 70/50-52, 70/57, 70/63, 70/67, 74/40, 74/41, 74/44, 74/47, 74/48, 74/50-52,
74/57, 74/63 and 74/67,* Dayton discloses that the drug may be released at a controlled
rate (column 4, lines 20-29).   Dayton also states "long term treatment by the drugs
within the polymer takes place" (column 8, lines 30-32). Given that Dayton discloses
that the stent may prevent restenosis it would have been obvious to elute the drug over
a period of several weeks since it is well known that restenosis occurs over a period of
several weeks or longer.

*As to claims 32/1, 32/2, 32/5, 32/6, 32/8-10, 32/15, 32/21, 32/25, 32/26,and 40,*
Dayton discloses that the drug is present a therapeutically beneficial amount to inhibit
neointimal proliferation (column 3, lines 21-24).

BSC-SJA-0282

*Regarding claim 41,* Dayton discloses that the polymeric carrier and drug are mixed together (column 2, lines 57-61).

Accordingly, this rejection of claims 1, 2, 5, 6, 8-10, 15, 21, 25, 26, 28/1, 28/2, 28/5, 28/6, 28/8-10, 28/15, 28/21, 28/25, 28/26, 30/1, 30/2, 30/5, 30/6, 30/8-10, 30/15, 30/21, 30/25, 30/26, 32/1, 32/2, 32/5, 32/6, 32/8-10, 32/15, 32/21, 32/25, 32/26, 40, 41, 44, 47, 48, 50-52, 57, 63, 67, 70/40, 70/41, 70/44, 70/47, 70/48, 70/50-52, 70/57, 70/63, 70/67, 74/40, 74/41, 74/44, 74/47, 74/48, 74/50-52, 74/57, 74/63 and 74/67 based on Dayton 075 in view of Morris 781 or Mitchell 711 was proposed by the third party requester in the request for reexamination.

Furthermore, claims 28/3, 28/4, 28/7, 28/11-14, 28/16-20, 28/22-24, 30/3, 30/4, 30/7, 30/11-14, 30/16-20, 30/22-24, 32/3, 32/4, 32/7, 32/11-14, 32/16-20, 32/22-24, 70/42, 70/43, 70/45, 70/46, 70/49, 70/53-56, 70/58-62, 70/64-66, 74/42, 74/43, 74/45, 74/46, 74/53-56, 74/58-62 and 74/64-66 depend upon claims that are not rejected with the combination of Dayton and Morris or Mitchell 711.  Accordingly, the rejection of these claims based on Dayton 075 and Morris 781 or Mitchell 711 is not adopted essentially as proposed in the request.

### Ground # 60.

The request submits that claims 3, 4, 43, 45, and 46 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Dayton 075 in view of Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in view of Ragheb 070.

BSC-SJA-0283

Application/Control Number: 95/001,097                                    Page 128
Art Unit: 3993

Claims 3, 4, 43, 45, and 46 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Dayton 075 in view of Morris 781 or Mitchell 711 as applied to claims

2 and 40 above, and further in view of Ragheb 070.

*Regarding claims 3 and 45*, the stent of Dayton as modified by Morris or Mitchell

711, set forth above, does not include a channel formed in at least one strut. Ragheb

shows a stent 10 having a coating thereon. The stent is formed of struts 14 having

channels 28' formed therein.   Ragheb discloses that "[t]he wells 28' may also be in the

form of slots or grooves in the surface of the base material 14 of the medical device.

This aspect of the invention provides the advantage of better controlling the total

amount of the bioactive material 18 to be released as well as the rate at which it is

released." (column 16, lines 48-51).  It would have been obvious to one of ordinary skill

in the art at the time the invention was made to provide the stent of Dayton with

channels as taught by Ragheb, in order to control the amount and rate of release of

rapamycin.

*Regarding claims 4 and 46*, Figure 10B of Ragheb shows a rectangular channel

with a close perimeter and an open top. The channel is smaller in all dimensions than

the strut.

*Regarding claim 43,* Dayton and Morris or Mitchell 711 fails to disclose that the

drug is entrapped on the surface of the stent by the polymeric carrier.  Ragheb

discloses that the drug 18 is entrapped by a polymeric layer 20 which controls the

release of the drug.  Ragheb discloses "any degradation of the bioactive material which

might otherwise occur by other polymer coating techniques is avoided" (column 19,

lines 51–53). Thus, the manner of enhancing a particular device (stent with drug

delivery capabilities) was made part of the ordinary capabilities of one skilled in the art

based upon the teaching of such improvement in Ragheb. Accordingly, one of ordinary

skill in the art would have been capable of applying this known "improvement" technique

in the same manner to the stent of Dayton and the results would have been predictable

to one of ordinary skill in the art, namely, one skilled in the art would have readily

recognized that the entrapment system of Ragheb would reduce the degradation of the

drug as might occur with the polymer coating technique of Dayton.

Accordingly, this rejection of claims 3, 4, 43, 45, and 46 based on Dayton 075 in

view of Morris 781 or Mitchell 711 and Ragheb 070 was proposed by the third party

requester in the request for reexamination is and being adopted essentially as proposed

in the request.

### Ground # 61.

**The request submits that claim 42 is unpatentable under 35 U.S.C. § 103(a)
as being obvious over Dayton 075 in view of Morris 781 or Mitchell 711 as applied
to claims 1 and 40 above, and further in view of Sahatjian 121.**

Claim 42 is rejected under 35 U.S.C. 103(a) as being unpatentable over Dayton

075 and Morris 781 or Mitchell 711 as applied to claim 40 above, and further in view of

Sahatjian 121. The coating of Dayton comprises a mixture of polymer and a drug but

fails to disclose a coating wherein the polymer is bound to the drug. Sahatjian discloses

a coating that is delivered to the vascular system to prevent restenosis. The coating

comprises a polymer which is bound to a drug. The substitution of one known element

(coating of Dayton) for another (coating of Sahatjian) would have been obvious to one

BSC-SJA-0285

of ordinary skill in the art at the time of the invention since the substitution of the coating

disclosed by Dayton with that of Sahatjian would have yielded predictable results,

namely, delivery of a drug to the vascular system and would merely be a substitution of

one known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396

(2007).

Accordingly, this rejection of claim 42 based on Dayton 075 and Morris 781 or

Mitchell 711 and Sahatjian 121 was proposed by the third party requester in the request

for reexamination and is <u>being adopted</u> essentially as proposed in the request.

### Ground # 62.

**The request submits that claims 7, 11-14, 16, 17, 19, 21, 22, 24, 49, 53-56, 58,
59, 61-64 and 66 are unpatentable under 35 U.S.C. § 103(a) as being obvious over
Dayton 075 in view of Morris 781 or Mitchell 711 as applied to claims 1 and 40
above, and further in view of Berg 650.**

Claims 7, 11-14, 16, 19, 21, 22, 24, 49, 53-56, 58, 59, 61-64 and 66 are rejected

under 35 U.S.C. 103(a) as being unpatentable over Dayton 075 and Morris 781 or

Mitchell 711 as applied to claims 1 and 40 above, and further in view of Berg 650.

*Regarding claims 7 and 49,* Dayton states "[a] quantity of bioactive substance

required to achieve the desired therapeutic effect is admixed with the polymer and ethyl

ether solution" (column 7, lines 40-42). Dayton does not disclose the weight percentage

or the ratio of the bioactive substance in the coating. Berg discloses: "[t]he ratio of

therapeutic substance to polymer in the solution will depend on the efficacy of the

polymer in securing the therapeutic substance onto the stent and the rate at which the

coating is to release the therapeutic substance . . . A wide ratio of therapeutic substance

to polymer could therefore be appropriate and could range from about 10:1 to about 1:100 (column 5, lines 5-18). It would have been obvious to one having ordinary skill in the art at the time the invention was made to provide the rapamycin in the coating at a weight percentage of about 30% or a weight ration of drug to polymeric carrier of about 3:7, since it has been held that discovering an optimum value of a result effective variable involves only routine skill in the art and particularly since both Berg and Dayton are concerned with preventing SMC proliferation and restenosis following PCTA procedures. *In re Boesch*, 617 F.2d 272, 205 USPQ 215 (CCPA 1980).

Regarding claims 11-14, 16, 17, 19, 21, 22, 24, 53-56, 58, 59, 61-64 and 66, Berg discloses that the polymer may comprise polycaprolactone, poly(lactide-co-glycolide) (column 4, line 44), polyanhydride (column 4, line 46), poly(amino acids) (column 4, line 49), polysaccharide, e.g. cellulose, starch (column 4, line 54), polyphosphazenes (column 4, line 52), poly(ether-ester) copolymer (column 4, line 51), copoly(ether-esters) (column 4, line 51), vinyl homopolymers and copolymers (claim 6), polyvinyl acetate, copolymers of vinyl monomers (column 4, line 65); an acrylate based polymer, e.g. cyanoacrylates (column 4, line 49), ethylene-methyl methacrylate copolymers (column 4, lines 66-67), cellulose acetate, cellulose butyrate, cellulose acetate butyrate, etc. (column 5, lines 4-7), and polyvinylidene fluoride (column 4, line 62). The substitution of one known element (any of the polymers of Dayton) for another would have been obvious to one of ordinary skill in the art at the time of the invention since the substitution of the polymer disclosed by Dayton with that of Berg would have yielded predictable results, namely, delivery of a drug to the vascular system and would

merely be a substitution of one known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 7, 11-14, 16, 17, 19, 21-22, 24, 49, 53-56, 58 and 59, 61-64, and 66 based on Dayton 075 and Morris 781 or Mitchell 711 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

### Ground # 63.

**The request submits that claims 11-14, 19, 23, 53-56, 61 and 65 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Dayton 075 in view of Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in view of Helmus 724.**

Claims 11-14, 19, 23, 53-56, 61 and 65 are rejected under 35 U.S.C. 103(a) as being unpatentable over Dayton 075 and Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in view of Helmus 724. Dayton does not disclose that the polymer may comprise a lactone-based polymer, lactone based-copolymer, polyanhydride, poly(ethylene)vinylacetate and polyvinyl pyrrolidone. Helmus discloses that Helmus discloses that the polymer may comprise lactone-based polymers and copolymers (polylactides and their copolymers, page 3, lines 20-24), polyanhydrides (page 3, line 23), ethylene vinylacetate, polyvinyl pyrrolidone may be used as the coating on a drug delivery stent (see page 3, lines 7-14 and page 3, line 34 to page 4, line 1). The substitution of one known element (any of the polymers of Dayton) for another (lactone-based polymer or copolymer, polyanhydride, poly(ethylene)vinylacetate, polyvinyl pyrrolidone or of Helmus) would have been

obvious to one of ordinary skill in the art at the time of the invention since the

substitution of the polymer disclosed by Dayton with that of Helmus would have yielded

predictable results, namely, delivery of a drug to the vascular system and would merely

be a substitution of one known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82

USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 11-14, 19, 23, 53-56, 61 and 65 based on

Dayton 075 and Morris 781 or Mitchell 711 and Helmus 724 was proposed by the third

party requester in the request for reexamination is <u>being adopted</u> essentially as

proposed in the request.

### Ground # 64.

**The request submits that claims 11-13, 19, 20, 53-55 and 62 are
unpatentable under 35 U.S.C. § 103(a) as being obvious over Dayton 075 in view
of Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in
view of Kaplan 348.**

Claims 11-13, 19, 20, 53-55 and 62 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Dayton 075 in view of Morris 781 or Mitchell 711 as applied to claims

1 and 40 above, and further in view of Kaplan 348.  Dayton does not disclose that the

polymer may comprise a lactone-based polymer, lactone based-copolymer,

polyanhydride, poly(ethylene)vinylacetate or poly(hydroxyl) ethylmethylmethacrylate.

Kaplan discloses that a lactone-based polymer, lactone based-copolymer (e.g.

polycaprolactone, claims 8 and 16), polyanhydride (claims 8 and 16), ethylene-

vinylacetate or poly(hydroxyl) ethylmethylmethacrylate may be used as the coating on a

drug delivery stent. See column 6, lines 60-62, "[o]ther acceptable polymers may



Application/Control Number: 95/001,097                                              Page 134
Art Unit: 3993

contain monomers of hydroxyethylmethacrylate, vinylalcohol, ethylene-vinylacetate . . ."

The substitution of one known element (any of the polymers of Dayton) for another (a

lactone-based polymer, lactone based-copolymer, polyanhydride, ethylene-vinylacetate

or poly(hydroxyl) ethylmethylmethacrylate of Kaplan) would have been obvious to one

of ordinary skill in the art at the time of the invention since the substitution of the

polymer disclosed by Dayton with that of Kaplan would have yielded predictable results,

namely, delivery of a drug to the vascular system and would merely be a substitution of

one known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396

(2007).

Accordingly, this rejection of claims 11-13, 19, 20, 53-55 and 62 based on

Dayton 722 and Morris 781 or Mitchell 711 and Kaplan 348 was proposed by the third

party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

## Ground # 65.

The request submits that claims 11, 12, 14, 53, 54 and 56 are unpatentable
under 35 U.S.C. § 103(a) as being obvious over Dayton 075 in view of Morris 781
or Mitchell 711 as applied to claims 1 and 40 above, and further in view of Dinh
227.

Claims 11, 12, 14, 53, 54 and 56 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Dayton 075 in view of Morris 781 or Mitchell 711 as applied to claims

1 and 40 above, and further in view of Dinh 227. Dayton does not disclose that the

polymer may be a lactone-base polyester, a lactone based copolymer or polyaminoacid.

Dinh discloses that the polymer may comprise lactone-based polymers and copolymers

BSC-SJA-0290

(poly(Lactic acid) and poly(lactide-co-glycolide)) (column 7, lines 46-47) or polyamino acids (proteins and peptides, page 3, line18). The substitution of one known element (any of the polymers of Dayton) for another (a lactone-based polyester, lactone based-copolymer or polyaminoacid of Dinh) would have been obvious to one of ordinary skill in the art at the time of the invention since the substitution of the polymer disclosed by Dayton with that of Dinh would have yielded predictable results, namely, delivery of a drug to the vascular system and would merely be a substitution of one known element for another.  *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 11-13, 19, 20, 53-55 and 62 based on Dayton 722 and Morris 781 or Mitchell 711 and Dinh 227 was proposed by the third party requester in the request for reexamination and is <u>being adopted</u> essentially as proposed in the request.

### Ground # 66.

**The request submits that claims 18, 19, 60 and 61 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Dayton 075 in view of Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in view of Ding 313.**

Claims 18, 19, 60 and 61 are rejected under 35 U.S.C. 103(a) as being unpatentable over Dayton 075 in view of Morris 781 or Mitchell 711 as applied to claims 1 and 40 above, and further in view of Ding 313.  Dayton does not disclose that the polymer may comprise polydimethylsiloxane or poly(ethylene)vinylacetate.  Ding discloses that it is known to use polydimethylsiloxane or poly(ethylene)vinylacetate as the coating on a drug delivery stent. See column 4, lines 9-10, "[f]or example, silicone or polysiloxane materials (such as polydimethylsiloxane) have been used successfully"

BSC-SJA-0291

and lines 57-58 "ethylene vinyl acetate copolymers". The substitution of one known

element (any of the polymers of Dayton) for another (polydimethylsiloxane or

poly(ethylene)vinylacetate of Ding) would have been obvious to one of ordinary skill in

the art at the time of the invention since the substitution of the polymers disclosed by

Dayton with that of Ding would have yielded predictable results, namely, delivery of a

drug to the vascular system and would merely be a substitution of one known element

for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 18, 19, 60 and 61 based on Dayton 722 and

Morris 781 or Mitchell 711 and Ding 313 was proposed by the third party requester in

the request for reexamination and is being adopted essentially as proposed in the

request.

### Ground # 67.

**The request submits that claims 1, 2, 5, 6, 8-10, 15, 21, 25-41, 44, 47, 48, 50-52, 57, 63 and 67-77 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Dayton 075 in view of Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790.**

Claims 1, 2, 5, 6, 8-10, 15, 21, 25, 26, 27/1, 27/2, 27/5, 27/6, 27/8-10, 27/15,

27/21, 27/25, 27/26, 28/1, 28/2, 28/5, 28/6, 28/8-10, 28/15, 28/21, 28/25, 28/26, 29/28/1,

29/28/2, 29/28/5, 29/28/6, 29/28/8-10, 29/28/15, 29/28/21, 29/28/25, 29/28/26, 30/1,

30/2, 30/5, 30/6, 30/8-10, 30/15, 30/21, 30/25-27, 31/30/1, 31/30/2, 31/30/5, 31/30/6,

31/30/8-10, 31/30/15, 31/30/21, 31/30/25, 31/30/26, 32/1, 32/2, 32/5, 32/6, 32/8-10,

32/15, 32/21, 32/25-27, 33/32/1, 33/32/2, 33/32/5, 33/32/6, 33/32/8-10, 33/32/15,

33/32/21, 33/32/25, 33/32/26, 34/33/32/1, 34/33/32/2, 34/33/32/5, 34/33/32/6,

34/33/32/8-10, 34/33/32/15, 34/33/32/21, 34/33/32/25-27, 35/34/33/32/1, 35/34/33/32/2,

35/34/33/32/5, 35/34/33/32/6, 35/34/33/32/8-10, 35/34/33/32/15, 35/34/33/32/21,

35/34/33/32/25, 35/34/33/32/26, 36/35/34/33/32/1, 36/35/34/33/32/2, 36/35/34/33/32/5,

36/35/34/33/32/6, 36/35/34/33/32/8-10, 36/35/34/33/32/15, 36/35/34/33/32/21,

36/35/34/33/32/25, 36/35/34/33/32/25, 37/33/32/1, 37/33/32/2, 37/33/32/5, 37/33/32/6,

37/33/32/8-10, 37/33/32/15, 37/33/32/21, 37/33/32/25-27, 38/37/33/32/1, 38/37/33/32/2,

38/37/33/32/5, 38/37/33/32/6, 38/37/33/32/8-10, 38/37/33/32/15, 38/37/33/32/21,

38/37/33/32/25, 38/37/33/32/25, 39/38/37/33/32/1, 39/38/37/33/32/2, 39/38/37/33/32/5,

39/38/37/33/32/6, 39/38/37/33/32/8-10, 39/38/37/33/32/15, 39/38/37/33/32/21,

39/38/37/33/32/25, 39/38/37/33/32/25, 40, 41, 44, 47, 48, 50-52, 57, 63, 67, 68, 69/40,

69/41, 69/44, 69/47, 69/48, 69/50-52, 69/57, 69/63, 69/67, 69/68, 70/40, 70/41, 70/44,

70/47, 70/48, 70/50-52, 70/57, 70/63, 70/67, 70/68, 71/70/40, 71/70/41, 71/70/44,

71/70/47, 71/70/48, 71/70/50-52, 71/70/57, 71/70/63, 71/70/67, 71/70/68, 72/71/70/40,

72/71/70/41, 72/71/70/44, 72/71/70/47, 72/71/70/48, 72/71/70/50-52, 72/71/70/57,

72/71/70/63, 72/71/70/67, 72/71/70/68 73/72/71/70/40, 73/72/71/70/41, 73/72/71/70/44,

73/72/71/70/47, 73/72/71/70/48, 73/72/71/70/50-52, 73/72/71/70/57, 73/72/71/70/63,

73/72/71/70/67, 73/72/71/68, 74/40, 74/41, 74/44, 74/47, 74/48, 74/50-52, 74/57, 74/63,

74/67, 74/68, 75/74/40, 75/74/41, 75/74/44, 75/74/47, 75/74/48, 75/74/50-52, 75/74/57,

75/74/63, 75/74/67, 75/74/68, 76/75/74/40, 76/75/74/41, 76/75/74/44, 76/75/74/47,

76/75/74/48, 76/75/74/50-52, 76/75/74/57, 76/75/74/63, 76/75/74/67, 76/75/74/68,

77/76/75/74/40, 77/76/75/74/41, 77/76/75/74/44, 77/76/75/74/47, 77/76/75/74/48,

77/76/75/74/50-52, 77/76/75/74/57, 77/76/75/74/63, 77/76/75/74/67 and 77/76/75/74/68

are rejected under 35 U.S.C. 103(a) as being unpatentable over Dayton 075 in view of

Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790.

*Regarding claims 1 and 40,* Dayton teaches an intravascular stent 11 having a

coating thereon. The coating may comprise a polymer and a therapeutic substance. The

"stent is . . . then coated with a polymer which contains a bioactive substance" (column

4, lines 1-2) to prevent restenosis (column 2, lines 27-31). Dayton does not disclose

that the therapeutic substance is rapamycin or a macrocyclic lactone analog. However,

Dayton states "virtually any bioactive substance of need to the patient is a possible

agent for treating the patient, depending upon the needs of the treatment" (column 7,

lines 33).

Skotnicki 579 teaches that it is known to use rapamycin and macrocyclic lactone

derivatives of rapamycin (abstract) to prevent restenosis or cell proliferation (column 9,

lines 1-11). Skotnicki 579 further discloses that the rapamycin derivatives may be

encapsulated in a polymer carrier for delivery (column 9, lines 34-38). The derivative

compounds have similar profile activity to rapamycin, exhibit antiproliferative activities

and are useful in treating restenosis.

Russo teaches that an analog of rapamycin, 21-norrapamycin, to prevent

restenosis or cell proliferation (abstract, column 1, lines 6-12, 39-46 and column 7, lines

10-16). The compound may be administered with a carrier that could include a

reservoir matrix (column 4, line 67 through column 5, line 4). Russo discloses that

polyvinylpyrrolidine may be used as a carrier (column 4, lines 4-20).



BSC-SJA-0294

Failli teaches rapamycin 42-oximes and hydroxylamines are to prevent restenosis or cell proliferation (column 1, lines 9-15, 64-66 and column 6, lines 36-48). Failli discloses that the compounds may be delivered via an encapsulating material or matrix including polyvinylpyrrolidine (column 7, lines 13-14 and column 8, line 3-7).

Skotnicki 718 teaches rapamycin hydroxyesters useable to prevent restenosis or cell proliferation (abstract, column 1, lines 6-12, 40-51, 65-68 and column 6, lines 46-59). The derivatives may be used to treat hyperproliferative disease such as restenosis following angioplasty procedures. The compounds may be delivered via a carrier or matrix including polyvinylpyrrolidine (column 7, lines 34-38 and column 8, line 19-24).

Skotnicki 730 teaches phosphorylcarbamates of rapamycin and oxime derivatives thereof that are useful as anti-inflammatories and antiproliferatives (column 1, lines 65-68). The derivatives may be used to treat hyperproliferative disease such as restenosis (column 7, lines 10-16). Additionally, the compounds may be delivered via a carrier or matrix including polyvinylpyrrolidine (column 7, lines 50-54 and column 8, lines 35-40).

Nelson teaches 27-hydroxyrapamycin and derivatives of rapamycin to prevent restenosis or cell proliferation (abstract, column 1, lines 11-17, lines 44-51 and column 15, lines 41-54). The derivatives are useful as anti-inflammatories and antiproliferatives (column 2, lines 43-46). Additionally, the derivatives may be delivered via a carrier or matrix including polyvinylpyrrolidine (column 16, lines 9-12 and lines 24-28 and column 17, lines 11-15).

BSC-SJA-0295

It would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the stent of Dayton to include rapamycin or macrocyclic lactone derivatives of rapamycin, in view of the teachings of Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790,  that rapamycin and macrocyclic lactone derivatives of rapamycin have superior anti-inflammatory and anti-proliferative properties.  All of these references teach treating the vessel with therapeutic agents in order to inhibit or lessen restenosis.  These references disclose that rapamycin is a known and effective inhibitor of cell proliferation and is used to treat restenosis.  Each disclose that the agent may be contained in a polymer carrier/matrix.  Furthermore, the combination would have yielded nothing more than predictable results to one of ordinary skill in the art at the time of the invention, i.e., one skilled in the art would have recognized that rapamycin would allow the stent of Dayton to be used as Dayton intended, e.g. to prevent restenosis in the vascular system.

Furthermore, and the combination would have yielded nothing more than predictable results to one of ordinary skill in the art at the time of the invention, i.e., one skilled in the art would have recognized that rapamycin would allow the stent of Berg to be used as Berg intended, e.g. to prevent restenosis in the vascular system.

*Regarding claims 2 and 44*, Dayton discloses that the stent is comprised of a tubular body formed of struts (Figures 2 and 5).

*Regarding claims 5, 6, 47 and 48*, Dayton discloses that the coating may be applied to the stent by dipping (column 7, lines 46-47) or by spraying (column 7, lines 51-52).

*Regarding claims 8, 9, 50 and 51*, Dayton discloses "[t]he polymer may be a bioabsorbable (column 7, lines 4-5) or a biostable polymer (e.g. polytetrafluroethylene, column 4, line 11).

*As to claims 10, 15, 21, 25, 26, 52, 57, 63 and 68*, Dayton discloses that the polymer may comprise polysaccharides (e.g. hyaluronte, column 7, line 29), polymethylmethacrylate (column 7, line 11), polytetrafluroethylene and fluorosilicone (column 4, lines 11-12).

Regarding claims 28/1, 28/2, 28/5, 28/6, 28/8-10, 28/15, 28/21, 28/25, 28/26, 30/1, 30/2, 30/5, 30/6, 30/8-10, 30/15, 30/21, 30/25, 30/26, 34/33/32/1, 34/33/32/2, 34/33/32/5, 34/33/32/6, 34/33/32/8-10, 34/33/32/15, 34/33/32/21, 34/33/32/25, 34/33/32/26, 70/40, 70/41, 70/44, 70/47, 70/48, 70/50-52, 70/57, 70/63, 70/67, 70/68, 74/40, 74/41, 74/44, 74/47, 74/48, 74/50-52, 74/57, 74/63, 74/67 and 74/68, Dayton discloses that the drug may be released at a controlled rate (column 4, lines 20-29). Dayton also states "long term treatment by the drugs within the polymer takes place" (column 8, lines 30-32). Given that Dayton discloses that the stent may prevent restenosis it would have been obvious to elute the drug over a period of several weeks since it is well known that restenosis occurs over a period of several weeks or longer.

*As to claims 32/1, 32/2, 32/5, 32/6, 32/8-10, 32/15, 32/21, 32/25, 32/26, and 40,* Dayton discloses that the drug is present a therapeutically beneficial amount to inhibit neointimal proliferation (column 3, lines 21-24).

*Regarding claim 41*, Dayton discloses that the polymeric carrier and drug are mixed together (column 2, lines 57-61).

Application/Control Number: 95/001,097                     Page 142
Art Unit: 3993

Accordingly, this rejection of claims 1, 2, 5, 6, 8-10, 15, 21, 25, 26, 27/1, 27/2,

27/5, 27/6, 27/8-10, 27/15, 27/21, 27/25, 27/26, 28/1, 28/2, 28/5, 28/6, 28/8-10, 28/15,

28/21, 28/25, 28/26, 29/28/1, 29/28/2, 29/28/5, 29/28/6, 29/28/8-10, 29/28/15, 29/28/21,

29/28/25, 29/28/26, 30/1, 30/2, 30/5, 30/6, 30/8-10, 30/15, 30/21, 30/25-27, 31/30/1,

31/30/2, 31/30/5, 31/30/6, 31/30/8-10, 31/30/15, 31/30/21, 31/30/25, 31/30/26, 32/1,

32/2, 32/5, 32/6, 32/8-10, 32/15, 32/21, 32/25-27, 33/32/1, 33/32/2, 33/32/5, 33/32/6,

33/32/8-10, 33/32/15, 33/32/21, 33/32/25, 33/32/26, 34/33/32/1, 34/33/32/2, 34/33/32/5,

34/33/32/6, 34/33/32/8-10, 34/33/32/15, 34/33/32/21, 34/33/32/25-27, 35/34/33/32/1,

35/34/33/32/2, 35/34/33/32/5, 35/34/33/32/6, 35/34/33/32/8-10, 35/34/33/32/15,

35/34/33/32/21, 35/34/33/32/25, 35/34/33/32/26, 36/35/34/33/32/1, 36/35/34/33/32/2,

36/35/34/33/32/5, 36/35/34/33/32/6, 36/35/34/33/32/8-10, 36/35/34/33/32/15,

36/35/34/33/32/21, 36/35/34/33/32/25, 36/35/34/33/32/25, 37/33/32/1, 37/33/32/2,

37/33/32/5, 37/33/32/6, 37/33/32/8-10, 37/33/32/15, 37/33/32/21, 37/33/32/25-27,

38/37/33/32/1, 38/37/33/32/2, 38/37/33/32/5, 38/37/33/32/6, 38/37/33/32/8-10,

38/37/33/32/15, 38/37/33/32/21, 38/37/33/32/25, 38/37/33/32/25, 39/38/37/33/32/1,

39/38/37/33/32/2, 39/38/37/33/32/5, 39/38/37/33/32/6, 39/38/37/33/32/8-10,

39/38/37/33/32/15, 39/38/37/33/32/21, 39/38/37/33/32/25, 39/38/37/33/32/25, 40, 41,

44, 47, 48, 50-52, 57, 63, 67, 68, 69/40, 69/41, 69/44, 69/47, 69/48, 69/50-52, 69/57,

69/63, 69/67, 69/68, 70/40, 70/41, 70/44, 70/47, 70/48, 70/50-52, 70/57, 70/63, 70/67,

70/68, 71/70/40, 71/70/41, 71/70/44, 71/70/47, 71/70/48, 71/70/50-52, 71/70/57,

71/70/63, 71/70/67, 71/70/68, 72/71/70/40, 72/71/70/41, 72/71/70/44, 72/71/70/47,

72/71/70/48, 72/71/70/50-52, 72/71/70/57, 72/71/70/63, 72/71/70/67, 72/71/70/68

BSC-SJA-0298

73/72/71/70/40, 73/72/71/70/41, 73/72/71/70/44, 73/72/71/70/47, 73/72/71/70/48,

73/72/71/70/50-52, 73/72/71/70/57, 73/72/71/70/63, 73/72/71/70/67, 73/72/71/68, 74/40,

74/41, 74/44, 74/47, 74/48, 74/50-52, 74/57, 74/63, 74/67, 74/68, 75/74/40, 75/74/41,

75/74/44, 75/74/47, 75/74/48, 75/74/50-52, 75/74/57, 75/74/63, 75/74/67, 75/74/68,

76/75/74/40, 76/75/74/41, 76/75/74/44, 76/75/74/47, 76/75/74/48, 76/75/74/50-52,

76/75/74/57, 76/75/74/63, 76/75/74/67, 76/75/74/68, 77/76/75/74/40, 77/76/75/74/41,

77/76/75/74/44, 77/76/75/74/47, 77/76/75/74/48, 77/76/75/74/50-52, 77/76/75/74/57,

77/76/75/74/63, 77/76/75/74/67 and 77/76/75/74/68 based on Dayton 075 in view of

Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, was

proposed by the third party requester in the request for reexamination.

Furthermore, claims 27/3, 27/4, 27/7, 27/11-14, 27/16-20, 27/22-24, 28/3, 28/4,

28/7, 28/11-14, 28/16-20, 28/22-24, 29/28/3, 29/28/4, 29/28/7, 29/28/11-14, 29/28/16-

20, 29/28/22-24, 30/3, 30/4, 30/7, 30/11-14, 30/16-20, 30/22-24, 31/30/3, 30/4, 31/30/7,

31/30/11-14, 31/30/16-20, 31/30/22-24, 32/3, 32/4, 32/7, 32/11-14, 32/16-20, 32/22-24,

33/32/3, 33/32/4, 33/32/7, 33/32/11-14, 33/32/16-20, 33/32/22-24, 34/33/32/3,

34/33/32/4, 34/33/32/7, 34/33/32/11-14, 34/33/32/16-20, 34/33/32/22-24, 35/34/33/32/3,

35/34/33/32/4, 35/34/33/32/7, 35/34/33/32/11-14, 35/34/33/32/16-20, 35/34/33/32/22-

24, 69/42, 69/43, 69/45, 69/46, 69/49, 69/53-56, 69/58-62, 69/64-66, 70/42, 70/43,

70/45, 70/46, 70/49, 70/53-56, 70/58-62, 70/64-66, 71/70/42, 71/70/43, 71/70/45,

71/70/46, 71/70/49, 71/70/53-56, 71/70/58-62, 71/70/64-66, 72/71/70/42, 72/71/70/43,

72/71/70/45, 72/71/70/46, 72/71/70/49, 72/71/70/53-56, 72/71/70/58-62, 72/71/70/64-

66, 73/72/71/70/42, 73/72/71/70/43, 73/72/71/70/45, 73/72/71/70/46, 73/72/71/70/49,

BSC-SJA-0299

73/72/71/70/53-56, 73/72/71/70/58-62, 73/72/71/70/64-66, 74/42, 74/43, 74/45, 74/46,

74/53-56, 74/58-62, 74/64-66, 75/74/42, 75/74/43, 75/74/45, 75/74/46, 75/74/53-56,

75/74/58-62, 75/74/64-66, 76/75/74/42, 76/75/74/43, 76/75/74/45, 76/75/74/46,

76/75/74/53-56, 76/75/74/58-62, 76/75/74/64-66, 77/76/75/74/42, 77/76/75/74/43,

77/76/75/74/45, 77/76/75/74/46, 77/76/75/74/53-56, 77/76/75/74/58-62 and

77/76/75/74/64-66 depend upon claims that are not rejected with the combination of

Dayton and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson

790.  Accordingly, the rejection of these claims based on Dayton 075 and Skotnicki

579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, is not adopted

essentially as proposed in the request.

### Ground # 68.

The request submits that claims 3, 4, 43, 45, and 46 are unpatentable under
35 U.S.C. § 103(a) as being obvious over Dayton 075 in view of Skotnicki 579,
Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to
claims 1 and 40 above, and further in view of Ragheb 070.

Claims 3, 4, 43, 45, and 46 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Dayton 075 in view of Skotnicki 579, Russo 977, Failli 145, Skotnicki

718, Skotnicki 730 or Nelson 790, as applied to claims 2 and  40 above, and further in

view of Ragheb 070.

*Regarding claims 3 and 45*, the stent of Dayton as modified by Skotnicki 579,

Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, set forth above, does

not include a channel formed in at least one strut.  Ragheb shows a stent 10 having a

coating thereon.  The stent is formed of struts 14 having channels 28' formed therein.

Ragheb discloses that "[t]he wells 28' may also be in the from of slots or grooves in the surface of the base material 14 of the medical device. This aspect of the invention provides the advantage of better controlling the total amount of the bioactive material 18 to be released as well as the rate at which it is released." (column 16, lines 48-51). It would have been obvious to one of ordinary skill in the art at the time the invention was made to provide the stent of Dayton with channels as taught by Ragheb, in order to control the amount and rate of release of rapamycin.

Regarding claims 4 and 46, Figure 10B of Ragheb shows a rectangular channel with a close perimeter and an open top. The channel is smaller in all dimensions than the strut.

Regarding claim 43, Dayton and Skotnicki 579 , Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790 fails to disclose that the drug is entrapped on the surface of the stent by the polymeric carrier. Ragheb discloses that the drug 18 is entrapped by a polymeric layer 20 which controls the release of the drug. Ragheb discloses "any degradation of the bioactive material which might otherwise occur by other polymer coating techniques is avoided" (column 19, lines 51-53). Thus, the manner of enhancing a particular device (stent with drug delivery capabilities) was made part of the ordinary capabilities of one skilled in the art based upon the teaching of such improvement in Ragheb. Accordingly, one of ordinary skill in the art would have been capable of applying this known "improvement" technique in the same manner to the stent of Dayton and the results would have been predictable to one of ordinary skill in the art, namely, one skilled in the art would have readily recognized that the



entrapment system of Ragheb would reduce the degradation of the drug as might occur

with the polymer coating technique of Dayton.

Accordingly, this rejection of claims 3, 4, 43, 45, and 46 based on Dayton 075 in

view of Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson

790, and Ragheb 070 was proposed by the third party requester in the request for

reexamination is and being adopted essentially as proposed in the request.

### Ground # 69.

**The request submits that claim 42 is unpatentable under 35 U.S.C. § 103(a)
as being obvious over Dayton 075 in view of Skotnicki 579, Russo 977, Failli 145,
Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above,
and further in view of Sahatjian 121.**

Claim 42 is rejected under 35 U.S.C. 103(a) as being unpatentable over Dayton

075 and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson

790, as applied to claim 40 above, and further in view of Sahatjian 121. The coating of

Dayton comprises a mixture of polymer and a drug but fails to disclose a coating

wherein the polymer is bound to the drug. Sahatjian discloses a coating that is

delivered to the vascular system to prevent restenosis. The coating comprises a

polymer which is bound to a drug. The substitution of one known element (coating of

Dayton) for another (coating of Sahatjian) would have been obvious to one of ordinary

skill in the art at the time of the invention since the substitution of the coating disclosed

by Dayton with that of Sahatjian would have yielded predictable results, namely,

delivery of a drug to the vascular system and would merely be a substitution of one

known element for another. *KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396

(2007).

Accordingly, this rejection of claim 42 based on Dayton 075 and Skotnicki 579 ,

Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, and Sahatjian 121

was proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.

### Ground # 70.

**The request submits that claims 7, 11-14, 16, 17, 19, 21-22, 24, 49, 53-56, 58,
59, 61-64, and 66 are unpatentable under 35 U.S.C. § 103(a) as being obvious over
Dayton 075 in view of Skotnicki 579, Russo 977, Failli 145, Skotnicki 718,
Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in
view of Berg 650.**

Claims 7, 11-14, 16, 17, 19, 21-22, 24, 49, 53-56, 58, 59, 61-64, and 66 are

rejected under 35 U.S.C. 103(a) as being unpatentable over Dayton 075 and Skotnicki

579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790, as applied to

claims 1 and 40 above, and further in view of Berg.

*Regarding claims 7 and 49,* Dayton states "[a] quantity of bioactive substance

required to achieve the desired therapeutic effect is admixed with the polymer and ethyl

ether solution" (column 7, lines 40-42). Dayton does not disclose the weight percentage

or the ratio of the bioactive substance in the coating. Berg discloses: "[t]he ratio of

therapeutic substance to polymer in the solution will depend on the efficacy of the

polymer in securing the therapeutic substance onto the stent and the rate at which the

coating is to release the therapeutic substance . . . A wide ratio of therapeutic substance

to polymer could therefore be appropriate and could range from about 10:1 to about

1:100 (column 5, lines 5-18). It would have been obvious to one having ordinary skill in

the art at the time the invention was made to provide the rapamycin in the coating at a

BSC-SJA-0303

weight percentage of about 30% or a weight ratio of drug to polymer of about 3:7, since

it has been held that discovering an optimum value of a result effective variable involves

only routine skill in the art and particularly since both Berg and Dayton are concerned

with preventing SMC proliferation and restenosis following PCTA procedures. *In re*

*Boesch*, 617 F.2d 272, 205 USPQ 215 (CCPA 1980).

Regarding claims 11-14, 16, 17, 19, 21-22, 24, 53-56, 58, 59, 61-64, and 66,

Berg discloses that the polymer may comprise polycaprolactone, poly(lactide-co-

glycolide) (column 4, line 44), polyanhydride (column 4, line 46), poly(amino acids)

(column 4, line 49), polysaccharide, e.g. cellulose, starch (column 4, line 54),

polyphosphazenes (column 4, line 52), poly(ether-ester) copolymer (column 4, line 51),

copoly(ether-esters) (column 4, line 51), vinyl homopolymers and copolymers (claim 6),

polyvinyl acetate, copolymers of vinyl monomers (column 4, line 65), an acrylate based

polymer, e.g. cyanoacrylates (column 4, line 49), ethylene-methyl methacrylate

copolymers (column 4, lines 66-67), cellulose acetate, cellulose butyrate, cellulose

acetate butyrate, etc. (column 5, lines 4-7), and polyvinylidene fluoride (column 4, line

62). The substitution of one known element (any of the polymers of Dayton) for another

would have been obvious to one of ordinary skill in the art at the time of the invention

since the substitution of the polymer disclosed by Dayton with that of Berg would have

yielded predictable results, namely, delivery of a drug to the vascular system and would

merely be a substitution of one known element for another. *KSR Int'l Co. v. Teleflex*

*Inc.*, 82 USPQ2d 1385, 1396 (2007).

BSC-SJA-0304

Application/Control Number: 95/001,097                                    Page 149
Art Unit: 3993

Accordingly, this rejection of claims 7, 11-14, 16, 17, 19, 21-22, 24, 49, 53-56, 58

and 59, 61-64, and 66 based on Dayton 075 and Skotnicki 579, Russo 977, Failli 145,

Skotnicki 718, Skotnicki 730 or Nelson 790, was proposed by the third party requester

in the request for reexamination and is <u>being adopted</u> essentially as proposed in the

request.

### Ground # 71.

**The request submits that claims 11-14, 19, 23, 53-56, 61 and 65 are
unpatentable under 35 U.S.C. § 103(a) as being obvious over Dayton 075 in view
of Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790,
as applied to claims 1 and 40 above, and further in view of Helmus 724.**

Claims 11-14, 19, 23, 53-56, 61 and 65 are rejected under 35 U.S.C. 103(a) as

being unpalentable over Dayton 075 and Skotnicki 579, Russo 977, Failli 145, Skotnicki

718, Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in

view of Helmus 724. Dayton does not disclose that the polymer may comprise a

lactone-based polymer, lactone based-copolymer, polyanhydride,

poly(ethylene)vinylacetate and polyvinyl pyrrolidone. Helmus discloses that Helmus

discloses that the polymer may comprise lactone-based polymers and copolymers

(polylactides and their copolymers, page 3, lines 20-24), polyanhydrides (page 3, line

23), ethylene vinylacetate, polyvinyl pyrrolidone may be used as the coating on a drug

delivery stent (see page 3, lines 7-14 and page 3, line 34 to page 4, line 1). The

substitution of one known element (any of the polymers of Dayton) for another (lactone-

based polymer or copolymer, polyanhydride, poly(ethylene)vinylacetate, polyvinyl

pyrrolidone or of Helmus) would have been obvious to one of ordinary skill in the art at

Application/Control Number: 95/001,097                                      Page 150
Art Unit: 3993

the time of the invention since the substitution of the polymer disclosed by Dayton with

that of Helmus would have yielded predictable results, namely, delivery of a drug to the

vascular system and would merely be a substitution of one known element for another.

*KSR Int'l Co. v. Teleflex Inc.*, 82 USPQ2d 1385, 1396 (2007).

Accordingly, this rejection of claims 11-14, 19, 23, 53-56, 61 and 65 based on

Dayton 075 and Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or

Nelson 790, and Helmus 724 was proposed by the third party requester in the request

for reexamination is being adopted essentially as proposed in the request.

### Ground # 72.

**The request submits that claims 11-13, 19, 20, 53-55 and 62 are
unpatentable under 35 U.S.C. § 103(a) as being obvious over Dayton 075 in view
of Skotnicki 579, Russo 977, Failli 145, Skotnicki 718, Skotnicki 730 or Nelson 790,
as applied to claims 1 and 40 above, and further in view of Kaplan 348.**

Claims 11-13, 19, 20, 53-55 and 62 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Dayton 075 in view of Skotnicki 579, Russo 977, Failli 145, Skotnicki

718, Skotnicki 730 or Nelson 790, as applied to claims 1 and 40 above, and further in

view of Kaplan 348. Dayton does not disclose that the polymer may comprise a

lactone-based polymer, lactone based-copolymer, polyanhydride,

poly(ethylene)vinylacetate or poly(hydroxyl) ethylmethylmethacrylate. Kaplan discloses

that a lactone-based polymer, lactone based-copolymer (e.g. polycaprolactone, claims 8

and 16), polyanhydride (claims 8 and 16), ethylene-vinylacetate or poly(hydroxyl)

ethylmethylmethacrylate may be used as the coating on a drug delivery stent. See

column 6, lines 60-62, "[o]ther acceptable polymers may contain monomers of



BSC-SJA-0306