## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., <br><br> Plaintiffs/Counter-Defendants, <br><br> v. <br><br> JOHNSON & JOHNSON, CORDIS CORPORATION, and WYETH <br><br> Defendants/Counter-Plaintiffs. | Civil Action No. 07-333-SLR <br> Civil Action No. 07-348-SLR <br> Civil Action No. 07-409-SLR <br><br> **REDACTED** <br> **PUBLIC VERSION** |
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., <br><br> Plaintiffs/Counter-Defendants, <br><br> v. <br><br> JOHNSON & JOHNSON, CORDIS CORPORATION, and WYETH <br><br> Defendants/Counter-Plaintiffs. | Civil Action No. 07-765-SLR |

### DEFENDANTS/COUNTER-PLAINTIFFS RESPONSE TO BSC'S MOTION TO STRIKE THE SUPPLEMENTAL EXPERT REPORT OF ANTONIOS G. MIKOS Ph.D

*Of Counsel:*

David T. Pritikin
William H. Baumgartner, Jr.
Russell E. Cass
SIDLEY AUSTIN LLP
1 S. Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Bindu Donovan
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Dated: October 5, 2009

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for Defendants/Counter-Plaintiffs Johnson & Johnson, Cordis Corporation, and Wyeth*

{00338404;v1}

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................1
II. SUMMARY OF THE ARGUMENT ....................................................................2
III. STATEMENT OF FACTS ....................................................................................2
IV. ARGUMENT .........................................................................................................5
V.  CONCLUSION .....................................................................................................7

## TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Emcore Corp. v. Optium Corp.*,
  2008 WL 3271553 (2008 W.D. Pa.) ............................................................................. 5

*In re Paoli R.R. Yard PCB Litigation*,
  35 F.3d 717 (3d. Cir. 1994) ........................................................................................... 5

*Power Integrations, Inc. v. Fairchild Semiconductor Intern, Inc.*,
  2006 WL 2435083 (D. Del. 2006) ................................................................................. 7

*Praxair, Inc. v. ATMI, Inc.*
  231 F.R.D. 457 (D. Del. 2005.) ..................................................................................... 7

*Praxair, Inc. v. ATMI, Inc.*,
  445 F. Supp. 2d. 460 (D. Del. 2006) .......................................................................... 6, 7

## I. INTRODUCTION

This is a patent lawsuit, in which Counter-Plaintiffs Johnson & Johnson, Cordis Corporation, and Wyeth (collectively "Cordis") allege that Boston Scientific infringes four patents. Cordis asserts the same patents against Abbott Laboratories ("Abbott") in a parallel case in New Jersey involving the same products.

The present dispute concerns a six-page supplemental expert report of Cordis's expert, Antonios G. Mikos, Ph.D, served on Boston Scientific on September 2, 2009 – only a few weeks after service of rebuttal expert reports and almost a full month before Dr. Mikos's deposition.[1] Boston Scientific thus had the opportunity to question Dr. Mikos on the supplemental report and, in fact, did so at considerable length on October 1. Boston Scientific has suffered no prejudice.

The supplemental report covers two topics. First, Dr. Mikos cites to a handful of additional references in support of his previously expressed opinions that the polymers used on the Promus stent are "biocompatible" and that various claims in the patents-in-suit are therefore infringed. Second, Dr. Mikos responds to the contention advanced by BSC's expert, Harold Hopfenberg, Ph.D, that the PBMA polymer layer on the Promus stent lacks drug and therefore does not meet the limitations of certain claims of the patents-in-suit.

Admittedly, Dr. Mikos's supplementation could have been included in his August 7, 2009 report. But on August 7 Cordis was responding to 342 pages of expert reports from Boston Scientific and an additional 268 pages from Abbott in the parallel New Jersey case. In the two cases, the parties have served a total of 2,711 pages of expert reports (not counting attachments

---

[1] The parties agreed to schedule some of the expert depositions beyond the close of expert discovery. Dr. Mikos's deposition was taken Sept. 30 and Oct. 1, 2009. On September 16, Boston Scientific indicated to Cordis that it believed it was prejudiced by the report and demanded that Cordis withdraw the report. Cordis sent a letter to Boston Scientific, offering to postpone Dr. Mikos's deposition or otherwise work with Boston Scientific to address any prejudice. (*See* Ex. A, 9/16/2009 Letter from Jon Spanbauer to Christopher Scott.)

{00338404;v1}                                       1

and exhibits). Boston Scientific's reports alone total 766 pages. Boston Scientific suffers no prejudice from a three-week delay in receiving these supplemental opinions on Sept. 2 rather than Aug. 7. Moreover, Cordis has no objection to a further report from Boston Scientific's expert addressing these issues, if they consider it necessary. The motion to strike should be denied as to both opinions in the report.

## II. SUMMARY OF THE ARGUMENT

Boston Scientific suffers no prejudice from the short supplemental report. Both sections of the report pertain to issues previously addressed either by Dr. Mikos or Boston Scientific's expert Dr. Hopfenberg. Furthermore, Boston Scientific received the report in adequate time to prepare for Dr. Mikos's deposition, and Cordis has offered to work with Boston Scientific to cure any prejudice it believes it has suffered.

## III. STATEMENT OF FACTS

Promus is a drug-eluting stent, used to prevent restenosis – the renarrowing of coronary arteries following angioplasty and stent implantation. Promus uses the drug everolimus stored in a polymer coating. The coating on Promus consists of two layers: a primer layer of a polymer called poly(butylmethacrylate) ("PBMA") and an outer layer of a polymer called poly(vinylidenefluoride-co-hexafluoropropylene) ("PVDF-HFP"). (Ex. C, Promus IFU at 1.2.1 and 1.2.2 (A35).) Promus was developed by another company, Abbott. Abbott sells the same stent under the name Xience, and also provides Boston Scientific with Xience stents to sell under the Promus brand name.

Dr. Mikos's supplemental report discusses two distinct issues. First, the patents-in-suit include claims that require a "biocompatible" polymer. (*See, e.g.,* Ex. E, U.S. Patent 7,217,286 at Claim 1 (A111); Ex. F, U.S. Patent 7,223,286 at Claim 1 (A129); Ex. G, U.S. Patent 7,229,473 at Claims 1, 3-4 (A148); Ex. H, U.S. Patent 7,300,662 at Claim 1 (A171.) Cordis and Boston

Scientific have proposed different definitions for the term "biocompatible": Cordis believes that biocompatible means that the polymer is "able to perform its function in the body with an acceptable biological response"; Boston Scientific argues that biocompatible means "does not elicit any negative tissue reaction or promote mural thrombus formation."[2] In his opening expert report, Dr. Mikos opined that the polymers on Promus are biocompatible under *both* Cordis's and Boston Scientific's definitions. (D.I. 254, Boston Scientific's Brief in Support of its Motion to Strike at Ex. D; June 12, 2009 Mikos Expert Report at 20 (discussing Boston Scientific's definition: "[t]hese polymers, when used on the [Promus] stent, also do not elicit any negative tissue reaction or promote mural thrombus formation (Abbott's and Boston Scientific's proposed construction.").) Dr. Mikos supported this opinion by discussing and quoting REDACTED and an article by the designers of the Promus stent. (*See Id.*)

In his supplemental report, Dr. Mikos reiterated his conclusion that Promus is biocompatible. The only additional material in the supplemental report was Dr. Mikos's discussion of certain documents that support his previously expressed opinion that Promus does not "promote mural thrombus formation." (D.I. 254 at Ex. A; September 2, 2009 Mikos Supplemental Expert Report at 1-3.) Boston Scientific mistakenly claims that these documents "were never disclosed in [Dr. Mikos's] three previous reports." In fact, three of these documents were cited in the opening report's section on "biocompatibility," and all of the other documents were also cited and discussed at some point in the opening report. (*Compare* D.I. 254 at Ex. A

---

[2] As explained in Cordis's *Markman* brief, Cordis believes that its construction is more consistent with the entirety of the specification and that Boston Scientific's claim construction, which uses selected wording from the specification will cause jury confusion.

pp. 2-3 *with* Ex. D pp. 13, 20-21, 61, 102.) The supplementation is merely calling out specific quotations from the documents.

In any event, it is difficult to see how Boston Scientific could be prejudiced by additional references confirming that Promus does not promote mural thrombus. Boston Scientific has not even argued that Promus "promotes mural thrombus formation." Boston Scientific did not raise an argument of this kind in its summary judgment briefs, and none of its experts has advanced such an argument in their reports.

**REDACTED**

The other topic addressed in the supplemental report pertains to the claim requirement that the stent have a "polymeric carrier". (*See, e.g.*, Ex. E, '7286 patent at Claim 1; Ex. G, '473 patent at Claims 1, 3-4) or a "polymer/drug mixture" (Ex. F, '3286 patent at Claim 1). Cordis believes that the PVDF-HFP/everolimus outer-layer in Promus's coating satisfies these claims. Boston Scientific argues that the PVDF-HFP/everolimus is not a "polymer/drug mixture" because PVDF-HFP is a copolymer and the term "polymer" should be limited to homopolymers. (D.I. 249 at pp. 1, 7, 11.) Cordis believes that Boston Scientific's proposed construction of "polymer" is incorrect and that both the term's ordinary meaning and the meaning imparted by the patent specification encompass homopolymers and copolymers. Dr. Mikos's supplemental report provides an explanation of why Promus would infringe even under Boston Scientific's explanation – the PBMA layer is also a polymer carrier or polymer/drug mixture.

Boston Scientific's expert, Harold Hopfenberg, Ph.D, opined that the PBMA on Promus does not meet the claim limitations of the patents-in-suit in his July 14, 2009 report, **REDACTED**

REDACTED The second half of Dr. Mikos's supplemental report is a response to this argument. Dr. Mikos disagrees with Dr. Hopfenberg's opinion and REDACTED making the PBMA coat a "polymer/drug mixture" or "polymeric carrier." (D.I. 254 at Ex. A, September 2, 2009 Mikos Supplemental Report at 4-6.) PBMA is a homopolymer and would meet even Boston Scientific's definition of polymer. This section of Dr. Mikos's report spans just three pages. Dr. Mikos cites just one reference not cited in his previous reports: a chapter from a textbook on polymer coatings.

During the second day of Dr. Mikos's deposition on October 1, Boston Scientific questioned Dr. Mikos in detail about his opinions on whether the PBMA layer on Promus contained everolimus. (Ex. I, October 1 Mikos Tr. at 366-76.)

## IV. ARGUMENT

District courts deny motions to strike supplemental expert reports when there is no prejudice to the moving party. This occurs, for instance, when the expert's opinion was "an elaboration of and consistent with an opinion/ issue previously addressed." *Emcore Corp. v. Optium Corp.*, 2008 WL 3271553 (2008 W.D. Pa.) at *5. Similarly, the Third Circuit Court of Appeals has allowed experts to testify about late-filed materials where "[t]he prejudice to the [moving party] is minimal." *See In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 792 (3d. Cir. 1994). In the *Paoli R.R.* case, the Third Circuit reversed the district court's exclusion of expert's testimony on a medical monitoring program, where the expert had provided specifics of the program "only a month after the district court's deadline, fourth months before the schedule trial date, and 60 days before the deadline . . . for ending discovery." *Id.* The Court also found

that there was "little in favor of exclusion," in part because the moving party "had abundant time to depose [the expert] regarding the specifics of his proposed program . . . ."

Dr. Mikos's opinion on the biocompatible limitation was an elaboration of his previously expressed opinion. Dr. Mikos's opinion on the PBMA polymer layer on Promus likewise does not prejudice Boston Scientific. REDACTED it has ample time to submit a further reply, and it has had ample time to prepare to depose Dr. Mikos on the issue. In fact, Boston Scientific marked the supplemental report as an exhibit at Dr. Mikos's deposition, and spent substantial time questioning Dr. Mikos about the supplemental report at his deposition. (Ex. I, Mikos Tr. at 366-76.) Boston Scientific thus had a full and fair opportunity to examine Dr. Mikos on his supplemental report, and it took full advantage of that opportunity. The supplemental report thus causes no prejudice at all.

Given that Boston Scientific has been aware of the issue as early as this summer, Boston Scientific also has sufficient time to prepare to address this issue in its summary judgment briefing. Summary judgment briefing will not end until October 16, giving Boston Scientific a full six weeks to address the September 2 report. In fact, Boston Scientific already argued that PBMA is not a "polymeric carrier" or "polymer/drug mixture" in its opening summary judgment brief. (*See* D.I. 261 at 21.)

Boston Scientific points to cases in which courts granted motions to strike supplemental expert reports. These cases, however, have substantially different facts. For instance, in *Praxair, Inc. v. ATMI, Inc.*, 445 F. Supp. 2d. 460 (D. Del. 2006), the supplemental expert report was served on the day of the expert's deposition and contained new testing and infringement theories. In stark contrast, Dr. Mikos's report was served one month before his deposition, and Boston Scientific questioned Dr. Mikos about the report at his deposition. When a party has time

to review an expert's opinions and question the expert about them at a deposition, courts have held that the party is not prejudiced and have refused to strike the expert's supplemental report. *See Power Integrations, Inc. v. Fairchild Semiconductor Intern, Inc.*, 2006 WL 2435083 (D. Del. 2006) at *1 (refusing to strike supplemental report where expert's deposition was postponed for 18 days following service of report, thereby eliminating prejudice). In comparison, the plaintiff in the *Praxair* case would have had to study the supplemental report "overnight." *Praxair, Inc. v. ATMI, Inc.* 231 F.R.D. 457, 462 (D. Del. 2005.) In this case, Boston Scientific had nearly a month to review Dr. Mikos's report and prepare to question him on it. Dr. Mikos's report also contains no new testing of any kind –

**REDACTED**

## V. CONCLUSION

For the foregoing reasons, the Court should deny Boston Scientific's motion and should not strike either section of Dr. Mikos's supplemental report.

ASHBY & GEDDES

/s/ *John G. Day*
Steven J. Balick (I.D. #2114)
John G Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Defendants/Counter-Plaintiffs Johnson & Johnson, Cordis Corporation, and Wyeth*

*Of Counsel:*

David T. Pritikin
William H. Baumgartner, Jr.
Russell E. Cass
SIDLEY AUSTIN LLP
1 S. Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
dpritikin@sidley.com
wbaumgar@sidley.com
rcass@sidley.com

Bindu Donovan
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
bdonovan@sidley.com

Dated: October 5, 2009